Sonya D. Winner (Bar No. 200348)
swinner@cov.com
Nathan E. Shafroth (Bar No. 232505)
nshafroth@cov.com
Isaac D. Chaput (Bar No. 326923)
ichaput@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

Attorneys for Defendant
MCKESSON CORPORATION
*(Additional parties and counsel listed on signature page)*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, et al., | Civil Case No.: 3:18-CV-07591-CRB |
| Plaintiffs, | **DEFENDANTS' RESPONSE TO PLAINTIFFS' PROPOSED CASE SCHEDULE** |
| v. | |
| PURDUE PHARMA L.P., et al. | Honorable Charles R. Breyer |
| Defendants. | |

Plaintiffs' response to the Court's request for a plan for discovery and related schedule offers almost nothing of substance to explain the basis for the aggressive schedule plaintiffs propose. Their submission offers little constructive assistance in answering the questions the Court posed at the recent status conference: "[W]hat [is] the playing field going to be like?" and "What really has to be done?" February 26 Tr. at 14. There are at least three important factors bearing on the schedule that plaintiffs fail to discuss, either at all or in any meaningful way: (1) the actual scope of their amended complaint, (2) the *specific* discovery that will be needed in this case, and (3) the unprecedented COVID-19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

pandemic that will for the foreseeable future impose substantial strain on the resources of *both* plaintiffs *and* defendants – the former as they work to provide critical public services in this time of crisis, the latter because they serve critical components of the pharmaceutical supply chain that is needed to support that effort, and both sides because of the unprecedented restrictions and demands currently imposed on both governments and businesses.

## I.      What Is the Playing Field?

Defendants are still analyzing plaintiffs' First Amended Complaint ("FAC") – a behemoth that has ballooned by 125 new pages from 583 paragraphs covering 159 pages to **925** paragraphs over **284** pages. *Compare* Dkt. No. 128 *with* Dkt. No. 1.[1]  The FAC illuminates the sprawling nature of plaintiffs' claims and the amount of discovery they will require.  Far from streamlining the case substantially, as the Court anticipated (*see* February 26 Tr. at 13-14), the FAC adds a new defendant – Walgreen Co. –  a chain of dispensing pharmacies that is in a different segment of the pharmaceutical supply chain from the other defendants, all but one of whom are either pharmaceutical manufacturers or wholesale distributors.[2]  Plaintiffs have dropped one of the prior defendants, a small manufacturer, but the net effect is to expand the complexity of the case significantly.

Plaintiffs' prior suggestion that they intended to streamline their claims has also proven largely illusory.  Although the number of individual "causes of action" set out separately in the FAC is lower, only one truly separate cause of action – negligence – has been dropped.  Otherwise, the only "streamlining" that has occurred has been to consolidate overlapping claims into a smaller number of

---

[1] No redline was supplied with the amendment as required by the Court's Standing Order.  Following a request from defendants, plaintiffs supplied a redline on March 18, 2020.  In a footnote, the FAC suggests that many (although certainly not all) of the new allegations were taken from the complaint in an MDL case brought by Summit County, Ohio.  FAC at 3 n.4.  Plaintiffs may hope to argue that defendants do not need discovery as to those portions of the amendments because they were able to take discovery from Summit County in Track 1 in the MDL.  But insofar as these allegations have any significance to *San Francisco* (and if they do not, they should not have been included), defendants have had no pertinent discovery on those aspects.

[2] Defendant Noramco, Inc. is an active pharmaceutical ingredient manufacturer (*i.e.* a component supplier).  Noramco does not market, promote, distribute, manufacture, sell, or dispense any finished opioid medications.

separate counts.[3]  Even ignoring all of the added complexity that almost surely exists in a complaint that is now nearly 80% longer than its predecessor, it is clear that the FAC presents a highly complex set of claims on which substantial discovery will be needed.

This is confirmed by the Fact Sheet that plaintiffs submitted for this case in the MDL, which – among other things – identifies *fifty-five* categories of damages sought, cutting across what appear to be dozens of different constituent city and county departments, agencies, and other entities.  *See* Dkt. No. 66-2 at 3-4.  Defendants submitted this document as an exhibit to their original status report on February 19 (*id.*), but plaintiffs have not addressed it in either of their subsequent filings. They have offered no indication that the scope of their damages claims has changed in any material way.

Finally, plaintiffs' proposed schedule is silent as to a date for defendants to respond to the FAC. Defendants anticipate filing motions to dismiss that pleading and suggest a deadline of **April 17**, with a proposed hearing date of **June 5**.[4]

## II.      What Really Has to Be Done?

Plaintiffs' March 13 submission offers no substantive response to the Court's question concerning "what really has to be done?"  It identifies no specific discovery that plaintiffs expect either to provide or to seek.  And plaintiffs offer only one largely non-substantive response to the Court's follow-up question of "What may not have to be done?"  February 26 Tr. at 14.  On that second question, plaintiffs' only suggestion is that, to expedite discovery, plaintiffs should only be required to produce documents from 20–25 document custodians, with defendants able to obtain production from

---

[3] For example, instead of repeating the nuisance claim in two counts, the FAC now asserts it in one count.  It asserts the RICO claims in two counts rather than three.  And it drops a purported separate "cause of action" for fraudulent concealment, which was never a stand-alone cause of action to begin with.

[4] In their status report filed on February 19, plaintiffs suggested that motions to dismiss might not be needed because of rulings made on similar claims in the MDL.  As defendants explained in their response (Dkt. No. 81 at 3-5), plaintiffs' suggestion that some of those rulings might be "law of the case" was simply wrong, as (among other things) none were entered in *this* case or purported to address either the claims in this case or the law on which those claims are based.  Indeed, plaintiffs themselves have acknowledged that at least some of their claims (the claims under the California UCL and FAL) did not even have analogs in rulings made in the MDL in other cases.  Dkt. No. 82 at 2-3.  Moreover, some defendants anticipate filing motions to dismiss for lack of personal jurisdiction.

1
2
3
4
5
6
7
8
9
10
11

additional custodians only with leave of court.  *See* Dkt. No. 129 at 2.  But plaintiffs do not identify who any of those custodians would be; nor do they provide any explanation that would assure either defendants or the Court that this would be a reasonable limit.  Plaintiffs' only justification for this proposed limitation is the self-serving assertion that the conduct they allege is "egregious."  Dkt. No. 129 at 1.  If plaintiffs mean to suggest that the Court should set a schedule that deprives defendants of discovery to which they would otherwise be entitled because the complaint addresses important issues, they have it backward.  A case of this importance, more than any other, should be litigated based on a complete record that affords all parties the opportunity to develop all relevant facts.  To compound matters, plaintiffs suggest no limit on the discovery they would be allowed to seek from defendants – even though they have never disputed that the vast majority of the discovery they would need from most defendants has already taken place in the MDL and need not be repeated here.

12
13
14
15
16
17
18

The only other point about discovery plaintiffs offer in their March 13 submission is a veiled reference to "databases" that are "slated to be decommissioned in the coming months."  Dkt. No. 129 at 1.  Plaintiffs suggest that they will "work with" defendants to generate "relevant reports" before that happens.  *Id.*  But they do not even identify what these "databases" are or what information they contain.  For the avoidance of doubt, plaintiffs are subject to the same document preservation obligations as any litigant, and defendants object to any "decommissioning" that would make relevant information inaccessible.

19
20
21
22

Because plaintiffs failed entirely to identify what discovery needs to be done, defendants make an effort to do so here.[5]  The following discussion is by necessity preliminary and incomplete, as defendants have not yet received any concrete information from plaintiffs about where discoverable information is likely to be found.

23
24
25

The scope of the discovery defendants need flows from the dramatic breadth of plaintiffs' claims, which seek to assign to an array of defendants responsibility for a complex public health issue that (according to plaintiffs themselves) has developed over decades.  For example, plaintiffs seek to

26
27
28

---

[5] Given the lack of substantive discussion in plaintiffs' March 13 filing, defendants reserve the right to seek leave to file a surreply to address any new facts or arguments plaintiffs seek to present in their reply.

1
2
3
4
5
6
7

hold defendants responsible for issues involving illicit opioids like heroin in addition to those relating to prescription drugs, necessitating discovery into the history, causes, extent, and current status of illegal opioid problems in San Francisco. Plaintiffs even suggest that defendants are responsible for drug abuse involving non-opioid illicit substances such as methamphetamine, Dkt. No. 128 ¶¶ 59, 68, which is an entirely new allegation. Given experience in other cases – and even ignoring the unprecedented impediments both sides currently face from the COVID-19 pandemic – discovery in this case will take far longer than the seven months plaintiffs estimate.

8

### A. Categories of Discovery

9
10
11
12
13
14
15
16

As defendants have previously explained, they are starting this case from Square One with respect to discovery of plaintiffs and third parties with relevant information. Dkt. No. 66 at 4-7; Dkt. No. 81 at 2-3.[6] Apart from a bare-bones Fact Sheet and a handful of documents, defendants have received no discovery from plaintiffs. Dkt. No. 66 at 4-7. The needed discovery will entail extensive documentary and testimonial evidence from many sources. And the timeframe to be addressed is lengthy, both because plaintiffs' allegations span decades (*see, e.g.*, Dkt. No. 128 ¶¶ 3, 777) and because San Francisco has faced problems with substance abuse for at least that long, if not longer. For example, a 2001 New York Times article referred to heroin use in San Francisco as "an old nemesis"

17
18
19
20
21
22
23
24
25
26
27

[6] Certain of the manufacturer defendants – the Teva, Janssen, Endo, and Allergan Defendants –are also defendants in an opioid matter pending in Orange County, *People of the State of California v. Purdue Pharma, L.P. et al.*, Case No. 30-2014-00725287-CU-BT-CXC (the "Orange County Action"). The defendants in the Orange County Action have obtained discovery from certain of the third parties discussed below. Although those efforts may streamline some third-party discovery here, significant third-party discovery remains outstanding for *this* action, even as to the third parties who were subpoenaed in Orange County. Among other things: (1) most of the defendants in this action, including all of the distributor defendants, Mallinckrodt, and Walgreens, are not parties to the Orange County Action and will require discovery on issues that pertain to the distinctly different liability theories asserted against them; (2) unlike plaintiffs in the Orange County Action, plaintiffs in this action are asserting claims predicated on defendants' suspicious order monitoring practices, which will present additional discovery needs for all defendants here; and (3) as discussed further below, nearly all of the third-party discovery in the Orange County Action was tethered specifically to the plaintiff jurisdictions there, not San Francisco.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

and described rampant and public use of heroin in the city.[7]  Understanding this longstanding issue is necessary because plaintiffs seek to hold defendants liable for the heroin and other opioid issues San Francisco now faces.

Plaintiffs allege that defendants' conduct has impacted nearly every aspect of city and county government over the past two decades, and the City and County of San Francisco employ more than 37,000 people.[8]  According to plaintiffs' Fact Sheet, the City and County of San Francisco has 125 departments and divisions (Dkt. No. 66-2 at 5-10); defendants believe that approximately 40 of these departments and divisions are likely to have discoverable information.[9]  Many, if not all, of these departments and divisions will have multiple individuals with relevant knowledge whose custodial files will need to be collected and produced, and depositions will be necessary from many of them.  Further, due to personnel changes over time, it is likely that multiple individuals will have held key roles over time, multiplying further the number of individuals whose files will need to be examined and/or who will need to be deposed.  And this is just for party discovery; defendants also anticipate the need for substantial third-party discovery.

Based on a preliminary review of the FAC and plaintiffs' Fact Sheet, the following are some examples of discovery that will be needed:

---

[7] Evelyn Nieves, "An Old Nemesis  Keeps Scarring San Francisco," New York Times (Jan. 9, 2001), available at: https://www.nytimes.com/2001/01/09/us/an-old-nemesis-keeps-scarring-san-francisco.html.

[8] San Francisco Dept. of Human Resources, 2020 Annual Workforce Report at 3, *available at* https://sfdhr.org/sites/default/files/documents/Reports/annual-workforce-report-2020.pdf.

[9] These include Adult Probation; Aging and Adult Services; Board of Supervisors; Budget & Legislative Analyst; Child Support Services; Department of Children, Youth & Families; Office of the City Administrator; Clerk of the Board of Supervisors; Controller's Office; County Clerk; District Attorney; Office of Economic & Workforce Development; Department of Emergency Management; Environmental Department; Fire Commission; Fire Department; Health Service System; Homelessness and Supportive Housing; Housing Authority; Human Resources; Human Rights Commission; Human Services Agency; Justice Tracking Information System; Juvenile Probation Commission; Juvenile Probation Department; Mayor's Office; Medical Examiner; Mental Health Board; Police Department; Public Defender; Office of Public Finance; Public Health Commission; Department of Public Health; Department of Public Works; Risk Management; Sheriff's Department; Office of Short Term Rental; Single Room Occupancy Task Force; Superior Court; Treasurer / Tax Collector; Veterans Affairs Commission; and Veterans' Service Office.

### 1. Law Enforcement

Plaintiffs claim damages for various law enforcement-related expenditures, including "Increase in criminal investigations," "Task forces," "Opioid-related crimes," and "Threats to public safety." Dkt. No. 66-2 at 3-4.

Even apart from damages specifically sought for law enforcement activities, law enforcement agencies and personnel will be a critical source of discovery on the allegations in the complaint. For example, the San Francisco Police Department possesses much of the most important information concerning the criminal diversion of prescription opioid medications in San Francisco – the basis for every claim asserted by plaintiffs – as well as trafficking of illicit opioids and other drugs. Discovery will also address SFPD's interactions with drug users in San Francisco, as well as the population of individuals experiencing homelessness (an issue that in San Francisco is reported to be closely intertwined with drug abuse).[10]

The San Francisco Sheriff's Office provides security in San Francisco's courts and public buildings, including Zuckerberg San Francisco General Hospital. It also operates the San Francisco County Jail system. The Sheriff and other officers will be important sources of information regarding the impact of drug and opioid abuse on these operations. The County Jails operate multiple jail-based rehabilitation programs for individuals with substance use disorders; defendants will likely require discovery from these programs. Additionally, the County Jails are major purchasers and prescribers of opioids, and discovery will be needed on the Jails' controlled substances ordering, dispensing, and storage practices. Plaintiffs claim damages for various expenditures related to the Sheriff's Office, including "Increased jail costs," "Juvenile rehabilitation treatment," "Probation, including probation-related rehabilitation programs," "Adult and juvenile detention," and "Damage to City/County buildings, property, open spaces." Dkt. No. 66-2 at 3-4.

---

[10]  For one example, between January 2018 and July 2019, more than 150 individuals reported that SFPD and Public Works employees confiscated their naloxone during "homeless sweeps." Nuala Sawyer Bishari, "Drug Users Face Extra Health Challenges With Uptick in Homeless Sweeps," SF Weekly (July 25, 2019), available at: https://www.sfweekly.com/news/drug-users-face-extra-health-challenges-with-uptick-in-homeless-sweeps/. Naloxone blocks the effects of opioids and can reverse opioid overdoses.

Significant third-party discovery will also be required of law enforcement agencies, such as the local offices of various federal agencies.  For example, the U.S. Drug Enforcement Administration maintains information regarding suspicious orders, diversion trends and investigations, and illicit drug trends and investigations.  The Federal Bureau of Investigation has reports on drug trafficking in the San Francisco area.  And the U.S. Attorney's Office has information regarding San Francisco-area diversion prosecutions of physicians and pharmacists.

### 2.  District Attorney and Courts

Discovery from the San Francisco District Attorney's office will be needed to address the alleged increase in criminal prosecutions due to the opioid abuse crisis and the identity of non-party criminal actors and their conduct.  Plaintiffs claim damages related to criminal prosecutions, including "Increase in criminal investigations," "Task forces," "Increased time and expenses for prosecutor and public defender offices," "Probation, including probation-related rehabilitation programs," "Victim/family counseling," and "Rehabilitation and treatment programs."  Dkt. No. 66-2 at 3-4.

Plaintiffs also claim damages related to "Drug court and related programs."  Dkt. No. 66-2 at 4. San Francisco has operated a Drug Court program since 1995 and affiliated Drug Court Treatment Services since at least 2014.  These programs, along with the Family Treatment Court (previously known as Dependency Drug Court) possess relevant information concerning the scope of opioid and other drug use within San Francisco, as well as plaintiffs' efforts to address and rehabilitate users of opioids and other drugs.

### 3.  Emergency Services

Plaintiffs claim damages for various types of expenditures related to "Public Health and First Responders," including "Counseling for grief, post-traumatic stress disorder and depression," "Emergency medical treatment," "Fire and rescue," "Patient transportation," "Narcan/Naloxone administration," and "Public and employee training on the administration of Narcan/Naloxone."  Dkt. No. 66-2 at 3.  The San Francisco Fire Department Division of Emergency Medical Services ("EMS") is also likely to possess critical information more generally about opioid abuse and treatment.

4. **Public Health**

Plaintiffs claim damages for various public health-related expenditures, including "Mental health facilities," "Needle exchange and prescription drug take-back programs," "Opioid education programs," "Opioid prevention programs," "Opioid abuse programs," "Education and prevention of HIV / Hepatitis C," "Social Services," "Increased Veterans Services expenditures," "Public and employee training on safe prescription practices," and "Public and employee training on safe prescription drug disposal." Dkt. No. 66-2 at 3. The San Francisco Department of Public Health compiles data by tracking the impact of substance use and abuse. It will be an important source of discoverable information on the overdose and death trends in the City and County of San Francisco, as well as the prevention and training programs that Plaintiffs implemented to mitigate the alleged harm.[11]

Plaintiffs also claim damages related to "Public health clinics" and "Public Hospitals." Dkt. No. 66-2 at 3. The San Francisco Health Network is a public healthcare system that includes 14 primary health care centers, hospital care through the Zuckerburg San Francisco General Hospital and Treatment Center and Laguna Honda Hospital, urgent care, and behavioral health services. This network of public health facilities is likely to possess relevant information concerning the scope and impact of opioid and other drug use within San Francisco.

Further, defendants are likely to require third-party discovery from a number of other public-health agencies and related entities, including: (1) California Conference of Local Health Officers; (2) California Department of Aging; (3) California Department of Public Health; (4) California Emergency Medical Services Authority; (5) California Health & Human Services Agency; (6) California Department of State Hospitals; (7) California Mental Health Services Overnight & Accountability;

[11] Topics to be addressed in this discovery may include, *inter alia*, epidemiological data regarding addiction and mental health treatment and opioid use, abuse, and overdose, and mortality; uniformly de-identified treatment, encounters, and dispensing records related to opioid prescriptions written and addiction or overdose treatment provided; records related to treatment with naloxone and other medically assisted treatment reports; records of grants received from state and federal sources related to opioids; provider lists and budgets for substance use treatment providers; records related to admissions to substance use disorder treatment; data related to substance abuse trends and drug availability; and CURES data reports used by the City and County.

(8) California Office of the Patient Advocate; (9) California Department of Managed Health Care; (10) California Department of Health Care Services; (11) California Office of Health Information and Integrity; and (12) California Office of Statewide Health Planning and Development.[12]

### 5.    Medical Examiners

Discovery from the Office of the Chief Medical Examiner will be needed to address the alleged increase in deaths involving both prescription and illicit opioid use for which plaintiffs blame defendants.  Plaintiffs claim damages for various coroner and medical examiner-related expenditures, including "Morgue space," "Storage of bodies," "Indigent burials," "Cremations and burials," "Toxicology testing," and "Biohazard waste disposal."  Dkt. No. 66-2 at 3.  The Office of the Chief Medical Examiner investigates individual deaths and tracks community health trends.  It provides comprehensive forensic toxicology testing services that assist in determining, or providing verification of, the cause and manner of death for cases in the Medical Examiner's jurisdiction.  The Office of the Chief Medical Examiner is likely the only government entity in possession of relevant information concerning the cause of death and manner of death for deceased individuals who comprise the opioid-related mortality statistics that plaintiffs cite.

### 6.    Child and Family Services

Discovery from the City and County of San Francisco departments and divisions related to Child and Family Services will be needed to address the alleged increased costs associated with child placements, family homelessness and government programs that plaintiffs attribute to opioids.  Plaintiffs claim damages for various types of expenditures related to "Foster care," "Child support," "Family and children's services," "Shelters," and "Family Treatment Court and related programs."  Dkt. No. 66-2 at 3.  San Francisco has numerous resources for child and family services such as a 24-hour crisis line for parents, programs for early childhood development, homeless prenatal programs, and foster care support agencies.  These programs and services, along with many others provided by the City and County of

---

[12] The defendants in the Orange County Action served subpoenas on many of these entities.  As noted above, however, even if the remaining defendants had access to this discovery (which has not yet occurred), it is almost certain that additional discovery would be needed from most, if not all of them to address the specific claims in *this* case.

San Francisco are likely to possess relevant information concerning the number of children and families taken from their homes or otherwise affected by opioids.  Such discovery is likely to address, *inter alia*, policies and practices over time related to investigations and cases opened involving opioids; data maintained in the County's Child Welfare Services/Case Management System showing the number of cases involving opioids compared to alcohol and other drugs; drug testing data and contracts; department budgets; and grants received from state and federal sources.

### 7.   Health Plans and Officials Responsible for Administering Them

Plaintiffs have identified seven "medical insurance plan or carrier, behavioral health carriers, or workers compensation programs" used by its employees since January 1, 2008 and seven pharmacy benefit managers or third-party claims administrators it has used since January 1, 2006.  Dkt. No. 66-2 at 19-21.  In addition to seeking discovery from health plans and claims administrators run by plaintiffs or made available by plaintiffs to its employees, defendants will also need to collect discovery related to third-party health plans offered to residents of San Francisco, including large insurers, pharmacy benefit managers, and private managed care organizations operating in San Francisco.  These entities have, inter alia, critical claims data demonstrating the number and types of opioids prescribed to San Francisco residents over time, the healthcare providers who prescribed these opioids, and the conditions for which they were prescribed.

### 8.   Budget and Finance

Plaintiffs claim that the financial costs from the opioid epidemic "that are already known are staggering," and identify certain line items in a 2017 budget proposal that were "specifically targeted at addressing '[t]he surge of opiate abuse and addiction.'"  Dkt. No. 128 ¶ 58.  Discovery from the Mayor's Office of Public Policy and Finance, the Controller's Office, and the Board of Supervisors will be needed to identify any proposed and actual opioid-related expenditures in San Francisco's budget throughout the relevant time period.

### 9.   Opioid Task Forces

Various San Francisco Departments and Boards operate drug-related tasks forces working to identify harm reduction strategies to decrease and manage illicit drug (e.g., methamphetamine) use, develop recommendations on the operation of safe injection services, and advise City government

officials on policies to help address drug dealing that is particularly rampant in certain neighborhoods within San Francisco.  These include the San Francisco Methamphetamine Task Force (facilitated by San Francisco Department of Public Health), San Francisco Safe Injection Services Task Force (facilitated by San Francisco Department of Public Health), and the Street-Level Drug Dealing Task Force.  Such task forces possess information that is highly important to plaintiffs' claim for damages related to, *inter alia*, "needle exchange and prescription drug take-back programs," "Narcan/Naloxone administration," and "task forces."  Dkt. No. 66-2 at 4-5.

## 10.    Other Third Party Discovery

There are several other categories of third parties that have discoverable information relevant to plaintiffs' claims and defendants' defenses.  By way of example only, these categories include:

*(i) Professional Regulatory Authorities.*  Defendants intend to seek discovery regarding the identities of, and the investigatory and disciplinary records related to, licensed healthcare professionals involved in improper prescribing of opioids and pharmacists involved in improper dispensing or diversion of opioids.  Relevant third parties that possess such information include the California Medical Board, the California Pharmacy Board, the Osteopathic Medical Board of California, the California Physician Assistant Board, and the California Dental Board.[13]

*(ii) Prescription Drug Monitoring Program.*  Third-party discovery will be needed from the California Department of Justice, which administers the Controlled Substance Utilization Review and Evaluation System ("CURES"), California's Prescription Drug Monitoring Program.  CURES maintains data on controlled substance prescriptions dispensed in California, and is the primary source of data on who wrote, dispensed, and received opioid prescriptions in California.[14]

---

[13] In February, the Court in the Orange County Action ordered the California Medical Board and the Pharmacy Board to produce certain administrative and investigation records related to prescribing and dispensing misconduct in the jurisdictions at issue in that litigation.  The Boards have indicated that they intend to seek a writ from the California Court of Appeal challenging these rulings.  To date no investigation or administrative records have been produced.

[14] In February, the Court in the Orange County Action ordered the California DOJ to produce the CURES database insofar as it pertains to opioids, anti-depressants, anti-convulsant/epileptic drugs (including muscle relaxers) and benzodiazepines, from 1990 to the present, with patient PII de-

1

2

*(iii) Insurance and Workers' Compensation Providers.*  Documents and data relating to trends in opioid prescriptions written and dispensed in San Francisco will be of central relevance in this case.

3

Defendants expect to seek documents and data from Covered California, the California Department of

4

Insurance, and the California Department of Industrial Relations Division of Workers' Compensation.

5

*(iv) Professional Organizations.*  Defendants also anticipate serving subpoenas on certain

6

private professional organizations, including the American Academy of Emergency Medicine, the

7

California Academy of Family Physicians, and the California Medical Association.

8

*(v) Healthcare Providers.*  The manufacturer defendants intend to subpoena healthcare providers

9

who prescribe opioids in the San Francisco area to obtain testimony that will, *inter alia*, help refute

10

plaintiffs' allegations regarding the impact of opioid marketing on prescribing habits and plaintiffs'

11

theory that opioids are not "safe and effective for long-term use."  Dkt. No. 128 ¶ 26.  Similarly,

12

plaintiffs' dispensing claims against Walgreens implicate the filling of specific prescriptions that,

13

plaintiffs allege, Walgreens pharmacists should not have filled.  Walgreens will need to take third-party

14

discovery from the prescribing practitioners and potentially others concerning those prescriptions,

15

whether or they were in fact illegitimate, and whether the dispensed medications were in fact criminally

16

diverted to improper uses as would be necessary to be linked to the harms for which plaintiffs seek

17

recovery from Walgreens based on their dispensing theory of liability.

18

**B.     Limitations on Discovery**

19

Plaintiffs state that their proposed case schedule is "manageable" only if the Court severely

20

curtails defendants' ability to seek discovery.  The parties have not yet discussed any limitations on

21

discovery, and the discussion above should make clear why defendants cannot agree to plaintiffs'

22

proposed limit.  Defendants will be prepared to work with plaintiffs in good faith to ensure that

23

discovery proceeds as efficiently as possible, for example, by excluding potential custodians whose files

24

are likely to be cumulative or of marginal relevance.  But the breathtaking scope of plaintiffs' claims,

25

26

27

28

identified.  The DOJ has indicated that it intends to seek a writ from the California Court of Appeal challenging this ruling.  To date, DOJ has not produced the CURES data in the Orange County Action.

1   which sweep across dozens of government agencies over multiple decades, makes an arbitrary limit of

2   20-25 custodians facially unreasonable.

3       Nor is plaintiffs' proposed limitation consistent with the positions of other bellwether plaintiffs

4   in the opioid litigation.  For example, in the recently remanded West Virginia bellwether case, plaintiffs

5   City of Huntington and Cabell County – which are much smaller than the plaintiffs here – have agreed

6   to produce files from 44 and 50 custodians respectively, with negotiations over additional custodians

7   still ongoing.  That case, which involves only two claims and three defendants, is much narrower in

8   scope than the case brought by plaintiffs here.

9       For purposes of comparison, plaintiffs already possess much more expansive discovery from

10  most or all of the defendants than they suggest they are willing to provide.  For example, Janssen alone

11  has produced files from over 80 custodians – 60 national custodians in Track One of the MDL, and over

12  20 additional regional custodians in the Orange County action.  McKesson produced files from 35

13  custodians in Track One of the MDL, and has to date produced files from 66 custodians in opioid-related

14  litigation.  Similarly, AmerisourceBergen produced files from 44 different custodians in the MDL and

15  has to date produced files from 60 custodians in opioid-related litigation.  Plaintiffs have access to all of

16  this material.  Defendants do not at this time ask the Court to impose an arbitrary numerical limit on

17  custodians from whom discovery may be sought from defendants, although they believe any additional

18  discovery taken from defendants should be strictly confined to matters that are specific to San Francisco

19  and its claims, with no duplication of discovery already taken on national-level issues.[15]

20  **III.   Intervening Events:  The COVID-19 Pandemic**

21      In a footnote to their March 13 submission, plaintiffs acknowledge that the Coronavirus

22  pandemic has "had a substantial impact on San Francisco's ability to operate business as usual" but say

23  that they would expect to keep to their proposed schedule "[a]ssuming that these effects are relatively

24

25  [15] Defendants also believe that witnesses who have previously been deposed should not be subject to
    deposition yet again except to the extent needed, upon a showing of good cause, to address
26  San Francisco-specific issues not addressed in their prior depositions.  The parties have not yet met and
    conferred on this – or any other specific limitation on discovery – and so defendants do not ask the
27  Court to address this question now.  Should the parties be unable to work it out, defendants will raise the
28  issue with Magistrate Judge Corley.

short-lived." Dkt. No. 129 at 1 n.1.  Unfortunately, this optimistic assumption, like many others made about this fast-growing crisis, was obsolete almost as soon as it was offered.  At the time the submission was filed, both the President of the United States and the Mayor of San Francisco had declared public emergencies; since that time, the City and County of San Francisco and surrounding jurisdictions have become subject to unprecedented "shelter in place" orders (extended, as of March 19, to the entire State of California),[16] the operations of this court have been reduced dramatically,[17] and the timing of anything approaching a return to "business as usual" is open to substantial question.  While defendants share plaintiffs' hope that the impacts will be "relatively short-lived," the City has now itself identified the crisis as sufficiently severe to require business to be all but shut down until at least April 7.  The return to "business as usual" is surely unlikely for at least several weeks after that.  Indeed, the Governor now anticipates that California public schools, for example, are unlikely to re-open at all this academic year.[18]

It is important to recognize that discovery and other litigation efforts of *both* plaintiffs *and* defendants are severely affected by this situation.  The same San Francisco departments and agencies that will be priority targets for discovery – including public health, law enforcement, and emergency response – are presumably also among those most overwhelmed with the response to the COVID-19 crisis and its impact.  Significantly, many defendants are also at the center of this crisis response, which requires ongoing dependable access to the medical supplies and medicines that defendants manufacture, distribute, and dispense to patients and medical providers across the country.  Defendants' employees are heavily engaged in these and other activities to mitigate the effects of this pandemic on the supply chain.  Almost all defendants have implemented protective measures that all but eliminate travel and

---

[16] *See* Message from Mayor Breed on New Public Health Order, Mar. 16, 2020, https://sfdhr.org/sites/default/files/documents/COVID-19/Message-From-Mayor-Breed-on-New-Public-Health-Order-16mar20.pdf; Cal. Exec. Order N-33-20 (Mar. 19, 2020), https://covid19.ca.gov/img/N-33-20.pdf.

[17] *See* N.D. Cal. General Order No. 72 (Mar. 16, 2020).

[18] *See* Casey Tolan, "Coronavirus: Newsom warns most schools could be closed until summer as lockdown expands," The Mercury News (Mar. 17, 2020), *available at* https://www.mercurynews.com/2020/03/17/coronavirus-newsom-warns-most-schools-could-be-closed-until-summer-as-lockdown-expands/

1    strictly limit access to their facilities – except, of course, for Walgreens stores, which Walgreens is

2    going to extraordinary lengths to keep open and operational.

3            These considerations are not limited to this case.  Defendants are litigating cases involving

4    similar claims all across the country, and the impact of this situation on discovery is widespread.  In

5    numerous cases plaintiffs and defendants alike have taken depositions off-calendar, and many

6    government plaintiffs have begun to make clear that the discovery response efforts from their public

7    health and related agencies will need to be deferred indefinitely as they concentrate on crisis response.

8    Even employees who are not directly engaged in that effort are, according to some plaintiffs' counsel,

9    unable to make meaningful progress on searching for and producing documents while forced to work

10   from home.

11           The outside counsel prosecuting and defending this case are not generally engaged in crisis

12   response efforts, and activities that they can reasonably handle without significant input and effort from

13   their respective clients (and that can reasonably be accomplished under remote-working conditions)

14   should proceed.  This would include briefing on motions to dismiss the FAC, as well as the exchange of

15   opening discovery requests and whatever initial discussion of those requests can be made without the

16   need for the *informed* input of key client personnel.

17   **IV.    Proposed Case Schedule**

18           Although defendants fully understood and accepted the Court's statements at the February

19   conference about its intent to establish a schedule with a fixed trial date, they respectfully suggest that it

20   would be prudent to defer that decision for 30 days to permit a more informed evaluation of whether the

21   impacts of the COVID-19 crisis will indeed be "short lived" – as ***all*** parties earnestly hope they may be

22   – or instead are longer-lasting.  Defendants suggest that the parties be directed to submit reports in 30

23   days reporting on the status of their current operations and their ability to proceed with discovery in the

24   ordinary course.  Meanwhile, defendants propose that motions to dismiss be briefed on the schedule set

25   out above and that both sides exchange their initial written discovery requests (without due dates for

26   responses yet established) so that the lawyers can begin whatever work they are able to accomplish on

27   them, including beginning the meet-and-confer process.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

If the Court is reluctant to follow this approach, defendants propose below a case schedule that takes into account the categories of discovery needed and the scope and breadth of plaintiffs' claims. Notably, this schedule assumes (a) that the current pandemic does not materially delay the full initiation (and completion) of discovery and (b) that plaintiffs, true to their word, will be able to comply with their discovery obligations much more expeditiously than their counterparts in other cases have been able to manage even without the extra pandemic-related burdens plaintiffs now face.[19]  If they are not able to do so, this schedule will not be workable.

Defendants propose that discovery will be more efficient if it is phased.  In light of plaintiffs' repeated representations that they need little time to complete discovery of defendants, defendants' proposed schedule presumes that in the initial period discovery will be limited to written and document discovery taken by defendants from plaintiffs and third parties.  Staging discovery in this fashion will promote efficiency, as all parties will be able to focus on the discovery they agree will be most time consuming.

| Deadline | Defendants' Proposal | Plaintiffs' Proposal |
| --- | --- | --- |
| Fed. R. Civ. P. 26(a) Initial Disclosures[20] | April 1, 2020 | |
| Parties may begin serving written discovery, with staggered deadlines for response[21] | April 1, 2020 | April 1, 2020 |
| Motions to dismiss | April 17, 2020 | |

---

[19] This proposal also assumes that plaintiffs will commit that they, like plaintiffs in certain other cases, will promptly, after the production of local dispensing data, identify all prescriptions that they allege should not have been filled; this will allow enough time for follow-up investigation and discovery on those prescriptions during the fact discovery period.  Similar early identification will be needed of any "suspicious orders" that plaintiffs alleged defendants should not have shipped so that follow-up discovery can be pursued.

[20] This assumes plaintiffs are able to confirm that they are able to conduct the requisite interviews of their clients' personnel.

[21] Ordinary deadlines will apply to plaintiffs' discovery responses except as otherwise stipulated or ordered by the court.  To ensure that early attention is focused on the activity that will consume the most time, defendants' responses to written discovery served on or before July 8, 2020 will be due August 7, 2020, and no depositions of defendants' personnel will be taken before that date.

| Deadline | Defendants' Proposal | Plaintiffs' Proposal |
|---|---|---|
| Oppositions to motions to dismiss | May 8, 2020 | |
| Replies in support of motions to dismiss | May 22, 2020 | |
| Hearings on motions to dismiss | June 5, 2020 at 10:00 a.m. | |
| Substantial completion of document production[22] | October 2, 2020 | |
| Close of fact discovery | March 5, 2021 | October 30, 2020 |
| Plaintiffs' expert reports | March 12, 2021 | November 16, 2020 |
| Defendants' expert reports | April 23, 2021 | November 16, 2020 |
| Close of expert discovery | May 14, 2021 | December 23, 2020 |
| Motions for summary judgment and *Daubert* motions | May 31, 2021 | January 29, 2021 |
| Oppositions to motions for summary judgment and *Daubert* motions | July 12, 2021 | February 26, 2021 |
| Replies in support of motions for summary judgment and *Daubert* motions | August 6, 2021 | March 5, 2021 |
| Hearings on motions for summary judgment and *Daubert* motions | August 27, 2021 | |
| Parties to lodge and serve witness and exhibit lists[23] | August 27, 2021 | |
| Parties to file juror questionnaire, proposed voir dire questions, and simplified statement of the case | September 3, 2021 | |
| Joint proposed pre-trial order | September 10, 2021 | |
| Motions *in limine* | September 10, 2021 | |
| Oppositions to motions *in limine* | September 17, 2021 | |
| Replies in support of motions *in limine* | September 24, 2021 | |
| Proposed jury instructions and special verdict form | September 24, 2021 | |

[22] This assumes that plaintiffs will produce documents expeditiously and on a rolling basis, so that the majority of the production is received before this deadline. Plaintiffs already have most documents they are likely to need from defendants. Defendants should be able to comply with any reasonable supplemental requests by this date.

[23] These and the following dates are based on the Court's standing jury trial order. Based on experience in other cases, the parties will likely wish to discuss building in more time for some of these items.

| Deadline | Defendants' Proposal | Plaintiffs' Proposal |
|---|---|---|
| All trial materials due | | March 12, 2021 |
| Final Pretrial Conference | October 1, 2021 | March 19, 2021 |
| Trial | October 15, 2021 | March 29, 2021 |

\*　　\*　　\*

For the foregoing reasons, defendants respectfully request that the Court defer entry of a final schedule for 30 days or, in the alternative, that it enter defendants' proposed schedule, which accounts for the unique scope and scale of this case and provides defendants the bare minimum amount of time necessary to develop the record and prepare for trial.

Respectfully Submitted,

DATED:   March 20, 2020

By:   */s/ Sonya D. Winner*
　　　Sonya D. Winner (Bar No. 200348)
　　　Nathan E. Shafroth (Bar No. 232505)
　　　Isaac D. Chaput (Bar No. 326923)
　　　Covington & Burling LLP
　　　COVINGTON & BURLING LLP
　　　Salesforce Tower
　　　415 Mission Street, Suite 5400
　　　San Francisco, California 94105-2533
　　　Telephone: + 1 (415) 591-6000
　　　Facsimile: + 1 (415) 591-6091

　　　*Attorneys for Defendant*
　　　*McKesson Corporation*

DATED:   March 20, 2020

By:   */s/ Steven J. Boranian*
　　　Steven J. Boranian
　　　REED SMITH LLP
　　　101 Second Street, Suite 1800
　　　San Francisco, CA 94105
　　　Telephone: (415) 543-8700
　　　Facsimile: (415) 391-8269
　　　sboranian@reedsmith.com

1
2
3
4
5
6
7

Sarah B. Johansen
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: (213) 457-8000
Facsimile: (213) 457-8080
sjohansen@reedsmith.com

*Attorneys for Defendants*
*AmerisourceBergen Corporation and*
*AmerisourceBergen Drug Corporation*

8  DATED:   March 20, 2020

9
10
11
12
13
14

By:  */s/ Neelum J. Wadhwani*
Neelum J. Wadhwani (Bar No. 247948)
Enu A. Mainigi (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC  20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029
nwadhwani@wc.com
emainigi@wc.com

15
16
17
18
19
20
21

Edward W. Swanson, SBN 159859
August Gugelmann, SBN 240544
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010
ed@smllp.law
august@smllp.law

*Attorneys for Defendant*
*Cardinal Health, Inc.*

22  DATED:   March 20, 2020

23
24
25
26
27

By:  */s/ Zachary Hill*
Zachary Hill, Bar No. 275886
MORGAN, LEWIS & BOCKIUS LLP
zachary.hill@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel: +1.415.442.1000
Fax: +1.415.442.1001

28

DEFENDANTS' RESPONSE TO PLAINTIFFS' PROPOSED CASE SCHEDULE

Eric W. Sitarchuk*
Rebecca J. Hillyer*
MORGAN, LEWIS & BOCKIUS LLP
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com
1701 Market Street
Philadelphia, 19103-2921
Tel: +1.215.963.5000
Fax: +1.215.963.5001

Wendy West Feinstein (pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
wendy.feinstein@morganlewis.com
One Oxford Centre, Thirty-Second Floor
Pittsburgh, PA 15219-6401
Tel: +1.412.560.7455
Fax: +1.412.560.7001

*Attorneys for Defendants*
*Teva Pharmaceuticals USA, Inc., Cephalon,*
*Inc., Actavis LLC, Watson Laboratories, Inc.,*
*and Actavis Pharma, Inc. f/k/a Watson Pharma,*
*Inc.*

*Denotes national counsel, pro hac vice*
*forthcoming*

DATED:   March 20, 2020

By: */s/ Sean O. Morris*
Sean O. Morris
John D. Lombardo
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017-5844
Telephone: +1-213-243-4000
Facsimile: +1-213-243-4199
Email: Sean.Morris@arnoldporter.com
Email: John.Lombardo@arnoldporter.com

*Attorneys for Defendants*
*Endo Pharmaceuticals Inc., Endo Health*
*Solutions Inc., Par Pharmaceutical, Inc.,*
*and Par Pharmaceutical Companies, Inc.*

DATED:   March 20, 2020

By: */s/ Amy J. Laurendeau*
Amy J. Laurendeau (S.B. #198321)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
(949) 823-6900
alaurendeau@omm.com

Charles C. Lifland (S.B. #108950)
Sabrina H. Strong (S.B. #200292)
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
(213) 430-6000
clifland@omm.com
sstrong@omm.com

Amy R. Lucas (S.B. #264034)
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
(310) 553-6700
alucas@omm.com

Stephen D. Brody (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
sbrody@omm.com

*Attorneys for Defendant*
*Janssen Pharmaceuticals, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:   March 20, 2020

By:  */s/ Rocky C. Tsai*
Rocky C. Tsai (SBN #221452)
*rocky.tsai@ropesgray.com*
Traci J. Irvin (SBN #309432)
*traci.irvin@ropesgray.com*
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, CA 94111-4006
Tel: (415) 315-6300
Fax: (415) 315-6350

*Attorneys for Defendant*
*Mallinckrodt LLC*

DATED:   March 20, 2020

By:  */s/ Michael Onufer*
Michael Onufer (Bar No. 300903)
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Email: michael.onufer@kirkland.com

Jennifer G. Levy, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
Email: jennifer.levy@kirkland.com

Donna Welch, P.C. (*pro hac vice*)
Timothy W. Knapp, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
donna.welch@kirkland.com
tknapp@kirkland.com

*Attorneys for Defendants*
*Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a*
*Watson Pharmaceuticals, Inc., Allergan Sales,*
*LLC and Allergan USA, Inc.*

DATED:   March 20, 2020

By: */s/ Elizabeth A. Sperling*
Elizabeth A. Sperling (CA Bar No. 231474)
ALSTON & BIRD LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Fax: (213) 576-1100
elizabeth.sperling@alston.com

Daniel G. Jarcho*
ALSTON & BIRD LLP
950 F Street, NW
Washington, DC 20004
Telephone: (202) 239-3300
Daniel.jarcho@alston.com

Cari K. Dawson (*pro hac vice*)
Jenny A. Hergenrother*
ALSTON & BIRD LLP
1201 West Peachtree Street, Suite 4900 Atlanta,
GA 30309-3424
Telephone: (404) 881-7000
cari.dawson@alston.com
jenny.hergenrother@alston.com

*Attorneys for Defendant Noramco, Inc.*

*\*Denotes National counsel who will seek pro hac vice admission*

DATED:   March 20, 2020

By:  */s/ Alan R. Oullette*
Alan R. Ouellette (SBN 272745)
FOLEY & LARDNER LLP
555 California Street, Suite 1700
San Francisco, CA 94104-1520
Tel:     415.434.4484
Fax:     415.434.4507
Email:  aouellette@foley.com

James W. Matthews (*Pro Hac Vice* motion
forthcoming)
Ana M. Francisco (*Pro Hac Vice* motion
forthcoming)
Katy E. Koski (*Pro Hac Vice* motion
forthcoming)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Tel:     617.342.4000
Fax:     617.342.4001
Email:  jmatthews@foley.com
Email:  afrancisco@foley.com
Email:  kkoski@foley.com

*Attorneys for Defendant Anda, Inc.*

DATED:   March 20, 2020

By:  */s/ Charles J. Stevens*
Charles J. Stevens (SBN 106981)
Joshua D. Dick (SBN 268853)
Kelsey J. Helland (SBN 298888)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
Telephone: (415) 393-8200
Fax: (415) 393-8306
cstevens@gibsondunn.com
jdick@gibsondunn.com
khelland@gibsondunn.com

DEFENDANTS' RESPONSE TO PLAINTIFFS' PROPOSED CASE SCHEDULE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kaspar J. Stoffelmayr (pro hac vice forthcoming)
Katherine M. Swift (pro hac vice forthcoming)
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Telephone: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
kate.swift@bartlitbeck.com

*Attorneys for Defendant Walgreen Co.*

DEFENDANTS' RESPONSE TO PLAINTIFFS' PROPOSED CASE SCHEDULE

1

## **<u>ATTESTATION</u>**

2

      I, Sonya Winner, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence

3

to the filing of this document has been obtained from each signatory hereto.

4

5

  DATED:  March 20, 2020        By:  */s/ Sonya D. Winner*
                                        Sonya D. Winner

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28