1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  RONALD P. FLYNN, State Bar #184186
   Chief Deputy City Attorney
3  YVONNE R. MERE, State Bar #173594
   Chief of Complex & Affirmative Litigation
4  OWEN J. CLEMENTS, State Bar #141805
   SARA J. EISENBERG, State Bar #269303
5  JAIME M. HULING DELAYE, State Bar #270784
   Deputy City Attorneys
6  Fox Plaza
   1390 Market Street, Sixth Floor
7  San Francisco, CA  94102
   Telephone:  415/554-3957
8  jaime.hulingdelaye@sfcityatty.org

9  *Attorneys for Plaintiffs The City and County of San Francisco, California*
   *and The People of the State of California, acting by and through*
10 *San Francisco City Attorney Dennis J. Herrera*

11 [Additional counsel appear on signature page.]

12                 UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14 THE CITY AND COUNTY OF SAN          )  Case No. 3:18-cv-07591-CRB
   FRANCISCO, CALIFORNIA and THE       )
15 PEOPLE OF THE STATE OF CALIFORNIA,  )  PLAINTIFFS' MEMORANDUM IN
   Acting by and through San Francisco City )  OPPOSITION TO DEFENDANT
16 Attorney DENNIS J. HERRERA,         )  ALLERGAN PLC'S MOTION TO DISMISS
                                       )  FIRST AMENDED COMPLAINT
17                        Plaintiffs,  )
                                       )  JUDGE: Hon. Charles R. Breyer
18        vs.                          )
                                       )
19 PURDUE PHARMA L.P., et al.,         )
                                       )
20                        Defendants.  )
                                       )
21 _____)

22           **REDACTED VERSION OF DOCUMENT**
                  **SOUGHT TO BE SEALED**
23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2                                                                                               **Page**

3

4   I.      SUMMARY OF THE ARGUMENT ...................................................................................1

5   II.     INTRODUCTION ...........................................................................................................1

6   III.    LEGAL STANDARD......................................................................................................4

7   IV.     ARGUMENT ...................................................................................................................5

8           A.      Plaintiffs Assert a *Prima Facie* Basis for Personal Jurisdiction over
                    Allergan plc.........................................................................................................5
9
                    1.      Both the MDL Transferee Court and a Number of Other Courts
10                          Presiding over Related Actions Have Found that Plaintiffs
                            Established a *Prima Facie* Basis for Personal Jurisdiction .......................5
11
                    2.      Plaintiffs Have Made a *Prima Facie* Showing that The plc Is
12                          Subject to Personal Jurisdiction Based on Its Relationship with Its
                            Subsidiaries...............................................................................................8
13
                            a.      Allergan plc Is Subject to Specific Personal Jurisdiction as
14                                  a Successor to Actavis, Inc. ...........................................................8

15                          b.      Allergan plc Is Subject to Specific Personal Jurisdiction
                                    Under the Alter-Ego Theory .........................................................13
16
                                    (1)     There Is a Unity of Interest and Ownership Between
17                                          Allergan plc and Its Subsidiaries .......................................14

18                                  (2)     The Failure to Disregard Allergan's Purported
                                            Separateness Would Result in Fraud or Injustice ..............18
19
                    3.      The Exercise of Jurisdiction over Allergan plc Comports with Due
20                          Process ....................................................................................................20

21                  4.      Dismissal for Lack of Personal Jurisdiction Is Inappropriate at the
                            Pleading Stage Because Jurisdiction Is Intertwined with the Merits.........23
22
            B.      The MDL Transferee Court Ordered Allergan plc to Accept Service in All
23                  MDL Actions ....................................................................................................24

24  V.      CONCLUSION..............................................................................................................25

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

**CASES**

5

*Amoco Egypt Oil Co. v. Leonis Nav. Co.*,
   1 F.3d 848 (9th Cir. 1993) ..........................................................................23

6

7

*Atchison, Topeka & Santa Fe Ry. Co. v.*
   *Brown & Bryant, Inc.*,
   159 F.3d 358 (9th Cir. 1997) .........................................................................8

8

9

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
   223 F.3d 1082 (9th Cir. 2000) .......................................................................4

10

*Cadence Design Sys., Inc. v. Pounce Consulting, Inc.*,
   2019 WL 1768619 (N.D. Cal. Apr. 1, 2019) ..............................................19

11

12

*Carrico v. Samsung Elec. Co.*,
   2016 WL 2654392 (N.D. Cal. May 10, 2016) ............................................25

13

14

*CenterPoint Energy, Inc. v. Super. Ct.*,
   157 Cal. App. 4th 1101 (2007) .......................................................................8

15

*City of Chicago v. Purdue Pharma L.P.*,
   2015 WL 2208423 (N.D. Ill. May 8, 2015) ..................................... *passim*

16

17

*City of Chicago v. Purdue Pharma L.P.*,
   211 F. Supp. 3d 1058 (N.D. Ill. 2016) .......................................................3, 6

18

19

*City of L.A. v. Wells Fargo & Co.*,
   22 F. Supp. 3d 1047 (C.D. Cal. 2014) ...........................................................8

20

21

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) ........................................................................5

22

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)......................................................................................20

23

24

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
   557 F.2d 1280 (9th Cir. 1977) ...................................................................5, 24

25

26

*Dole Food Co. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) ......................................................................21

27

*F. Hoffman-La Roche, Ltd. v. Super Ct.*,
   130 Cal. App. 4th 782 (2005) ......................................................................22

28

1

2                                                                                                    **Page**

3

4    *Franklin v. USX Corp.*,
         87 Cal. App. 4th 615 (2001) ............................................................................10

5    *FRB v. HK Sys.*,
6        1997 WL 227955 (N.D. Cal. Apr. 24, 1997) ...................................................14

7    *Gerritsen v. Warner Bros. Entm't, Inc.*,
         116 F. Supp. 3d 1104 (C.D. Cal. 2015) ...........................................................13

8
     *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
9        328 F.3d 1122 (9th Cir. 2003) .........................................................................23

10   *Hyrdro-Air Equip., Inc. v. Hyatt Corp.*,
11       852 F.2d 403 (9th Cir. 1988) ...........................................................................13

12   *In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*,
         2012 WL 1345175 (E.D. Ky. Apr. 18, 2012) ..................................................11

13
     *In re German Auto. Mfrs. Antitrust Litig.*,
14       392 F. Supp. 3d 1059 (N.D. Cal. 2019) ...............................................5, 22, 23

15   *In re: Nat'l Prescription Opiate Litig.*,
         2019 WL 3553892 (N.D. Ohio Aug. 5, 2019) ........................................ *passim*
16
     *In re Opioid Litig.*,
17       2018 WL 3115102 (N.Y. Sup. Ct. June 18, 2018)............................................25

18
     *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
19       460 F.3d 1217 (9th Cir. 2006) .........................................................................25

20   *In re S. Carolina Opioid Litig.*,
         No. 2018-CP-23-01294
21       (S.C. Ct. Com. Pl. Thirteenth Jud. Dist.,
         Apr. 8, 2020)................................................................................................7, 25
22
     *Indep. Elec. Supply Inc. v. Solar Installs, Inc.*,
23       2018 WL 6092800 (N.D. Cal. Nov. 21, 2018) .................................................20

24
     *Int'l Shoe Co. v. State of Washington*,
25       326 U.S. 310 (1945)..........................................................................................21

26   *Johnson v. Serenity Transp., Inc.*,
         141 F. Supp. 3d 974 (N.D. Cal. 2015) ........................................................14, 19
27

28

1

2                                                                                    **Page**

3

*Kellman v. Whole Foods Mkt., Inc.*,
   313 F. Supp. 3d 1031 (N.D. Cal. 2018) ..............................................................22

*Lang Van, Inc. v. Vng Corp.*,
   669 F. App'x 479 (9th Cir. 2016) ........................................................................25

*Lowenthal v. Quicklegal, Inc.*,
   2016 WL 5462499 (N.D. Cal. Sept. 28, 2016) ....................................................13

*Marks v. Minn. Mining & Mfg. Co.*,
   187 Cal. App. 3d 1429 (1986) ......................................................................10, 13

*Mesler v. Bragg Mgmt. Co.*,
   39 Cal. 3d 290 (1985) .........................................................................................18

*Nwatulegwu v. Boehringer Ingelheim Pharm., Inc.*,
   668 F. App'x 173 (7th Cir. 2016) .......................................................................25

*Pac. Bell Tel. Co. v. 88 Connection Corp.*,
   2016 WL 3257656 (N.D. Cal. June 14, 2016) ....................................................18

*Pac. Mar. Freight, Inc. v. Foster*,
   2010 WL 3339432 (S.D. Cal. Aug. 24, 2010) ....................................................18

*Patin v. Thoroughbred Power Boats, Inc.*,
   294 F.3d 640 (5th Cir. 2002) .............................................................................21

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015) ...........................................................................22

*Platypus Wear, Inc. v. Bad Boy Europe Ltd.*,
   2018 WL 3706876 (S.D. Cal. Aug. 2, 2018) ......................................................14

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
   338 F.3d 773 (7th Cir. 2003) .............................................................................12

*RAE Sys., Inc. v. TSA Sys., Ltd.*,
   2005 WL 1513124 (N.D. Cal. June 24, 2005) ....................................................13

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) .......................................................................5, 14

*Ray v. Alad Corp.*,
   19 Cal. 3d 22 (1977) ....................................................................................10, 13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                                                                                          **Page**

3

4    *Relentless Air Racing, LLC v.*
         *Airborne Turbine Ltd. P'ship,*
5        222 Cal. App. 4th 811 (2013) ................................................................18

6    *RRX Indus., Inc. v. Lab-Con, Inc.,*
         772 F.2d 543 (9th Cir. 1985) .............................................................18
7
     *SEC v. Jammin Java Corp.,*
8        2016 WL 6595133 (C.D. Cal. July 18, 2016) ....................................21

9    *Sleep Sci. Partners v. Lieberman,*
         2009 WL 4251322 (N.D. Cal. Nov. 23, 2009) ...................................22
10
     *State of Ohio ex rel. DeWine v. Purdue Pharma L.P.,*
11       2018 WL 4080052
         (Ohio Ct. Com. Pl. Aug. 22, 2018) ...............................................3, 7
12
     *Stuart v. Spademan,*
13       772 F.2d 1185 (5th Cir. 1985) ...........................................................14

14   *Successor Agency to Former Emeryville Redevelopment Agency v.*
         *Swagelok Co.,*
15       364 F. Supp. 3d 1061 (N.D. Cal. 2019) ...............................8, 12, 13, 14

16   *The People of the State of California, acting by and through*
17       *Santa Clara County Counsel Orry P. Korb and*
         *Orange County District Attorney Tony Rackauckas v.*
18       *Purdue Pharma L.P.,*
         No. 30-2014-00725287-CU-BT-CXC
19       (Cal. Super. Ct. Feb. 13, 2018) .....................................................3, 4, 7
20
     *Tucson Med. Ctr. v. Purdue Pharma L.P.,*
21       Sup. Ct. No. C20184991
         (Ariz. Sup. Ct. Sept. 16, 2019) .......................................................7, 25
22
     *Updateme Inc. v. Axel Springer SE,*
23       2018 WL 1184797 (N.D. Cal. Mar. 7, 2018) .....................................14

24   *Upholsterers' Int'l Union Pension Fund v.*
         *Artistic Furniture of Pontiac,*
25       920 F.2d 1323 (7th Cir. 1990) ...........................................................10
26
     *Williams v. Yamaha Motor Co.,*
27       851 F.3d 1015 (9th Cir. 2017) ...........................................................20

28

1

2                                                                            **Page**

3

4    *Wilson v. Metals USA, Inc.*,
         2013 WL 4586919 (E.D. Cal. Aug. 28, 2013)........................................................................8

5    *Yahoo! Inc. v.*
         *La Ligue Contre Le Racisme et L'Antisemitisme*,
6        433 F.3d 1199 (9th Cir. 2006) ................................................................................4, 21

7    **STATUTES, RULES AND REGULATIONS**

8    California Code of Civil Procedure
9        §410.10..............................................................................................................21

10   18 U.S.C.
11       §1961 *et seq.* .....................................................................................................24

12   Federal Rules of Civil Procedure
         Rule 4(f)(3) ........................................................................................................25
13       Rule 12(b)(2)........................................................................................................1
         Rule 12(b)(5)........................................................................................................1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    The City and County of San Francisco, California and the People of the State of California,

2    acting by and through San Francisco City Attorney Dennis J. Herrera ("Plaintiffs"), hereby oppose

3    Specially Appearing Allergan plc's Notice of Motion and Motion to Dismiss First Amended

4    Complaint; Memorandum of Points and Authorities in Support (ECF No. 162) ("Memorandum"

5    or "Mem."), which seeks dismissal of Plaintiffs' claims against it under Federal Rule of Civil

6    Procedure ("Rule") 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(5) for insufficient

7    service of process.  For the reasons set forth below, the motion should be denied.

8    **I.    SUMMARY OF THE ARGUMENT**

9    Plaintiffs make a *prima facie* showing sufficient to justify the exercise of personal

10   jurisdiction over Allergan plc ("The plc").[1]   Numerous courts in substantially identical

11   circumstances, including the MDL transferee court in this multidistrict litigation ("MDL"), denied

12   The plc's motions to dismiss for lack of personal jurisdiction.  The allegations and jurisdictional

13   facts show the exercise of personal jurisdiction over The plc is appropriate due to its relationship

14   with subsidiaries over whom jurisdiction is not contested.  The plc's motion to dismiss pursuant

15   to Rule 12(b)(2) should be denied.

16   So, too, should its motion to dismiss pursuant to Rule 12(b)(5).  The MDL transferee court

17   ordered Allergan's subsidiaries to accept service on The plc's behalf in all MDL cases.  Plaintiffs

18   have attempted to serve The plc, which has refused to accept service despite that order.  This

19   gamesmanship should not be endorsed.

20   **II.    INTRODUCTION**

21   The plc's incorporation document, the Constitution of Allergan Public Limited Company

22   Memorandum of Association, states that the Company was established "[t]o carry on the business

23   of a pharmaceuticals company, and to research, develop, design, manufacture, produce, supply,

24   buy, sell, distribute, import, export, provide, promote and otherwise deal in pharmaceuticals, active

25

26   [1]    Allergan plc was formerly known as Actavis plc.  ¶115; Mem. at 14 (signature block).
     References to "¶" and "¶¶" are to the First Amended Complaint, filed March 13, 2020 (ECF No.
27   128).  To avoid confusion, Allergan plc/Actavis plc will be referred to as "The plc" or "the
     Company" herein, except as required by a direct quotation or context.
28

1    pharmaceutical ingredients and dosage pharmaceuticals." Ex. 1 at 1.[2]  But according to its

2    Memorandum, The plc is merely "a holding company that exists only to hold shares of other

3    companies" and "does not manufacture, market, distribute, or sell any pharmaceutical products."

4    Mem. at 3.

5           Indeed, The plc's public statements and confidential documents tell a thoroughly different

6    story from the one in its Memorandum.  While The plc asserts its only offices are in Ireland (Mem.

7    at 1, 7), its U.S. Securities and Exchange Commission ("SEC") filings provide that its

8    "administrative headquarters" are in New Jersey (¶115; Ex. 2 at 4).  While The plc asserts it is

9    "independent of and operates separately from the entities whose shares it holds" (Mem. at 3), its

10   confidential accounting policies require that The plc ███████████████████████████████████

11   ███████████████████████ (Ex. 3 at 804).  While The plc asserts that its U.S. entities,

12   including other defendants in this action, "operate[] separately" and "autonomously" (Mem. at 3),

13   a confidential Management Service Agreement places ████████████████████████████████████

14   ████████████████████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████████████████

16   (Ex. 4 at 1, 13; *see* ¶118).

17          Though incorporated in Ireland as a result of a 2013 corporate tax inversion, The plc never

18   ceased running nationwide operations from its longstanding New Jersey home, including those

19   related to the marketing and sales of opioids in California.  ¶115.[3]  As its Chief Executive Officer

20   ("CEO") stated at the time of the inversion: "Everybody loves New Jersey too much, so nobody is

21   willing to go." Ex. 6 at 1.  Similarly, when The plc completed the acquisition of Allergan, Inc.,

22   The plc's CEO stated that it "remain[ed] strongly committed to Irvine," California, where

23   Allergan, Inc. had maintained its headquarters.  Ex. 5 at 3.  To this day, The plc's top executives

24   all work in New Jersey.  ¶115; Ex. 2 at 4.  In 2018, more than 77% of The plc's $15.8 billion in

25

26   [2]   References to "Ex." or "Exs." are to the Exhibits attached to the Declaration of Aelish M. Baig,
     filed concurrently herewith, unless otherwise noted.

27   [3]   As an article in the *Los Angeles Times* remarked, the "pharmaceutical company [is]

28   headquartered in Dublin, Ireland, for tax reasons but [is] run out of Parsippany, N.J."  Ex. 5 at 3.

1    net revenues came from the United States, with that 25% of its overall revenues deriving from a

2    single customer headquartered in San Francisco throughout substantially all of the relevant time

3    period – defendant McKesson Corporation ("McKesson").[4]  ¶170; Ex. 2 at 12.  Until 2016, The

4    plc was the second largest manufacturer of generic opioids in the U.S.[5]  In 2016, it sold its generic

5    drug business (including the generic opioid business) to defendant Teva Pharmaceuticals Ltd.

6    ("Teva") for $40 billion.  ¶¶120-130.

7         Against the weight of the allegations and facts, The plc's Memorandum repeats arguments

8    it has lost five times in front of four separate courts adjudicating nearly identical actions, including

9    before the MDL transferee court in this MDL.  In the first bellwether action in this MDL, the MDL

10   transferee court held that factual disputes regarding whether The plc's acquisition of Actavis, Inc.

11   constituted a *de facto* merger meant dismissal on jurisdictional grounds was improper.  *In re: Nat'l*

12   *Prescription Opiate Litig.*, 2019 WL 3553892, at * 5 (N.D. Ohio Aug. 5, 2019) ("*Summit County*").

13   Rather, the issue "should be determined after the Court and the parties have the benefit of a full

14   trial record."[6]  *Id.*[7]

15        A federal court in the Northern District of Illinois and state courts in Ohio and California

16   also found plaintiffs in those opioid cases had made a *prima facie* case for personal jurisdiction

17   over The plc.  *City of Chicago v. Purdue Pharma L.P.*, 2015 WL 2208423, at *7 (N.D. Ill. May 8,

18   2015) ("*City of Chicago I*"); *City of Chicago v. Purdue Pharma L.P.* ("*City of Chicago II*"), 211

19   F. Supp. 3d 1058, 1067 (N.D. Ill. 2016); *State of Ohio ex rel. DeWine v. Purdue Pharma L.P.*,

20   2018 WL 4080052, at *7 (Ohio Ct. Com. Pl. Aug. 22, 2018); Ex. 9 (*The People of the State of*

21   *California, acting by and through Santa Clara County Counsel Orry P. Korb and Orange County*

22

23   [4]    McKesson was headquartered in San Francisco, California until April 1, 2019.  Ex. 7.

     [5]    Ex. 8 at 3.

24

25   [6]    Although the MDL transferee court contemplated that jurisdictional discovery would proceed
     after it issued this opinion, there was insufficient time between the date the motion to dismiss order
26   issued and trial to complete jurisdictional discovery.  As such,  additional jurisdictional discovery
     remains to be done in this remanded case.

27   [7]    Citations, internal quotations, and footnotes omitted and emphasis added unless noted
     otherwise.
28

1  *District Attorney Tony Rackauckas v. Purdue Pharma L.P.*, No. 30-2014-00725287-CU-BT-CXC

2  (Cal. Super. Ct. Feb. 13, 2018)) ("*Santa Clara*").

3        Consistent with these decisions, Plaintiffs make a *prima facie* case that The plc is subject

4  to the jurisdiction of this Court based on the complaint's allegations.  The jurisdictional facts here,

5  including that The plc made billions in revenue from a customer in San Francisco and that

6  subsidiary defendant Allergan Sales, LLC, headquartered in Irvine, California, provides The plc's

7  executive management and strategic direction, are even stronger than those considered in Ohio or

8  Illinois.  The plc's motion to dismiss for lack of personal jurisdiction should be denied.

9        So, too, should its motion to dismiss for lack of service.  The MDL transferee court entered

10  an order in the MDL compelling The plc's subsidiaries who have appeared to accept service on its

11  behalf.  Ex. 10.  When it did not, the MDL transferee court deemed it had waived service as it had

12  already participated in discovery – the same discovery that will be used here.[8]  Plaintiffs have

13  attempted service through The plc's counsel, who also represent its subsidiaries that do not contest

14  jurisdiction and who represented The plc against substantially identical claims in the *Summit*

15  *County* action.  The plc's motion to dismiss for lack of service is gamesmanship aimed (again) at

16  carving out a culpable defendant and the entity that likely has the best ability to fund an appropriate

17  settlement or judgement (due to its sale of the generic drug business for $40 billion).  The plc's

18  motion to dismiss for lack of service should be denied.

19  **III.    LEGAL STANDARD**

20        To establish personal jurisdiction, the plaintiff must demonstrate either: (1) general

21  jurisdiction; or (2) specific jurisdiction.  *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d

22  1082, 1086 (9th Cir. 2000) (overruled on other grounds).  Specific jurisdiction, which Plaintiffs

23  assert here, refers to jurisdiction that arises out of or relates to the defendant's contacts with a

24  forum.  *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th

25  Cir. 2006).

26

27  [8]  Ex. 11 at 1 ("Although Allergan, PLC has not signed the waiver request from Plaintiffs due to
a dispute over the language of the request, Allergan, PLC has waived service as a practical matter

28  by responding to the Complaint and participating in discovery.").

1    Where a defendant moves to dismiss for lack of personal jurisdiction "based on written

2    materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing

3    of jurisdictional facts to withstand the motion to dismiss.'"  *Ranza v. Nike, Inc.*, 793 F.3d 1059,

4    1068 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th

5    Cir. 2011)).  While "[a] plaintiff may not simply rest on the bare allegations of [the] complaint,"

6    "uncontroverted allegations must be taken as true, and [c]onflicts between the parties over

7    statements contained in the affidavits must be resolved in the plaintiff's favor."  *Id.*[9]

8    **IV.   ARGUMENT**

9        **A.   Plaintiffs Assert a *Prima Facie* Basis for Personal Jurisdiction over
             Allergan plc**

10

11            **1.   Both the MDL Transferee Court and a Number of Other
                  Courts Presiding over Related Actions Have Found that
                  Plaintiffs Established a *Prima Facie* Basis for Personal**

12                 **Jurisdiction**

13           The MDL transferee court in this MDL found that dismissal on jurisdictional grounds was

14   improper in light of factual disputes regarding whether The plc's acquisition of Actavis, Inc.

15   constituted a *de facto* merger.  *Summit County*, 2019 WL 3553892 at *5.[10]  Rather, the issue

16   "should be determined after the Court and the parties have the benefit of a full trial record."[11]  *Id.*

17   The MDL transferee court's findings are law of the case.  *See* Omnibus Opp., Introduction and

18   Summary of Argument (Law of the Case).

19           The plc denigrates the MDL transferee court's decision, criticizing its "single paragraph of

20   analysis" (Mem. at 10) but ignores the hundreds of pages submitted by plaintiff in opposition to

21   that motion, consistent with the jurisdictional evidence submitted here, that informed the decision.

22   ─────────────────────

23   [9]   "The Court may consider evidence presented outside the pleadings in assessing personal
     jurisdiction."  *In re German Auto. Mfrs. Antitrust Litig.*, 392 F. Supp. 3d 1059, 1066 n.3 (N.D. Cal.
24   2019).

25   [10]   Plaintiffs here advance an additional argument in favor of personal jurisdiction on which the
     MDL transferee court did not rule: that Allergan plc should be subject to personal jurisdiction due
26   to an alter-ego theory of liability.  *Infra*, §§IV.A.2.b.

27   [11]   That decision is consistent with precedent here.  *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
     557 F.2d 1280, 1285 n.2 (9th Cir. 1977) (When "a decision on the jurisdictional issues is dependent
28   on a decision of the merits . . . it is preferable that this determination be made at trial.").

1   The plc also contends that California successor liability law is so different from that of Ohio that

2   it requires a different result.  *Id.*  As explained below in §IV.A.2.a., however, jurisdiction is proper

3   under California law.  The plc simply ignores cases that justify the exercise of jurisdiction.

4         Nor does the MDL transferee court stand alone.  Other courts presiding over substantially

5   similar actions have denied The plc's motions to dismiss on jurisdictional grounds, especially

6   when plaintiffs have presented facts similar to those presented here.  In *City of Chicago I*, the court

7   held that the plaintiff had set forth facts establishing that The plc was subject to jurisdiction because

8   it was a successor to Actavis, Inc., *i.e.*, the transaction that formed The plc "amount[ed] to a

9   consolidation, merger, or similar restructuring of the two corporations or the purchasing

10  corporation [was] a mere continuation of the seller."  2015 WL 2208423, at *7.  As discussed

11  below, The plc is subject to jurisdiction under California law.  §IV.A.2.a..

12        In reaching its conclusion, the *City of Chicago I* court relied on the following facts that

13  apply equally here:

14      •    In creating The plc, each Actavis, Inc. common share was converted into a single
15           plc share (*City of Chicago I*, 2015 WL 2208423, at *7; Ex. 12 at 3);

16      •    Actavis, Inc.'s U.S. headquarters had been at Morris Corporate Center III, 400
             Interpace Parkway, Parsippany, New Jersey; The plc's "administrative
17           headquarters" continued to be located in precisely the same place (*City of
             Chicago I*, 2015 WL 2208423, at *7; *compare* Ex. 13 at 3 *with* Ex. 12 at 4);
18
        •    The plc "retained all of Actavis, Inc.'s officers in the same positions" (*City of
19           Chicago I*, 2015 WL 2208423, at *7; *compare* Ex. 13 at 77 *with* Ex. 12 at 98);

20      •    The plc maintained the "same website as Actavis, Inc." (*City of Chicago I*, 2015
21           WL 2208423, at *7; *compare* Ex. 13 at 3 *with* Ex. 12 at 4; and

22      •    The plc's SEC filings defined references to "we, our, us, the Company or Actavis
             [to] refer to [the] financial information" of Actavis, Inc. for the period of time
23           immediately before the creation of The plc, and defined such references to refer to
             The plc after its creation (*City of Chicago I*, 2015 WL 2208423, at *7; Ex. 12 at 3).
24
25  Thus, *City of Chicago I* found that The plc "simply continued the business of Actavis, Inc."  2015

26  WL 2208423, at *7.  The plc moved for reconsideration, to no avail.  *City of Chicago II*, 211 F.

27

28

1    Supp. 3d at 1068.[12]  The facts relied on by the *City of Chicago* opinions have not changed in any

2    relevant manner, are pled by Plaintiffs here (¶116), and are equally relevant to finding jurisdiction

3    in this action.

4            Similarly, state courts presiding over related cases have also denied The plc's motions to

5    dismiss for lack of jurisdiction.  A California state court adjudicating related claims brought by the

6    Counties of Santa Clara, Orange, and Los Angeles, and the City of Oakland, held, under the same

7    law that applies here, that the counties and city established a *prima facie* case of personal

8    jurisdiction over The plc.  Ex. 9 (*Santa Clara* Minute Order).  Similarly, a court adjudicating

9    related claims brought by the State of Ohio denied The plc's motion, concluding that Actavis, Inc.

10   was a predecessor to The plc and noting that the United States was the predecessor's largest

11   commercial market.  *State of Ohio*, 2018 WL 4080052, at *7.

12           The plc is notably silent with respect to the plainly relevant *City of Chicago* and *State of*

13   *Ohio* opinions and utterly dismissive of the *Santa Clara* opinion.  Instead, The plc relies on three

14   inapplicable state court opinions.[13]  The plc also points out that, in support of its motion here, it

15   submits the same affidavit from executive James D'Arecca that one other court credited in finding

16   jurisdiction improper.  Mem. at 12 (citing the *South Carolina* case discussed at n.13).  But The plc

17   fails to mention that it also submitted the same affidavit from Mr. D'Arecca in support of The plc's

18   motions in the MDL transferee court (Ex. 14) and in *State of Ohio* (Ex. 15) – as well as a

19

20

---

21   [12]  The *City of Chicago* action was subsequently consolidated with this action and several
22   thousand others in the MDL transferee court.

23   [13]  In *People of the State of New York v. Purdue Pharma L.P.*, a court found that successor-based
     personal jurisdiction was not available under New York law.  ECF No. 162-2, Ex. 1 at 1.  In
24   contrast to New York, however, California recognizes successor-based personal jurisdiction.  *See*
     §IV.A.2.a.  In *Tucson Med. Ctr. v. Purdue Pharma L.P.*, a court applying Arizona law found it
25   could not exercise specific personal jurisdiction over The plc and denied leave for jurisdictional
     discovery.  ECF No. 162-2, Ex. 2 at 2.  The opinion, however, does not consider whether personal
26   jurisdiction over The plc is proper based on its relationship with its subsidiaries over whom the
     Court does have jurisdiction.  *See generally id.*  And in *In re S. Carolina Opioid Litig.*, a court
27   applying South Carolina law dismissed The plc because plaintiffs' complaint contained only one
     paragraph generally alleging The plc controlled other named defendants.  ECF No. 162-2, Ex. 3.
28   The opinion did not address any of the facts cited in *State of Ohio*, *City of Chicago I*, or herein.

1    substantially similar affidavit from a different executive in *City of Chicago I* (Ex. 16).  Each of

2    those courts denied The plc's motion.

3            **2.     Plaintiffs Have Made a *Prima Facie* Showing that The plc Is**
                      **Subject to Personal Jurisdiction Based on Its Relationship with**
4                     **Its Subsidiaries**

5            The plc's current and former subsidiaries concede that this Court has jurisdiction over

6    Plaintiffs' claims against them.  Two theories provide independently sufficient bases for the Court

7    to exercise jurisdiction over The plc based on its relationship with those subsidiaries: (1) successor

8    liability; and (2) alter ego.  Each theory provides an independent basis for the Court to exercise

9    jurisdiction over The plc in this action.

10           **a.     Allergan plc Is Subject to Specific Personal Jurisdiction**
                      **as a Successor to Actavis, Inc.**
11

12           "A court has personal jurisdiction over an alleged successor company . . . if: (i) the court

13   would have had personal jurisdiction over the predecessor and (ii) the successor company

14   effectively assumed the subject liabilities of the predecessor."  *Successor Agency to Former*
     *Emeryville Redevelopment Agency v. Swagelok Co.*, 364 F. Supp. 3d 1061, 1073-74 (N.D. Cal.
15
     2019).  "Determinations of successor liability are highly fact-specific, and it would be
16
     inappropriate for the court to rule on the substantive merits of plaintiffs' case for successor liability
17
     at the pleadings stage."  *Wilson v. Metals USA, Inc.*, 2013 WL 4586919, at *9 (E.D. Cal. Aug. 28,
18
     2013).
19
             A successor company effectively assumes the predecessor's liabilities if: (i) the successor
20
     corporation expressly or impliedly agreed to assume the relevant liability; (ii) the transaction
21
     amounts to a consolidation or merger; (iii) the buyer corporation is merely a continuation of the
22
     seller corporation; or (iv) the transfer of assets was made for the fraudulent purpose of avoiding
23
     debt liabilities.  *Atchison, Topeka & Santa Fe Ry. Co. v. Brown & Bryant, Inc.*, 159 F.3d 358, 361
24
     (9th Cir. 1997); *City of L.A. v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1062 (C.D. Cal. 2014)
25
     (citing *CenterPoint Energy, Inc. v. Super. Ct.*, 157 Cal. App. 4th 1101, 1120 (2007)).  At least the
26
     first, second and third bases for successor jurisdiction apply here.
27

28
     PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT ALLERGAN PLC'S NOTICE OF
     MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT - 3:18-cv-07591-CRB              - 8 -
     Cases\4846-8009-7212.v1-5/15/20

1    *Assumption of Liability*.  The plc has expressly and impliedly assumed the liability of

2    numerous defendants in this action.

3    First, an indemnification agreement between it and Teva implies The plc's

4    acknowledgment that it may be found liable for the actions of its former generic subsidiaries that

5    were sold to Teva in 2016 for $33.4 billion in cash and about $5.4 billion in Teva stock.  Ex. 17.

6    Included in that sale was The plc's generic opioid business – at the time, it was the second largest

7    manufacturer of generic opioids in the United States.[14]  In 2018, after the national wave of opioid

8    litigation had commenced, The plc and Teva entered into a contract whereby Teva agreed to

9    indemnify The plc for claims in opioid litigation related to the generic opioids it sold to Teva.  Ex.

10   18 at 3.  At the summary judgment phase in the *Summit County* bellwether action, The plc and

11   Teva disagreed about the meaning of the indemnification clause in the 2018 contract and its

12   applicability in the context of this litigation.  Ex. 19.[15]  Nevertheless, the mere existence of such a

13   provision implies that The plc acknowledges potential liability for actions related to its former

14   generic opioid business in actions such as this one.  Otherwise, there would be no reason for The

15   plc to have been party to such a contract.

16   Second, The plc also expressly and impliedly adopted liability for Actavis, Inc.'s debts and

17   liabilities.  In The plc's 2013 annual report, The plc stated it has "provided a full and unconditional

18   guarantee of Actavis, Inc.'s obligations" for $4.7 billion of debt, extending out to as far as 2042.

19   Ex. 12 at 83.

20   *Consolidation or Merger*.  When The plc was created, each common share of Actavis, Inc.

21   stock was simply converted into a common ordinary share of The plc.  ¶¶115-116; *City of*

22   *Chicago I*, 2015 WL 2208423, at *7; Ex. 12 at 3, 56.[16]  There was no cash consideration.  Thus,

---

[14]  Ex. 8 at 3.

[15]  *See* Ex. 19 (in opposition to The plc's motion for summary judgment on the ground that the clause meant it could not be held liable for any of the claims, Teva disagreed).

[16]  "One company is the successor of another if, among other things, 'the transaction amounts to a consolidation, merger, or similar restructuring of the two corporations' or 'the purchasing corporation is a "mere continuation" of the seller.'"  *City of Chicago I*, 2015 WL 2208423, at *7

1    the *sine qua non* of the consolidation or merger successor liability exists here.  *See Marks v. Minn.*

2    *Mining & Mfg. Co.*, 187 Cal. App. 3d 1429, 1436 (1986) (where "consideration paid for the assets

3    [is] solely stock of the purchaser or its parent," consolidation/merger liability is appropriate); *id.*

4    (consolidation/merger liability appropriate where "the shareholders of the seller bec[a]me

5    shareholders of the purchaser"); *Franklin v. USX Corp.*, 87 Cal. App. 4th 615, 626, (2001)

6    (emphasizing "the overriding significance of the type and adequacy of consideration paid").

7        *Mere Continuation*.  Plaintiffs set forth evidence that "the purchaser continue[d] the same

8    enterprise after the sale," further justifying successor liability.  *Marks*, 187 Cal. App. 3d at 1436.

9    The continuation requirement is met "upon a showing of **one or both** of the following factual

10   elements: (1) no adequate consideration was given for the predecessor corporation's assets and

11   made available for meeting the claims of its unsecured creditors; (2) one or more persons were

12   officers, directors, or stockholders of both corporations."  *Ray v. Alad Corp.*, 19 Cal. 3d 22, 29

13   (1977).

14       As *City of Chicago I* concluded, "the record suggests that [the] plc simply continued the

15   business of Actavis, Inc."  2015 WL 2208423, at *7; *see also* ¶116.  In its first SEC filing after

16   creating The plc, the Company described itself in terms almost identical to the way Actavis, Inc.

17   had been described.  Actavis, Inc. said it was "a leading integrated global specialty pharmaceutical

18   company engaged in the development, manufacturing, marketing, sale and distribution of generic,

19   branded generic, brand, biosimilar and over-the-counter ('OTC') pharmaceutical products."  Ex.

20   13 at 3.  So did The plc.  Ex. 12 at 3.  The plc continues to refer to itself as a "U.S. pharmaceutical

21   manufacturer[]" in its SEC filings.[17]  The plc's reliance on *Fisher & Paykel Healthcare Ltd. v.*

22   *ResMed Corporation* is misplaced.  There, personal jurisdiction was not found not because

23   Plaintiffs relied on SEC Filings to establish jurisdiction; rather, there was no jurisdiction because

24

25   (quoting *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323,
26   1325-26 (7th Cir. 1990)).

27   [17]  Ex. 2 at 15 ("All U.S. pharmaceutical manufacturers, including Allergan, are subject to
     extensive, complex and evolving regulation by the federal government, principally the FDA, and
28   to a lesser extent, by the U.S. Drug Enforcement Administration ('DEA').").

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT ALLERGAN PLC'S NOTICE OF
MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT - 3:18-cv-07591-CRB
Cases\4846-8009-7212.v1-5/15/20

- 10 -

1    – unlike here – defendant was not registered to do business in the United States, had no offices in

2    the United States, did not sell products in the United States, and did not have any employees in the

3    United States.  2017 WL 3635105, at *3 (S.D. Cal. Jan. 11, 2017).

4              Moreover, despite transitioning from Actavis, Inc. to Allergan, the Company's

5    administrative headquarters and executives, and the substantial majority of its workforce, remain

6    the same.  ¶116.  That's because The plc was created to reduce the U.S. corporate income tax paid

7    by Actavis, Inc.  As described in a *Fortune* article titled, with aptly placed scare quotes, "Actavis:

8    The latest Fortune 500 company to 'leave' the U.S. for tax reasons," none of Actavis, Inc.'s

9    employees moved to Ireland.  Ex. 6; *see also* Ex. 20 (Kaufhold Tr.) at 122:1-8 (approximately

10   1,300 employees work at The plc's administrative headquarters in New Jersey).  Indeed, as set

11   forth above and confirmed by the exhibits attached hereto, the executive management of Actavis,

12   Inc. merely rolled over and became the executive management of the newly created plc.  *See supra*

13   §IV.A.1. (The plc "simply continued the business of Actavis, Inc." (quoting *City of Chicago I*,

14   2015 WL 2208423, at *7)); *compare* Ex. 13 at 77 *with* Ex. 12 at 98.

15             The plc asserts that it cannot be the successor to Actavis, Inc. because Allergan Finance,

16   LLC is (Mem. at 9), but this assertion ignores the reality of Allergan's corporate structure, which

17   spread Actavis Inc.'s functions among several internal successors that now share power and

18   responsibility.[18]   The evidence shows that Actavis, Inc.'s responsibilities have been divided

19   between several successors, including Allergan Finance, LLC, but also The plc (as described

20   above) and fellow defendant Allergan Sales, LLC.  Allergan Sales, LLC, an Actavis, Inc./Allergan

21   Finance, LLC subsidiary based in Irvine, California, ██████████████████████████████

22   ████████████████████████████████████████████████████████████████████████████

23

24

25

---

26   [18]   For this reason, Allergan plc's reliance on *In re Darvocet, Darvon & Propoxyphene Prod.
     Liab. Litig.*, 2012 WL 1345175 (E.D. Ky. Apr. 18, 2012), is unpersuasive.  There, the plaintiffs
27   "merely implie[d]" that the parent company "'may have' somehow assumed the liabilities of their
     subsidiaries."  *Id.* at *4.  Here, the facts show a corporate knot of responsibilities that is impossible
28   to untangle.

1   ███████████████████████████████████████████.[19]  Ex. 4 at 514; *see* Ex. 21

2   (Steinberg Rpt.) at 18 (this fact, among others present here, "support[s] the levying of alter

3   ego/piercing the corporate veil liability").  The Irvine facility is the site of the majority of The plc's

4   branded drug research and development.  Ex. 22 at 12.

5         The plc, in turn, succeeded Actavis, Inc. as the primary deal-making decision maker for its

6   subsidiaries.  For example, when Teva purchased the generic opioid portfolio, The plc reached

7   down into and through various subsidiaries to select the particular assets to sell.  Exs. 23-24.  In

8   return, Teva paid (and then indemnified) The plc, ***not*** Allergan Finance, LLC, against liability in

9   this and other cases.  Ex. 18.  This evidence is more than sufficient to make a *prima facie* case that

10  The plc is the executive center of the corporation and that it follows in the footsteps of Actavis,

11  Inc. in that regard.  *See Swagelok*, 364 F. Supp. 3d at 1075 (finding jurisdiction over the foreign

12  parent appropriate where plaintiff comes forward with evidence that it "was in control" of

13  acquisitions).  Far from being a mere "holding company" (Mem. at 3), The plc's sale of the generic

14  pharmaceutical business demonstrates it is the executive center of the corporation and follows in

15  the footsteps of Actavis, Inc. in that regard.

16        Because The plc held itself out as a U.S. pharmaceutical manufacturer, because its

17  employees and executive officers live and work in the U.S., because its executives are hired by a

18  California-based subsidiary to provide "strategic direction," and because its statements reflect its

19  continuation of the work formerly done by Actavis, Inc., The plc should not be surprised that it is

20  subject to jurisdiction in California.  *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338

21  F.3d 773, 784 (7th Cir. 2003) ("In the corporate successor context, the successor corporation has

22  chosen to stand in the shoes of its predecessor and has chosen to accept the business expectations

23  of those who have dealt previously with that predecessor.  Therefore, it can be expected to be haled

24  into the same courts as its predecessor.").

25

26

---

27  [19]  For example, the treasurer for Allergan plc, Allergan Finance, LLC, and "numerous US
    companies" in the Allergan family, is an employee of Allergan Sales, LLC.  Ex. 20 (Kaufhold Tr.)
28  at 129:16-130:10, 139:9-11.

1    The plc's reliance on *Gerritsen v. Warner Bros. Entm't, Inc.*, 116 F. Supp. 3d 1104, 1131

2  (C.D. Cal. 2015), for the proposition that there can be no successor liability where the original

3  company continues to exist is unpersuasive.  To the contrary, a merger can be found even where

4  the originating company continues to exist.  *See Swagelok*, 364 F. Supp. 3d at 1075 (jurisdiction

5  where parent is in control); *Marks*, 187 Cal. App. 3d at 1437 ("[U]nder some circumstances a

6  union of parent and subsidiary can result in termination of the subsidiary's liabilities.  Such is not

7  the case here[.]").  Regardless, Plaintiffs have also presented sufficient facts to make a *prima facie*

8  case that The plc is a "*bona fide* successor" under the continuation theory.  *See Lowenthal v.*

9  *Quicklegal, Inc.*, 2016 WL 5462499, at *8 (N.D. Cal. Sept. 28, 2016) (where company "engages

10  in the same business[,] . . . uses the same brand name, domain name, logo, social media accounts,

11  and software[,] and . . . has and/or had essentially the same board of directors, shareholders and

12  officers[,] . . . these facts show a continuity of business");  *Ray*, 19 Cal. 3d at 29 (emphasizing that

13  the continuity factors are disjunctive).

14    The plc's reliance on *Lefkowitz v. Scytl USA* is also inapt.  Mem. at 2, 9. There, the

15  predecessor was sold to a third-party creditor that, in turn, sold the predecessor's assets to the

16  defendant.  2016 WL 537952, at *4 (N.D. Cal. Feb. 11, 2016).  It was the lack of "direct sale" of

17  assets the court deemed "fatal to Plaintiff's mere continuation argument."  *Id.*  No intervening

18  purchaser is present here.  And The plc's reliance on *Hydro-Air Equip., Inc. v. Hyatt Corp.*, 852

19  F.2d 403, 406 (9th Cir. 1988), undermines their motion.  There, the Ninth Circuit held that the

20  successor question should be presented to the trier of fact.  *Id.* at 407.  Plaintiffs agree.

21          **b.    Allergan plc Is Subject to Specific Personal Jurisdiction**
                    **Under the Alter-Ego Theory**

22

23    "Under the federal law governing the exercise of personal jurisdiction, if a corporation is

24  the alter ego of an individual defendant, or one corporation the alter ego of another, the Court may

25  pierce the corporate veil jurisdictionally and attribute contacts accordingly.  *RAE Sys., Inc. v. TSA*

26  *Sys., Ltd.*, 2005 WL 1513124, at *3 (N.D. Cal. June 24, 2005).  A parent company is subject to

27  jurisdiction based on the activities of its subsidiary if plaintiff shows: "(1) that there is such unity

28  of interest and ownership that the separate personalities [of the two entities] no longer exist and

1   (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Ranza*,

2   793 F.3d at 1073.  This "alter ego test for personal jurisdiction is less stringent than that for

3   liability." *Platypus Wear, Inc. v. Bad Boy Europe Ltd.*, 2018 WL 3706876, at *8 (S.D. Cal. Aug.

4   2, 2018) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.12 (5th Cir. 1985)).  Plaintiffs identify

5   facts sufficient to establish the *prima facie* existence of both elements at the pleading stage.

6                         **(1)      There Is a Unity of Interest and Ownership**
                                  **Between Allergan plc and Its Subsidiaries**

7            To determine whether a unity of interest exists, courts typically consider a number of non-

8   exclusive factors.  *See Swagelok*, 364 F. Supp. 3d at 1079 (listing ten factors).  When "determining

9   whether a unity of interest exists, a court need not find that every factor is present."  *Updateme*

10  *Inc. v. Axel Springer SE*, 2018 WL 1184797, at *10 (N.D. Cal. Mar. 7, 2018).  In fact, "[s]ome

11  courts have held that a plaintiff need only plead two or three of these factors to adequately plead

12  unity of interest."  *Johnson v. Serenity Transp., Inc.*, 141 F. Supp. 3d 974, 985 (N.D. Cal. 2015).

13  "Because no one factor governs the analysis, courts should look at all the circumstances to

14  determine whether the alter ego doctrine applies."  *Swagelok*, 364 F. Supp. 3d at 1078; *see FRB v.*

15  *HK Sys.*, 1997 WL 227955, at *6 (N.D. Cal. Apr. 24, 1997) (determining whether an alter ego

16  exists "depends on the circumstances surrounding each particular case").

17           The circumstances of this particular case militate strongly in favor of demonstrating a unity

18  of interest and ownership between The plc and its subsidiaries that do not contest jurisdiction.  As

19  Professor Steinberg concluded in a report filed in the MDL that is equally applicable here,

20  "material factual questions exist with respect to the liability of Allergan plc as well as the propriety

21  of veil piercing."  Ex. 21 (Steinberg Rpt.) at 22.

22           *Failure to Maintain Arm's-Length Relationship*.  The Management Service Agreement

23  between The plc, ████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████████

27  ██████████████████████████████████ Ex. 4 at 514.  And the enterprise-wide confidential

28

1    accounting policies require The plc's ██████████████████████████████

2    ███████████ by its subsidiaries.  Ex. 3 at 804.

3          Moreover, documents produced in discovery before the MDL show that The plc regularly

4    held itself out as the Allergan family entity with relevant information regarding opioids.  For

5    example, in response to a request seeking the prescribing information for the opioid Norco, a

6    responsive letter providing that information was sent on Allergan plc letterhead.  *See, e.g.*, Ex. 25

7    (top right of each page after the first).  The letter also repeatedly references Allergan plc (and no

8    other Allergan-related entity): █████████████████████████████████████

9    ████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████

11   ███████    *Id.* at 813-14.

12         Internal emails concerning national opioids policies and opioid-related discussions were

13   also circulated among persons located in the United States stating they worked for The plc:

14   •    In 2017, ██████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   ██████████████████████████████████████████████████████, and

     other key information directly related to Plaintiffs' SOM-related allegations.

17   Ex. 26.

18   •    In 2016, ██████████████████████████████████████████████████

19   ████████████████████████████████.  Ex. 27  at 980-81.

20   •    In 2015, ██████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████

22   ████████████████████████████████.  Ex. 28 at 878.

23   •    In 2015, ██████████████████████████████████████████████████

24   ████████████████████████████████████████████.  Ex. 29 at 569.

25   •    In 2015, ██████████████████████████████████████████████████

26   ████████████████.  Ex. 30 at 578.

27   •    In 2015, ██████████████████████████████████████████████████

28   ████████████████████████████████████████████.  Ex. 31 at 588.

1  • Regularly circulated ███████████████████████████████

2  ████████████████████████████████████ *See, e.g.*, Ex. 32 at 487

3  ███████████████████████████████

4  If The plc were truly a mere holding company that existed solely to own shares in its subsidiaries,

5  individuals with these titles would not put themselves forward as working for it.

6  Invoices for opioid-related services were also sent by third parties to The plc. For example,

7  in 2017, ████████████████████████████████████████████

8  ████████████████████████████████████████████████

9  ████████████████████████ Ex. 33 at 952; Ex. 34 at 929.

10  *Commingling of Funds*. The plc's ledgers fail to appropriately account for all transactions

11  it has with its subsidiaries. This is evidence that the entities were not operating as separate and

12  distinct entities and avoiding commingling. Ex. 21 (Steinberg Rpt.) at 5, 7, 21-22. For example,

13  The plc sold its "Global Generics Business" to defendant Teva for $33.4 billion in cash and

14  approximately $5.4 billion in Teva stock. ¶¶120-130; Ex. 17. There is no accounting for this

15  transaction or the dispersal of funds therefrom in the general ledgers The plc was ordered to

16  produce during discovery before the MDL transferee court. Ex. 21 (Steinberg Rpt.) at 7. Indeed,

17  despite being asked repeatedly in numerous formats (deposition, interrogatory, and document

18  request) during discovery conducted before the MDL transferee court, no Allergan-related entity

19  has able to identify what happened to the $33.4 billion in cash from the Teva transaction. Ex. 35;

20  Ex. 21 (Steinberg Rpt.) at 5. The 2013-2015 ledger shows only ████████████████

21  ██████ an alarmingly low number for a company that was, among other things, the third-largest

22  generic pharmaceutical distributor in the United States. Ex. 36; Ex. 21 (Steinberg Rpt.) at 5.

23  *Failure to Maintain Adequate Corporate Records*. In response to discovery requests and

24  motion practice in the *Summit County* bellwether action, The plc was compelled to produce Board

25  of Directors materials. None reflects the layers of corporate approval the Teva transaction would

26  have required in order to maintain corporate formalities. None even reflects any information about

27  The plc's proposed or actual $40 billion sale of the generic entities to Teva. *See* Ex. 21 (Steinberg

28  Rpt.) at 7 ("I have seen no evidence supporting that the requisite authorizations were procured

from the Allergan plc subsidiary enterprises whose stock was sold to Teva . . . .").[20]   Further, the

existence of the Management Service Agreement "poses the realistic possibility" that

> an adequate accounting or other sufficient documentation does not exist to reflect the performance and payment of these services; the commingling of assets and liabilities occurred among a number of Allergan Group-wide enterprises with respect to the performance of these services; and that the separate identity of a number of the Allergan Group-wide entities was not adhered to with respect to the administration and implementation of the Management Service Agreement

which supports an alter ego finding.  Ex. 21 (Steinberg Rpt.) at 17-18.[21]

*Use of the Same Location and Attorney.*  The plc's administrative headquarters is located

at the same address that fellow defendants Allergan Finance, LLC and Allergan Sales, LLC are

located.  Ex. 38 (The plc); Ex. 39 (Allergan Finance, LLC); Ex. 40 (Allergan Sales, LLC).  The

entities are also represented by the same counsel.  *See, e.g.*, Mem. at 14 (signature block for the

instant motion, signed by counsel for defendants Allergan Finance, LLC, Allergan Sales, LLC,

and Allergan USA, Inc.).

*Shared Directors, Officers, and Management.*  The plc "retained all of Actavis, Inc.'s

officers in the same positions" upon its creation.  *City of Chicago I*, 2015 WL 2208423, at *7.  As

of March 2018, six of The plc's eight executive officers still served as the top officers of Allergan

Finance, LLC.  ¶116; *compare* Ex. 50 at 108 *with* Ex. 51 at 331-32.

*The plc's Adoption of Actavis, Inc.'s Debts.*  As explained above, The plc expressly adopted

the debts and liabilities of Actavis, Inc.  *Supra*, §IV.A.2.a.

*Identical Equitable Ownership.*  When The plc was created to effectuate the merger of

Actavis, Inc. and Warner Chilcott, each common share of Actavis, Inc. stock was converted into a

common share of The plc stock on a one-to-one basis.  ¶¶115-116; *City of Chicago I*, 2015 WL

---

[20]   According to ARCOS data made public by the MDL transferee court, the entities sold by Allergan plc to Teva were responsible for 16.3% of oxycodone, 32.8% of hyrdocodone, 9.8% of all morphine, and 10.7% of all fentanyl distributed in California from 2006-2014, inclusive, as measured by dosage units.  Ex. 37 (*see* market shares associated with former subsidiary "Actavis Pharma, Inc.").

[21]   Even if the services provided by Allergan Sales, LLC and another subsidiary to Allergan plc were properly accounted for, "a number of courts view this practice as a factor weighing in favor of veil piercing."  Ex. 21 (Steinberg Rpt.) at 19.

2208423, at *7.  The owners of Actavis, Inc. became the owners of The plc in equal measure.  As such, ownership was identical.

Considered holistically, these factors reflect a single incorporated enterprise with a unity of ownership and interest.  *See* ¶131.

### (2)   The Failure to Disregard Allergan's Purported Separateness Would Result in Fraud or Injustice

Further, treating The plc and named subsidiaries as separate entities would result in injustice.  Inequitable results flowing from the recognition of the corporate form include the frustration of a meritorious claim, perpetuation of a fraud, and the fraudulent avoidance of personal liability.  *Pac. Mar. Freight, Inc. v. Foster*, 2010 WL 3339432, at *7 (S.D. Cal. Aug. 24, 2010).

"A finding of bad faith . . . is not prerequisite to the application of the alter ego doctrine under California law."  *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985).  Indeed, "the bulk of case law seems to omit or even expressly disavow a bad-faith or fraudulent-intent requirement."  *Pac. Bell Tel. Co. v. 88 Connection Corp.*, 2016 WL 3257656, at *4 (N.D. Cal. June 14, 2016); *see Relentless Air Racing, LLC v. Airborne Turbine Ltd. P'ship*, 222 Cal. App. 4th 811, 816 (2013) (a California Court of Appeal held a "trial court erred in requiring [the plaintiff] to prove that [the defendant] acted with wrongful intent.  The law does not require such proof.").  "[T]he corporation need not be formed for the purpose of wrongdoing"; rather, the company need only be "used to carry out some misdeed."  *Pac. Bell*, 2016 WL 3257656, at *3 (emphasis omitted).  As explained by the California Supreme Court, "it is an issue of whether in the particular case presented and for the purposes of such case justice and equity can best be accomplished and fraud and unfairness defeated by a disregard of the distinct entity of the corporate form."  *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300-01 (1985).

Further, "some cases indicate that disregarding corporate formalities can itself yield sufficient inequity for alter-ego purposes.  That there is, in other words, some overlap between the unity-of-interest and inequitable-result heads of the alter-ego analysis."  *Pac. Bell*, 2016 WL 3257656, at *6.  As here, when unity of interest exists, The plc's very denial of its relationship with its subsidiaries, including defendants Allergan Finance, LLC and Allergan Sales, LLC, to

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT ALLERGAN PLC'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT - 3:18-cv-07591-CRB
Cases\4846-8009-7212.v1-5/15/20

- 18 -

1   avoid legal consequences in cases such as this would "enable [the] shell game to continue" and

2   would lead to "an inequitable result." *Cadence Design Sys., Inc. v. Pounce Consulting, Inc.*, 2019

3   WL 1768619, at *6 (N.D. Cal. Apr. 1, 2019), *report and recommendation adopted by*, 2019 WL

4   1767332 (N.D. Cal. Apr. 22, 2019). *See also Johnson*, 141 F. Supp. 3d at 985-86 (finding second

5   prong of alter-ego theory met where defendant's conduct would have resulted in his receiving a

6   windfall from funds that would have otherwise gone to plaintiffs but for defendant's misconduct).

7          The shell game described by the *Cadence* court is child's play compared to the relationship

8   between The plc and its subsidiaries here.  A "Management Service Agreement" between The plc,

9   on the one hand, and ████████████████████ on the other, shows that The plc was,

10  and remains, an integrated group of entities with common decision makers, common office

11  managers, and a common goal.  ¶131; Ex. 4.  The agreement puts ███████████████

12  ████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████

14  ███████████████   *Id.* at 514.  Thus, The plc is the shareholder (through a series of largely

15  employee-less holding companies) of entities that, despite being far removed on the tax department

16  organizational chart, manage it.

17         The corporate hierarchy from The plc to Allergan Finance, LLC proceeds through 11

18  entities  incorporated  in  4  countries: ████████████████████████████

19  ████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ██████   Ex. 41 at 024.  Allergan Sales, LLC is four entities further down the chain: continuing

24  from ████████████████████████████████████████████████

25  ████████████████████████████████████████   ¶¶115-130; Ex. 41.

26

27

28

1   This permeable mishmash of responsibility, power, and control disproves Allergan's contention

2   that The plc and its subsidiaries operate independently.[22]  *See* ¶131.

3       Moreover, although The plc states that Allergan Finance, LLC is presently solvent (Mem.

4   at 10), it fails to address that it is exposed to substantial liability in thousands of other related

5   actions, both in the MDL and in other proceedings.  This action has contributed to the bankruptcy

6   of two formerly solvent companies thus far – Purdue Pharma and Insys – and it is all but certain

7   that Allergan Finance, LLC could not fund judgment against it in thousands of contemporaneous

8   cases.  This unique circumstance, too, militates in favor of finding injustice.  *See Indep. Elec.*

9   *Supply Inc. v. Solar Installs, Inc.*, 2018 WL 6092800, at *9 (N.D. Cal. Nov. 21, 2018) ("If

10  [Successor Defendant] is dismissed once again from this case, Plaintiff will be left with one

11  insolvent corporate defendant unable to pay damages even if found liable.  With [Successor

12  Defendant] unable to pay, injustice will be promoted[.]").[23]

13          **3.      The Exercise of Jurisdiction over Allergan plc Comports with**
                      **Due Process**
14
15      Assertion of jurisdiction over Allergan plc comports with due process.   "Because

16  California's long-arm jurisdictional statute is coextensive with federal due process requirements,

17

_____

18  [22]   Given this Gordian knot, it is unsurprising that even the companies' own deponents have been
    confused about who employed them.  A corporate designee for topics related to marketing was not

19  wholly sure for which corporation she had been designated to provide testimony. Ex. 42 (Snyder
    Tr.) at 19:7-15 ("It's on behalf of Allergan, I'm not clear on the exact corporate structure.  That

20  wasn't part of my – what I prepared for.  But my understanding is it's Allergan.  I believe Allergan
    Finance.").  Other deponents with key responsibilities had no idea, including the person in charge

21  of SOM at a company acquired by Actavis, Inc. Ex. 43 (Baran Tr.) at 82:3-14) and the sole
    employee in the same company's compliance department (Ex. 44 (Clarke Tr.) at 49:5-50:9).  And

22  even when they knew, their knowledge only revealed further confusion: Allergan's designee for
    the corporate form testified he had been designated to testify on behalf of Allergan plc, which, at

23  that point in time, was refusing to participate in discovery. Ex. 20 (Kaufhold Tr.) at 12:7-9; *see*
    Ex. 45 at 1 n.1 ("Allergan plc f/k/a Actavis plc has no obligation to respond to these Requests at

24  this time.").

25  [23]   Assuming that agency continues to be relevant to the existence of specific jurisdiction, which
    is not entirely clear under the Ninth Circuit's decision in *Williams v. Yamaha Motor Co.*, 851 F.3d

26  1015 (9th Cir. 2017), the facts set forth herein demonstrating Allergan plc's relationship with and
    control over its subsidiaries also support a finding of agency.  *See id.* at 1024 (suggesting there

27  may be a standard of agency relevant to specific jurisdiction because the holding in *Daimler AG
    v. Bauman*, 571 U.S. 117 (2014), which overruled agency-based general jurisdiction, did not

28  address agency in the context of specific jurisdiction)

the jurisdictional analyses under state law and federal due process are the same." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002) (citing Cal. Code Civ. P. §410.10).  Due process requires that a defendant have minimum contacts such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).  The Ninth Circuit follows a three-part test for evaluating whether the exercise of jurisdiction over a non-resident defendant comports with due process:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Yahoo!*, 433 F.3d at 1205-06.

There is no dispute that under this test, the Court has personal jurisdiction over Allergan Finance, LLC, Allergan Sales, LLC, and Allergan USA, Inc., as well as numerous of Allergan plc's former subsidiaries sold to Teva – each has appeared in this action and none contests jurisdiction.  As set forth above, Plaintiffs have made a *prima facie* case that Allergan plc is subject to jurisdiction via an alter ego and/or agency theory.  "The exercise of jurisdiction over an alter ego is compatible with due process because a corporation and its alter ego are the same entity – thus, the jurisdictional contacts of one are the jurisdictional contacts of the other for purposes of the International Shoe due process analysis." *SEC v. Jammin Java Corp.*, 2016 WL 6595133, at *10 (C.D. Cal. July 18, 2016); *see Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 & n.18 (5th Cir. 2002) ("[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal

1   jurisdiction in that court.").[24]

2          Allergan plc's assertion that jurisdiction violates due process turns entirely on its

3   contention that it is distinct from its U.S. defendant subsidiaries.  As set forth above, the acts

4   carried out by Allergan plc's current and former predecessors and subsidiaries that have appeared

5   in this action – specifically, the marketing and sale of opioids and failure to comply with the federal

6   and California Controlled Substances Acts for suspicious orders placed by its California-based

7   customers – are properly attributable Allergan plc.  It therefore follows that jurisdiction over

8   Allergan plc is reasonable as well.  *See German Auto.*, 392 F. Supp. 3d at 1066 (exercising

9   jurisdiction where foreign parent company "purposefully directed their activities at the United

10  States[] [t]hrough subsidiaries.").

11         Indeed, additional facts also demonstrate the existence of contacts sufficient to establish

12  specific personal jurisdiction under California's long-arm statute.  The plc boasts that it maintains

13  its operations have a substantial economic impact in California.  In 2016, The plc issued a press

14  release boasting that its "California operations generate annual economic activity of more than $6

15  billion [and have a] net economic impact of $3.45 billion."[25]  Those operations included sales of

16  generic opioids through 2016 and continue to include sales of brand opioids Kadian and Norco.[26]

17

---

18  [24]   As such, Allergan plc's citations to *Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015); *Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031 (N.D. Cal. 2018); *Sleep Sci. Partners v.*
19  *Lieberman*, 2009 WL 4251322 (N.D. Cal. Nov. 23, 2009); and *F. Hoffman-La Roche, Ltd. v. Super Ct.*, 130 Cal. App. 4th 782 (2005) (Mem. at 6-7), are unavailing.  *Picot* did not involve an alter-
20  ego or agency theory of personal jurisdiction, and *Kellman* denied plaintiffs' alter ego theory. 313 F. Supp. 3d at 1047).  *Sleep Science* not only did not involve alter ego or agency, it denied
21  defendant's motion to dismiss for lack of personal jurisdiction. 2009 WL 4251322, at *1.  And in *F. Hoffman-La Roche*, the court simply stated that "neither ownership nor control of a subsidiary
22  . . . ***without more***, subjects the parent to the jurisdiction of the state where the subsidiary does business." 130 Cal. 4th at 797.  Unlike there, where the court found that the degree of control
23  the parents exerted over its subsidiaries did not exceed the ordinary and necessary degree of control incident to ownership of a subsidiary (*id.* at 800), as demonstrated above, Plaintiffs here have
24  proffered ample evidence of Allergan plc's pervasive control over its subsidiaries.

25  [25]   Ex. 46 at 1.

26  [26]   The same press release quoted the Company's CEO, who stated: "Since our founding in Los Angeles in 1948, and throughout our history in Southern California, Allergan has been very proud
27  of the significant impact we've had on this region and the State of California for nearly 70 years." Ex. 46 at 2.  The press release stated, among other things, that Allergan's 2016 "combined taxes
28  paid directly by Allergan in the state are expected to exceed $108 million" and that its California workforce made "more than $438 million in total compensation."  *Id.*  It also stated that beyond

¶132.   Furthermore, The plc's 2018 annual report identifies defendant McKesson as the Company's single largest customer, having accounted for 25% of The plc's 2018 revenue after accounting for 23% of the Company's revenue in 2017 and 2016. Ex. 2 at 12.  In 2018, The plc reported $15.8 billion in net revenue, almost $4 billion from McKesson alone.[27]   *Id.* at F-6. Throughout these years, McKesson was not only based in San Francisco, but also distributed opioids in California, including Norco, Kadian, and the generics that The plc sold to Teva in 2016. ¶¶132, 170; Ex. 48 (excerpt of ███████████████████████████████████ ███████████████████ ).  "Given the [foreign] Defendants' efforts to target the U.S. market (and the success they had), this Court has the power to subject [them] to judgment concerning that conduct." *German Auto.*, 392 F. Supp. 3d at 1068 (alteration in original).  Whether as a result of an alter-ego and/or successor theory, or based on Allergan plc's own contacts with the state, California plainly has an interest in adjudicating Plaintiffs' claims.  *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003) ("California maintains a strong interest in providing an effective means of redress for its residents [who are] tortiously injured.") (alteration in original); *contra* Mem. at 8 (citing *Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 852 (9th Cir. 1993)).

### 4.   Dismissal for Lack of Personal Jurisdiction Is Inappropriate at the Pleading Stage Because Jurisdiction Is Intertwined with the Merits

The facts set forth above establish that The plc is subject to personal jurisdiction in California.  Regardless, even assuming that the determination is a close call (it isn't), the Court should reserve any substantive factual determinations for trial, as an understanding of the full scope of The plc's activities related to opioids in California remains to be developed during discovery. As the Ninth Circuit observed, when "a decision on the jurisdictional issues is dependent on a

---

its Irvine campus, "Allergan also has employees based in additional locations throughout the state, including Westlake Village, CA and South San Francisco, CA." *Id.* at 3.

[27]   A letter from The plc to McKesson in San Francisco produced in this action ████████████ ███████████████████████████████████████████████████████████████████ Ex. 47 at 256.  Those products included Kadian and Norco, which it distributed in California.  ¶812.

1    decision of the merits . . . it is preferable that this determination be made at trial." *Data Disc*, 557

2    F.2d at 1285 n.2; *see also Summit County*, 2019 WL 3553892, at *6 (whether the exercise of

3    jurisdiction over The plc is proper "should be determined after the Court and the parties have the

4    benefit of a full trial record").

5        Here, much of the same proof that would establish Allergan plc's substantive liability, such

6    as its direct or indirect activities falsely marketing opioids, failing to monitor suspicious orders,

7    and participating in a RICO enterprise, would also establish personal jurisdiction over The plc.

8    The proof at trial will largely overlap among the entities, and the entities are represented by the

9    same counsel, thereby minimizing the risk of unnecessarily expending resources at trial even if the

10   fact finder later concludes that personal jurisdiction over The plc is lacking.

11       In sum, Plaintiffs have plausibly alleged that The plc engaged in the misconduct in

12   question, established a *prima facie* case against it, and come forth with sufficient factual evidence

13   to warrant an exercise of personal jurisdiction over the Company.  Even hampered by severely

14   limited jurisdictional discovery, Plaintiffs have more than met their burden at this stage of the

15   litigation.  To the extent there are remaining factual disputes, the Court should leave for trial the

16   final determination of the overlapping substantive relevant facts that would establish both

17   substantive liability and personal jurisdiction.

18       **B.**     **The MDL Transferee Court Ordered Allergan plc to Accept Service**
               **in All MDL Actions**

19

20       In an order relating to "all cases" issued by the MDL transferee court, The plc's subsidiaries

21   were ordered to accept service on The plc's behalf for any MDL action.  "MDL Defendant[s] must

22   accept service for" a "foreign entity that is a parent or subsidiary of any corporate defendant in the

23   MDL." Ex. 10 at 1.[28]  Plaintiffs attempted to serve The plc through its and its subsidiaries' outside

24

25   [28]   Even then, The plc refused to accept service, and Plaintiffs moved for default judgment.  The
MDL transferee court declined Plaintiffs' motion, but determined The plc had waived service by

26   responding to the complaint and participating in discovery. Ex. 11 at 1.  That discovery was for
all MDL cases.  For example, in a transcript noting the testimony concerned "all cases," corporate

27   designee Stephan Kaufhold testified as a corporate designee of The plc. Ex. 20 at 1, 12:2-9. Thus,
under law of the case, the PLC's participation in discovery constitutes a waiver here, too.  *See*

28   Omnibus Opp., Introduction and Summary of Argument (Law of the Case).

1    counsel.  Despite the MDL transferee court's order, counsel refused because, according to counsel,

2    it is no longer in the MDL.[29]  Consistent with the MDL transferee court's order, the Court should

3    deem The plc served.  *See Nwatulegwu v. Boehringer Ingelheim Pharm., Inc.*, 668 F. App'x 173,

4    175 (7th Cir. 2016) ("[s]trict adherence to case management orders is necessary to manage

5    multidistrict litigation"); *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217,

6    1232 (9th Cir. 2006) (on remand, courts should maintain "[c]ase management orders" because they

7    "are the engine that drives disposition on the merits").[30]  The plc's subsidiaries that have appeared

8    in this action and counsel common to The plc and those subsidiaries are required to accept service

9    of the complaint on The plc.

10          In the alternative, Plaintiffs respectfully request permission to move for an order pursuant

11   to Rule 4(f)(3) of the Federal Rules of Civil Procedure that they may serve The plc through its

12   counsel, which represents the Company in the MDL.  International agreement does not prohibit

13   such service, and it is "reasonably calculated to provide actual notice" to The plc.  *Carrico v.*

14   *Samsung Elec. Co.*, 2016 WL 2654392, at *3 (N.D. Cal. May 10, 2016).

15   **V.    CONCLUSION**

16          The Court should deny The plc's motion to dismiss for lack of personal jurisdiction.[31]  And,

17   consistent with the orders concerning service in all cases in the MDL and The plc's waiver of

18   service, the Court should deny The plc's motion to dismiss for lack of service.

19

20   ---

     [29]   Ex. 49.

21
     [30]   Defendants cite to three cases where The plc was dismissed in opioid-related actions filed in
22   state courts.  Mem. at 13 (citing *In re Opioid Litig.*, 2018 WL 3115102, at *15-*16 (N.Y. Sup. Ct.
     June 18, 2018); *Tucson Med. Ctr. v. Purdue Pharma L.P.*, Sup. Ct. No. C20184991, at 1 (Ariz.
23   Sup. Ct. Sept. 16, 2019); *In re S. Carolina Opioid Litig.*, No. 2018-CP-23-01294 (S.C. Ct. Com.
     Pl. Thirteenth Jud. Dist., Apr. 8, 2020)).  Because each is a state court action, none was subject to
24   the MDL transferee court's order that The plc's subsidiaries accept service on its behalf.

25   [31]   In the alternative, Plaintiffs request permission to take jurisdictional discovery.  Evidence
     already shows that Plaintiffs' claims arise out of or relate to Allergan plc's conduct in California.
26   *See, e.g.*, Ex. 2 at 12 (the Company's largest customers from 2016 through 2018 were distributor
     defendants McKesson (then based in California), Cardinal Health, and AmerisourceBergen; during
27   each of those years, the distributor defendants purchased opioids from Allergan plc to distribute in
     California).  Thus, jurisdictional discovery is appropriate.  *See Lang Van, Inc. v. Vng Corp.*, 669
28   F. App'x 479, 480-81 (9th Cir. 2016).

1    DATED:  May 15, 2020                    Respectfully submitted,

2                                            ROBBINS GELLER RUDMAN
                                               & DOWD LLP
3                                            AELISH M. BAIG
                                             MATTHEW S. MELAMED
4                                            HADIYA K. DESHMUKH

5

6                                                    s/ Aelish M. Baig
                                             _____
                                                 AELISH M. BAIG
7
                                             Post Montgomery Center
8                                            One Montgomery Street, Suite 1800
                                             San Francisco, CA  94104
9                                            Telephone:  415/288-4545
                                             415/288-4534 (fax)
10                                           aelishb@rgrdlaw.com
                                             mmelamed@rgrdlaw.com
11                                           hdeshmukh@rgrdlaw.com

12                                           DENNIS J. HERRERA
                                             City Attorney
13                                           RONALD P. FLYNN
                                             YVONNE R. MERE
14                                           OWEN J. CLEMENTS
                                             SARA J. EISENBERG
15                                           JAIME M. HULING DELAYE
                                             Deputy City Attorneys
16                                           Fox Plaza
                                             1390 Market Street, Sixth Floor
17                                           San Francisco, CA  94102
                                             Telephone:  415/554-3957
18                                           jaime.hulingdelaye@sfcityatty.org

19                                           ROBBINS GELLER RUDMAN
                                               & DOWD LLP
20                                           PAUL J. GELLER
                                             MARK J. DEARMAN
21                                           DOROTHY P. ANTULLIS
                                             120 East Palmetto Park Road, Suite 500
22                                           Boca Raton, FL  33432
                                             Telephone:  561/750-3000
23                                           561/750-3364 (fax)
                                             pgeller@rgrdlaw.com
24                                           mdearman@rgrdlaw.com
                                             dantullis@rgrdlaw.com
25

26

27

28

1

2          ROBBINS GELLER RUDMAN
             & DOWD LLP
3          THOMAS E. EGLER
           CARISSA J. DOLAN
4          655 West Broadway, Suite 1900
           San Diego, CA  92101
5          Telephone:  619/231-1058
           619/231-7423 (fax)
6          tome@rgrdlaw.com
           cdolan@rgrdlaw.com
7
           LIEFF, CABRASER, HEIMANN
8            & BERNSTEIN, LLP
           ELIZABETH J. CABRASER
9          RICHARD M. HEIMANN
           PAULINA DO AMARAL
10         KEVIN R. BUDNER
           MICHAEL LEVIN-GESUNDHEIT
11         275 Battery Street, 29th Floor
           San Francisco, CA  94111-3339
12         Telephone:  415/956-1000
           415/956-1008 (fax)
13         ecabraser@lchb.com
           rheimann@lchb.com
14         pdoamaral@lchb.com
           kbudner@lchb.com
15         mlevin@lchb.com
16
           RENNE PUBLIC LAW GROUP
17         LOUISE RENNE
           350 Sansome Street, Suite 300
18         San Francisco, CA 94104
           Telephone:  415/848-7240
19         415/848-7230 (fax)
           lrenne@publiclawgroup.com
20
           ANDRUS ANDERSON LLP
21         JENNIE LEE ANDERSON
           PAUL LAPRAIRIE
22         155 Montgomery Street, Suite 900
           San Francisco, CA  94104
23         Telephone:  415/986-1400
           415/986-1474 (fax)
24         jennie@andrusanderson.com
           paul.laprairie@andrusanderson.com
25

26

27

28

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT ALLERGAN PLC'S NOTICE OF
MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT - 3:18-cv-07591-CRB              - 27 -
Cases\4846-8009-7212.v1-5/15/20

1

2                               SANFORD HEISLER SHARP, LLP
KEVIN SHARP

3                               611 Commerce Street, Suite 3100
Nashville, TN  37203

4                               Telephone:  615/434-7000
615/434-7020 (fax)

5                               ksharp@sanfordheisler.com

6                               SANFORD HEISLER SHARP, LLP
EDWARD CHAPIN

7                               655 West Broadway, Suite 1700
San Diego, CA  92101

8                               Telephone:  619/577-4253
619/577-4250 (fax)

9                               echapin2@sanfordheisler.com

10                             CASEY GERRY SCHENK FRANCAVILLA
    BLATT & PENFIELD LLP

11                             DAVID S. CASEY, JR.
GAYLE M. BLATT

12                             ALYSSA WILLIAMS
110 Laurel Street

13                             San Diego, CA  92101-1486
Telephone:  619/238-1811

14                             619/544-9232 (fax)
dcasey@cglaw.com

15                             gmb@cglaw.com
awilliams@cglaw.com

16

17                             WEITZ & LUXENBERG P.C.
ELLEN RELKIN

18                             PAUL PENNOCK
700 Broadway

19                             New York, NY  10003
Telephone:  212/558-5500

20                             212/344-5461 (fax)
erelkin@weitzlux.com

21                             ppennock@weitzlux.com

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT ALLERGAN PLC'S NOTICE OF
MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT - 3:18-cv-07591-CRB
Cases\4846-8009-7212.v1-5/15/20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WEITZ & LUXENBERG P.C.
MELINDA DAVIS NOKES
1880 Century Park East
Los Angeles, CA  90067
Telephone:  310/247-0921
310/786-9927 (fax)
mnokes@weitzlux.com

Attorneys for Plaintiffs The City and County of
San Francisco, California and The People of the
State of California, acting by and through San
Francisco City Attorney Dennis J. Herrera

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT ALLERGAN PLC'S NOTICE OF
MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT - 3:18-cv-07591-CRB

- 29 -

Cases\4846-8009-7212.v1-5/15/20

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify under penalty of perjury that on May 15, 2020, I authorized the electronic

3

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

4

notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and

5

I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to

6

the non-CM/ECF participants indicated on the attached Manual Notice List.

7

          s/ Aelish M. Baig
         AELISH M. BAIG

8

9

ROBBINS GELLER RUDMAN
     & DOWD LLP

10

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104

11

Telephone:  415/288-4545
415/288-4534 (fax)

12

E-mail:  aelishb@rgrdlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Mailing Information for a Case 3:18-cv-07591-CRB City and County of San Francisco et al v. Purdue Pharma L.P. et al**

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Scott Manzoor Ahmad**
  SAhmad@winston.com

- **Jennie Lee Anderson**
  jennie@andrusanderson.com,Danielle.Kidd@andrusanderson.com,joann.pham@andrusanderson.com,elizabeth.lyons@andrusanderson.com,audrey.siegel@andrusand

- **Dorothy P. Antullis**
  dantullis@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Aelish Marie Baig**
  AelishB@rgrdlaw.com,AYates@rgrdlaw.com,mmelamed@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com,mkuwashima@rgrdlaw.com

- **E. Christopher Beeler**
  chris.beeler@arnoldporter.com,maria.hansen@arnoldporter.com,edocketscalendering@arnoldporter.com

- **Sarah Jane Bily**
  SBily@winston.com

- **Gayle M Blatt**
  gmb@cglaw.com

- **Steven J. Boranian**
  sboranian@reedsmith.com,drothschild@reedsmith.com

- **Stephen Brody**
  sbrody@omm.com,steve-brody-4796@ecf.pacerpro.com

- **Kevin R. Budner**
  kbudner@lchb.com,tlim@lchb.com

- **Eric John Buhr**
  ebuhr@reedsmith.com,aswenson@reedsmith.com

- **Zachary William Byer**
  zachary.byer@kirkland.com

- **Elizabeth J. Cabraser**
  ecabraser@lchb.com

- **Elizabeth Joan Cabraser**
  ecabraser@lchb.com,mtashima@lchb.com,abertram@lchb.com,jremuszka@lchb.com

- **David S. Casey , Jr**
  dcasey@cglaw.com,camille@cglaw.com,sleonard@cglaw.com,jdavis@cglaw.com

- **Jennifer Machlin Cecil**
  jcecil@winston.com,ecf_sf@winston.com,jen-machlin-cecil-9607@ecf.pacerpro.com

- **Edward D. Chapin**
  echapin2@sanfordheisler.com,fsalazar@sanfordheisler.com,jalvarez@sanfordheisler.com

- **Isaac D. Chaput**
  ichaput@cov.com

- **Owen J. Clements**
  owen.clements@sfcityatty.org,catheryn.daly@sfcityatty.org

- **James M Davis**
  jdavis@cglaw.com,vicki@cglaw.net

- **Cari K. Dawson**
  cari.dawson@alston.com,kate.smith@alston.com

- **Mark Dearman**
  mdearman@rgrdlaw.com,e_file_sd@rgrdlaw.com,MDearman@ecf.courtdrive.com,e_file_fl@rgrdlaw.com

- **Mark J. Dearman**
  mdearman@rgrdlaw.com

- **Hadiya Khan Deshmukh**
  hdeshmukh@rgrdlaw.com

- **Joshua David Dick**
  jdick@gibsondunn.com,tmotichka@gibsondunn.com

- **Carissa Jasmine Dolan**
  cdolan@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas Edward Egler**
  tome@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Sara Jennifer Eisenberg**
  sara.eisenberg@sfcityatty.org,john.cote@sfcityatty.org,alison.wong.lambert@sfcityatty.org,martina.hassett@sfcityatty.org,yvonne.mere@sfcityatty.org,catheryn.daly@

- **Scott Austin Elder**
  scott.elder@alston.com

- **Tiffany Rose Ellis**
  tellis@weitzlux.com,nhryczyk@weitzlux.com

- **Christopher Blair Essig**
  CEssig@swinston.com

- **Wendy West Feinstein**
  wendy.feinstein@morganlewis.com,tammy.miller@morganlewis.com,sarah.wasson@morganlewis.com,picalendaring@morganlewis.com,tamara.giulianelli@morganle

- **Ana Maria Francisco**
  afrancisco@foley.com

- **Paul J. Geller**
  pgeller@rgrdlaw.com,swinkles@rgrdlaw.com,swinkles@ecf.courtdrive.com,e_file_fl@rgrdlaw.com,pgeller@ecf.courtdrive.com

- **Patricia Camille Guerra**
  camille@cglaw.com

- **August P. Gugelmann**
  august@smllp.law,august@ecf.courtdrive.com

- **Alex J. Harris**
  alex.harris@bartlitbeck.com,anne.doyle@bartlitbeck.com

- **Richard Martin Heimann**
  rheimann@lchb.com

- **Kelsey John Helland**
  khelland@gibsondunn.com,dgriffin@gibsondunn.com

- **Jenny Ann Hergenrother**
  jenny.mendelsohn@alston.com,jenny.hergenrother@alston.com

- **Dennis J. Herrera**
  cityattorney@sfcityatty.org,brittany.feitelberg@sfcityatty.org

- **Zachary Hill**
  zachary.hill@morganlewis.com,wendy.feinstein@morganlewis.com,rebecca.hillyer@morganlewis.com,evan.jacobs@morganlewis.com

- **Jaime Marie Huling Delaye**
  jaime.hulingdelaye@sfcityatty.org,alison.wong.lambert@sfcityatty.org,martina.hassett@sfcityatty.org,catheryn.daly@sfcityatty.org

- **Traci Janelle Irvin**
  traci.irvin@ropesgray.com,courtalert@ropesgray.com

- **Daniel G. Jarcho**
  daniel.jarcho@alston.com

- **Sarah Barr Johansen**
  sjohansen@reedsmith.com,aswenson@reedsmith.com

- **Timothy William Knapp**
  tknapp@kirkland.com

- **Katy E Koski**
  kkoski@foley.com

- **Amy Jean Laurendeau**
  alaurendeau@omm.com,amy-laurendeau-9969@ecf.pacerpro.com,sstewart@omm.com

- **Michael Ian Levin-Gesundheit**
  mlevin@lchb.com

- **Jennifer Gardner Levy**
  jennifer.levy@kirkland.com

- **Charles Coleman Lifland**
  clifland@omm.com,charles-lifland-4890@ecf.pacerpro.com

- **John David Lombardo**
  John.Lombardo@arnoldporter.com,guadalupe.saldana@arnoldporter.com,ecalendar@arnoldporter.com,William.Costley@arnoldporter.com

- **Amy Lucas**
  alucas@omm.com,amy-lucas-1835@ecf.pacerpro.com

- **Enu A Mainigi**
  emainigi@wc.com

- **James W Matthews**
  jmatthews@foley.com

- **Shannon Elise McClure**
  smcclure@reedsmith.com,reed-smith-2312@ecf.pacerpro.com,shannon-mcclure-1157@ecf.pacerpro.com,eselfridge@reedsmith.com

- **Matthew Seth Melamed**
  mmelamed@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Yvonne Rosil Mere**
  yvonne.mere@sfcityatty.org,martina.hassett@sfcityatty.org

- **Andrew Miller**
  amiller@sanfordheisler.com

- **Sean OLeary Morris**
  sean.morris@arnoldporter.com,edocketscalendaring@arnoldporter.com,vincent.esparza@arnoldporter.com,stacie.james@arnoldporter.com,rebecca.mcnew@arnoldpor

- **Melinda Davis Nokes**
  mnokes@weitzlux.com,lschultz@weitzlux.com,tellis@weitzlux.com,rcerci@weitzlux.com,jfarrell@weitzlux.com,dsavours@weitzlux.com

- **Paul F. Novak**
  pnovak@weitzlux.com,cgarcia@weitzlux.com,nhryczyk@weitzlux.com

- **Alan Ouellette**
  aouellette@foley.com,llanglois@foley.com,wdelvalle@foley.com

- **Luke Samuel Porter**
  lporter@reedsmith.com,gchiu@reedsmith.com,kjkelly@reedsmith.com

- **Louise Hornbeck Renne**
  lrenne@publiclawgroup.com,kbeaton@publiclawgroup.com,RPLG-docket@publiclawgroup.com

- **Nathan E. Shafroth**
  nshafroth@cov.com,ktrempy@cov.com,echiulos@cov.com,rlu@cov.com,ncutright@cov.com,rvantassell@cov.com,docketing@cov.com,isaac-chaput-
  8316@ecf.pacerpro.com

- **Audrey Claire Siegel**
  audrey.siegel@andrusanderson.com

- **Reid Smith**
  RFSmith@winston.com

- **Elizabeth Anne Sperling**
  elizabeth.sperling@alston.com,annie.yu@alston.com

- **Karl Anton Stampfl**
  karl.stampfl@kirkland.com

- **Charles Joseph Stevens**
  cstevens@gibsondunn.com,smaruschak@gibsondunn.com

- **Kaspar J. Stoffelmayr**
  kaspar.stoffelmayr@bartlit-beck.com

- **Sabrina Heron Strong**
  sstrong@omm.com,sabrina-strong-4823@ecf.pacerpro.com

- **Edward W. Swanson**
  ed@smllp.law,AmyMcGugian@ecf.courtdrive.com,ed@ecf.courtdrive.com,britt@ecf.courtdrive.com

- **Katherine Marquess Swift**
  kate.swift@bartlitbeck.com

- **Russell E Taylor**
  rtaylor@fbm.com

- **Rocky C. Tsai**
  rocky.tsai@ropesgray.com,CourtAlert@RopesGray.com

- **Richard Allen VanDuzer**
  rvanduzer@fbm.com,jamante@fbm.com,calendar@fbm.com

- **Neelum Jane Wadhwani**
  nwadhwani@wc.com,CardinalWVParalegals@wc.com

- **Donna Marie Welch**
  dwelch@kirkland.com

- **Alyssa M Williams**
  awilliams@cglaw.com

- **Sonya Diane Winner**
  swinner@cov.com,docketing@cov.com,calsbury@cov.com

- **Carl Brandon Wisoff**
  bwisoff@fbm.com,mzappas@fbm.com,calendar@fbm.com

- **Douglas R. Young**
  dyoung@fbm.com,calendar@fbm.com

- **Paulina do Amaral**
  pdoamaral@lchb.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Paul            Laprairie
Andrus Andersonl LLP
155 Montgomery Street, 900
San Francisco, CA 94104
```