Sonya D. Winner (Bar No. 200348)
swinner@cov.com
Nathan E. Shafroth (Bar No. 232505)
nshafroth@cov.com
Isaac D. Chaput (Bar No. 326923)
ichaput@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

Attorneys for Defendant
MCKESSON CORPORATION
*(Additional parties and counsel listed on signature page)*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PURDUE PHARMA L.P., et al. <br><br> Defendants. | Civil Case No.: 3:18-CV-07591-CRB <br><br> **DEFENDANTS' AMENDED PROPOSED CASE SCHEDULE** <br><br> Honorable Charles R. Breyer |

Defendants submit this proposal pursuant to the Court's Order of May 5, 2020, which directed the parties to propose a more detailed litigation and trial schedule. Dkt. 199. Since the Court entered that Order, the parties have completed briefing on motions to dismiss plaintiffs' First Amended Complaint ("FAC"). They have also served initial document requests, the responses to which will shortly be due (and in some instances have already been served). Meanwhile, the parties agreed in an interim report to the Court that the COVID-19 Pandemic has necessarily hampered both sides' ability to conduct much discovery. *See* Dkt. 198. Although restrictions related to the Pandemic have begun to

ease, things remain far from normal. Plaintiffs will presumably report on their ability to focus their personnel on responding to discovery – a question that, for reasons discussed below, is fundamentally important in establishing any realistic schedule in this case. The schedule proposed here assumes that plaintiffs will be able to comply promptly and comprehensively with their discovery obligations, without further material delays due to the Pandemic. Should that not be the case, a more extended schedule may be necessary.

During the February 26 status conference, the Court posed two questions bearing on the schedule in this case: "[W]hat [is] the playing field going to be like?" and "What really has to be done?" February 26 Tr. at 14. Defendants answered these questions in their March 20, 2020 Response to Plaintiffs' Proposed Case Schedule (the "Response"). *See* Dkt. 133. To date, plaintiffs have not answered either question, and instead merely suggested that, in order to permit an "aggressive" schedule, the Court should artificially limit defendants' ability to obtain discovery. *See, e.g.*, Dkt. 129 at 1 (asserting that the proposed March 2021 trial date is possible if plaintiffs are allowed to limit their document production obligations to an unspecified 25 custodians). Meanwhile, plaintiffs have repeatedly acknowledged that the COVID-19 Pandemic affects the ability of key personnel to assist with discovery. *See, e.g.*, Dkt. 135 at 3. The Court should adopt a realistic schedule that takes into account the scope and breadth of plaintiffs' claims and, as explained below, the considerable discovery that needs to be conducted.

I. **What Is the Playing Field?**

The FAC comprises **925** paragraphs over **284** pages. Dkt. No. 128. Plaintiffs have suggested that the FAC represents a streamlining of their case because it is based on complaints in other jurisdictions. Dkt. 135 at 4. But plaintiffs necessarily concede that "the San Francisco-specific facts differ from Summit County-specific facts," even though the allegations against Defendants are nearly identical. *Id.* at 7. As Defendants have repeatedly explained – and as Plaintiffs have never seriously disputed – the vast majority of discovery that remains relates to *plaintiffs*, for example: the alleged opioid crisis *in San Francisco*, the impact of that alleged crisis *on plaintiffs*, and plaintiffs' response to the alleged crisis. None of that discovery has occurred; all of it is necessary.

Further, as explained in defendants' Response, plaintiffs have not streamlined their claims in any meaningful respect. Dkt. 133 at 2-3. Although the FAC asserts fewer individual "causes of action" than its predecessor, plaintiffs dropped only a single cause of action – for negligence. They still assert claims for public nuisance, and alleged fraud-based RICO violations, as well as alleged violations of the UCL and the FAL.

Plaintiffs previously represented that they would amend their Fact Sheet to narrow the scope of damages and, therefore, discovery. Dkt. 135 at 3-4. But plaintiffs' Amended Fact Sheet, served on May 29, 2020 (and attached hereto as Exhibit 1), narrowed almost nothing and still seeks broad categories of remedies over a period of more than two decades. Indeed, the Amended Fact Sheet contradicts some of plaintiffs' prior statements. Plaintiffs represented on March 25 that "[g]enerally speaking" they sought "(a) the forward-looking costs of abatement of the public nuisance in San Francisco caused by opioids; (b) civil penalties and injunctive relief tethered to Defendants' violations occurring within San Francisco of the [UCL] and [FAL]; and (c) limited remedies under RICO." Dkt. 135 at 9-10. Plaintiffs' Amended Fact Sheet, in contrast, seeks that relief plus more. Specifically, the City now seeks:

1. With respect to the RICO claims: "*all legal and equitable relief permitted by law*," including "actual damages; treble damages; equitable and/or injunctive relief in the form of Court-supervised corrective communications, actions, and programs; forfeiture as deemed proper by the Court" and fees, costs, and interest. Ex. 1 at 2 (emphasis added).

2. With respect to the public nuisance claim: "the costs of future abatement of the opioid-related public nuisance in San Francisco *and all other legal and equitable relief allowed by law*." *Id.* at 3 (emphasis added).

3. With respect to the UCL and FAL claims: "injunctive relief, *restitution*, and civil penalties." *Id.* (emphasis added).

It is therefore apparent that plaintiffs have not "narrowed" the scope of their requested relief at all.

Additionally, while plaintiffs' Amended Fact Sheet reduced the number of separate line items for which they seek damages, the actual *scope* of the damages sought appears to be largely unchanged. For example, under the category of "Public Health and First Responder" costs, plaintiffs previously stated that they sought damages for costs related to "Counseling for grief, post-traumatic stress disorder and

depression," "Mental health facilities," "Opioid education programs," "Opioid prevention programs," "Opioid abuse programs," "Social services," "Increased Veterans Services expenditures," "Patient transportation," and "Rehabilitation and treatment programs." *See* Dkt. 66-2 (initial Plaintiff Fact Sheet) at 3-4. In their Amended Fact Sheet, plaintiffs collapse all such costs into the broader subcategories of "Mental and behavioral health facilities and programs," and "Drug education, prevention and treatment programs." Ex. 1 at 3. Similarly, costs related to "Narcan/Naloxone administration," "Public and employee training on the administration of Narcan/Naloxone," "Purchases of Narcan/Naloxone," and "Public and employee training on administering Narcan/Naloxone" no longer appear as separate subcategories (*see* Dkt. 66-2 at 3); instead, such costs have been collapsed into the broader subcategory of "Narcan/Naloxone purchase and training." *See* Ex. 1 at 3. In substance, Plaintiffs have not narrowed the relief they seek. Plaintiffs' damages claims remain breathtakingly broad and will require broad discovery.

## II. What Really Has to Be Done?

Plaintiffs previously argued that discovery in this case could be "circumscribed" (Dkt. 135 at 9) but then described only the limited categories of discovery plaintiffs desire from defendants. Such discovery from Defendants should indeed be circumscribed given that plaintiffs already have access to comprehensive national discovery from defendants. *Id.* at 10. But that has nothing to do with the discovery defendants need *from plaintiffs* in order to defend themselves in this litigation, including on issues related to the existence of any nuisance in the first instance, causation, and damages. Defendants' Response exhaustively categorized the areas in which they require discovery. *See* Dkt. 133 at 7-13. Based on the FAC and plaintiffs' Amended Fact Sheet, nearly all of that discovery is still needed, as summarized below:

### 1. Law Enforcement

Plaintiffs' entire case is premised on theories involving criminal activity, by doctors and other healthcare providers who write medically unnecessary prescriptions, *see, e.g.*, FAC ¶¶ 12, 59; individuals who divert prescription opioid medications, *see, e.g.*, *id.* ¶¶ 7, 51, 59, 166, 546; traffickers and drug dealers of diverted prescription opioid medications or heroin, fentanyl, and other illicit opioids, *see, e.g.*, *id.* ¶¶ 5, 14, 67; and individuals who abuse prescription opioid medications or illicit opioids,

*see, e.g.*, *id.* ¶¶ 64, 67.  As defendants have previously explained, discovery from local and third-party law enforcement entities is therefore necessary in order to understand both the full scope of plaintiffs' alleged harm and necessary elements of plaintiffs' case, including causation.  That is true for all of plaintiffs' causes of action, as well as for the remedies sought.[1]

### 2. District Attorney and Courts

Although plaintiffs' Amended Fact Sheet deleted some categories of damages related to the district attorney and courts, discovery from the San Francisco District Attorney's office is still needed to identify non-party criminal actors and their conduct, as that conduct relates to causation and fault.  San Francisco's drug courts will have important information concerning the scope of opioid and other drug use within San Francisco and plaintiffs' efforts to address and rehabilitate users of opioids and other drugs.

Additionally, plaintiffs still allege a claim for public nuisance, for which they "seek costs that will be associated with future efforts to abate the public nuisance in San Francisco."  FAC ¶ 905.  The criminal justice system – including the costs of treatment, rehabilitation, and prevention of recidivism – has been a significant element of other jurisdictions' abatement plans.  For example, the two Ohio plaintiffs in Track One of the MDL proposed abatement plans including over $300 million in funding for programs relating to the criminal justice system.

### 3. Emergency Services

Plaintiffs' Amended Fact Sheet still claims damages for various types of expenditures related to "Public Health and First Responders," including "Emergency medical services" and "Narcan/Naloxone purchase and training."  Ex. 1 at 3.  The San Francisco Fire Department Division of Emergency Medical Services is also likely to possess critical information more generally about opioid abuse and treatment.

---

[1] Plaintiffs continue to seek extensive damages relating to law enforcement activities.  Although plaintiffs' Amended Fact Sheet deleted some separately listed sub-categories of law enforcement-related costs, most such subcategories appear to have been either moved ("Narcan/Naloxone purchase and training") or collapsed into broad categories (e.g., "Task forces/special projects").  Ex. 1.

### 4. Public Health

Plaintiffs claim damages for ten categories of public health-related expenditures, including "Emergency medical services," "Mental and behavioral health facilities and programs," "Needle exchange and prescription drug take-back programs," "Drug education, prevention and treatment programs," "HIV/Hepatitis C programs," "Public health clinics," "Public hospitals," "Narcan/Naloxone purchase and training," "Training on safe prescription practices," and "Training on safe prescription drug disposal." Ex. 1 at 3. Defendants require discovery concerning each of these categories. For example, the San Francisco Department of Public Health compiles data by tracking the impact of substance use and abuse, which is an important source of information on the overdose and death trends in the City and County of San Francisco, as well as the prevention and training programs that Plaintiffs implemented to mitigate the alleged harm.[2]

Plaintiffs also claim damages related to "Public health clinics" and "Public Hospitals." Ex. 1 at 3. The San Francisco Health Network is a public healthcare system that includes 14 primary health care centers, hospital care through the Zuckerburg San Francisco General Hospital and Treatment Center and Laguna Honda Hospital, urgent care, and behavioral health services. This network of public health facilities likely possesses relevant information concerning the scope and impact of opioid and other drug use within San Francisco. Further, defendants are likely to require third-party discovery from a number of other public health agencies and related entities, including: (1) California Conference of Local Health Officers; (2) California Department of Aging; (3) California Department of Public Health; (4) California Emergency Medical Services Authority; (5) California Health & Human Services Agency; (6) California Department of State Hospitals; (7) California Mental Health Services Overnight & Accountability; (8) California Office of the Patient Advocate; (9) California Department of Managed Health Care; (10)

---

[2] Topics to be addressed in this discovery may include, *inter alia*, epidemiological data regarding addiction and mental health treatment and opioid use, abuse, and overdose, and mortality; uniformly deidentified treatment, encounters, and dispensing records related to opioid prescriptions written and addiction or overdose treatment provided; records related to treatment with naloxone and other medically assisted treatment reports; records of grants received from state and federal sources related to opioids; provider lists and budgets for substance use treatment providers; records related to admissions to substance use disorder treatment; data related to substance abuse trends and drug availability; and CURES data reports used by the City and County.

California Department of Health Care Services; (11) California Office of Health Information and Integrity; and (12) California Office of Statewide Health Planning and Development.

### 5. Medical Examiners

One of the primary focuses of plaintiffs' FAC, and an essential component of any causal chain between alleged defendant misconduct and any harm to plaintiffs, are overdose deaths purportedly related to opioids. *See, e.g.*, FAC at ¶¶ 3-4, 6, 13-14. These allegations require extensive discovery from the Office of the Chief Medical Examiner, which investigates individual deaths and tracks community health trends. Defendants will require discovery from that office to test, for example, whether any overdoses involved their opioids, the true cause of overdoses, trends involving overdoses over time, how causes of death are determined and recorded in the overdose context, and other related subjects. In addition, plaintiffs claim damages for various coroner and medical examiner-related expenditures, including "Morgue space," "Storage of bodies," "Burials and cremations," "Toxicology testing," "Biohazard waste disposal," and "Autopsies in suspected overdose deaths." Ex. 1 at 3.

### 6. Child and Family Services

Defendants will require discovery from plaintiffs' departments and divisions related to Child and Family Services. Although plaintiffs removed a separate damages category for this from their Amended Fact Sheet, they still seek damages for "social services to victims of the opioid epidemic and their families," "mental-health services," and "counseling." FAC ¶¶ 851, 882. In Track One of the MDL, Child and Family Services was one of the largest categories of alleged damages. Additionally, plaintiffs seek the costs of "future abatement," which will necessarily require discovery of past programs and expenditures even if they do not ultimately seek to recover specific past damages related to Child and Family Services.

Such discovery is likely to address, *inter alia*, policies and practices over time related to investigations and cases involving opioids, data maintained in plaintiffs' Child Welfare Services / Case Management System showing the number of cases involving opioids compared to alcohol and other drugs; drug testing data and contracts; department budgets; and grants received from state and federal sources.

### 7. Health Plans and Officials Responsible for Administering Them

Plaintiffs have identified nine "medical insurance plan[s] or carrier[s], behavioral health carriers, or workers compensation programs" used by its employees since January 1, 2008 and nine pharmacy benefit managers or third-party claims administrators they have used since January 1, 2006. Ex. 1 at 17-19. Defendants will seek documents and testimony from plaintiffs regarding their oversight over those plans/carriers and mangers/administrators, including whether and to what extent plaintiffs continue to reimburse for the types of opioid prescriptions that plaintiffs allege were wrongful.

Defendants will also require discovery related to third-party health plans offered to residents of San Francisco, including large insurers, pharmacy benefit managers, and private managed care organizations operating in San Francisco. These entities have, *inter alia*, critical claims data demonstrating the number and types of opioids prescribed to San Francisco residents over time, the healthcare providers who prescribed these opioids, and the conditions for which they were prescribed.

Also, plaintiffs seek damages for purported "bulk purchases of prescription opioids by its hospitals and pharmacies resulting from" alleged RICO violations. Ex. 1 at 2. Defendants require discovery into those purchases, as well as into the hospitals and pharmacies that made the purchases, to determine why those purchases were made, the resulting prescriptions written for the medications included in those purchases, and why plaintiffs claim those prescriptions were wrongful, among other subjects.

### 8. Budget and Finance

In their Amended Fact Sheet, Plaintiffs seek wide-ranging damages to offset alleged increases to their budget, including "costs of future abatement of the opioid-related public nuisance" and 21 separate categories of damages that they contend relate to "increases in costs" to the City and County of San Francisco. Plaintiffs claim that the financial costs from the opioid epidemic "that are already known are staggering," and identify certain line items in a 2017 budget proposal that were "specifically targeted at addressing '[t]he surge of opiate abuse and addiction.'" FAC ¶ 58. Defendants require discovery from the Mayor's Office of Public Policy and Finance, the Controller's Office, and the Board of Supervisors to identify any proposed and actual opioid-related expenditures in San Francisco's budget throughout the relevant time period, including "costs of future abatement."

### 9. Opioid Task Forces

Plaintiffs seek damages for costs related to "Task Force/special projects." Ex. 1 at 3. Defendants require discovery into the various task forces and "special projects" – none of which are actually identified in the Amended Fact Sheet. Through Defendants' independent investigation, various San Francisco Departments and Boards operate drug-related tasks forces working to identify harm reduction strategies to decrease and manage illicit drug (*e.g.*, methamphetamine) use, develop recommendations on the operation of safe injection services, and advise City government officials on policies to help address drug dealing that is particularly rampant in certain neighborhoods within San Francisco. These include the San Francisco Methamphetamine Task Force (facilitated by San Francisco Department of Public Health), San Francisco Safe Injection Services Task Force (facilitated by San Francisco Department of Public Health), and the Street-Level Drug Dealing Task Force. Such task forces possess information that is highly important to plaintiffs' claims for damages related to, *inter alia*, "Needle exchange and prescription drug take-back programs," "Narcan/Naloxone purchase and training," and "Task Force/special projects." Ex. 1 at 3.

### 10. Other Third Party Discovery

As explained in defendants' Response, numerous third parties have discoverable information relevant to plaintiffs' claims and defendants' defenses. Dkt. 133 at 12-13. Defendants will require discovery from professional regulatory authorities (*e.g.*, the California Medical Board), California's prescription drug monitoring program ("CURES"), insurers and workers' compensation providers, professional organizations (*e.g.* the California Medical Association), and healthcare providers. Plaintiffs represented that they have "serious concerns" regarding defendants' plan to propound third-party discovery requests. Dkt. 135 at 11. These abstract "concerns" are simply an attempt to curtail from the outset defendants' ability to test plaintiffs' theories of harm. Plaintiffs are not entitled to unilaterally dictate the discovery to which defendants are entitled. Further, the planned third-party discovery will pose little, if any, burden on plaintiffs.

### B. Limitations on Discovery

Plaintiffs previously admitted that an "aggressive" case schedule is "manageable" only if the Court severely curtails defendants' right to discovery. *See* Dkt. 129 at 1. Plaintiffs have not yet asked to

meet and confer with defendants on potential limitations on discovery, and as of this filing plaintiffs' responses to defendants' initial document requests have not yet been served. Defendants remain prepared to meet and confer in good faith about the necessary scope of discovery, but as they have previously explained (*see* Dkt. 133 at 13-14), plaintiffs' proposed limitations on document custodians and discovery from plaintiffs are unworkable in light of their sweeping claims.

### III. Proposed Case Schedule

As explained above, plaintiffs have failed to narrow their claims in any meaningful regard. And, as all involved are keenly aware, the COVID-19 Pandemic has already significantly impacted the parties' ability to litigate this case, and even the most optimistic of assumptions cannot ignore the fact that this impact is likely to continue. In light of these developments, defendants' previous scheduling proposal, which would have culminated in an October 2021 trial, is no longer feasible. Defendants therefore propose a trial beginning February 21, 2022, with interim case deadlines as set forth in the table below.[3]

| Deadline | Defendants' Proposal |
|---|---|
| Substantial completion of document production | March 1, 2021 |
| Close of fact discovery | July 2, 2021 |
| Plaintiffs' expert reports and deadline for plaintiffs to offer two deposition dates for each expert between July 19 and August 16 | July 12, 2021 |
| Defendants' expert reports and deadline for defendants to offer two deposition dates for each expert between August 30 and September 13 | August 23, 2021 |
| Close of expert discovery | September 13, 2021 |
| Motions for summary judgment and *Daubert* motions | October 1, 2021 |

---

[3] In addition, defendants will meet and confer with plaintiffs regarding interim dates during fact discovery for the identification of prescriptions plaintiffs claim caused them harm for which they seek relief, as the parties have done in the MDL, and as the MDL court has incorporated into case schedules in multiple bellwether cases, *e.g.* Case No. 17-md-2804 (N.D. Ohio), Dkt. 3325 at 3.

| Deadline | Defendants' Proposal |
|---|---|
| Oppositions to motions for summary judgment and *Daubert* motions | November 12, 2021 |
| Replies in support of motions for summary judgment and *Daubert* motions | December 3, 2021 |
| Hearings on motions for summary judgment and *Daubert* motions | December 17, 2021 |
| Parties to lodge and serve witness and exhibit lists[4] | January 4, 2022 |
| Parties to file juror questionnaire, proposed voir dire questions, and simplified statement of the case | January 11, 2022 |
| Joint proposed pre-trial order | January 18, 2022 |
| Motions *in limine* | January 18, 2022 |
| Oppositions to motions *in limine* | January 25, 2022 |
| Replies in support of motions *in limine* | February 1, 2022 |
| Proposed jury instructions and special verdict form | February 1, 2022 |
| Final Pretrial Conference | February 8, 2022 |
| Trial | February 21, 2022 |

\*   \*   \*

For the foregoing reasons, defendants respectfully request that the Court enter defendants' proposed schedule, which accounts for the unique scope and scale of this case and provides defendants the time necessary to develop the record and prepare for trial.

DATED: June 8, 2020                                         Respectfully submitted,

By: */s/ Steven J. Boranian*                                By: */s/ Sonya D. Winner*
    Steven J. Boranian                                  Sonya D. Winner (Bar No. 200348)
    REED SMITH LLP                                      Nathan E. Shafroth (Bar No. 232505)
    101 Second Street, Suite 1800                       Isaac D. Chaput (Bar No. 326923)
    San Francisco, CA 94105                             COVINGTON & BURLING LLP

---

[4] These and the following dates are based on the Court's standing jury trial order. Based on experience in other cases, the parties will likely wish to discuss building in more time for some of these items.

| | |
|---|---|
| Telephone: (415) 543-8700<br>Facsimile: (415) 391-8269<br>sboranian@reedsmith.com<br><br>Sarah B. Johansen<br>REED SMITH LLP<br>355 South Grand Avenue, Suite 2900<br>Los Angeles, CA 90071<br>Telephone: (213) 457-8000<br>Facsimile: (213) 457-8080<br>sjohansen@reedsmith.com<br><br>*Attorneys for Defendant*<br>*AmerisourceBergen Drug Corporation*<br><br>By: */s/ Rocky C. Tsai*<br>   Rocky C. Tsai (S.B. #221452)<br>   Traci J. Irvin (S.B. #309432)<br>   ROPES & GRAY LLP<br>   Three Embarcadero Center<br>   San Francisco, CA 94111-4006<br>   Tel: (415) 315-6300<br>   Fax: (415) 315-6350<br>   rocky.tsai@ropesgray.com<br>   traci.irvin@ropesgray.com<br><br>   *Attorneys for Defendants Mallinckrodt*<br>   *LLC and SpecGx LLC*<br><br><br>By: */s/ Zachary W. Byer*<br>   Zachary W. Byer (S.B. #301382)<br>   KIRKLAND & ELLIS LLP<br>   555 South Flower Street<br>   Los Angeles, CA 90071<br>   Tel: (213) 680-8400<br>   zachary.byer@kirkland.com<br><br>   Jennifer G. Levy, P.C. (pro hac vice)<br>   KIRKLAND & ELLIS LLP<br>   1301 Pennsylvania Ave., N.W.<br>   Washington, D.C. 20004<br>   Tel: (202) 879-5000<br>   Fax: (202) 879-5200 | Salesforce Tower<br>415 Mission Street, Suite 5400<br>San Francisco, California 94105-2533<br>Telephone: + 1 (415) 591-6000<br>Facsimile: + 1 (415) 591-6091<br><br>*Attorneys for Defendant*<br>*McKesson Corporation*<br><br><br>By: */s/ Neelum J. Wadhwani*<br>   Neelum J. Wadhwani (Bar No. 247948)<br>   Enu A. Mainigi (pro hac vice)<br>   WILLIAMS & CONNOLLY LLP<br>   725 Twelfth Street, NW<br>   Washington, DC  20005<br>   Tel:  (202) 434-5000<br>   Fax:  (202) 434-5029<br>   nwadhwani@wc.com<br>   emainigi@wc.com<br><br>   Edward W. Swanson, SBN 159859<br>   August Gugelmann, SBN 240544<br>   SWANSON & McNAMARA LLP<br>   300 Montgomery Street, Suite 1100<br>   San Francisco, California 94104<br>   Telephone: (415) 477-3800<br>   Facsimile: (415) 477-9010<br>   ed@smllp.law<br>   august@smllp.law<br><br>   *Attorneys for Defendant*<br>   *Cardinal Health, Inc.*<br><br>By: */s/ Elizabeth A. Sperling*<br>   Elizabeth A. Sperling (CA Bar No. 231474)<br>   ALSTON & BIRD LLP<br>   333 South Hope Street, 16th Floor<br>   Los Angeles, CA 90071<br>   Telephone: (213) 576-1000<br>   Fax: (213) 576-1100<br>   elizabeth.sperling@alston.com<br><br>   Daniel G. Jarcho (pro hac vice)<br>   ALSTON & BIRD LLP<br>   950 F Street, NW<br>   Washington, DC 20004 |

jennifer.levy@kirkland.com

Donna Welch, P.C. (pro hac vice)
Timothy W. Knapp, P.C. (pro hac vice)
Karl Stampfl (pro hac vice)
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
donna.welch@kirkland.com
tknapp@kirkland.com
karl.stampfl@kirkland.com

*Attorneys for Defendants Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc., Allergan Sales, LLC and Allergan USA, Inc. and specially appearing defendant Allergan plc f/k/a Actavis plc*


By: */s/ Amy R. Lucas*
Amy R. Lucas (S.B. #264034)
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Tel: (310) 553-6700
Fax: (310) 246-6779
alucas@omm.com

Charles C. Lifland (S.B. #108950)
Sabrina H. Strong (S.B. #200292)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Tel: (213) 430-6000
Fax: (213) 430-6407
clifland@omm.com
sstrong@omm.com

Amy J. Laurendeau (S.B. #198321)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-6900
Fax: (949) 823-6994
alaurendeau@omm.com

Telephone: (202) 239-3300
Daniel.jarcho@alston.com

Cari K. Dawson (pro hac vice)
Jenny A. Hergenrother (pro hac vice)
Scott A. Elder (pro hac vice)
ALSTON & BIRD LLP
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
cari.dawson@alston.com
jenny.hergenrother@alston.com

*Attorneys for Defendant Noramco, Inc.*


By: */s/ Zachary Hill*
Zachary Hill (S.B. #275886)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel: (415) 442-1000
zachary.hill@morganlewis.com

Eric W. Sitarchuk*
Rebecca J. Hillyer*
MORGAN, LEWIS & BOCKIUS LLP
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com
1701 Market Street
Philadelphia, 19103-2921
Tel: +1.215.963.5000
Fax: +1.215.963.5001

Wendy West Feinstein (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd.Fl.
Pittsburgh, PA 15219-6401
Tel: (412) 560-7455
wendy.feinstein@morganlewis.com

*Attorneys for Defendants
Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Actavis LLC, Watson Laboratories, Inc., and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.*

| | |
|---|---|
| Stephen D. Brody (pro hac vice)<br>O'MELVENY & MYERS LLP<br>1625 Eye Street, NW<br>Washington, DC 20006<br>Tel: (202) 383-5300<br>Fax: (202) 383-5414<br>sbrody@omm.com<br><br>*Attorneys for Defendants Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc.*<br><br>By: */s/ Alan R. Ouellette*<br>Alan R. Ouellette (CA Bar No. 272745)<br>FOLEY & LARDNER LLP<br>555 California Street, Suite 1700<br>San Francisco, CA 94104-1520<br>Telephone: (415) 434-4484<br>Facsimile:  (415) 434-4507<br>aouellette@foley.com<br><br>James W. Matthews (Pro Hac Vice motion forthcoming)<br>Ana M. Francisco (Pro Hac Vice motion forthcoming)<br>Katy E. Koski (Pro Hac Vice motion forthcoming)<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue<br>Boston, MA 02199-7610<br>Telephone:     (617) 342-4000<br>Facsimile:      (617) 342-4000<br>jmatthews@foley.com<br>francisco@foley.com<br>kkoski@foley.com<br><br>*Attorneys for Defendant Anda, Inc.* | *\*Denotes national counsel, pro hac vice forthcoming*<br><br>By: */s/ Sean O. Morris*<br>Sean O. Morris<br>John D. Lombardo<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>777 South Figueroa Street, 44th Floor<br>Los Angeles, CA 90017-5844<br>Tel: (213) 243-4000<br>Fax: (213) 243-4199<br>Sean.Morris@arnoldporter.com<br>John.Lombardo@arnoldporter.com<br><br>*Attorneys for Defendants Endo Pharmaceuticals Inc., Endo Health Solutions Inc., Par Pharmaceutical, Inc., and Par Pharmaceutical Companies, Inc.*<br><br>By: */s/ Charles J. Stevens*<br>Charles J. Stevens (SBN 106981)<br>cstevens@gibsondunn.com<br>Joshua D. Dick (SBN 268853)<br>jdick@gibsondunn.com<br>Kelsey J. Helland (SBN 298888)<br>khelland@gibsondunn.com<br>GIBSON DUNN & CRUTCHER LLP<br>555 Mission Street, Suite 3000<br>San Francisco, CA  94105<br>Telephone:  415.393.8200<br>Facsimile:  415.393.8306<br><br>Kaspar Stoffelmayr (pro hac vice forthcoming)<br>kaspar.stoffelmayr@bartlitbeck.com<br>Katherine M. Swift (pro hac vice forthcoming)<br>kate.swift@bartlitbeck.com<br>BARTLIT BECK LLP<br>54 West Hubbard Street<br>Chicago, IL 60654<br>Telephone:  312.494.4400<br>Facsimile:  312.494.4440 |

Alex Harris (pro hac vice forthcoming)
alex.harris@bartlitbeck.com
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone:  303.592.3100
Facsimile:  303.592.3140

*Attorneys for Defendant Walgreen Co.*

**ATTESTATION**

I, Sonya Winner, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: June 8, 2020         By:   */s/ Sonya D. Winner*
                                   Sonya D. Winner