CHARLES C. LIFLAND (S.B. #108950)
clifland@omm.com
SABRINA H. STRONG (S.B. #200292)
sstrong@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Tel: (213) 430-6000
Fax: (213) 430-6407

AMY LAURENDEAU (S.B. #198321)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-6900
Fax: (949) 823-6994
alaurendeau@omm.com

AMY R. LUCAS (S.B. #264034)
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Tel: (310) 553-6700
Fax: (310) 246-6779
alucas@omm.com

*Attorneys for Defendants Johnson & Johnson, Janssen
Pharmaceuticals, Inc., Ortho-McNeil-Janssen
Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| THE CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA and THE PEOPLE OF THE STATE OF CALIFORNIA, Acting by and Through San Francisco City Attorney DENNIS J. HERRERA, <br><br> Plaintiffs, <br><br> vs. <br><br> PURDUE PHARMA L.P., et al. <br><br> Defendants. | Case No. 3:18-cv-07591-CRB <br><br> **DEFENDANTS' BRIEF REGARDING THE MODE OF TRIAL** <br><br> Judge: Honorable Charles R. Breyer |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.    The Seventh Amendment mandates a jury trial on Plaintiff's three
      remaining claims. ............................................................................................. 2

      A.    Public nuisance liability turns on legal rights and must be tried to a
            jury. ......................................................................................................... 2

      B.    Defendants also are entitled to a jury trial on FAL and UCL
            liability. .................................................................................................. 7

            1.    Plaintiff seeks civil penalties that are legal in nature. ..................... 8

            2.    Plaintiff's demand for injunctive relief does not invalidate
                  Defendants' jury trial entitlement. ................................................... 9

            3.    The California Supreme Court's decision in Nationwide
                  does not change the result. ............................................................. 10

II.   A jury must resolve legal claims before the Court considers equitable
      claims under well-settled Seventh Amendment principles. ................................. 12

CONCLUSION ............................................................................................................ 13

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

*Appeal of McClain*,
18 A. 1066 (Pa. 1890) ........................................................................................ 5

*Att'y Gen. v. Cleaver*,
34 Eng. Rep. 297 (Ch.) (1811) .................................................................. 3, 4, 5

*Att'y Gen. v. New Jersey R.R. & Transp. Co.*,
3 N.J. Eq. 136 (N.J. Ch. 1834) ......................................................................... 5

*Att'y Gen. v. U.K. Elec. Tel. Co.*,
54 Eng. Rep. 899 (Rolls.) (1861) .................................................................. 4, 7

*Attorney Gen. v. Utica Ins. Co.*,
1 Johns. Ch. 371 (1815) ................................................................................... 4

*Baines v. Baker*,
27 Eng. Rep. 105–07 (1752) ............................................................................. 3

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959) .................................................................................... 2, 12

*Burnham v. Hotchkiss*,
14 Conn. 311 (1841) ......................................................................................... 5

*California v. Altus Finance*,
36 Cal. 4th 1284 (Cal. 2005) ............................................................................ 9

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*,
494 U.S. 558 (1990) .................................................................................. 2, 6, 7

*Crowder v. Tinkler*,
34 Eng. Rep. 645 (Ch.) (1816) ......................................................................... 5

*Curtis v. Loether*,
415 U.S. 189 (1974) .......................................................................................... 2

*Earl of Ripon v. Hobart*,
40 Eng. Rep. 65 (Ch.) (1834) ................................................................. 3, 4, 5, 6

*Georgetown v. Alexandria Canal Co.*,
37 U.S. 91 (1838) ............................................................................................. 5

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989) ........................................................................................... 8

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) ......................................................................................... 6

*In re Nat'l. Prescription Opiate Litig.*,
17-MD-2804, 2019 WL 4621690 (N.D. Ohio Sept. 24, 2019) ......................... 7

*Jacob v. New York City*,
315 U.S. 752 (1942) .......................................................................................... 2

1
2

**TABLE OF AUTHORITIES**
**(CONTINUED)**

Page(s)

3
4

*Lytle v. Household Mfg., Inc.*,
    494 U.S. 545 (1990) .................................................................................................. 13

5

*McLaughlin v. Owens Plastering Co.*,
    841 F.2d 299 (9th Cir. 1988) ................................................................................... 10

6

*Mohawk Bridge Co. v. Utica & S.R. Co.*,
    6 Paige Ch. 554 (N.Y. Ch. 1837) ............................................................................... 5

7
8

*Mugler v. Kansas*,
    123 U.S. 623 (1887). ............................................................................................. 5, 6

9

*Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda County*,
    9 Cal. 5th 279 (2020) .................................................................................... passim

10
11

*Parsons v. Bedford*,
    28 U.S. 433 (1830) ..................................................................................................... 2

12

*People v. ConAgra Grocery Prod. Co.*,
    17 Cal. App. 5th 51 (Cal. Ct. App. 2017) ................................................................. 7

13

*Proprietors of Charles River Bridge v. Proprietors of Warren Bridge*,
    36 U.S. 420 (1837) ..................................................................................................... 5

14
15

*Ross v. Bernhard*,
    396 U.S. 531 (1970) ................................................................................................. 13

16

*Simler v. Conner*,
    372 U.S. 221 (1963) ....................................................................................... 1, 2, 11

17
18

*State v. Currier*,
    19 A. 1000 (N.H. 1890) .............................................................................................. 5

19

*State v. Tupper*,
    23 S.C.L. (Dud.) 135 (1838) ...................................................................................... 5

20

*Thornton v. Grant*,
    10 R.I. 477 (1873) ....................................................................................................... 5

21
22

*Tull v. United States*,
    481 U.S. 412 (1987) ........................................................................................ passim

23

*Tuttle v. Church*,
    53 F. 422 (C.C.D.R.I. 1892) ....................................................................................... 5

24
25

*U.S. Sec. & Exch. Comm'n v. Jensen*,
    835 F.3d 1100 (9th Cir. 2016) ................................................................................... 9

26

*United States v. J. B. Williams Co.*,
    498 F.2d 414 (2d Cir. 1974) ....................................................................................... 9

27

**Statutes**

Cal. Bus. & Prof. Code § 17203 ....................................................................................... 10

28

1

**TABLE OF AUTHORITIES
(CONTINUED)**

2

Page(s)

3

**Other Authorities**

4

2 Joseph Story, Commentaries on Equity Jurisprudence as Administered in
England and America § 923 (1st ed. 1836) ............................................................... 5, 6

5

58 Am. Jur. 2d Nuisances § 13 (2020) ............................................................................ 3

6

9 Wright & Miller, Federal Practice & Procedure § 2303 ............................................ 12

7

Arthur C. Rounds, *Injunctions Against Liquor Nuisances*, 9 Harv. L. Rev. 521
(1896) ......................................................................................................................... 3

8

Hale, L.C.J., De Jure Maris, 1 Hargrave, *A Collection of Tracts* 85 (1787) .................. 3

9

John H. Langbein, *Chancellor Kent and the History of Legal Literature*, 93
Colum. L. Rev. 547 (1993) ......................................................................................... 4

10

John N. Pomeroy, Eq. Jur. §§ 519–522 (4th ed. 1919) .................................................... 5

11

Restatement (Second) of Torts (1979) § 821B ................................................................ 4

12

*The American and English Encyclopedia of Law: Volume 16* (1891) ............................ 6

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

Plaintiff's three remaining claims—for common law public nuisance, violation of California's Unfair Competition Law ("UCL"), and violation of California's False Advertising Law ("FAL")—all require an adjudication of legal rights and remedies, and the Seventh Amendment therefore entitles the parties to a trial by jury on all three claims.

The Seventh Amendment preserves the common law jury trial right as it existed in 1791, and the common law has always required juries to decide factual disputes about public nuisance liability before a court could issue an injunction abating the nuisance. The two common law exceptions to this rule—one for nuisances per se and another for threats of irreparable harm—are inapplicable to this case on their own terms, and also are legally irrelevant because they emerged in common law only after the Seventh Amendment cemented constitutional rights for federal civil cases in 1791. The federal MDL court reached exactly this conclusion last September when it ruled that the Seventh Amendment required a jury to adjudicate public nuisance liability before the court could consider imposing an equitable remedy. The Seventh Amendment likewise requires a jury trial on Plaintiff's UCL and FAL claims because they seek civil penalties—a legal remedy that courts have never had equitable jurisdiction to impose without a prior jury verdict.

In *Nationwide Biweekly Administration, Inc. v. Superior Court of Alameda County*, 9 Cal. 5th 279, 293 (2020), the California Supreme Court held that California state law does not require juries to decide UCL or FAL claims. But "federal law governs in determining the right to a jury trial in the federal courts," *Simler v. Conner*, 372 U.S. 221, 221–22 (1963), and the California Supreme Court acknowledged that California's jury entitlement test diverges sharply from the federal constitutional test. In contrast to California's complex jury-trial framework, the Seventh Amendment considers only whether a claim turns on legal or equitable rights. Plaintiff's claims for public nuisance and UCL and FAL civil penalties rest on legal rights, and the federal test therefore requires a jury to determine liability.

Should the Court decide that the parties have a jury right on some claims but not others, settled law would require it to first try all legal claims to a jury, giving the verdict controlling force over any overlapping questions at issue in a subsequent bench trial.

1

## ARGUMENT

2

**I.      The Seventh Amendment mandates a jury trial on Plaintiff's three remaining claims.**

3

Plaintiff's public nuisance, UCL, and FAL claims each involve legal rights entitling

4   Defendants to a jury trial. The Constitution, through the Seventh Amendment, "preserve[s]" the

5   jury-trial right in "Suits at common law." U.S. Const. amend. VII. "Suits at common law" were

6   actions maintainable in English "courts of law," as opposed to "courts of equity." *Parsons v.*

7   *Bedford*, 28 U.S. 433, 446–48 (1830) (Story, J.). "Although the thrust of the Amendment was to

8   preserve the right to jury trial as it existed in 1791, it has long been settled that the right extends

9   beyond the common-law forms of action recognized at that time." *Curtis v. Loether*, 415 U.S.

10  189, 193 (1974). It applies to all "suits in which *legal* rights were to be ascertained and

11  determined, in contradistinction to those where equitable rights alone were recognized, and

12  equitable remedies are administered." *Bedford*, 28 U.S. at 447.

13

To "carefully preserv[e] the right to trial by jury where legal rights are at stake," courts

14  "examine both the nature of the issues involved and the remedy sought." *Chauffeurs, Teamsters*

15  *& Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990); *see also Tull v. United States*, 481

16  U.S. 412, 417–18 (1987). In conducting that analysis, federal courts "jealously guard[]" the

17  "fundamental and sacred" jury right, *Jacob v. New York City*, 315 U.S. 752, 752–753 (1942),

18  respect the strong "federal policy favoring jury trials," *Simler*, 372 U.S. at 222, and, when in

19  doubt, err in favor of trial by jury, *see Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11

20  (1959).

21

**A.      Public nuisance liability turns on legal rights and must be tried to a jury.**

22

The Seventh Amendment requires a jury to decide public nuisance liability before a court

23  can impose equitable relief because that is what Founding Era common law required.

24

In determining whether a Seventh Amendment jury trial right attaches, courts consider the

25  practice during the eighteenth century "in the courts of England prior to the merger of the courts

26  of law and equity." *Terry*, 494 U.S. at 564 (quotation omitted). When the Seventh Amendment

27  was ratified in 1791, English equity courts had no jurisdiction to determine public nuisance

28  liability. Rather, before a court of equity could enjoin a public nuisance, a law court had to

1    resolve liability via a jury trial. In a treatise published just before the Seventh Amendment's

2    ratification, Lord Hale (former Chief Justice of the King's Bench[1]) explained that "whether

3    [conduct] be a nuisance or not is a quæstio facti, and to be determined by a jury upon evidence,

4    and not a quæstio juris." Hale, L.C.J., De Jure Maris, *in* 1 Hargrave, *A Collection of Tracts* 85

5    (1787). Consistent with that rule, English cases addressing public nuisance before and shortly

6    after ratification of the Seventh Amendment observed "that [actions] upon the ground of public

7    nuisance … must be tried by jury," who must reach a verdict "before an injunction should issue."

8    *Att'y Gen. v. Cleaver* (1811) 34 Eng. Rep. 297, 299–300 (Ch.); *see Baines v. Baker* (1752) 27

9    Eng. Rep. 105–07 (Ch.) (refusing to enjoin alleged nuisance and recommending the case be

10   brought as a criminal action "in the King's Bench" to "try whether it was a nuisance or not"). At

11   the time, "there [was] no instance of holding [alleged misconduct] a nuisance, and therefore

12   enjoining it, without a trial" by jury. *Cleaver*, 34 Eng. Rep. at 300.

13       In the first half of the nineteenth century, English chancery courts slowly began to

14   recognize limited public nuisance jurisdiction.[2] *See Earl of Ripon v. Hobart* (1834), 40 Eng. Rep.

15   65, 68–70 (Ch.). While Chancellors continued to doubt jurisdiction to intervene without a jury,

16   they identified two "very confined and rare" exceptions subject to their equitable jurisdiction.

17   *Cleaver*, 34 Eng. Rep. at 299–300. First, equity courts could issue "preventive relief" to avoid

18   irreparable harm until an action at law was practical. *Cleaver*, 34 Eng. Rep. at 299–300. Second,

19   they could issue injunctions to restrain ongoing conduct indisputably or admittedly a public

20   nuisance; such as building a fence across a public highway—conduct now known as a nuisance

21   per se. *See Hobart*, 40 Eng. Rep. at 69; *Cleaver*, 34 Eng. Rep. at 299.[3] As one English equity

22

---

23   [1] At common law the King's Bench had jurisdiction over criminal matters. 3 William Blackstone,
     *Commentaries on the Laws of England*, *39–40. Because "no jury [could] be summoned to attend
24   [chancery] court[s]" sitting in equity, "if any matter of fact [was] strongly controverted," the
     Chancellor "usually direct[ed] the matter to be tried by jury" at "the bar of the court of [K]ing's
25   bench." 2 William Blackstone, Commentaries on the Law of England, *452.

26   [2] *See* Arthur C. Rounds, *Injunctions Against Liquor Nuisances*, 9 Harv. L. Rev. 521, 522–24
     (1896) (explaining that "jurisdiction of equity over a certain class of public nuisances" not
27   involving royal property "is not … of very ancient origin," with chancery courts starting to
     exercise equity jurisdiction in 1799).

28   [3] *See also* 58 Am. Jur. 2d Nuisances § 13 (2020) ("The traditional test for determining what is a
     nuisance per se is that the nuisance has become dangerous at all times, and under all

1   court explained in 1834: "[T]he jurisdiction of this Court over nuisance by injunction at all is of

2   recent growth, has not till very lately been much exercised, and has … found great reluctance on

3   the part of the learned Judges to use it, even in cases where the thing or the act complained of was

4   admitted to be directly and immediately hurtful to the Complainant." *Hobart*, 40 Eng. Rep. at 69.

5   A jury therefore was still required to resolve disputed nuisance liability where a defendant's

6   conduct was not categorically a nuisance but "may, according to circumstances, prove so"—

7   conduct now known as nuisance per accidens. *Id.* at 68–70. Thus, early nineteenth century cases

8   addressing property uses, such as factories, held that "[w]hat is a nuisance, considered with

9   reference to carrying on a trade, is a question of fact … which must be tried to a Jury." *Cleaver*,

10  34 Eng. Rep. at 299. In such cases, whether "the acts of [a] company … amounted to a [public]

11  nuisance" "depend[ed] upon a legal right, which [had to] be established … before the equity

12  [could] be administered." *Att'y Gen. v. U.K. Elec. Tel. Co.* (1861) 54 Eng. Rep. 899, 901–02

13  (Rolls.).

14          In the early 1800s, the renowned Chancellor of New York's equity court, James Kent,[4]

15  surveyed more than two centuries of English public nuisance law. *See Attorney Gen. v. Utica Ins.*

16  *Co.*, 2 Johns. Ch. 371, 384–390 (1815). Kent explained that before the "the time of [King]

17  Charles I" (i.e., before 1625–1649) courts of equity could decide nuisance questions only to

18  enjoin encroachments on "the property of the crown." *Id.* at 390; *see* Restatement (Second) of

19  Torts (1979) § 821B cmt. a. After that period, Kent explained, "equity jurisdiction[] in cases of

20  public nuisance" went "dormant" entirely until "the year 1795," rendering equitable nuisance

21  jurisdiction nonexistent "for [the] century and a half" leading up to the Seventh Amendment's

22  ratification. *Id.* (emphasis added).

23          In the decades following Chancellor Kent's survey in *Utica*, American authorities

24  recognized both the general rule that "[a] court of equity never grants an injunction against a

25

26  circumstances, to life, health, or property. That is, where an activity imminently and dangerously
    threatens the public health, it is a nuisance per se.") (collecting authorities).

27  [4] Chancellor Kent is widely considered the most influential American scholar of equity

28  jurisdiction. *See, e.g.*, John H. Langbein, *Chancellor Kent and the History of Legal Literature*, 93
    Colum. L. Rev. 547, 547–49, 567–68, 583–84 (1993).

public nuisance, without a previous trial by jury," *Proprietors of Charles River Bridge v. Proprietors of Warren Bridge*, 36 U.S. 420, 650 (1837) (Baldwin, J., concurring), and the narrow new exceptions allowing courts to independently enjoin conduct that poses "imminent danger" or is "in its nature" a nuisance, *Georgetown v. Alexandria Canal Co.*, 37 U.S. 91, 98–99 (1838). [5] Like English courts, American courts recognized the exceptions were of recent vintage, having "been finally sustained" in "1795." *Id.* [6] As Justice Joseph Story summed it up in his authoritative 1836 equity treatise, "[t]he question of nuisance or not must, in cases of doubt, be tried to a jury; and the injunction will be granted or not, as that fact is decided." 2 Joseph Story, *Commentaries on Equity Jurisprudence as Administered in England and America* § 923, at 202–03 (1st ed. 1836). [7]

---

[5] *See also, e.g.*, *Tuttle v. Church*, 53 F. 422, 427 (C.C.D.R.I. 1892) ("the question of nuisance or no nuisance must, where the evidence is conflicting and a doubt exists, be first tried by a jury") (collecting authorities); *Appeal of McClain*, 18 A. 1066, 1067 (Pa. 1890) (in public nuisance case a jury is required "to decide disputed questions of fact, and pass upon conflicting evidence"); *State v. Currier*, 19 A. 1000, 1000 (N.H. 1890) (in "informations in equity … for the suppression of public nuisances … the maintenance of the alleged nuisance is restrained until the question of nuisance or not is determined at law" "by the verdict of a jury"); *Thornton v. Grant*, 10 R.I. 477, 480–81 (1873) (whether alleged "public nuisance" "'be a nuisance or not is quaestio facti and to be determined by a jury'") (quotation omitted); *Burnham v. Hotchkiss*, 14 Conn. 311, 317–18 (1841) (where nuisance is not "per se," but "made so, by circumstances," the question of "nuisance or not, is a question of fact for the jury, and not a question of law for the court; and so are the authorities" (collecting authorities)); *State v. Tupper*, 23 S.C.L. (Dud.) 135, 139 (1838) (whether manufacturing plant was public nuisance "present[s] a question of nuisance or not, to be decided by a jury, not by the Judge"); *Mohawk Bridge Co. v. Utica & S.R. Co.*, 6 Paige Ch. 554, 555 (N.Y. Ch. 1837) ("[W]here the thing sought to be restrained is not in itself a nuisance … the court will not interfere until the matter has been tried at law."); *Att'y Gen. v. New Jersey R.R. & Transp. Co.*, 3 N.J. Eq. 136, 139, 142 (N.J. Ch. 1834) (where plaintiffs "seek to abate [an] alleged nuisance," the "fact, whether it be a nuisance or not, is proper to be tried by jury"); *Crowder v. Tinkler* (1816) 34 Eng. Rep. 645, 646 (Ch.) (where Attorney General brings action alleging public nuisance, "generally the Court [of equity] would not interpose by injunction until it had been tried at Law"); *Cleaver*, 34 Eng. Rep. at 299–300 ("the law is laid down in treatises … that [actions] upon the ground of public nuisance … must be tried by Jury"); *Hobart*, 40 Eng. Rep. at 69 (courts ordinarily "will refuse to interfere [in alleged nuisances] until the matter has been tried at law").

[6] Toward the end of the nineteenth century, the Supreme Court upheld the constitutionality of statutes that confer jurisdiction to enjoin specified conduct without a jury trial, or a "statutory" nuisance per se. *See Mugler v. Kansas*, 123 U.S. 623, 657–66 (1887). In *Mugler*, equitable jurisdiction was proper because defendants "admitted every fact" necessary to establish that the alleged conduct "was *per se* a nuisance" under the terms of "the statute itself." *Id.* at 673–74. But *Mugler* recognized that courts typically must "first find [alleged conduct] to be" a common nuisance "in some *legal* mode." *Id.* at 672 (emphasis added). The Court thus preserved the general rule that, absent narrow circumstances establishing the fact of a nuisance beyond dispute, courts "refuse an injunction … until the state first obtains the verdict of a jury." *Id.* at 673–74.

[7] *See also, e.g.*, 5 John N. Pomeroy, *A Treatise on Equitable Remedies* §§ 519–522 (4th ed. 1919) (recognizing that because "the rights that are involved in cases of nuisance are purely legal" the

---

The Seventh Amendment codifies the Founding Era jurisprudence. The narrow exceptions courts recognized after the Founding are irrelevant to the Seventh Amendment, which tethers the jury trial right to the common law in effect in 1791. And they are also inapplicable in a case, like this one, where a plaintiff alleges neither imminent irreparable harm nor a nuisance per se.[8] Accordingly, Defendants are entitled to a jury trial regarding nuisance liability—the "question of nuisance or not"—before any remedy may be imposed.

Defendants' entitlement to a jury trial on that question is not disturbed by the nature of the remedy sought. *See generally Terry*, 494 U.S. at 565 ("[W]e examine the remedy sought and determine whether it is legal or equitable in nature."). Here, Plaintiff has unequivocally disavowed any "claims for damages" and purports to seek only equitable relief. *See, e.g.*, Doc. No. 337. Defendants do not agree that the principal relief Plaintiff seeks—a cash award for government to spend to address opioid abuse, *e.g.*, PFS at 2—is proper or equitable in nature.[9] But for present purposes, the dispositive point is that the common law at the time of the Founding required a jury verdict before ***any*** remedy for a public nuisance—equitable or otherwise—could be awarded. This was the conclusion reached by the court presiding over the federal opioids MDL. *See In re Nat'l Prescription Opiate Litig.*, 17-MD-2804, 2019 WL 4621690, at *1–2 (N.D.

---

"general doctrine [was] that 'either party is entitled to insist that the questions on which the legal rights depend should be tried at law'") (quotation omitted) (collecting authorities); *The American and English Encyclopedia of Law: Volume 16* (1891) ("[T]he existence of facts which the court may declare sufficient to constitute a public nuisance is a question of fact for the jury.") (collecting authorities).

[8] Plaintiff does not seek an emergency preventative injunction to stop any ongoing (or imminently threatened) conduct. *See* 2 Story's Eq. Jur. § 924 (describing equitable exception for "immediate" relief before "irreparable mischief is done"). Instead, Plaintiff chiefly seeks a cash award "to monetarily fund [City] programs and services." Third Am. Gov't Pl. Fact Sheet ("PFS") at 2; *see* FAC ¶ 905. Nor does Plaintiff allege a nuisance per se that is "in itself noxious." *Hobart*, 40 Eng. Rep. at 69. Instead, Plaintiff's nuisance claim alleges that lawful conduct—the manufacture, distribution, marketing, and dispensing of FDA-approved prescription medications—allegedly became a nuisance based on the "circumstances." *Id.* at 68–70. In such a case, the common law always has required a jury trial.

[9] By the late nineteenth century, courts of equity had limited jurisdiction to abate a nuisance—but "abatement" in that context consisted of injunctive relief, not the payment of money. *See, e.g., Mugler*, 123 U.S. at 677–78 (discussing the abatement of a nuisance by "closing the brewery, and thus putting an end to its use in the future"). "Almost invariably," a suit that seeks "to compel the defendant to pay a sum of money to the plaintiff" is a suit "for money damages," which is "the classic form of legal relief." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quotation marks and citations omitted).

Ohio Sept. 24, 2019). Relying on English case law and early treatises, it concluded "that, historically, nuisance actions had a legal component." *Id.* at *2. The court accordingly held that the litigants were entitled to a jury trial on public nuisance liability, while the court retained authority to fashion an equitable remedy "if liability attaches." *Id.* at *1, 6.

The California Court of Appeal's decision in *People v. ConAgra Grocery Products Co.*, 17 Cal. App. 5th 51 (2017), does not change that conclusion. First, the *ConAgra* court analyzed the right to a jury under state law—not federal law—and held that the California Constitution did not require a jury trial for a public nuisance suit seeking funds to remove lead paint from certain California homes. *See id.* at 65, 120–27. Second, it failed to address the relevant question under federal law: whether at common law disputes about public nuisance liability required resolution of "legal rights." *Terry*, 494 U.S. at 565. The court ignored the vast authority establishing that disputes about public nuisance liability "depend[] upon a legal right[] which must be established … before the equity can be administered," *ConAgra*, 17 Cal. App. 5th at 126 (quoting *U.K. Elec. Tel. Co.*, 54 Eng. Rep. at 901–02), and instead focused on a distinction between the kind of "remedial abatement order" the plaintiffs demanded and "prohibitory injunctions" aimed at stopping "prospective" conduct, *id.* at 124–25. The court found no case proving that a jury trial was guaranteed in a "remedial abatement" case, *see id.* at 128–31, but no Founding Era authority suggests that the general rule that the legal right be determined before the equitable remedy depended on a distinction between "remedial" and "prospective" injunctions.

Third, Plaintiff here *does* seek prospective remedies. Alleging that Defendants "have not fully changed their ways or corrected their past misconduct," First Am. Compl. ("FAC") ¶ 20, Plaintiff seeks "costs that *will be* associated with the *future* efforts to abate the public nuisance," *id.* ¶ 905 (emphases added), "injunctive relief to lessen or prevent the threat of *future harm* from Defendant's actions," *id.* (emphasis added), including "legal" ***and*** "equitable" relief. *See id.* ¶¶ 900–06. Thus, even if *ConAgra*'s unsupported distinction between remedial and prospective injunctions were meaningful, the case mandates a jury trial.

**B.     Defendants also are entitled to a jury trial on FAL and UCL liability.**

Because government enforcement actions to collect civil penalties were classic legal

1    claims that only law courts could adjudicate, the Seventh Amendment jury right extends to the

2    liability phase of Plaintiff's FAL and UCL claims as well. While the California Supreme Court

3    reached a different conclusion under California law in *Nationwide*, it applied a distinct state law

4    test to determine jury rights under the state constitution that is not applicable here.

### 1.    *Plaintiff seeks civil penalties that are legal in nature.*

6         To determine whether there is a federal jury right on FAL and UCL liability, the Court

7    need only look to the relief Plaintiff seeks. At the time of the Founding, there was no perfect

8    analogue to modern state law statutory claims like the UCL and FAL. *See Tull*, 481 U.S. at 420–

9    21. But "more important" than an analogous cause of action, *id.* at 421, is whether the relief

10   sought is "legal or equitable in nature." *Id.* at 418, 421; *accord Granfinanciera, S.A. v. Nordberg*,

11   492 U.S. 33, 42 (1989).

12        Here, Plaintiff sues for both a legal remedy (civil penalties) and an equitable remedy

13   (injunctive relief). *See* FAC ¶¶ 919, 925; PFS at 2.[10] The Supreme Court recognized in *Tull* that

14   such government actions for civil penalties present legal claims for which a jury must decide

15   liability. At issue in *Tull* was a lawsuit by the federal government seeking civil penalties and

16   injunctive relief under the Clean Water Act. *See Tull*, 481 U.S. at 414–15. The Court held that

17   "[a] civil penalty was a type of remedy at common law that could ***only*** be enforced in courts of

18   law," *id.* at 422 (emphasis added), explaining that courts of law had exclusive authority to issue

19   remedies "intended to punish culpable individuals," as opposed merely to "extract[ing]

20   compensation or restor[ing] the status quo," *id.* The legislature's "authorization of punishment to

21   further retribution and deterrence clearly evidences that th[e] subsection [authorizing penalties]

22   reflects more than a concern to provide equitable relief." *Id.* at 423. "Because the nature of th[at]

23   relief … was traditionally available only in a court of law," the defendant was "entitled to a jury

24   trial on demand." *Id.*

25        Like the penalties in *Tull*, UCL and FAL penalties are fundamentally punitive and

26   therefore legal in nature. UCL actions for "civil penalties" are "designed to penalize a defendant

27

28   ───────────────

[10] Plaintiff no longer seeks equitable restitution. *See* Dkt. 337 ("[T]he People have elected not to
pursue restitution.").

1   for past illegal conduct." *California v. Altus Fin.*, 36 Cal. 4th 1284, 1306 (2005) (quotation

2   omitted). An "action filed by the People seeking injunctive relief and civil penalties" therefore "is

3   fundamentally a law enforcement action." *Id.* at 1189 (citation omitted). As the California

4   Supreme Court acknowledged, "the UCL and FAL," even if they also have other objectives,

5   indisputably have "a punitive or deterrent aspect." *Nationwide*, 9 Cal. 5th at 326. Because

6   Plaintiff seeks to impose FAL and UCL remedies that "exact[] punishment" and are based on "the

7   need for retribution and deterrence," *Tull*, 481 U.S. at 422 & n.7, they plainly are legal under

8   federal law, *id.* at 425; *cf. United States v. J. B. Williams Co.*, 498 F.2d 414, 422–23 (2d Cir.

9   1974) ("There can be no doubt that in general there is a right of jury trial when the United States

10  sues . . . to collect a penalty, even though the statute is silent on the right of jury trial.") (Friendly,

11  J.) (collecting authorities) (quotation omitted).

12          ***2.      Plaintiff's demand for injunctive relief does not invalidate Defendants'
                 jury trial entitlement.***

13

14          Plaintiff's request for injunctive relief in addition to civil penalties does not override the

15  legal character of its UCL and FAL claims. When "[the government], in addition to seeking civil

16  penalties, also request[s] equitable relief, … [that] does not undercut [a party's] entitlement to a

17  jury." *U.S. Sec. & Exch. Comm'n v. Jensen*, 835 F.3d 1100, 1106 (9th Cir. 2016). In *Tull*, the

18  Supreme Court rejected the argument that requests for equitable relief could nullify the jury rights

19  that attach to civil penalties. That argument, *Tull* explained, "has at least three flaws." 481 U.S. at

20  424; *see also Dairy Queen*, 369 U.S. at 470 ("the right to trial by jury may [not] be lost as to legal

21  issues where those issues are characterized as 'incidental' to equitable issues").

22          First, while courts in equity could award "monetary restitution" incidental to injunctive

23  relief, equity courts could never "enforce civil penalties" under any circumstance because they

24  are punitive. *Tull,* 481 U.S. at 425.

25          Second, the civil penalties in *Tull* were not "incidental" because the government sought

26  "[a] potential penalty of $22 million," as compared to relatively "modest" equitable relief. *Id*. at

27  424–25. Here, too, Plaintiff undoubtedly will seek substantial civil penalties, and there is no basis

28  to deem that demand "incidental" to anything—especially given that Plaintiff has abandoned its

1  request for equitable restitution and has not yet disclosed what injunctive relief it might seek

2  under its UCL or FAL claims. *See* Dkt. 337.

3      Finally, *Tull* held that legal relief cannot be "incidental" or "intertwined" with equitable

4  relief where the government is "free to seek an equitable remedy … independent of[] legal relief."

5  *Tull*, 481 U.S. at 425. Plaintiff is "free" to pursue injunctive relief independent of civil penalties

6  under the UCL and FAL. As in *Tull*, "each kind of relief is separately authorized in a separate and

7  distinct statutory provision." *Tull*, 481 U.S. at 425.[11] Indeed, while the statutes originally

8  permitted only equitable relief, the legislature later amended them to authorize public officials to

9  separately seek civil penalties. *See Nationwide*, 9 Cal. 5th at 297–99, 305–06. Thus, "as

10  in *Tull,* the [the Plaintiff is] free to seek equitable relief" under the original provisions, "legal

11  relief" under the new provisions, "or both, as [they] chose to do here." *McLaughlin v. Owens

12  Plastering Co.*, 841 F.2d 299, 301 (9th Cir. 1988). Having attached legal demands to equitable

13  ones, Plaintiff cannot "deny … defendant[s] a jury trial by attempting to characterize the action"

14  as equitable. *Id.* Defendants "ha[ve] a constitutional right to a jury trial to determine [any]

15  liability on the [Plaintiff's] legal claims." *Tull*, 481 U.S. at 425.

### 3.    The California Supreme Court's decision in Nationwide does not change the result.

18      There are further reasons why *Nationwide* has little relevance to Defendants' right to a

19  jury trial under the Seventh Amendment, as the court repeatedly recognized in that decision.

20  "First and most fundamentally," the "constitutional right to a civil jury trial under the California

21  Constitution is entirely independent of the civil jury trial right under the Seventh Amendment."

22  *Nationwide*, 9 Cal. 5th at 330. And *Tull*'s conclusion that civil penalties mandate a jury trial, in

23  particular, "rested on several points in which the federal interpretation of the Seventh Amendment

24  departs from California's interpretation of the California jury trial provision." *Id.* at 330–31.

25      To start, unlike federal law, California law requires first deciding whether a suit has

26  "severable" legal and equitable issues. *See id.* at 316–17. A case is "severable" if the complaint

---

[11]*See, e.g.*, Cal. Bus. & Prof. Code §§ 17203 (UCL injunctive relief); 17206 (UCL civil penalties); 17535 (FAL Injunctive relief); 17536 (FAL civil penalties).

1   presents two completely separate "rights of action, one legal and one equitable." *Id.* at 317

2   (quotation omitted). If the case is severable, California courts implement an "equity first

3   preference" such that trial courts resolve equitable issues *first*, which makes the "court's

4   resolution of the matter … binding and may leave nothing for a jury to resolve." *Id.* That is the

5   opposite of what the federal constitution requires. *See* § Part II.

6          Under California law, a case is "nonseverable" when the same alleged *misconduct* is the

7   basis for both legal and equitable relief, or when the amount of legal relief might impact the

8   equitable remedy issued. *See Nationwide*, 9 Cal. 5th at 325–26. When that is so, California courts

9   apply a "holistic" "gist of the action" test to determine if the action is legal or equitable. *Id.* at

10   331–33. The "gist of the action" test considers numerous elements to determine "whether the

11   legal or equitable aspects predominate," *id.* at 331, including whether "the statutory scheme as a

12   whole" is "infused with equitable principles that must be considered," whether the purpose of the

13   statute is generally "remedial," and whether "civil penalties"—though traditionally "legal"—are

14   "to be determined by a … discretionary consideration of multiple factors," *id.* at 319–25

15   (quotation omitted). Applying this test, *Nationwide* determined that UCL and FAL claims are

16   nonseverable and, considered holistically, the equitable features of the causes of action

17   predominate. Among those equitable features were "expansive and broadly worded substantive

18   standards" for determining liability and penalty provisions that "afford[] broad discretion to

19   consider a nonexclusive list of factors" in calculating the amount of penalties. *See id.* at 326–27.

20          *Nationwide* has no bearing here because, as addressed above, federal law controls this

21   case, *see Simler*, 372 U.S. at 222, and federal jury-trial jurisprudence requires a different

22   outcome. The *Nationwide* court contrasted *Tull* with the California framework because *Tull*

23   "relied primarily on its determination that the civil penalties in question were intended, at least in

24   part, to be punitive in nature, which … was apparently sufficient to render the action legal … and

25   require a jury." *Nationwide,* 9 Cal. 5th at 332. And the court acknowledged that civil penalties

26   often are "properly considered legal in nature." *Id.* at 326; *see also id.* at 342 ("Plaintiffs here

27   seek a traditionally ***legal remedy***, ***civil penalties***, along with the equitable remedies of injunction

28   and restitution.") (Kruger, J., joined by Liu & Cuéllar, JJ., concurring) (emphasis added).

1  "[F]ederal courts," the court also recognized, "have not applied the type of holistic gist of the

2  action standard that California decisions have utilized … , and thus the *Tull* decision is

3  distinguishable." *Id.* at 333. There is no federal analogue to California's "severability" test. At

4  most, there is a recognition that suits for legal relief do not ***always*** mandate a jury because in

5  some cases they are "intertwined" with, or "incidental to," equitable relief. *Tull*, 481 U.S. at 424.

6  As earlier explained, that is not the case here. *See supra* § I.B.2.

7       Finally, *Nationwide* suggests that *Tull* is "distinguishable" because the UCL and FAL

8  have "broadly worded" liability standards while the CWA has a comparatively narrow standard.

9  That is irrelevant. Federal courts do not undertake the "gist of the action" test and many of the

10  abstract "equitable features" relevant under California law, which *Nationwide* relied on to deny a

11  jury trial right, simply do not apply here. That includes, for instance, whether the statutes include

12  a "broad" liability standard, or whether the civil penalty provisions impose a fixed amount for

13  every violation rather than an equitable assessment with a cap. Indeed, *Tull* expressly rejected

14  exactly those kinds of assessments. *See, e.g.*, *Tull*, 481 U.S. at 422 n.7 (rejecting argument that "a

15  statutory penalty … [that] is not fixed or readily calculable from a fixed formula" is "significant"

16  in considering whether cause of action is equitable). *Nationwide* recognized as much, noting that

17  *Tull* "did not take into account a number of nonseverable equitable aspects of the action for civil

18  penalties at issue there" and characterizing the result under federal law as "artificial." *Nationwide*,

19  9 Cal. 5th at 331–33. Of course, whether *Nationwide* disagrees with what the Seventh

20  Amendment mandates under federal law is "wholly irrelevant." 9 Wright & Miller, *Federal*

21  *Practice & Procedure* § 2303, at 104.

22  **II.    A jury must resolve legal claims before the Court considers equitable claims under**
         **well-settled Seventh Amendment principles.**

23

24       Even if this Court were to conclude that some portion of Plaintiff's claims is equitable,

25  Defendants are entitled to a jury trial on any legal claims before the court resolves the equitable

26  claims. *See Beacon Theatres, Inc.*, 359 U.S. at 510–11. "[O]nly under the most imperative

27  circumstances … can the right to a jury trial of legal issues be lost through prior determination of

28  equitable claims." *Id.*; *see Dairy Queen*, 369 U.S. at 473. Indeed, the "order in which legal and

-12-

equitable claims joined in one suit [is] resolved" is paramount; "if an issue common to both legal and equitable claims was first determined by a judge, relitigation of the issue before a jury might be foreclosed by res judicata or collateral estoppel." *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550–52 (1990) (quotation omitted); *see also Ross v. Bernhard*, 396 U.S. 531, 537–38 (1970) (Defendants' "right to jury trial on the legal claims … must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims."). This would violate the Seventh Amendment right to a jury trial on legal claims.

## **CONCLUSION**

For the foregoing reasons, Defendants have a Seventh Amendment right to a jury trial.

1     Dated: November 20, 2020

2                                             Respectfully submitted,

3                                             By: */s/ Amy R. Lucas*
                                                  Amy R. Lucas (S.B. #264034)
4                                                 O'MELVENY & MYERS LLP
                                                  1999 Avenue of the Stars, 8th Floor
5                                                 Los Angeles, CA 90067
                                                  Tel: (310) 553-6700
6                                                 Fax: (310) 246-6779
                                                  alucas@omm.com
7

8                                                 Charles C. Lifland (S.B. #108950)
                                                  Sabrina H. Strong (S.B. #200292)
9                                                 O'MELVENY & MYERS LLP
                                                  400 South Hope Street
10                                                Los Angeles, CA 90071
                                                  Tel: (213) 430-6000
11                                                Fax: (213) 430-6407
                                                  clifland@omm.com
12                                                sstrong@omm.com

13

14                                                Amy J. Laurendeau (S.B. #198321)
                                                  O'MELVENY & MYERS LLP
15                                                610 Newport Center Drive, 17th Floor
                                                  Newport Beach, CA 92660
16                                                Tel: (949) 823-6900
                                                  Fax: (949) 823-6994
17                                                alaurendeau@omm.com

18
                                                  Stephen D. Brody (pro hac vice)
19                                                O'MELVENY & MYERS LLP
                                                  1625 Eye Street, NW
20                                                Washington, DC 20006
                                                  Tel: (202) 383-5300
21                                                Fax: (202) 383-5414
                                                  sbrody@omm.com
22

23                                                *Attorneys for Defendants Johnson &*
                                                  *Johnson, Janssen Pharmaceuticals,*
24                                                *Inc., Ortho-McNeil-Janssen*
                                                  *Pharmaceuticals, Inc., and Janssen*
25                                                *Pharmaceutica, Inc.*

26

27

28

                                         -14-

1  By:  */s/ Steven J. Boranian*
2       Steven J. Boranian (Bar No. 174183)
        Luke S. Porter (Bar No. 323847)
3       REED SMITH LLP
        101 Second Street, Suite 1800
4       San Francisco, CA 94105
        Telephone: (415) 543-8700
5       Facsimile: (415) 391-8269
        sboranian@reedsmith.com
6       lporter@reedsmith.com

7       Eric J. Buhr (Bar No. 217528)
8       Sarah B. Johansen (Nar No. 313023)
        REED SMITH LLP
9       355 South Grand Avenue, Suite 2900
        Los Angeles, CA 90071
10      Telephone: (213) 457-8000
        Facsimile: (213) 457-8080
11      ebuhr@reedsmith.com
12      sjohansen@reedsmith.com

13      *Attorneys for Defendant*
14      *AmerisourceBergen Drug Corporation*

15 By:  */s/ Alan R. Ouellette*
        Alan R. Ouellette (CA Bar No. 272745)
16      FOLEY & LARDNER LLP
        555 California Street, Suite 1700
17      San Francisco, CA 94104-1520
        Telephone: (415) 434-4484
18      Facsimile: (415) 434-4507
19      aouellette@foley.com

20      James W. Matthews (Pro Hac Vice)
        Ana M. Francisco (Pro Hac Vice)
21      Katy E. Koski (Pro Hac Vice)
        FOLEY & LARDNER LLP
22      111 Huntington Avenue
        Boston, MA 02199-7610
23      Telephone:    (617) 342-4000
        Facsimile:    (617) 342-4001
24      jmatthews@foley.com
25      afrancisco@foley.com
        kkoski@foley.com
26

27      *Attorneys for Defendant Anda, Inc.*

28

By:  */s/ Sonya D. Winner*
     Sonya D. Winner (Bar No. 200348)
     Nathan E. Shafroth (Bar No. 232505)
     Isaac D. Chaput (Bar No. 326923)
     COVINGTON & BURLING LLP
     Salesforce Tower
     415 Mission Street, Suite 5400
     San Francisco, California 94105-2533
     Telephone: + 1 (415) 591-6000
     Facsimile: + 1 (415) 591-6091

     *Attorneys for Defendant*
     *McKesson Corporation*

By:  */s/ Neelum J. Wadhwani*
     Neelum J. Wadhwani (Bar No. 247948)
     Enu A. Mainigi (pro hac vice)
     WILLIAMS & CONNOLLY LLP
     725 Twelfth Street, NW
     Washington, DC  20005
     Tel:  (202) 434-5000
     Fax:  (202) 434-5029
     nwadhwani@wc.com
     emainigi@wc.com

     Edward W. Swanson, SBN 159859
     August Gugelmann, SBN 240544
     SWANSON & McNAMARA LLP
     300 Montgomery Street, Suite 1100
     San Francisco, California 94104
     Telephone: (415) 477-3800
     Facsimile: (415) 477-9010
     ed@smllp.law
     august@smllp.law

     *Attorneys for Defendant*
     *Cardinal Health, Inc.*

1

By: /s/ Zachary W. Byer

2
Zachary W. Byer (S.B. #301382)
KIRKLAND & ELLIS LLP

3
555 South Flower Street
Los Angeles, CA 90071
Tel: (213) 680-8400

4
zachary.byer@kirkland.com

5
Jennifer G. Levy, P.C. (pro hac vice)
KIRKLAND & ELLIS LLP

6
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004

7
Tel: (202) 879-5000
Fax: (202) 879-5200

8
jennifer.levy@kirkland.com

9
Donna Welch, P.C. (pro hac vice)
Timothy W. Knapp, P.C. (pro hac vice)

10
Karl Stampfl (pro hac vice)
KIRKLAND & ELLIS LLP

11
300 North LaSalle, Chicago, IL 60654
Tel: (312) 862-2000

12
Fax: (312) 862-2200
donna.welch@kirkland.com

13
tknapp@kirkland.com
karl.stampfl@kirkland.com

14

15
*Attorneys for Defendants Allergan Limited
(f/k/a Allergan plc f/k/a Actavis plc),*

16
*Allergan Finance, LLC f/k/a Actavis, Inc.
f/k/a Watson Pharmaceuticals, Inc.,*

17
*Allergan Sales, LLC and Allergan USA,
Inc.*

18

19
By: /s/ Charles J. Stevens
Charles J. Stevens (SBN 106981)

20
cstevens@gibsondunn.com
Joshua D. Dick (SBN 268853)

21
jdick@gibsondunn.com
Kelsey J. Helland (SBN 298888)

22
khelland@gibsondunn.com
GIBSON DUNN & CRUTCHER LLP

23
555 Mission Street, Suite 3000
San Francisco, CA 94105

24
Telephone: 415.393.8200
Facsimile: 415.393.8306

25

26
Kaspar Stoffelmayr (pro hac vice)
kaspar.stoffelmayr@bartlitbeck.com

27
Katherine M. Swift (pro hac vice)
kate.swift@bartlitbeck.com

28
BARTLIT BECK LLP

By: /s/ Elizabeth A. Sperling
Elizabeth A. Sperling (CA Bar No.
231474)
ALSTON & BIRD LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Fax: (213) 576-1100
elizabeth.sperling@alston.com

Daniel G. Jarcho (pro hac vice)
ALSTON & BIRD LLP
950 F Street, NW
Washington, DC 20004
Telephone: (202) 239-3300
Daniel.jarcho@alston.com

Cari K. Dawson (pro hac vice)
Scott A. Elder (pro hac vice)
Jenny A. Hergenrother (pro hac vice)
ALSTON & BIRD LLP
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
cari.dawson@alston.com
scott.elder@alston.com
jenny.hergenrother@alston.com

*Attorneys for Defendant Noramco, Inc.*

By: /s/ Zachary Hill
Zachary Hill (S.B. #275886)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel: (415) 442-1000
zachary.hill@morganlewis.com

Wendy West Feinstein (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd.Fl.
Pittsburgh, PA 15219-6401
Tel: (412) 560-7455
wendy.feinstein@morganlewis.com

*Attorneys for Defendants*

1    54 West Hubbard Street
2    Chicago, IL 60654
     Telephone:  312.494.4400
3    Facsimile:  312.494.4440

4    Alex Harris (pro hac vice)
     alex.harris@bartlitbeck.com
5    BARTLIT BECK LLP
     1801 Wewatta Street, Suite 1200
6    Denver, CO 80202
     Telephone:  303.592.3100
7    Facsimile:  303.592.3140

8
     *Attorneys for Defendant Walgreen Co.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Teva Pharmaceuticals USA, Inc.;*
*Cephalon, Inc.; Actavis LLC; Actavis*
*Pharma, Inc. f/k/a Watson Pharma, Inc.;*
*Watson Laboratories, Inc.; Warner*
*Chilcott Company LLC; Actavis South*
*Atlantic LLC; Actavis Elizabeth LLC;*
*Actavis Mid Atlantic LLC; Actavis*
*Totowa LLC; Actavis Kadian LLC;*
*Actavis Laboratories UT, Inc. f/k/a*
*Watson Laboratories, Inc.-Salt Lake*
*City; and Actavis Laboratories FL, Inc.*
*f/k/a Watson Laboratories, Inc.-Florida*

By:  */s/ Sean O. Morris*
     Sean O. Morris (SBN 200368)
     John D. Lombardo (SBN 187142)
     Christopher Beeler (SBN 330496)
     ARNOLD & PORTER KAYE
     SCHOLER LLP
     777 South Figueroa Street, 44th Floor
     Los Angeles, CA 90017-5844
     Tel: (213) 243-4000
     Fax: (213) 243-4199
     Sean.Morris@arnoldporter.com
     John.Lombardo@arnoldporter.com

     *Attorneys for Defendants Endo*
     *Pharmaceuticals Inc., Endo Health*
     *Solutions Inc., Par Pharmaceutical, Inc.,*
     *and Par Pharmaceutical Companies,*
     *Inc.*

1

## **CERTIFICATE OF SERVICE**

2     I hereby certify that, on November 20, 2020, service of this document was accomplished

3   pursuant to the Court's electronic filing procedures by filing this document through the ECF

4   system.

5   Dated: November 20, 2020                    By: */s/ Amy R. Lucas*_____

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28