IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PURDUE PHARMA L.P., et al.,<br><br>Defendants. | Case No. 18-cv-07591-CRB<br><br>**ORDER DENYING SPECIALLY APPEARING ENDO INTERNATIONAL PLC'S MOTION FOR RECONSIDERATION OF THE ORDER DENYING MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION** |

Specially Appearing Defendant Endo International plc (hereinafter "Endo Int'l") argues that personal jurisdiction does not exist because the Court cannot impute Endo Int'l's subsidiaries' contacts to Endo Int'l under the alter ego theory of personal jurisdiction. See generally Endo MTD (dkt. 176). Accordingly, Endo Int'l requests that this Court reconsider its original Order denying Endo Int'l's Motion to Dismiss for Lack of Personal Jurisdiction. See generally Endo MRC (dkt. 321). Having considered the parties' briefs, the Court DENIES Endo Int'l's Motion for Reconsideration for the reasons discussed below.

I.     **BACKGROUND**

Defendant Endo Int'l filed a Motion to Dismiss Plaintiffs'—the City and County of San Francisco and the People of the State of California (hereinafter, "the People")—First Amended Complaint (dkt. 128) ("FAC") pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedures. See generally Endo MTD. The Court concluded that it could exercise personal jurisdiction over Endo Int'l under the alter ego doctrine. See Order (dkt. 285) at 23.

The Court specifically held that Endo Int'l and its U.S. subsidiaries[1] (collectively the "Endo entities") lack separate and distinct corporate personalities and treating the Endo entities as separate entities would result in substantial injustice to the People. See id.  Three allegations weighed in favor of concluding that Endo Int'l and its subsidiaries lack separateness: (1) Endo Int'l and its subsidiaries share many of the same offices, business, employees, and attorneys; (2) Endo Int'l's control over all Endo employees' stock and option incentive plans suggests that Endo Int'l fails to maintain an arm's-length relationship with its subsidiaries; and (3) Endo Int'l uses its subsidiaries to further a single venture. See id. at 20–23.  The Court incorporated and applied the analysis it used for defendant Teva Ltd. in determining that treating the Endo entities as distinct entities would enable a shell game to continue between Endo Int'l and its subsidiaries. Id. at 15–16, 23.

On October 16, 2020, Endo Int'l moved for leave from the Court to reconsider the portion of the Court's Order concluding that "fraud or injustice" would result if it failed to treat Endo Int'l as the alter ego of its subsidiaries for personal jurisdiction purposes. See Endo Mot. for Leave (dkt. 314).  Four days later, the Court granted Endo Int'l leave to file a motion for reconsideration. See Order Granting Leave (dkt. 316).

## II.     LEGAL STANDARD

### A.     Motion for Reconsideration.

Rule 59(e) of the Federal Rules of Civil Procedure permits a district court to reconsider and amend its previous order.  However, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999) (emphasis added).

The Court reviews the present motion for any clear error that it committed in its original order.  "The clear error standard is significantly deferential and is not met unless the reviewing court is left with a 'definite and firm conviction that a mistake has been committed.'" Cohen v.

---

[1] Endo Pharmaceuticals Inc., Endo Health Solutions Inc., Par Pharmaceutical, Inc., and Par Pharmaceutical Companies, Inc.

2

U.S. Dist. Ct. for N. Dist. of Cal., 586 F.3d 703, 708 (9th Cir. 2009) (quoting Concrete Pipe & Prods. v. Constr. Laborers Pension Tr., 508 U.S. 602, 623 (1993)).  A mistake occurs when the court's prior decision is "illogical, implausible, or without support in inferences that may be drawn from the facts in the record."  United States v. Hinkson, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).  A clear error does not exist solely because "another reasonable judicial body 'would have arrived at a different result.'"  J & J Sports Prods., Inc. v. Juanillo, C-10-01801 WHA, 2011 WL 335342, at *1 (N.D. Cal. Feb. 1, 2011) (quoting All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

### B.     Personal Jurisdiction under the Alter Ego Doctrine.

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction.  "[I]f a corporation is the alter ego of an individual defendant, or one corporation the alter ego of another, the Court may 'pierce the corporate veil' jurisdictionally and attribute 'contacts' accordingly."  RAE Sys., Inc. v. TSA Sys., Ltd., No. C 04-2030 FMS, 2005 WL 1513124 (N.D. Cal. June 24, 2005) (quoting Certified Building Prods., Inc. v. NLRB, 528 F.2d 968, 969 (9th Cir. 1975)).  "The standard for personal jurisdiction under an alter ego theory is lower than the standard for liability under an alter ego theory."  Television Events & Mkt., Inc. v. Amcon Distrib. Co., 416 F. Supp. 2d 948, 962 (D. Haw. 2006) (citing San Mateo Cnty. Transit Dist. v. Dearman, Fitzgerald and Roberts, Inc., 979 F.2d 1356, 1358 (9th Cir. 1992)).  Courts shall apply the "law of the state in which the district court sits" to determine whether personal jurisdiction exists under the alter ego theory of jurisdiction.  Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003).

Under California law, a court may impute jurisdictional contacts to an alter ego if the plaintiff can make a prima facie case "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice."[2]  Ranza v. Nike, Inc., 793 F.3d 1059, 1073

---

[2] Factors suggesting that two entities have a unity of interest and ownership include: (1) inadequate capitalization, (2) commingling of funds and other assets, (3) disregard of corporate formalities and failure to maintain an arm's length relationship, (4) holding out by one entity that is liable to the debts of the other, (5) identical equitable ownership, (6) use of the same offices and

3

1  (9th Cir. 2015) (quoting Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir. 2001)) (internal
2  quotation marks omitted). The alter ego doctrine is not limited to intentional fraud, nor does it
3  require bad faith. See RRX Indus., Inc. v. Lab-Con, Inc., 772 F.2d 543, 546 (9th Cir. 1985); Pac.
4  Bell Tel. Co. v. 88 Connection Corp., 15-cv-04554-LB, 2016 WL 3257656, at *3 (N.D. Cal. June
5  14, 2016). So long as there is a unity of interest and ownership, courts will ignore the corporate
6  form and attribute wrongful or inequitable conduct to the organization controlling the corporation.
7  See Pac. Bell Tel. Co., 2016 WL 3257656, at *3 (citing Sonora Diamond Corp. v. Super. Ct., 83
8  Cal. App. 4th 523, 538 (2000)).

   In the context of a parent subsidiary relationship, a plaintiff can satisfy the injustice prong if it can demonstrate that "an inequitable result will follow if the acts are treated as those of the [subsidiaries'] alone." RRX Indus., Inc., 772 F.2d at 545. "Inequitable results flowing from the recognition of the corporate form include the frustration of a meritorious claim, perpetuation of a fraud, and the fraudulent avoidance of personal liability." Pac. Mar. Freight, Inc. v. Foster, 10-cv-0578-BTM-BLM, 2010 WL 3339432, at *7 (S.D. Cal. Aug. 24, 2010) (citing Hennessey's Tavern, Inc. v. Am. Air Filter Co., 204 Cal.App.3d 1351, 1359 (1988)). An inequitable result also includes enabling a "shell game," in which an entity deflects liability on to shell corporations to avoid liability. See Cadence Design Sys., Inc. v. Pounce Consulting, Inc., No. 17-cv-04732-PJH (SK), 2019 WL 1768619, at *6 (N.D. Cal. Apr. 1, 2019), report and recommendation adopted, No. 17-cv-04732-PJH, 2019 WL 1767332 (N.D. Cal. Apr. 22, 2019).

   In assessing whether personal jurisdiction exists, a court may consider evidence presented in affidavits or order discovery on jurisdictional issues. See Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). Even if a plaintiff makes a prima facie showing, it does not necessarily mean that the case proceeds to the merits; rather, if the pleadings and submitted

---

employees, (7) lack of segregation of corporate records, (8) manipulating assets between entities so as to concentrate the assets in one and the liabilities in another, and (9) identical directors and officers. See Daewoo Elecs. Am. Inc. v. Opta Corp., 875 F. 3d 1241, 1250 (9th Cir. 2017) (internal citations omitted). These factors help determine whether the parent corporation "totally controls the actions of the subsidiary so that the subsidiary is the mere alter ego of the parent," such that the Court may exercise jurisdiction over both the parent and its subsidiary. Howard v. Everex Sys., Inc., 228 F.3d 1057, 1069 n.17 (9th Cir. 2000).

1   materials raise "disputed questions of fact with regard to jurisdiction," the district court can
2   exercise its discretion to hold a preliminary hearing in order to resolve the dispute. Id. But, if the
3   "jurisdictional facts are intertwined with the merits," such that "a decision on a jurisdictional issue
4   is dependent on the merits . . . . [i]t is preferable that this determination be made at trial, where a
5   plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his
6   case on the merits." Id. at 1285 n.2 (internal citations omitted).

### III. DISCUSSION

Endo Int'l's motion for reconsideration focuses solely on whether failing to disregard Endo Int'l's corporate form for the purpose of imputing its subsidiaries' contacts to Endo Int'l would do an injustice to the People. Endo Int'l argues that "at most" the People have "put forth allegations that Endo International supposedly controls it U.S. subsidiaries . . . . [but] [c]ontrol alone, however, cannot establish alter-ego liability or jurisdiction." Endo MRC Reply (dkt. 346) at 5. Despite Endo Int'l's characterization, the People's allegations go beyond control. The People allege that Endo Int'l abuses the corporate form by using its subsidiaries "to shield its wrongfully generated profits . . . from liability," and "siphon[] the U.S.-based revenues beyond the Court's jurisdiction." MRC Opp. (dkt. 332) at 7; see MTD Opp. (dkt. 202) at 11. The parties' disagreement largely stems from a misunderstanding of the injustice prong, so the following analysis evaluates the law behind the injustice prong before addressing the merits.

#### 1. Injustice Prong.

"The essence of the alter ego doctrine is that justice be done. 'What the formula comes down to, once shorn of verbiage about control, instrumentality, agency, and corporate entity, is that liability is imposed to reach an equitable result.'" Mesler v. Bragg Mgmt. Co., 39 Cal. 3d 290, 301 (1985) (internal citation omitted). The alter ego theory's injustice element focuses on "the injustice created by recognition of [a] corporate entity, and the intent of the incorporators to evade civil or criminal liability." Seymour v. Hull & Moreland Eng'g, 605 F.2d 1105, 1111 (9th Cir. 1979).[3]

---

[3] While Seymour addressed an alter ego claim under federal common law, federal common law and California law share a similar alter ego analysis. See, e.g., Ministry of Def. of the Islamic

1    Courts may disregard a corporate entity when failing to do so would enable that
2 corporation "to perpetuate fraud, circumvent a statute, or accomplish some other wrongful or
3 inequitable purpose." Sonora Diamond Corp., 83 Cal. App. 4th at 538. "Other wrongful or
4 inequitable" conduct includes abuses of the corporate form, such as under-capitalizing the entity,
5 misrepresenting the corporate structure to creditors, and using related entities as a shell to avoid
6 liability for wrongful conduct that benefitted the principal. See Orloff v. Allman, 819 F.2d 904,
7 909 (9th Cir. 1987), abrogated on other grounds by Hollinger v. Titan Cap. Corp., 914 F.2d 1564
8 (9th Cir. 1990) (en banc); Walsh v. Kindred Healthcare, 798 F. Supp. 2d 1073, 1083–84 (N.D.
9 Cal. 2011).

10    The alter ego doctrine therefore "prevents a parent corporation from escaping liability by
11 abusing corporate privilege through a subsidiary that is, in effect, a sham corporation, to commit
12 wrongful acts." Masimo Corp. v. Sotera Wireless, 19-cv-01100-BAS-NLS, 2020 WL 2306587,
13 *6 (S.D. Cal. May 8, 2020).

### 2. The People Allege More than Control.

Endo Int'l allegedly controls its subsidiaries, uses them to perpetuate unlawful marketing and supply chain schemes, siphons the profits from such conduct, and invokes their corporate separation to avoid liability despite benefitting from the unlawful conduct. See MTD Opp. at 11. Many courts have concluded that such allegations merit disregarding the corporate entity. See, e.g., Pac. Bell. Tele. Co., 2016 WL 3257656, *5–6; Johnson v. Serenity Transp., Inc., 141 F. Supp. 3d 974, 985–86 (N.D. Cal. 2015); Walsh, 789 F. Supp. 2d at 1083–84; Updateme Inc. v. Axel Springer SE, 17-cv-05054-SI, 2018 WL 1184797, at *10–11 (N.D. Cal. Mar. 7, 2018); Limestone Memory Sys. LLC v. Micron Tech., Inc., SA CV 15-0278-DOC (KESx), 2019 WL 8690217 (C.D. Cal. Dec. 26, 2019).

For example, in Pacific Bell Telephone Co., the court concluded that failing to pierce 88 Connection Corporation's corporate veil would result in injustice because it guaranteed the success of defendants' scheme to avoid paying FCC-mandated fees to plaintiffs. 2016 WL

---

Republic of Iran v. Gould, Inc., 969 F.2d 764, 769 n.3 (9th Cir. 1992).

6

3257656, at *6. Endo Int'l argues that Pacific Bell Telephone Co. is distinguishable from the present case because Pacific Bell Telephone Co. involved an under-capitalized defendant that had previously avoided complying with judgments. See Endo MRC Reply at 3. However, Pacific Bell Telephone Co. stands for the principle, endorsed by other decisions, that injustice results when a court fails to disregard the corporate form of a defendant that uses its subsidiary to perpetuate unlawful conduct and avoid liability from a meritorious claim. See 2016 WL 3257656, at *6; see also Updateme Inc., 2018 WL 1184797, at *10–11.

Contrary to Endo Int'l's assertion that "no case . . . finds or affirms a prima facie case of alter ego on such a record," Endo MRC Reply at 6, the People's injustice theory resembles the theories in Updateme Inc., 2018 WL 1184797 and Limestone Memory Systems LLC, 2019 WL 8690217. Both cases reiterate the principle that "[i]nequitable results flowing from the recognition of the corporate form include the frustration of a meritorious claim, perpetuation of a fraud, and the fraudulent avoidance of personal liability." Limestone Memory Sys. LLC, 2019 WL 8690217, at *17 (quoting Updateme Inc., 2018 WL 1184797, at *10) (internal quotation marks omitted). In Updateme Inc., the defendants pitched business opportunities to plaintiffs in order to gain access to their proprietary information. 2018 WL 1184797, at *1, *10. Once defendants had access, they used their subsidiary to "misappropriate and use that information to [defendants'] own benefit." Id. at *10. The court concluded that permitting defendants to avoid liability for their abuses would constitute an unjust result. See id. at *11.

Like Updateme Inc., Endo Int'l and its subsidiaries allegedly used deception and misrepresentations to financially benefit from their customers and the public. See MTD Opp. at 3 (citing FAC ¶¶ 254–62, 292–302, 373–95). For example, the Endo entities allegedly knew that drug users widely abused their opioid products yet marketed the products as "tamper resistant and abuse deterrent" to induce more sales. FAC ¶ 389. Thus, just as the defendants in Updateme Inc. sought to hide behind their subsidiaries after using them to defraud the plaintiffs, here, Endo Int'l attempts to hide behind its subsidiaries after allegedly using them to deceive and take advantage of the People.

In Limestone Memory Systems LLC, the Court relied on a similar record to conclude that

failing to attribute Micron's subsidiaries' conduct to Micron would "frustrate a meritorious claim" against Micron and therefore, produce an inequitable result. 2019 WL 8690217, at *17. Limestone sought to hold Micron liable for using its subsidiaries to induce customers into violating Limestone's patents. See id. at 1. The court held that recognizing Micron and its subsidiaries' "corporate separateness . . . would allow Micron 'to use its complex corporate organization to insulate itself from liability for the conduct of its enterprise.'" Id. at *18 (internal citation omitted).

Limestone and the People share comparable allegations and arguments pertaining to the injustice element. Compare Limestone Memory Sys. LLC, 2019 WL 8690217, at *18 ("[O]bserving corporate separateness in these circumstances would allow Micron 'to use its complex corporate organization to insulate itself from liability for the conduct of its enterprise.'") with MTD Opp. at 5 ("Endo International is attempting to use the corporate form to shield its wrongfully generated profits . . . from liability."). However, the People go further and argue that failing to impute the Endo subsidiaries' contacts would permit Endo Int'l to "siphon[] U.S.-based revenues beyond the Court's jurisdiction." MRC Opp. at 5. To support this argument, the People note that over 90% of Endo Int'l's net revenues stem from its U.S. subsidiaries, which Endo Int'l "manages through a targeted sales and marketing infrastructure, a compliance program and code of conduct, and a stock and option incentive plan that applies to all subsidiaries and subsidiary employees." MRC Opp. at 7 (citing MTD Opp. at 3–5, 9–12).[4] The People's allegations raise a plausible inference that failing to impute the Endo subsidiaries' contacts to Endo Int'l would perpetuate injustice by allowing Endo Int'l to both insulate itself from liability and siphon "U.S.-based revenues beyond the Court's jurisdiction." MRC Opp. at 5. Such an inference satisfies the "clear error" standard of review. See, e.g., Hinkson, 585 F.3d at 1261 (requiring support in inferences to satisfy clear error).

Endo Int'l also argues that no injustice would result because the People "have not shown

---

[4] Endo Int'l argues that the People's proposed injustices lack evidence and support. See Endo MRC at 8–9; see also Endo MRC Reply at 5. This argument ignores the FAC's detailed allegations and the exhibits to the People's Opposition to Endo Int'l's Motion to Dismiss. See, e.g., FAC ¶¶ 149, 373–96; MTD Opp. Exs. (dkt. 202-2–28) A–AA; MRC Opp. at 7.

8

that the [Endo subsidiaries] cannot answer" the People's claims.  See Endo MRC at 9 (citing Apple Inc. v. Allan & Assoc. Ltd., 445 F. Supp. 3d 42, 55–56 (N.D. Cal. 2020)).  But Apple Inc. does not suggest that a plaintiff can only assert a cognizable injustice if the subsidiaries do not appear before the court to answer for unlawful conduct.  See 445 F. Supp. 3d 42, at 55–56.  To the contrary, the court in Apple Inc. acknowledged that a plaintiff could satisfy the injustice prong by alleging "how the alter ego benefitted from the purported misconduct."  Id. at 55 (quoting Johnson, 141 F. Supp. at 986) (internal quotation marks omitted).  Here, as stated above, the People allege that Endo Int'l benefitted from its subsidiaries' misconduct in the form of increased revenue, which further satisfies the injustice requirement.  See MTD Opp. at 11.[5]

Finally, Endo Int'l relies on In re Boon Global Ltd., 923 F.3d 643 (9th Cir. 2019) ("Boon"), to argue that "'jurisdiction cannot lie where there is no evidence of undercapitalization, failure to keep adequate records, or the free transfer of company assets—all of which would normally be signs of a sham corporation.'"  Endo MRC at 7 (quoting Boon, 923 F.3d at 653–54) (internal quotation marks omitted).  Endo Int'l misinterprets Boon.  First, the quoted excerpt addresses to the unity of interest prong of the alter ego doctrine, which is not at issue in the present motion.  See, e.g., Gion Funding Settlements, Inc. v. Wimbledon Fin. Master Fund, Ltd., CV 17-

---

[5] The People's public nuisance claim also implicates important public policy considerations that do not exist in any of the authority that Endo Int'l cites.  See Endo MRC at 8–10 (citing Katzir's Floor & Home Design, Inc. v. M-MLS.com, 394 F.3d 1143 (9th Cir. 2004); Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657, 677 (9th Cir. 2017); Stewart v. Screen Gems-EMI Music, Inc., 81 F. Supp. 3d 938 (N.D. Cal. 2015); Ontiveros v. Zamora, CIV. S-08-567 LKK/DAD, 2009 WL 425962 (E.D. Cal. Feb. 20, 2009); Pehle v. Dufour, 2:06-cv-1889-EFB, 2012 WL 4490955 (E.D. Cal. Sept. 28, 2012)).  "When a manufacturer promotes a product for a specific use that it knows will create a hazardous condition, public policy supports the use of California public nuisance law to require the manufacturer to remediate the hazards created by its conduct."  People v. ConAgra Grocery Prods. Co., 17 Cal. App. 5th 51, 168 (2017).  "Although a corporation and its shareholders are deemed separate entities for most purposes, the corporate form may be disregarded in the interests of justice where it is used to defeat an overriding public policy."  Bangor Punta Operations, Inc. v. Bangor & Aroostook R. Co., 417 U.S. 703, 713 (1974); see Seymour, 605 F.2d at 1111; In re Marriage of Dick, 15 Cal. App. 4th 144, 161–62 (1993); Siegel v. Warner, 581 F. Supp. 2d 1067, 1075–76 (C.D. Cal. 2008).  The People seek the costs of future abatement of the opioid-related public nuisance that Endo Int'l allegedly contributed to.  See, e.g., Disc. Order No. 2 (dkt. 382) at 1 ("Plaintiffs have now confirmed . . . that they are not seeking monetary damages or restitution; instead, the monetary relief they seek is abatement.").  Failing to impute the Endo subsidiaries' contacts to Endo Int'l would defeat California's public policy of requiring "manufacture[s] to remediate the hazards created by [their] conduct," and thus, constitute an injustice to the People.  See Bangor Punta Operations, Inc., 417 U.S. at 713; Seymour, 605 F.2d at 1111.

...

2529-DMG (JCx), 2020 WL 5913494, at *5 n.5 (C.D. Cal. July 6, 2020) (relying on Boon for the unity of interest analysis). In the paragraph containing the quoted sentence, the Ninth Circuit rejects the plaintiff's arguments that the defendant lacked "formal separation" and did not "observe corporate formalities," Boon, 923 F.3d at 653–54, both of which constitute factors used to evaluate the unity of interests. See Ranza, 793 F.3d 1073–75. Further, the paragraph in Boon also quotes from and cites to the unity of interest analysis in Ranza. See Boon, 923 F.3d at 653–54 (citing Ranza, 793 F.3d 1073–75).

Second, even if the excerpt in Boon addressed the injustice prong, Boon undermines Endo Int'l's argument because the Ninth Circuit determined that the district court did not commit "clear error" in misapplying the alter ego test. See id. at 654. Third, when the Ninth Circuit addressed the injustice prong in the subsequent paragraph, it concluded that "[c]onclusory allegations that [defendant] structures companies to escape liability are insufficient to confer personal jurisdiction. Something more is needed." Id. (emphasis added). As stated above, the People have provided "something more" in the form of exhibits detailing Endo Int'l's alleged extensive control and manipulation of its subsidiaries to avoid liability. See supra at *6–8. Thus, the People's alter ego theory is consistent with the Ninth Circuit's decision in Boon.

## IV. CONCLUSION

Thus, the record supports this Court's original conclusion that the failure to jurisdictionally impute the Endo subsidiaries' contacts to Endo Int'l would result in injustice to the People. Because Endo Int'l disputes several facts that impact the merits, Endo Int'l may still challenge personal jurisdiction after the benefit of a trial. See Data Disc, Inc., 557 F.2d at 1285 n.2.

For the foregoing reasons, Endo Int'l's Motion for Reconsideration is DENIED.

**IT IS SO ORDERED.**

Dated: December 7, 2020

CHARLES R. BREYER
United States District Judge