*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

**Joint Discovery Dispute Letter Regarding Plaintiff's Responses to Certain Interrogatories**

## I. Manufacturer Defendants' Initial Statement

Plaintiff's responses to Manufacturer Defendants' initial set of Interrogatories contained boilerplate objections and little substantive information. Ex. 1. After a months-long meet-and-confer process, including two videoconferences[1] and the exchange of six letters,[2] the parties have significantly narrowed their disputes. The following issues require the Court's assistance:

**Interrogatory Nos. 4-6:** These Interrogatories request information regarding specific prescriptions and patients that make up the alleged causal chain between Defendants' purported wrongdoing and the purported public nuisance. Specifically, Interrogatory No. 4 requests identification of "each Prescription Opioid prescription that You contend was unauthorized, medically unnecessary, ineffective, or harmful for any current or former resident of San Francisco," Interrogatory No. 5 requests identification of "each prescription of Opioids that You contend caused You damages or contributed to an alleged public nuisance in San Francisco," and Interrogatory No. 6 requests identification of "every Person, and the Opioid(s) used by such Person and the condition(s) for which the Person was prescribed Opioids if applicable, who you allege became addicted to any Opioid or was otherwise harmed as a result of any Opioid and whose treatment or conduct provides or contributes to the basis for any of Your claims." Ex. 1.

Any possible causal chain between Manufacturer Defendants' alleged misconduct and the purported public nuisance necessarily includes, at a minimum, wrongful prescriptions written as a result of Defendants' alleged misconduct, which resulted in harm. Plaintiff alleges, for instance, that "[t]he Marketing Defendants' deceptive marketing caused prescribing not only of their opioids, but of opioids as a class, to skyrocket." Dkt. No. 128, First. Am. Compl. at ¶ 550. Likewise, Plaintiff alleges that "[w]hen a manufacturer or distributor does not report or stop suspicious orders, prescriptions for controlled substances may be written and dispensed to individuals who abuse them or who sell them to others to abuse." *Id.* at ¶ 668. Plaintiff also makes numerous allegations regarding allegedly harmed individuals, such as that "Marketing Defendants created a population of addicted patients" (*id.* at ¶ 10) and that "[f]rom 2010 through 2012, approximately 331 individuals died in San Francisco from accidental overdose caused by opioids" (*id.* at ¶ 19). Defendants are entitled to know which specific prescriptions Plaintiffs claim would not have been written but for each Defendant's alleged unlawful marketing, and whether those prescriptions led to harm.

Plaintiff attempts to avoid discovery directly relevant to these allegations by stating that it will only rely on "aggregate proof." But how Plaintiff purports to attempt to prove its claims cannot limit the discovery to which Defendants are entitled to mount their defense. *See* Fed. R. Civ. P. 26(b)(1). Moreover, Plaintiff's "aggregate proof" will necessarily consist of the individual prescriptions looked at on an aggregate basis. Each Defendant is entitled to discovery into which

[1] The parties' Zoom meet and confers occurred on November 2 and 11, 2020. Along with counsel for other Manufacturer Defendants, Donna M. Welch and Karl Stampfl participated for Manufacturer Defendants.

[2] *E.g.*, Ex. 2, 12/1/2020 K. Stampfl Letter to Plaintiff.

prescriptions for its opioids Plaintiff claims were inappropriate in order to rebut any aggregate model at the level of the prescriptions that make up the aggregate model.

Indeed, several courts have ordered plaintiffs to respond to materially similar Interrogatories. For example, in the opioid case pending in state court in Orange County where Plaintiff—the People of the State of California—is pursuing identical causes of action as it is here, the discovery referee ordered identification of 500 prescriptions (including a minimum of 25 for each opioid at issue) and 300 harmed individuals (including 25 persons for each opioid at issue), reasoning that "it seems undeniable that Defendants should be able to test [plaintiff's causation] premise at a key hinge point: The circumstances under which individuals are actually prescribed, received, and begin to take opiates." *See* Ex. 3, ROA No. 1781, Case No. 30-2014-00725287, at 7 (Jan. 18, 2019). In adopting the discovery referee's report and recommendation, the court expressly held that "Plaintiff's assertion that *it* intends to use aggregate-level data to show causation does not foreclose each Defendant's right to discovery on causation." Ex. 4 at 2.[3] The court presiding over the Texas state MDL, *In re: Texas Opioid Litigation*, similarly required plaintiff, the County of Bexar, to answer materially similar Interrogatories "with patient- and prescription-level information in its possession, custody, or control (including from its own health plans) responsive to each component of each interrogatory." Ex. 5, No. 2018-63587 (Aug. 19, 2020). Just last month, the Magistrate Judge in the *City of Chicago* opioids case remanded from the MDL issued several orders requiring plaintiff to identify allegedly harmed individuals, stating "Defendants have the right to know the identity of those individuals who have been harmed because of Defendants' practices," and if Plaintiff cannot identify any individuals, "it must state, 'None.'." *E.g.*, Ex. 6, Dkt. No. 879, Case No. 1:14-cv-04361 (Nov. 20, 2020).[4]

Nor can Plaintiff rely on patient privacy concerns as a means of depriving Defendants of this discovery. Plaintiff may answer these Interrogatories using de-identified information that replaces the names of patients and individuals with unique identifiers, so long as Plaintiff provides sufficient other information about each individual and prescription, including the full basis for Plaintiff's allegations that he or she suffered harm as a result. This is the approach taken when Plaintiff produced similar information in the case pending in Orange County, it is the approach taken in other opioid-related cases where plaintiffs were represented by these same lawyers (including the Track One MDL cases), and it is the approach the *Chicago* court recently endorsed. *E.g.*, Ex. 6 ("[I]ndividual privacy interests can be protected adequately by anonymizing" patient-identifying information.).

---

[3] In the MDL Track One cases, the Court likewise ordered the identification of 500 prescriptions (including at least 10 for each opioid at issue) and 300 individuals (including at least 10 who were prescribed each opioid at issue). Ex. 7, Dkt. No. 102, Case No. 1:18-cv-45090 (Oct. 16, 2018). In meet and confer discussions here, Plaintiff has relied heavily on the portion of that opinion allowing plaintiffs there to elect not to answer these interrogatories by stating, among other things, that plaintiffs would "rely, at trial and in expert opinions, solely on a theory of aggregate proof." *Id.* Manufacturer Defendants respectfully disagree with that aspect of the ruling, because, as the Orange County court recognized, this discovery is relevant to Defendants' defenses no matter how Plaintiff attempts to prove its claims. Further, plaintiffs' disclosure of expert reports since the MDL Track One order (Ex. 7) has illustrated that plaintiffs' "aggregate proof" method is simply a different way of looking at these same prescriptions.

[4] The Magistrate Judge reversed an earlier order requiring the City of Chicago to identify the prescriptions it claims are medically unnecessary only after the City dismissed its claim for prescriptions reimbursed by its health plans. Ex. 8, Dkt. No. 824, Case No. 1:14-cv-04361 (N.D. Ill. July 1, 2020). Defendants have objected to the District Judge, because the information remains relevant to other claims in the case. Defendants' objection remains pending.

**Interrogatory No. 10:** Interrogatory No. 10 calls for identification of "each 'suspicious order[]' of Prescription Opioids that each Defendant 'fail[ed]' to 'report' and/or 'fail[ed]' to 'take steps to half' (as those terms are used in the Complaint)," including information about each order. Ex. 1. Plaintiff has agreed to supplement its response to this Interrogatory, but it refuses to provide a reasonable date certain by when it will do so, allowing only that it may be "possible for Plaintiff to provide a partial answer to this Interrogatory in advance of the expert report deadline." Ex. 9, 12/3/2020 M. Melamed Letter. Defendants require the information sought by this Interrogatory, which they served more than four months ago, as soon as possible, because further discovery is dependent on these responses. For example, Defendants require the opportunity to take discovery regarding these orders, such as discovery into the pharmacies to which identified orders were sent and the downstream effects—if any—of the shipments.

While Manufacturer Defendants understand that Plaintiff may not be able to detail ***all*** alleged suspicious orders at this time, Plaintiff should detail all such orders that Plaintiff is currently aware of. For any Defendant for which Plaintiff cannot identify a single such order, Plaintiff need only state in its response that it cannot identify one. Subsequently, Plaintiff may supplement to the extent it is later able to identify additional orders. *See, e.g.*, *Kilby v. CVS Pharmacy, Inc.*, 2019 WL 977874, at *4 (S.D. Cal. Feb. 28, 2019) ("[P]laintiff had an obligation to respond to all of the subject interrogatories to the fullest extent possible based on the information she had at the time the responses were due, even though she intended to supplement them later with information compiled by experts."). This way, Defendants can begin any necessary discovery into the orders identified now, which will shorten the time necessary for discovery on any later added in a supplement.

Accordingly, Manufacturer Defendants request that the Court order Plaintiff to supplement its responses to these Interrogatories and all others for which the Court orders supplementation pursuant to this motion within two weeks.

## II. Plaintiff's Position Statement

***Interrogatory Nos. 4-6***. Requiring the People to respond to these interrogatories is not relevant or proportional to the needs of the case. The People do not seek or otherwise base any recovery for public nuisance on an individualized, or even class, basis.[5] Rather, the nature of a public nuisance is that it interferes with the rights of the public generally. As such, California courts presiding over public nuisance actions have denied the opportunity to take develop the type of individualized evidence that the Manufacturers seek here.

The California state lead paint case is directly on point. There, defendants "insist[ed] that plaintiff was required to identify the location of each individual property in order to establish a public nuisance." *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 118-19 (2017). The California Court of Appeal upheld the trial court's denial of that request, holding that plaintiff had established the existence of the public nuisance by proving the conditions of interior lead paint were pervasive, analogous to what the People will show by aggregate proof here. *Id.* at 119. "Defendants were held liable for ***promoting*** lead paint for interior residential use. Their promotional activities were not limited to advertisements for their own lead paints. They also generically promoted lead paint for interior residential use." *Id.* (emphasis in original). The same is true of the Manufacturers here. Opioid use and its ramifications on the People are pervasive. Liability for the Manufacturers will be based in substantial part on the promotion of opioids, which was not limited to marketing for their own products. Permitting Defendants to respond to the People's aggregate proof with individualized evidence in the form of highly sensitive personal health records would turn the litigation of this case into an amalgamation of individual personal injury cases that would threaten to explode the already broad scope of fact discovery and would risk rendering trial wholly unmanageable.

Moreover, the Manufacturers' portion of the joint letter omits the backstory of the extensive litigation over these interrogatories in the MDL. Judge Polster, the judge presiding over the MDL, issued an order that the Track One plaintiffs could elect ***not*** to answer these interrogatories so long as they committed to relying solely on aggregate proof of causation. The District Court here has held that MDL rulings resolving issues that are raised in this case are "highly persuasive" (ECF No. 285 at 4) and there is no reason to depart from Judge Polster's order.

In the Track One cases, Defendants asked plaintiffs to "[i]dentify and describe all prescriptions of opioid(s) that Plaintiff contends were unauthorized, medically unnecessary, ineffective, or harmful." Ex. 10 at 4; *see* Ex. 1 at Interrogatory No. 4. They asked plaintiffs to "[i]dentify each prescription the filling of which caused or led to harm for which you seek to recover in this case." Ex. 10 at 5; *see* Ex. 1 at Interrogatory No. 5. And they asked plaintiffs to "[i]dentify every person who allegedly became addicted to any substance or was otherwise harmed as a result of any prescription of an opioid(s) in [Plaintiff's jurisdiction]." Ex. 10 at 3 (second

[5] While the People do seek individualized statutory penalties for violations of the Unfair Competition Law ("UCL") and False Advertising Law ("FAL"), the information these Interrogatories seek is irrelevant to those claims. The UCL requires showing that Defendants' practices were forbidden by law, harmed more than helped, or were likely to deceive. *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1198 (N.D. Cal. 2016); *see Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937-38 (9th Cir. 2008) (the "likely to deceive" determination is governed by the "reasonable consumer" test).

alteration in original); *see* Ex. 1 at Interrogatory No. 6.[6]

The Track One plaintiffs objected to these interrogatories as inappropriate, irrelevant, and burdensome, and Defendants moved to compel full responses. Ex. 10 at 1. In Discovery Ruling No. 5, Special Master Cohen upheld plaintiffs' objections in part, holding that plaintiffs need not identify all information responsive to the interrogatories, but ordering the identification of 500 prescriptions that they contended were unauthorized; 500 prescriptions the filling of which caused or led to harm for which recovery was sought; and 300 persons who allegedly became addicted to any substance or were otherwise harmed as a result of any prescription of opioids in plaintiffs' jurisdictions. Ex. 10.

The plaintiffs immediately appealed Discovery Ruling No. 5 to Judge Polster, who entered an order amending it as follows:

> Instead of answering the disputed interrogatories as required by the Discovery Ruling, Plaintiffs may instead elect not to answer them ***on the condition*** that Plaintiffs instead categorically and affirmatively respond to the disputed interrogatories by stating that: (1) they will not assert, either in expert opinions or factual presentations at trial, that any specific prescriptions "were unauthorized, medically unnecessary, ineffective, or harmful" or that "the filling of [any specific prescriptions] caused or led to harm for which [Plaintiffs] seek to recover," and (2) Plaintiffs instead will rely, at trial and in expert opinions, solely on a theory of aggregate proof.

Ex. 7 at 1-2 (emphasis and alterations in original; footnote omitted). The Manufacturers misrepresent this ruling. In footnote 3 of their portion of this joint letter, they cite it for the proposition that Judge Polster ordered the Track One plaintiffs to identify 500 prescriptions and 300 individuals. That's not correct.

In a letter to the Manufacturers in this case, counsel for the People stated they would embrace the option provided by Judge Polster not to answer Interrogatory Nos. 4-6:

> Plaintiff here states that it will not assert, either in expert opinions or factual presentations at trial, that any specific prescriptions were unauthorized, medically unnecessary, ineffective or harmful, that any specific prescriptions contributed to an alleged public nuisance in the City and County of San Francisco, California (the "City" or "San Francisco") or that any specific person became addicted to any opioid or was otherwise harmed as a result of any opioid and whose treatment contributes to any basis for Plaintiff's claims.

Ex. 12 at 5.[7]

---

[6] The People's factual allegations are the same as or parallel to those made in the Track One cases. *E.g.*, *compare* ECF No. 128, ¶550 ("The Marketing Defendants' deceptive marketing caused prescribing not only of their opioids, but of opioids as a class, to skyrocket.") *with* Ex. 11, ¶487 (same); *compare* ECF No. 128, ¶668 ("When a manufacturer or distributor does not report or stop suspicious orders, prescriptions for controlled substances may be written and dispensed to individuals who abuse them or who sell them to others to abuse.") *with* Ex. 11, ¶595 (same).

[7] This was not the first time the People made this declaration. They have communicated that they would rely solely on aggregate proof of causation in numerous communications spanning the past six months.

The Manufacturers propose that the Court defer to cases that are inapposite. ***First***, the Manufacturers rely on three orders in cases that are not part of the MDL. *See* Exs. 3-4 (a California state case); Ex. 5 (a Texas state case). Because they do not relate to the MDL, there was no reason for Judge Polster's ruling to be "highly persuasive" to the courts that issued them. Indeed, none of these orders even references Judge Polster's ruling.[8] Nor is there is anything in the state court opinions suggesting that either court considered whether plaintiffs committed to proving causation solely through aggregate evidence, as the People have here. ***Second***, the Manufacturers rely on a recent order in the remanded *Chicago* case granting, via docket entry, their motion to compel information about individuals who became addicted. There, the court found that the identification of individual addicts "may be extremely helpful to the issue of damages under Count Four." Ex. 6 at 1. Count Four is based on a municipal code that entitles Chicago to recover costs for services provided that are reasonably related to a violation of Illinois law. Ex. 8 at 8. In contrast, the People do not seek any recovery of past costs. Rather, they seek ***prospective*** abatement, statutory penalties based on Defendants' actions in violation of the UCL and FAL, and injunctive relief.

***Interrogatory No. 10***. Interrogatory No. 10 requests that the People identify each suspicious order of prescription opioids that each Defendant failed to report or failed to take steps to halt. Just as plaintiffs in related cases have done, the People will respond by using data sets reflecting purchases and sales of prescription opioids and running them through a series of algorithms designed to identify those that qualify as "suspicious" based on a series of metrics, including Defendants' own suspicious order monitoring protocols. As the Manufacturers concede, the People have agreed to supplement their response to this Interrogatory to provide that information. The only question concerns timing. The Manufacturers state that they want supplementation within two weeks of the resolution of this motion, which is likely sometime shortly after January 1, 2021. That date is not feasible. After further consultation with the expert's team, the People believe they can provide an initial amended response to this Interrogatory, reflecting the years 2006-2014, by January 15, 2021.

The People further note two issues raised by this Interrogatory. ***First***, Defendants are already aware of how this analysis will be conducted. It has already been conducted in several other cases, and they have access to more data to conduct it than do the People. Thus, the Manufacturers' lament that they "require the opportunity to take discovery regarding these orders" (Mfrs' Ltr. at 3) is hollow. Because Defendants already know how the analysis will be done they already know what discovery, if any, they'll need to respond to the People's suspicious order analysis. ***Second***, the People can conduct the suspicious order analysis for the years 2006-2014 because that is the date range of the ARCOS database produced by the U.S. Drug Enforcement Agency. In order to conduct the analysis for dates before and after that time period, the People need each Defendant to produce relevant transactional data. Defendants have done so for different geographical regions in different opioid cases, including those in the MDL. The People have served discovery seeking the information that would enable analysis from time when OxyContin was first marketed and sold through the present. Defendants have not yet produced the information required.

---

[8] The scope of permissible discovery under state law is also broader than the scope permitted by federal law. Discovery under California law is "expansive." Ex. 3 at 5. In contrast, Fed. R. Civ. P. 26(b)(1) permits discovery "relevant to any party's claim or defense ***and*** proportional to the needs of the case." The Manufacturers fail to acknowledge the explicit federal requirement of proportionality, which is absent from the California discovery statute. Cal. Code Civ. P. §2017.010.

## III. Manufacturer Defendants' One-Page Statement on Remaining Dispute[9]

**Interrogatory Nos. 4-6:** Plaintiff does not dispute that its alleged causal chain is that Manufacturer Defendants' marketing caused prescribers to write prescriptions that should not have been written, resulting in harm to individuals and ultimately in an alleged public nuisance. Thus, this discovery is relevant not because Defendants seek to make this case an "amalgamation of individual personal injury cases" but because Defendants require it to disprove Plaintiff's causal theories. That Plaintiff prefers to view the prescriptions and individuals in the "aggregate" does not preclude Defendants from examining them at the individual level to determine, for example, whether any were medically unnecessary and any were caused by Defendants. If Plaintiff cannot identify any, or if it truly believes that these prescriptions and individuals are irrelevant, it may simply state there were no such individuals or prescriptions.

Plaintiff argues that the "California state lead paint case" is "directly on point" as though it supports Plaintiff's argument, but the court there permitted individual-specific discovery. *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 152, 157 (2017). As for the MDL Track One order (Ex. 7), Manufacturer Defendants submit that the aspect of the ruling permitting plaintiffs there to elect to proceed solely on aggregate proof is incorrect, because it ignores the import of this data to Defendants' defenses. Moreover, it has since become clear that Plaintiff's experts' "aggregate proof" model involves exactly these prescriptions and individuals. It would be fundamentally unfair for Plaintiff to maintain that there were such prescriptions and individuals without having to answer the question: which ones?

Indeed, in the most analogous case, brought by this plaintiff ("the People") against several of these Defendants under identical claims in Orange County, the court ordered plaintiff to respond to these interrogatories by identifying a set number of prescriptions and individuals. Exs. 3-4. The California court correctly held that the "prescription-level information sought is relevant" and squarely rejected Plaintiff's argument that its method of proof dictates the bounds of discovery: "Plaintiff's assertion that *it* intends to use aggregate-level data to show causation does not foreclose each Defendant's right to discovery on causation." *Id.* at 2.

**Interrogatory No. 10:** Plaintiff has agreed to supplement by January 15, 2021. But Plaintiff acknowledges that its response will be incomplete, as it will reflect orders only from 2006-2014. Plaintiff refuses to provide a date certain by when it will identify the remainder, arguing that it needs additional productions from Defendants first and that even though it already has some of the data it will be easier for it to run the analysis all at once. But, as noted above, Defendants require time to conduct follow-up fact discovery ahead of the scheduled May 28, 2021 close of fact discovery.[10] Manufacturer Defendants thus request that the Court order Plaintiff to provide a second supplement identifying the remaining orders by March 19, 2021. This date will account for Plaintiff's concern because it is three weeks after the deadline for the substantial completion of documents, while still providing some time for Defendants to conduct follow-up fact discovery.

---

[9] In accordance with DR No. 2, the parties conducted an additional Zoom meet and confer on December 11, 2020. Along with counsel for other Manufacturer Defendants, Karl Stampfl participated.

[10] Plaintiff also argues that Defendants should know the "algorithms" its experts plan to use, run the "algorithms" themselves, and conduct discovery on the results. But Plaintiff has not disclosed the formulas except to say they will be similar to those used in other cases, and it acknowledges that it may change them here, at least to a degree. In any case, Defendants should not have to guess at Plaintiff's allegations; Plaintiff should disclose them.

## IV. Plaintiff's Response to Manufacturer Defendants' One-Page Statement[11]

***Interrogatory Nos. 4-6***. By definition, a public nuisance interferes with the rights of the public ***generally***. To refute aggregate evidence that their false marketing of opioids was a substantial cause of the public nuisance alleged here, the Manufacturers say they need information about each individual opioid prescription and individual harmed by an opioid prescription. Granting the Manufacturers' motion could lead to years of unnecessary discovery. That is why the MDL court held that the Track One plaintiffs need not answer these interrogatories. The Manufacturers concede that the MDL order resolved this issue (*see id.* at 7), and don't dispute that Judge Breyer has instructed that MDL rulings resolving issues that recur in this action are "highly persuasive." ECF No. 285 at 4. Regardless, the Manufacturers propose this Court rely on rulings in a case unrelated to the MDL that makes no mention of that court's ruling.[12] *See* Exs. 3-4.

The Manufacturers also inaccurately characterize *People v. ConAgra Grocery Prods.* as a case permitting individual discovery. *ConAgra* merely recognized that a preexisting database of "children who happen[ed] to be tested for lead" existed and was produced, nothing like the derivative information the Manufacturers seek here.[13] 17 Cal. App. 5th at 152. Indeed, as discussed above, *ConAgra* held that defendants there were ***not*** entitled to individualized proof, on a residence-by-residence basis, of each property affected by lead paint. *Supra* at 4. The allegations there stemmed from defendants' promotion of lead paint products, generally, for improper use, allegations parallel the People's allegations concerning the Manufacturers' promotion of opioids here. *Id.*; *see* ECF No. 128 (complaint),§IV.D. (false, including "unbranded," promotion).

Ultimately, the question is not whether the Manufacturers' false marketing was the cause of ***each*** individual opioid prescription or addiction responsive to these interrogatories. Rather, it is whether their false marketing constituted a "“‘more than negligible or theoretical’”" cause of the opioid crisis. *ConAgra*, 17 Cal. App. 5th at 102 (citations omitted). As the MDL court has ruled, the enormously burdensome individualized responses that the Manufacturers seek are not proportional to the needs of the case. The rationale of the Manufacturers' motion is analogous to saying that information about the temperature on each day is required because evidence of days cooler than average will undermine the aggregate proof of global warming.

***Interrogatory No. 10***. The People have agreed to supplement their response to this Interrogatory with the identification of suspicious orders for the time period 2006-2014 by January 15. The Manufacturers now complain that this response will be incomplete (*supra* at 7), in spite of their prior recognition "that Plaintiff may not be able to detail ***all*** alleged suspicious orders at this time" (*id.* at 3) (emphasis in original). The Manufacturers' proposal to impose a March 19 deadline on the People to provide a complete response (*id.*) puts the cart before the horse. The People submit that a more appropriate deadline for supplementing this response is one tied to the production of the required transactional data by Defendants.

---

[11] Matt Melamed represented the People on the November 2 and 11 meet and confers with the Manufacturers.

[12] The Manufacturers also contend that the case is brought by the same plaintiff – the People – but government officials are permitted to bring a public nuisance claim only concerning the nuisance within their boundary. Though named the same, the plaintiffs are different and they seek abatement of different nuisances in non-overlapping jurisdictions.

[13] There exist no analogous databases that reflect unlawful or unnecessary prescriptions, prescriptions that caused or led to harm, or persons who became addicted to or were otherwise harmed by prescription opioids.

DATED: December 16, 2020

Respectfully submitted,

By: */s/ Karl Stampfl*

Zachary W. Byer (Bar No. 301382)
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Email: zachary.byer@kirkland.com
Donna Welch, P.C. (Admitted pro hac vice)
Timothy W. Knapp, P.C. (Admitted pro hac vice)
Karl Stampfl (Admitted pro hac vice)
KIRKLAND & ELLIS LLP
300 N. LaSalle St.
Chicago, IL 60654
Telephone: (312) 862-2000
Email: donna.welch@kirkland.com
timothy.knapp@kirkland.com

Jennifer G. Levy, P.C. (Admitted pro hac vice)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 879-5000
Email: jennifer.levy@kirkland.com

*Attorneys for Defendants Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc., Allergan Sales, LLC, Allergan USA, Inc. and Allergan Limited (f/k/a Allergan plc f/k/a Actavis plc)*

By: */s/ Elizabeth A. Sperling*

Elizabeth A. Sperling (CA Bar No. 231474)
ALSTON & BIRD LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Fax: (213) 576-1100
elizabeth.sperling@alston.com

Daniel G. Jarcho (pro hac vice)
ALSTON & BIRD LLP
950 F Street, NW
Washington, DC 20004

Telephone: (202) 239-3300
Daniel.jarcho@alston.com

Cari K. Dawson (pro hac vice)
Jenny A. Hergenrother (pro hac vice)
ALSTON & BIRD LLP
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
cari.dawson@alston.com
jenny.hergenrother@alston.com

*Attorneys for Defendant Noramco, Inc.*

By: */s/ Amy R. Lucas*

Amy R. Lucas (S.B. #264034)
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Tel: (310) 553-6700
Fax: (310) 246-6779
alucas@omm.com

Charles C. Lifland (S.B. #108950)
Sabrina H. Strong (S.B. #200292)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Tel: (213) 430-6000
Fax: (213) 430-6407
clifland@omm.com
sstrong@omm.com

Amy J. Laurendeau (S.B. #198321)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-690
Fax: (949) 823-6994
alaurendeau@omm.com

Stephen D. Brody (pro hac vice)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300

Fax: (202) 383-5414
sbrody@omm.com

*Attorneys for Defendants Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc.*

By: /s/ *Zachary Hill*

Zachary Hill (S.B. #275886)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel: (415) 442-1000
zachary.hill@morganlewis.com

Eric W. Sitarchuk*
Rebecca J. Hillyer*
MORGAN, LEWIS & BOCKIUS LLP
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com
1701 Market Street
Philadelphia, 19103-2921
Tel: +1.215.963.5000
Fax: +1.215.963.5001

Wendy West Feinstein (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd.Fl.
Pittsburgh, PA 15219-6401
Tel: (412) 560-7455
wendy.feinstein@morganlewis.com

*Attorneys for Defendants Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Actavis LLC, Watson Laboratories, Inc., and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.*

**Denotes national counsel, pro hac vice forthcoming*

By: /s/ *Sean O. Morris*

Sean O. Morris
John D. Lombardo
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor

Los Angeles, CA 90017-5844
Tel: (213) 243-4000
Fax: (213) 243-4199
Sean.Morris@arnoldporter.com
John.Lombardo@arnoldporter.com

*Attorneys for Defendants Endo Pharmaceuticals Inc., Endo Health Solutions Inc., Par Pharmaceutical, Inc., and Par Pharmaceutical Companies, Inc.*

DATED: December 16, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
AELISH M. BAIG
MATTHEW S. MELAMED
HADIYA K. DESHMUKH

s/ Aelish M. Baig

AELISH M. BAIG

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
aelishb@rgrdlaw.com
mmelamed@rgrdlaw.com
hdeshmukh@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
PAUL J. GELLER
MARK J. DEARMAN
DOROTHY P. ANTULLIS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com
dantullis@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
THOMAS E. EGLER
CARISSA J. DOLAN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
tome@rgrdlaw.com
cdolan@rgrdlaw.com

DENNIS J. HERRERA
City Attorney
RONALD P. FLYNN
YVONNE R. MERE
OWEN J. CLEMENTS
SARA J. EISENBERG
JAIME M. HULING DELAYE
Deputy City Attorneys
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, CA 94102
Telephone: 415/554-3957
jaime.hulingdelaye@sfcityatty.org

LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP
ELIZABETH J. CABRASER
RICHARD M. HEIMANN
PAULINA DO AMARAL
KEVIN R. BUDNER
MICHAEL LEVIN-GESUNDHEIT
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415/956-1000
415/956-1008 (fax)
ecabraser@lchb.com
rheimann@lchb.com
pdoamaral@lchb.com
kbudner@lchb.com
mlevin@lchb.com

RENNE PUBLIC LAW GROUP
LOUISE RENNE
350 Sansome Street, Suite 300
San Francisco, CA 94104
Telephone: 415/848-7240
415/848-7230 (fax)
lrenne@publiclawgroup.com

ANDRUS ANDERSON LLP
JENNIE LEE ANDERSON
AUDREY SIEGEL
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415/986-1400
415/986-1474 (fax)
jennie@andrusanderson.com
audrey.siegel@andrusanderson.com

SANFORD HEISLER SHARP, LLP
KEVIN SHARP
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: 615/434-7000
615/434-7020 (fax)
ksharp@sanfordheisler.com

SANFORD HEISLER SHARP, LLP
EDWARD CHAPIN
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: 619/577-4253
619/577-4250 (fax)
echapin2@sanfordheisler.com

CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP
DAVID S. CASEY, JR.
GAYLE M. BLATT
ALYSSA WILLIAMS
110 Laurel Street
San Diego, CA 92101-1486
Telephone: 619/238-1811
619/544-9232 (fax)
dcasey@cglaw.com
gmb@cglaw.com
awilliams@cglaw.com

WEITZ & LUXENBERG P.C.
ELLEN RELKIN
700 Broadway
New York, NY 10003
Telephone: 212/558-5500
212/344-5461 (fax)
erelkin@weitzlux.com

WEITZ & LUXENBERG P.C.
MELINDA DAVIS NOKES
1880 Century Park East
Los Angeles, CA 90067
Telephone: 310/247-0921
310/786-9927 (fax)
mnokes@weitzlux.com

WEITZ & LUXENBERG P.C.
PAUL F. NOVAK
TIFFANY R. ELLIS
3011 W. Grand Blvd, 24th Floor
Detroit, MI 48202
Telephone: 313/800-4170
646/293-7960 (fax)
pnovak@weitzlux.com
tellis@weitzlux.com

*Attorneys for Plaintiff The People of the State of California, acting by and through San Francisco City Attorney Dennis J. Herrera*