*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

<strong><u>Joint Discovery Dispute Letter Regarding Deadline for Supplementation<br>of Plaintiff's Third Amended Fact Sheet</u></strong>

**I.    Defendants' Initial Statement**

At the November 12 status conference, Judge Corley identified examples of vague and deficient "abatement" categories in the Plaintiff's Second Amended Fact Sheet, each of which remains in the same deficient form in the operative Third Amended Fact Sheet. The parties subsequently met and conferred twice, by videoconference, to discuss supplementation of the Fact Sheet. Unfortunately, while Plaintiff committed to amend certain responses by December 11, Plaintiff still will not commit to a date certain by which it will supplement its responses relating to its proposed categories of abatement. Because of the tight discovery schedule in this case, which Plaintiff represented to the Court that it would meet, Defendants believe a firm deadline is essential, and will move the Court for an order requiring Plaintiff to complete all supplementation of the Fact Sheet by January 8. If Plaintiff cannot meet that deadline, Defendants will ask the Court to order the parties to negotiate an extension to the case schedule.

   **A.  Summary of Meet and Confer Process**

On November 25, 2020, Defendants provided Plaintiff with a detailed list of deficiencies in the Third Amended Government Fact Sheet. *See* Ex. 1. On November 30, the parties held a Zoom teleconference to discuss the letter.[1] Following that conference, Plaintiff agreed to supplement its responses regarding the categories of its proposed abatement plan, but indicated that Plaintiff would need more time to supplement those responses in light of the ongoing COVID-19 pandemic.[2] Defendants informed Plaintiff that they were inclined to move the Court to impose a firm deadline for completion of Plaintiff's supplementation of the Fact Sheet, and offered to meet and confer with Plaintiff to negotiate a workable date.

The parties held a follow-up Zoom conference on December 3, but Plaintiff would not provide Defendants with a date certain—or even an estimate—of when Plaintiff would be able to supplement its responses regarding the categories of abatement.[3] Instead, Plaintiff asked Defendants to wait until approximately December 21 for Plaintiff to provide a "target date" on

---

[1] Matt Melamed represented Plaintiff and August Gugelmann, Colleen McNamara, and Ed Swanson (attorneys for Cardinal Health) represented Defendants.

[2] On the conference, Plaintiff agreed to supplement, by December 11, certain other responses to the Fact Sheet, including when Plaintiff claims it was first harmed and began to incur damages as a result of the alleged public nuisance (Question I.A.1), an explanation of the nature of injunctive relief Plaintiff seeks (Question I.A.3), identification of "all other legal and equitable relief" Plaintiff seeks (Question I.A.3), identification of all departments or divisions relevant to Plaintiff's abatement program (Question I.A.3), and identification of employees or representatives with relevant knowledge (Question 7).

[3] The same counsel from the November 30 Zoom conference participated.

which it would supplement those responses, with the caveat that the "target date" might need to be postponed in light of the ongoing pandemic. Plaintiff represented that it required until December 21 because it needed to consult both with its fact and expert witnesses regarding their availability to advise on the supplement.

### B. Defendants Need Additional Information on Plaintiff's Abatement Plan to Proceed With Discovery

While the Fact Sheet provides adequate information for Defendants to understand the contours of certain abatement categories, it is wholly insufficient as to others, as Judge Corley recognized at the conference held a month ago. *See* Nov. 12, 2020 Conf. Tr. 16:1-20:12. For example, the Fact Sheet says Plaintiff will seek abatement funding for "task force/special projects" related to law enforcement and jails. Defendants are entitled, and intend, to seek discovery to assess the reasonableness of the abatement plan. But it is impossible to do so without knowing what are these task forces, who will serve on them, what special projects are planned, and who will be responsible for their design and implementation. Without this basic information, Defendants cannot serve targeted subpoenas or document requests or identify the relevant fact witnesses, let alone take their depositions.

Defendants have identified those specific categories of abatement that require further definition in order for Defendants to be able to pursue meaningful discovery. Ex. 1 at 2–5. There can be no dispute that further precision is required for these categories. The Fact Sheet lists categories of abatement that leave Defendants to speculate what it might be that Plaintiff seeks when it asks for money for "Public hospitals" or "Public health clinics," or to "Improve Oversight of Opioid Treatment Programs" and "Support research to develop new treatments for OUD [Opioid Use Disorder] and any co-occurring SUD[Substance Use Disorder]/MH[Mental Health] issues, and into primary and secondary prevention." Who would provide these services, what would the services be, and what, if any, limits would be placed on the scope of these remedies? The Fact Sheet offers no answers. Nor has Plaintiff offered any answers in response to Defendants' interrogatories seeking the identification of persons and departments with knowledge relevant to Plaintiff's claims and remedies. Without more information, Defendants cannot even start to fashion focused and proportional discovery.

Plaintiff agrees that it needs to provide more information on the abatement plan. But it disagrees that it needs to do so by any date certain, citing the burdens imposed on the City by the coronavirus. Defendants understand, of course, that the pandemic has made gathering information more difficult for everyone, and particularly for City agencies tasked with responding to it. But it has been six months since Plaintiff produced its Amended Fact Sheet, and in those six months Defendants have been unable to pursue discovery on the categories of abatement that are at the heart of the relief Plaintiff seeks, because Plaintiff has not made clear what those remedies are. Plaintiff should have been able to answer these questions on Day One, as soon as it filed its Complaint. Plaintiff must have known what it meant by these remedies when it filed the lawsuit and served the original Fact Sheet, let alone after serving three subsequent amendments.

It is troubling that, ***two years*** after filing this lawsuit, and long after serving the original Fact Sheet, Plaintiff remains unable to answer basic questions about what relief it is seeking. It

is equally troubling that Plaintiff requires weeks just to determine its experts' *availability* to advise regarding the categories of abatement sought, when Plaintiff has already revised those categories multiple times—presumably with input from its experts.  If Plaintiff is truly unable to tell Defendants at this late date what remedies it seeks, the solution is not to deny Defendants access to this information indefinitely while the case moves toward trial.  The solution is for Plaintiff to admit that the pandemic has made the aggressive schedule it sought unworkable and to extend the timeline of this case.  Plaintiff is unwilling to do so.  Accordingly, Defendants request that the Court impose a deadline for Plaintiff to supplement the Fact Sheet.

        A January 8, 2021 deadline is more than reasonable.  Plaintiff must know by now what remedies it seeks.  The proposed deadline is two and a half months after Plaintiff produced the latest version of its still-deficient Fact Sheet, and Plaintiff will have had more than six weeks to supplement after receiving Defendants' detailed letter explaining exactly what additional details are needed.  Defendants respectfully request that the Court order Plaintiff to supplement on or before January 8, 2021.  If Plaintiff cannot meet that deadline, Defendants ask the Court to order Plaintiff to meet and confer with Defendants regarding an extension to the schedule.

**II.     Plaintiff's Response**

This dispute concerns solely the timing of the People's commitment to amending a portion of the Government Plaintiff Fact Sheet ("PFS") to provide additional specificity concerning categories of abatement. The People have already amended the PFS to do so. The Third Amended PFS, served November 6, 2020, identifies approximately 60 categories of abatement in 5 topic areas: public health, first responders, coroner/medical examiner, law enforcement and jails, and other (which contains a few miscellaneous categories that did not fit within one of the first four topic areas). *See* Ex. 2 at 2-5. Further, it made clear that the abatement concerned funding only for the opioid-related increases to costs of the categories listed, listed the departments that would be impacted by and carry out the categories of abatement, and identified approximately 60 categories of abatement with specificity, such as:

- Treat and support treatment of Opioid Use Disorder (OUD) and any co-occurring Substance Use Disorder (SUD) or Mental Health (MH) issues, including, but not limited to, detoxification services, MH trauma treatment, very low threshold services, and contingency management;
- Training on treatment of OUD and any co-occurring SUD/MH issues;
- Purchase of buprenorphine and other medications for treatment of OUD and any co-occurring SUD/MH issues;
- Vehicle purchasing and maintenance costs of ambulances and other emergency vehicles to provide for call volume related to overdoses;
- Planning, research, and advocacy for first responder administration of suboxone and other innovations to treat overdoses and/or OUD treatment and any co-occurring SUD/MH issues;
- Creation and funding of Emergency Medical Services (EMS)-based opioid overdose intervention programs that start with EMS crews administering Narcan, then positing an immediate message of change, and then directing users directly into a system of care that includes detox and treatment. This includes design and implementation of such a system with research hospitals and medical experts, education for paramedics and community paramedics, medical direction, vehicles and equipment to support program implementation, costs to secure treatment slots or access to treatment programs; and
- Costs for fentanyl decontamination and purchase of specialized equipment for fentanyl detection and decontamination.

*Id.* at 3-5.

Regardless, as Defendants concede, the People have agreed to further amend the categories to address certain categories the Court has identified as insufficiently specific. The question before the Court is whether the People should be compelled to provide, by January 8, 2021, what they have already agreed to provide. For the reasons explained below, that date is not feasible. The

4

People propose that they be ordered to provide the additional specificity by February 19, 2021.[4]

As an initial matter, Defendants' framing of the reason they need additional specificity lacks legal support. They write that they need more specificity for the categories of abatement in order to "pursue discovery" regarding the People's abatement plan. The law of public nuisance does not require that the People provide information about the abatement plan. Indeed, the manner of abatement is not itself an element of a public nuisance claim; rather, it is a form of equitable remedy. *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 132 (2017). Because it is an equitable remedy, the trial court is "clothed with broad powers to accomplish the ends of justice in the proceeding" (*People v. City of Los Angeles*, 83 Cal. App. 2d 627, 646 (1948)), and it is uniquely within the trial court's equitable power to craft an abatement plan to achieve those ends. This is consistent with how the MDL court will handle abatement. As Judge Polster recently clarified in an MDL order, it will be "***for the Court*** to decide all matters connected to abatement, including: (a) whether and how the nuisance can be abated." Ex. 3 at 3-4 (emphasis in original). Nothing about the People's PFS response concerning the categories of abatement has ever prevented Defendants from pursuing discovery to defend against the People's public nuisance claim.[5] Indeed, substantially all of Defendants' discovery to date has concerned just that.

In any event, Defendants have a more than sufficient basis to conduct discovery they believe they need at this stage. The People have made clear repeatedly that their abatement expert report will largely mirror abatement reports that have been filed in parallel cases involving substantially all Defendants here and their counsel. Just as Defendants have asserted that the People are "well aware of Walgreens' positions through MDL expert reports, briefing, and exhibit lists,"[6] so, too, are Defendants familiar with the MDL plaintiffs' positions concerning abatement. Plaintiffs in parallel actions have filed abatement expert reports in the MDL Track One cases (plaintiffs Summit and Cuyahoga Counties, Ohio), MDL Track Two case (Cabell County and the City of Huntington, West Virginia), and the New York state case (plaintiffs the State of New York and Suffolk and Nassau Counties). With one exception, each of the Defendants here is a Defendant in at least one of those actions. The People have made clear, and do so here again, that their abatement methodology will be based on the methodology in these reports.[7]

Indeed, the People's abatement remedies will be narrower than plaintiffs' in those actions. Thus, to the extent that the abatement remedy will differ from those sought by other jurisdictions,

---

[4] Defendants accurately recount that, during the meet and confers preceding this joint letter, the People proposed providing a date certain for amendment of the abatement categories by December 21, 2020. Since those meet and confers, the People have been able to identify February 19, 2021 as a date certain.

[5] It is likely for this reason that in none of the parallel cases were the plaintiffs required to provide the level of detail regarding the categories of abatement that the People have provided here. Rather, in each, the proposed categories of abatement were addressed with specificity for the first time in the abatement expert report.

[6] This quote comes from a letter sent by Walgreens to the People on December 8, 2020. Ex. 4 at 2.

[7] By way of example, the People point the Court to the publicly-filed abatement report in the MDL's Track One cases, which was submitted by Prof. Caleb Alexander from the Johns Hopkins Bloomberg School of Public Health. G. Caleb Alexander MD, MS Expert Witness Report, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804-DAP (N.D. Ohio Dec. 17, 2019), ECF No. 3007-1.

the People have made equally clear their intent to narrow this case to enable a swift trial. Unlike in the other referenced cases, the People have specifically disclaimed opioid-related abatement for the District Attorney's Office, the Public Defender's Office, and the Human Services Agency (related to child welfare and removal), among others. Those departments accounted for substantial portions of the abatement plans in each of the other referenced actions.

Moreover, some of the discovery Defendants say they need to conduct is improper. In a meet and confer letter, and again in this joint letter, Defendants repeatedly ask for the identity of individuals who will be responsible for categories of abatement and who will serve on particular task forces. The PFS is functioning as a replacement for initial disclosures, not interrogatories, and does not require the People to identify those individuals. Nor can such individuals be identified. The People do not neither know who will be employed and best situated in the relevant departments when the abatement remedy is ordered nor, importantly, has any aspect of the prospective abatement plan been fully developed. Indeed, such specific plans for many of the categories of abatement do not – and cannot – yet exist, and are not required by law. California courts have adopted entered final judgment in public nuisance cases adopting abatement plans that include far less specificity than Defendants seek at the start of discovery. *See* Ex. 5 (abatement remedy entered in the lead paint litigation). Regardless, Defendants have sufficient information to serve the discovery regarding abatement they believe appropriate, including into the categories that will be supplemented.

Notwithstanding all of the above, in light of the Court's stated concerns and in order to reach compromise with Defendants, the People have agreed to amend the PFS to respond to numerous of Defendants' stated concerns about the abatement categories, and commit to doing so by February 19, 2021.[8] This date is based on two primary considerations. ***First***, it will enable the People sufficient time to engage in the process of further discussions with both the relevant subject matter experts employed in San Francisco departments and the abatement expert. As the People explained to Defendants, scheduling time with the relevant subject matter experts is particularly difficult right now. Most of the individuals with whom the People's counsel and expert need to communicate have been detailed as Disaster Service Workers, whose time is assigned to assist with the City's response to the COVID pandemic, in lieu of their regular duties. This includes those most knowledgeable about finances and operations that relate to the abatement categories that we expect to expound upon, such as the opioid-related increased costs to hospitals and clinics. As the Court is well-aware, the circumstances of the pandemic have become direr in recent weeks. Though it appears the circumstances will continue to get worse before they get better, a period of approximately two months should enable sufficient time to schedule and conduct the necessary conversations even in these circumstances. ***Second***, February 19, 2021 is months before the fact discovery cutoff. While the People do not think there will be any need for Defendants to seek further discovery based on additional specificity regarding the categories of abatement, amendment by this date will provide Defendants more than enough time to do so.

---

[8] As Defendants note, the People have also committed to amending the PFS by December 11, 2020 to address several other categories of information.

**Defendants' Further Statement**

The pending dispute is simple: Defendants continue to seek basic facts about Plaintiff's abatement categories that Defendants need to proceed with organized and efficient discovery. Plaintiff refuses to timely provide this information, claiming the pandemic has limited its ability to consult with the relevant subject matter experts. Defendants need this information by January 8th, at the latest; Plaintiff seeks to delay until February 19th, at the earliest.

When Plaintiff filed this case, it should have been able to provide answers to the basic questions Defendants are now asking about abatement categories. Plaintiff claims that San Francisco has been suffering the effects of the opioid epidemic since 1996, but Plaintiff didn't sue Defendants to abate the epidemic until December 18, 2018. The intervening decades, not to mention the months of discovery in this case, provided Plaintiff with plenty of opportunity to identify the categories of programs and services that Plaintiff believes would be necessary to abate the alleged epidemic in San Francisco. Yet Plaintiff claims it needs another ***two months*** to provide Defendants with the most basic of facts, such as what would be encompassed by abatement categories like "Public hospitals," "Public health clinics," "HIV/Hepatitis C programs," and "Facilities and programs to treat OUD and any co-occurring SUD/MH issues," among others. To the extent that Plaintiff seeks to recover only incremental future costs relating to opioid addiction or overdose, as Plaintiff's Response seems to suggest, then amendment should be simple and should be able to be completed long before January 8. But Plaintiff's demand for over two months of additional time confirms Defendants' suspicions that Plaintiff intends these "catch-all" categories to sweep much more broadly, which is why Defendants need clarification to conduct thorough but efficient discovery.

The parties' Zoom conference on December 11, attended by the same attorneys as the initial conference, confirmed why the January 8 deadline is necessary and appropriate. Plaintiff committed only to amending the specific categories that ***the Court*** identified as ambiguous during the last status conference in the context of a separate discovery dispute, when the Court did not have before it the latest Fact Sheet. Plaintiff ***did not*** commit to amend the categories identified by Defendants in Exhibit 1, only to "consider" doing so. Plaintiff's response suggests that the next amendment will again lack specificity and raise more discovery disputes.

The February 19, 2021 date proposed by Plaintiff would make it impossible for Defendants to complete discovery in the time allotted. This information is not important solely for purposes of discovery as to the proposed remedies themselves. It is also critical to enable defendants to evaluate what the scope of the alleged nuisance actually is in the first place. Without knowing what Plaintiff contends needs to be fixed, it is impossible to be certain exactly what they claim is broken. Moreover, many of the witnesses to be deposed on liability issues, such as causation, are the same witnesses who will need to be deposed on abatement. Yet Defendants cannot depose witnesses on the latter subject before Defendants know what the alleged categories of abatement are. Thus, Plaintiff's proposed timeline would force Defendants to cram dozens of depositions into the last few weeks of fact discovery, which is unrealistic on a number of levels. If the pandemic will prevent Plaintiff from supplementing its abatement categories by January 8, the appropriate remedy is not to impose a deadline that would prejudice Defendants, but rather to order the parties to negotiate a more appropriate case schedule that accounts for the realities of COVID-19.

**Plaintiff's Further Statement**

The People agree that the pending dispute is simple: it concerns solely the date by which the People will amend the PFS to add specificity to one subcategory that asks for the identification of categories of abatement the People seek. The dispute is also tangential to litigating the merits of this case because, as discussed above, the contours of the abatement plan is within the Court's equitable power to determine.

The People have produced almost 900,000 pages of documents to Defendants in this case, including:

- More than 120,000 pages of documents from the custodial files of the Deputy Medical Director, Behavioral Health Services;
- More than 120,000 pages of documents from the custodial files of the Drug User Health Community Program Coordinator, Community Health Equity Branch;
- More than 110,000 pages of documents from the custodial files of the Medical Director at the Center on Substance Use and Health;
- More than 94,000 pages of documents from the custodial files of the Deputy Chief of Investigations, San Francisco Police Department;
- More than 75,000 pages of documents from the custodial files of the Chief Forensic Toxicologist and Director, Forensic Laboratory Division; and
- Almost 50,000 pages of documents from the custodial files of the Medical Director of the Homeless Outreach Team.

These documents include volumes of information relevant to the People's public nuisance claim and defenses thereto, including the effects of the opioid crisis on San Francisco and its residents and the extent to which Defendants' actions caused, magnified, or perpetuated those effects.[9] The documents also contain nuanced discussions of many efforts to respond to the crisis and ideas for combatting it further. Instead of focusing on these documents, however, Defendants move to compel the People to provide additional specifics regarding the categories of abatement they seek by a date approximately a month earlier than the People propose. The information Defendants they seek is not required to prove or defend any claim filed in this action but instead relates to an abatement plan that the People will, but have not yet, develop via consultation between fact witnesses and an expert. For that reason, additional specificity will take more time to coordinate and is not consistent with Fed. R. Civ. P. 26(a)(2). Regardless, the People have identified as an example of the type of plan they anticipate providing a publicly available expert report filed in the Track One cases. *Supra* at n.7.

The February 19, 2021 deadline would not "make it impossible for Defendants to complete discovery in the time allotted." *Supra* at 7. Discovery regarding the claims and defenses thereto can proceed. In any event, Defendants will have more than three months after the People serve their February amendment before the end of fact discovery, which is sufficient to pursue any necessary additional discovery.

---

[9] There is nothing stopping Defendants from "evalut[ing] what the scope of the alleged nuisance actually is in the first place," and nothing in the categories of abatement that is necessary to define that scope. *Supra* at 7.

8

DATED:   December 16, 2020                                    Respectfully submitted,

| By: */s/ Colleen McNamara*<br>    Neelum J. Wadhwani (SBN 247948)<br>    Enu A. Mainigi (pro hac vice)<br>    Colleen McNamara (pro hac vice)<br>    WILLIAMS & CONNOLLY LLP<br>    725 Twelfth Street, NW<br>    Washington, DC  20005<br>    Tel:  (202) 434-5000<br>    Fax:  (202) 434-5029<br>    nwadhwani@wc.com<br>    emainigi@wc.com<br>    cmcnamara@wc.com<br><br>    Edward W. Swanson (SBN 159859)<br>    August Gugelmann (SBN 240544)<br>    SWANSON & McNAMARA LLP<br>    300 Montgomery Street, Suite 1100<br>    San Francisco, California 94104<br>    Telephone: (415) 477-3800<br>    Facsimile: (415) 477-9010<br>    ed@smllp.law<br>    august@smllp.law<br><br>    *Attorneys for Defendant*<br>    *Cardinal Health, Inc.* | By: */s/ Nathan E. Shafroth*<br>    Sonya D. Winner (Bar No. 200348)<br>    Nathan E. Shafroth (Bar No. 232505)<br>    Isaac D. Chaput (Bar No. 326923)<br>    COVINGTON & BURLING LLP<br>    Salesforce Tower<br>    415 Mission Street, Suite 5400<br>    San Francisco, California 94105-2533<br>    Telephone: + 1 (415) 591-6000<br>    Facsimile: + 1 (415) 591-6091<br><br>    *Attorneys for Defendant*<br>    *McKesson Corporation* |
|---|---|
| By: */s/ Katherine M. Swift*<br>    Charles J. Stevens (SBN 106981)<br>    cstevens@gibsondunn.com<br>    Joshua D. Dick (SBN 268853)<br>    jdick@gibsondunn.com<br>    Kelsey J. Helland (SBN 298888)<br>    khelland@gibsondunn.com<br>    GIBSON DUNN & CRUTCHER LLP<br>    555 Mission Street, Suite 3000<br>    San Francisco, CA  94105<br>    Telephone:  415.393.8200<br>    Facsimile:  415.393.8306<br><br>    Kaspar Stoffelmayr (pro hac vice)<br>    kaspar.stoffelmayr@bartlitbeck.com<br>    Katherine M. Swift (pro hac vice)<br>    kate.swift@bartlitbeck.com<br>    BARTLIT BECK LLP | By: */s/ Eric J. Buhr*<br>    Steven J. Boranian (Bar No. 174183)<br>    Luke S. Porter (Bar No. 323847)<br>    REED SMITH LLP<br>    101 Second Street, Suite 1800<br>    San Francisco, CA 94105<br>    Telephone: (415) 543-8700<br>    Facsimile: (415) 391-8269<br>    sboranian@reedsmith.com<br>    lporter@reedsmith.com<br><br>    Eric J. Buhr (Bar No. 217528)<br>    Sarah B. Johansen (Bar No. 313023)<br>    REED SMITH LLP<br>    355 South Grand Avenue, Suite 2900<br>    Los Angeles, CA 90071<br>    Telephone: (213) 457-8000<br>    Facsimile: (213) 457-8080 |

| | |
|---|---|
| 54 West Hubbard Street<br>Chicago, IL 60654<br>Telephone: 312.494.4400<br>Facsimile: 312.494.4440<br><br>Alex Harris (pro hac vice)<br>alex.harris@bartlitbeck.com<br>BARTLIT BECK LLP<br>1801 Wewatta Street, Suite 1200<br>Denver, CO 80202<br>Telephone: 303.592.3100<br>Facsimile: 303.592.3140<br><br>*Attorneys for Defendant Walgreen Co.* | ebuhr@reedsmith.com<br>sjohansen@reedsmith.com<br><br>*Attorneys for Defendant*<br>*AmerisourceBergen Drug Corporation* |
| By: */s/ Amy R. Lucas*<br>Amy R. Lucas (S.B. #264034)<br>O'MELVENY & MYERS LLP<br>1999 Avenue of the Stars, 8th Floor<br>Los Angeles, CA 90067<br>Tel: (310) 553-6700<br>Fax: (310) 246-6779<br>alucas@omm.com<br><br>Charles C. Lifland (S.B. #108950)<br>Sabrina H. Strong (S.B. #200292)<br>O'MELVENY & MYERS LLP<br>400 South Hope Street<br>Los Angeles, CA 90071<br>Tel: (213) 430-6000<br>Fax: (213) 430-6407<br>clifland@omm.com<br>sstrong@omm.com<br><br>Amy J. Laurendeau (S.B. #198321)<br>O'MELVENY & MYERS LLP<br>610 Newport Center Drive, 17th Floor<br>Newport Beach, CA 92660<br>Tel: (949) 823-6900<br>Fax: (949) 823-6994<br>alaurendeau@omm.com<br><br>Stephen D. Brody (pro hac vice)<br>O'MELVENY & MYERS LLP<br>1625 Eye Street, NW<br>Washington, DC 20006<br>Tel: (202) 383-5300 | By: */s/ Karl Stampfl*<br>Zachary W. Byer (S.B. #301382)<br>KIRKLAND & ELLIS LLP<br>555 South Flower Street<br>Los Angeles, CA 90071<br>Tel: (213) 680-8400<br>zachary.byer@kirkland.com<br><br>Jennifer G. Levy, P.C. (pro hac vice)<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Tel: (202) 879-5000<br>Fax: (202) 879-5200<br>jennifer.levy@kirkland.com<br><br>Donna Welch, P.C. (pro hac vice)<br>Timothy W. Knapp, P.C. (pro hac vice)<br>Karl Stampfl (pro hac vice)<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle, Chicago, IL 60654<br>Tel: (312) 862-2000<br>Fax: (312) 862-2200<br>donna.welch@kirkland.com<br>tknapp@kirkland.com<br>karl.stampfl@kirkland.com<br><br>*Attorneys for Defendants Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a/ Watson Pharmaceuticals, Inc., Allergan Sales, LLC, Allergan USA, Inc. and specially appearing Allergan Limited (f/k/a Allergan plc)* |

| | |
|---|---|
| Fax: (202) 383-5414<br>sbrody@omm.com<br><br>*Attorneys for Defendants Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc.* | |
| By: /s/ *John D. Lombardo*<br>   Sean O. Morris (SBN 200368)<br>   John D. Lombardo (SBN 187142)<br>   Christopher Beeler (SBN 330496)<br>   ARNOLD & PORTER KAYE SCHOLER LLP<br>   777 South Figueroa Street, 44th Floor<br>   Los Angeles, California 90017-5844<br>   Tel:  (213) 243-4000<br>   Fax:  (213) 243-4199<br>   Sean.Morris@arnoldporter.com<br>   John.Lombardo@arnoldporter.com<br><br>*Attorneys for Defendants Endo Pharmaceuticals Inc., Endo Health Solutions Inc., Par Pharmaceutical, Inc., and Par Pharmaceutical Companies, Inc.* | By: /s/ *Wendy West Feinstein*<br>   Zachary Hill (Bar No. 275886)<br>   MORGAN, LEWIS & BOCKIUS LLP<br>   One Market, Spear Street Tower<br>   San Francisco, CA 94105-1596<br>   Telephone: 1.415.442.1000<br>   Email: zachary.hill@morganlewis.com<br><br>   Wendy West Feinstein (pro hac vice)<br>   MORGAN, LEWIS & BOCKIUS LLP<br>   One Oxford Centre, 32nd Fl.<br>   Pittsburgh, PA 15219-6401<br>   Telephone: 1.412.560.7455<br>   Email: wendy.feinstein@morganlewis.com<br><br>*Attorneys for Defendants Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Watson Laboratories, Inc.; Warner Chilcott Company LLC; Actavis South Atlantic LLC; Actavis Elizabeth LLC; Actavis Mid Atlantic LLC; Actavis Totowa LLC; Actavis Kadian LLC; Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City; and Actavis Laboratories FL, Inc. f/k/ Watson Laboratories, Inc.-Florida* |
| By: /s/ *Katy E. Koski*<br>   Alan R. Ouellette (CA Bar No. 272745)<br>   FOLEY & LARDNER LLP<br>   555 California Street, Suite 1700<br>   San Francisco, CA 94104-1520<br>   Telephone: (415) 434-4484<br>   Facsimile:  (415) 434-4507<br>   aouellette@foley.com | By: /s/ *Elizabeth A. Sperling*<br>   Elizabeth A. Sperling (CA Bar No. 231474)<br>   ALSTON & BIRD LLP<br>   333 South Hope Street, 16th Floor<br>   Los Angeles, CA  90071<br>   Telephone: (213) 576-1000<br>   Facsimile: (213) 576-1100<br>   elizabeth.sperling@alston.com |

11

| | |
|---|---|
| James W. Matthews (Pro Hac Vice)<br>Ana M. Francisco (Pro Hac Vice)<br>Katy E. Koski (Pro Hac Vice)<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue<br>Boston, MA 02199-7610<br>Telephone: (617) 342-4000<br>Facsimile: (617) 342-4000<br>jmatthews@foley.com<br>francisco@foley.com<br>kkoski@foley.com<br><br>*Attorneys for Defendant Anda, Inc.* | Daniel G. Jarcho (pro hac vice)<br>ALSTON & BIRD LLP<br>950 F Street, NW<br>Washington, DC  20004<br>Telephone: (202) 239-3300<br>daniel.jarcho@alston.com<br><br>Cari K. Dawson (pro hac vice)<br>Jenny A. Hergenrother (pro hac vice)<br>Scott A. Elder (pro hac vice)<br>ALSTON & BIRD LLP<br>1201 West Peachtree Street, Suite 4900<br>Atlanta, GA  30309-3424<br>Telephone: (404) 881-7000<br>cari.dawson@alston.com<br>jenny.hergenrother@alston.com<br><br>*Attorneys for Defendant Noramco, Inc.* |

DATED: December 16, 2020                              Respectfully submitted,

| | |
|---|---|
| */s/ Aelish M. Baig*<br><br>Aelish M. Baig<br>Matthew S. Melamed<br>Hadiya K. Deshmukh<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>Post Montgomery Center<br>One Montgomery Street, Suite 1800<br>San Francisco, CA  94104<br>Telephone:  415/288-4545<br>415/288-4534 (fax)<br>aelishb@rgrdlaw.com<br>mmelamed@rgrdlaw.com<br>hdeshmukh@rgrdlaw.com | DENNIS J. HERRERA<br>City Attorney<br>RONALD P. FLYNN<br>YVONNE R. MERE<br>OWEN J. CLEMENTS<br>SARA J. EISENBERG<br>JAIME M. HULING DELAYE<br>Deputy City Attorneys<br>Fox Plaza<br>1390 Market Street, Sixth Floor<br>San Francisco, CA  94102<br>Telephone:  415/554-3957<br>jaime.hulingdelaye@sfcityatty.org |
| Elizabeth J. Cabraser<br>Richard M. Heimann<br>Paulina do Amaral<br>Kevin R. Budner<br>Michael Levin-Gesundheit<br>Jacob H. Polin<br>LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, California 94111-3339<br>Telephone: 415.956.1000<br>Facsimile: 415.956.1008<br>ecabraser@lchb.com<br>rheimann@lchb.com<br>pdoamaral@lchb.com<br>kbudner@lchb.com<br>mlevin@lchb.com | Paul J. Geller<br>Mark J. Dearman<br>Dorothy P. Antullis<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>120 East Palmetto Park Road, Suite 500<br>Boca Raton, FL  33432<br>Telephone:  561/750-3000<br>561/750-3364 (fax)<br>pgeller@rgrdlaw.com<br>mdearman@rgrdlaw.com<br>dantullis@rgrdlaw.com |
| Thomas E. Egler<br>Carissa J. Dolan<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA  92101<br>Telephone:  619/231-1058<br>619/231-7423 (fax)<br>tome@rgrdlaw.com<br>cdolan@rgrdlaw.com | Louise Renne<br>RENNE PUBLIC LAW GROUP<br>350 Sansome Street, Suite 300<br>San Francisco, CA 94104<br>Telephone:  415/848-7240<br>415/848-7230 (fax)<br>lrenne@publiclawgroup.com |
| Jennie Lee Anderson<br>Audrey Siegel<br>ANDRUS ANDERSON LLP | Kevin Sharp<br>SANFORD HEISLER SHARP, LLP<br>611 Commerce Street, Suite 3100 |

| | |
|---|---|
| 155 Montgomery Street, Suite 900<br>San Francisco, CA 94104<br>Telephone: 415/986-1400<br>415/986-1474 (fax)<br>jennie@andrusanderson.com<br>audrey.siegel@andrusanderson.com | Nashville, TN 37203<br>Telephone: 615/434-7000<br>615/434-7020 (fax)<br>ksharp@sanfordheisler.com |
| Edward Chapin<br>SANFORD HEISLER SHARP, LLP<br>655 West Broadway, Suite 1700<br>San Diego, CA 92101<br>Telephone: 619/577-4253<br>619/577-4250 (fax)<br>echapin2@sanfordheisler.com | David S. Casey, Jr.<br>Gayle M. Blatt<br>Alyssa Williams<br>CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP<br>110 Laurel Street<br>San Diego, CA 92101-1486<br>Telephone: 619/238-1811<br>619/544-9232 (fax)<br>dcasey@cglaw.com<br>gmb@cglaw.com<br>awilliams@cglaw.com |
| Ellen Relkin<br>WEITZ & LUXENBERG P.C.<br>700 Broadway<br>New York, NY 10003<br>Telephone: 212/558-5500<br>212/344-5461 (fax)<br>erelkin@weitzlux.com | Melinda Davis Nokes<br>WEITZ & LUXENBERG P.C.<br>1880 Century Park East<br>Los Angeles, CA 90067<br>Telephone: 310/247-0921<br>310/786-9927 (fax)<br>mnokes@weitzlux.com |
| Paul F. Novak<br>Tiffany Ellis<br>WEITZ & LUXENBERG, P.C.<br>24th Floor, The Fisher Building<br>3011 W. Grand Boulevard<br>Detroit, Michigan 48202<br>Tel: (313) 800-4170<br>pnovak@weitzlux.com<br>tellis@weitzlux.com | |
| *Attorneys for Plaintiff The People of the State of California, acting by and through San Francisco City Attorney Dennis J. Herrera* | |