UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PURDUE PHARMA L.P., et al.,<br><br>Defendants. | Case No. 18-cv-07591-CRB   (JSC)<br><br>**DISCOVERY ORDER NO. 3**<br>Re: Dkt. Nos. 397, 399, 400,  401, 403, 405 |

The parties appeared for a Discovery Conference on December 18, 2020.  This Order confirms the matters discussed at the conference and addresses the pending joint discovery letter briefs.  (Dkt. Nos. 397, 399, 400, 401, 403, 405.)

**A.  Docket No. 397**

McKesson shall produce California opioid transactional data and information regarding suspicious orders of opioids in California; McKesson does not claim any burden with producing California-wide data versus a smaller geographic area and the California-wide information is potentially relevant.

McKesson shall produce due diligence files for the customers in what is known as the nine Bay Area counties (San Francisco, Alameda, Contra Costa, Sonoma, Marin, San Mateo, Santa Clara, Solano and Napa).  If there are particular customers outside of those counties that Plaintiff has reason to believe contributed to the public nuisance, then Plaintiff shall identify those customers to McKesson and McKesson shall in good faith consider whether to produce the requested files for the particular customers.  Plaintiff may not be able to identify those additional customers, if any, until it reviews the other transactional data.  Plaintiff has not shown that requiring production of an arbitrary number of files from outside the Bay Area is proportional to

the needs of the case.

As for the temporal limit of McKesson's production, "the FAC lacks any well-pled allegations that Defendants failed to report suspicious orders after . . . 2018. . . . The City has not identified any failures by Defendants since 2018." (Dkt. No. 285 at 83.) Plaintiff chose not to amend the complaint to allege conduct after 2018. However, to the extent McKesson is in possession of documents created after 2018 that reflect any conduct in 2018 or earlier, those documents shall be produced even if most of the identified conduct occurred in 2019 or later.

**B. Docket Nos. 399, 400**

The request for mortality information has been resolved as stated on the record at the December 18, 2020 hearing. Plaintiff has also agreed to at least initially identify purchases and sales of opioids that they have identified through algorithms as suspicious by January 15, 2021, for the years 2006 through 2014. Other years will be provided once Defendants provide them the data needed to run their algorithms.

Defendants also seek claims data, in the form of requests for reimbursement made to insurers, that are in the possession of the San Francisco Department of Public Health, and encounter data, as well as interrogatories asking Plaintiff to identify each prescription Plaintiff contends was wrongful, each prescription Plaintiff contends contributed to the public nuisance, and every person who Plaintiff alleges was harmed by any opioid and whose treatment or condition is the basis for Plaintiff's claims.

Plaintiff responds that it does not intend to offer any evidence of any individual person or prescription; instead, it intends to prove its case using aggregate data. To support its position, it offers to agree to the stipulation required by the MDL court if the plaintiff there did not want to answer similar interrogatories:

> Plaintiff will not assert, either in expert opinions or factual presentations at trial, that any specific prescriptions were unauthorized, medically unnecessary, ineffective or harmful, that any specific prescriptions contributed to an alleged public nuisance in the City and County of San Francisco, California (the "City" or "San Francisco") or that any specific person became addicted to any opioid or was otherwise harmed as a result of any opioid and whose treatment contributes to any basis for Plaintiff's claims.

2

(Dkt. No. 399 at 5.)  The Court agrees that with this stipulation, the claims and encounter data and interrogatory responses are not relevant to Plaintiff's claims; however, some of the information may be relevant to the defense. The best time to access what and how much of the data sought, if any, is relevant to a defense is after Defendants have reviewed the mortality data and Plaintiff's identification of suspicious orders.  After such review, Defendants should be able to more particularly identify what, if any information, they need and why.  At this juncture, the Court is not persuaded that the request as framed is proportional to the needs of the case.

### C.  Docket. No. 401

Plaintiff shall update its Government Fact Sheet as discussed in the joint letter by February 19, 2021.

### D.  Docket No. 403

The request for documents relating to Teva's settlement with Allergan is denied without prejudice to being renewed when and if such documents become relevant.  The Court is not persuaded that the documents are relevant but, if the Court is incorrect, that ruling can be remedied.

### E.  Docket No. 405

Plaintiff's request to require Endo to update all of its production to the present is DENIED for the reasons stated above in connection with Docket No. 397; however, Endo shall update what it agreed to update during the meet and confer process.  (Dkt. No. 405 at 5, 8.)

Endo shall produce documents from the District Managers identified in the joint letter whose areas of responsibility cover the nine Bay Area counties described above.  (Dkt. No. 405 at 8.)

Endo agreed to include Bobbie-Sue Brown as a custodian, and shall also include Eric Vandal as a custodian to the extent there are any additional files available for him.

The Court declines to order further production from Par absent Plaintiff's review of what has been produced and identification of gaps in that production.

### F.  Other Matters

All disputes regarding subpoenas seeking materials that may be privileged depending on

the anticipated upcoming ruling of the California Court of Appeals are preserved and do not need to be raised with the Court at this time.

Plaintiff and Walgreens shall meet and confer and finalize the transaction data to be produced for San Francisco; if any dispute remains, it must be presented to the Court via letter brief by Wednesday, December 23, 2020.  Once the parties agree (or the Court orders) what must be produced, Walgreens may not withhold production on the grounds that the parties have not reached agreement on production outside of California.

The Court declines at this time to continue Plaintiff's deadline for disclosure of expert reports.  Plaintiff's reason—that trial in another case was continued to October with expert reports due in April—demonstrates that the April date is appropriate as long as the case is scheduled for trial in October.

### G.  Formatting Docket Entries

Since no hard copies are being submitted due to the pandemic, it would be helpful if exhibits to discovery letters are docketed separately (e.g., Dkt. No. 405-1) rather than in one long pdf.  It is difficult to navigate to particular exhibits referred to in the discovery letter when they are part of one long document.

### H.  Next Discovery Conference

The next discovery conference will be January 28, 2021 at 8:30 a.m. via Zoom Webinar. The parties' Status Report is due January 27, 2021 by noon.  To the extent the parties seek to have the Court discuss any discovery disputes at the hearing, the joint discovery letter briefs must be filed by January 21, 2021.

**IT IS SO ORDERED.**

Dated: December 21, 2020

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge