No. 20-73430

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

IN RE TEVA PHARMACEUTICAL INDUSTRIES LTD.,

*Petitioner*,

vs.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

*Respondent*,

CITY AND COUNTY OF SAN FRANCISCO; THE PEOPLE OF THE STATE OF CALIOFRNIA, ACTING BY AND THROUGH SAN FRANCISCO CITY ATTORNEY DENNIS J. HERRERA,

*Real Party in Interest*.

---

### STATEMENT OF DISTRICT COURT JUDGE CHARLES R. BREYER IN RESPONSE TO MANDAMUS PETITION

---

United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102

IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

———————————

No. 20-73430

IN RE TEVA PHARMACEUTICAL INDUSTRIES LTD.

———————————

STATEMENT OF DISTRICT
COURT JUDGE CHARLES R.
BREYER
IN RESPONSE TO MANDAMUS PETITION

———————————

Respondent District Court appreciates the opportunity to comment further on the issues raised in the Petition filed by Teva Pharmaceutical Industries Ltd. ("Teva").  See Petition (dkt. 1-3).  Chiefly, in its Petition, Teva asserts the District Court committed clear legal error and abused its discretion when it found that Plaintiffs made a prima facie showing that Teva and its subsidiaries are alter-egos for the sake of establishing personal jurisdiction.  See Petition at 19–30.  Teva contends that Plaintiffs' allegations, accepted as true, fall short of establishing alter-ego jurisdiction as a matter of law, and that because Plaintiffs failed to plead a viable theory of personal jurisdiction over Teva, it was error to rule in Plaintiffs' favor.  Petition at 21–22, 18.  It remains the view of the Court that Plaintiffs' allegations, accepted as true, plausibly allege a viable theory of jurisdiction against Teva, sufficient to survive a motion to dismiss, and that the existing disputes of fact require a jurisdictional ruling "either at a preliminary hearing or at trial."  See Order on Motions to Dismiss (dkt. 285) at 15 (citing Data Disc, Inc. v. Systems

2

Tech. Assocs., Inc., 557 F.2d 1280, 1285 n.2 (9th Cir. 1977)).  Insofar as Teva did not seek clarification of the Court's initial jurisdictional holding,[1] the Court welcomes the invitation to explain itself herein, particularly as to: (A) the role of undercapitalization in pleading alter-ego jurisdiction; (B) the "unity of interest" prong in pleading alter-ego jurisdiction; (C) Plaintiffs' viable theory of personal jurisdiction; and (D) the Court's intentions.

### A.   Undercapitalization

Teva argues that (1) pursuant to In re Boon Global Ltd., 923 F.3d 643, 654 (9th Cir. 2019), Plaintiffs failed to provide evidence of "undercapitalization," "failure to keep adequate records, or "the free transfer of company assets"; and (2) Plaintiffs' factual allegations demonstrated only "a desire" by Teva to control its U.S. subsidiaries, not "total control," as is required by law.  See Petition at 21.[2] The Court disagrees with this characterization.

Teva repeatedly cites Boon Global for the proposition that "[alter-ego] jurisdiction cannot lie where there is no evidence of undercapitalization, failure to keep adequate records, or the free transfer of company assets—all of which would normally be signs of a sham corporate veil."  See Petition at 18, 21, 25–26. Indeed, Teva states that the "question" for purposes of determining alter-ego jurisdiction "is whether the parent is trying to avoid liability through exploitation of the corporate form by operating a fictitious entity that lacks funding."  Id. at 26 (citing Daewoo Elecs. Am. Inc. v. Opta Corp., 875 F. 3d 1241, 1250 (9th Cir.

---

[1] Besides mandamus, Teva has other adequate means of relief available which it has not pursued. For instance, Teva declined to file a motion for reconsideration before filing its petition for mandamus, which by itself has warranted denial of mandamus in the past.  See Cole v. U.S. Dist. Court for Dist. Of Idaho, 366 F.3d 813, 922 (9th Cir. 2004) ("[M]otion for reconsideration . . . should be taken before extraordinary review by mandamus is sought.").

[2] Teva also challenges the successor theory of personal jurisdiction in its petition. Petition at 28–30.  However, because the Court did not undertake any analysis related to this theory in the underlying Order, see Order at 9 n.12, it does not address the successor theory here.

2017) (emphasis added)).  However, this emphasis on "undercapitalization" misconstrues the relevant caselaw.[3]

First, although the dicta in Boon Global, 923 F.3d at 653 (citing Ranza v. Nike, Inc., 793 F.3d 1073–74 (9th Cir. 2015)), said, "[w]e have previously held that jurisdiction cannot lie where there is no evidence of undercapitalization, failure to keep adequate records, or the free transfer of company assets—all of which would normally be signs of a sham corporate veil," Ranza indicates that undercapitalization, inadequate record-keeping, and a parent's free transfer of its subsidiaries' assets "would be signs of a sham corporate veil," but did not say that any of those elements were necessary to establish alter-ego jurisdiction.  See id.

The "unity of interest" test—prong one of the alter-ego theory of jurisdiction—is ultimately about control, not capitalization, record-keeping, or free transfer.  Id. at 1073 ("The . . . test requires 'a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former.'") (citing Doe v. Unocal, 248 F.3d 915, 926 (9th Cir. 2001)).  In fact, courts historically apply the "unity of interest" test without discussing undercapitalization, record-keeping, or free transfer.  See, e.g., American Tel. & Tel. Co v. Compagnie Burxelles Lambert, 94 F.3d 586, 591 (9th Cir. 1996); Kramer Motors, Inc. v. British Levland, Ltd., 628 F.2d 1175, 1177–79 (9th Cir. 1980).  Even assuming that Boon Global and Ranza changed the unity of interest prong of the alter-ego analysis, Plaintiffs have likely met their burden.  Plaintiffs alleged the free transfer of subsidiary assets—i.e., Teva's control and transfer of its U.S. subsidiaries' cash and accounts receivable—multiple times in the pleadings, and the Court relied on such allegations in its Order:

---

[3] Boon Global further undermines Teva's argument because the Ninth Circuit determined there that the district court did not commit "clear error" even when it misapplied the alter ego test.  See 923 F.3d at 654.

> The City alleges that Teva Ltd. financially controlled its
> subsidiaries through "a trade receivables securitization
> program that took control and commingled its
> subsidiaries" receivables and collections via a Special
> Purpose Entity (SPE),' which Teva Ltd. owns, controls,
> and primarily benefits from.  Teva. Opp. at 9 (citing
> Fahey Decl. at 25) (internal quotation marks omitted).
> Additionally, the City alleges that Teva used its
> subsidiaries' cash flows to repurchase its own shares and
> pay dividends to shareholders. Id. at 10 (citing Fahey
> Decl. at 26).  Teva Ltd. also allegedly controlled large
> contracts signed by its subsidiaries, to 'protect itself from
> third-party claims from those subsidiaries.'  Id. (citing
> Fahey Decl. at 27).

Order at 14–15; see also Teva Opp'n (dkt. 205-3).

Teva similarly misunderstands Daewoo, which it cites for the proposition that, when applying the alter-ego test, the "[Ninth Circuit] looks to whether a subsidiary is operating without enough money to pay its bills in determining alter egos."  See Petition at 26.  But Daewoo lists "inadequate capitalization" as a "relevant" factor, not a controlling factor, in determining whether sufficient unity of interest exists.  875 F.3d at 1250.  Indeed, Daewoo makes clear that "California courts emphasize . . . [the] very fact specific" nature of alter ego determinations. Id. at 1249–50.

Accordingly, the Court was not required to find undercapitalization or a lack of corporate formalities at the Teva entities in order to find plausible allegations of personal jurisdiction under the alter-ego theory.

## B.    "Unity of Interest"

When deciding whether a "unity of interest" exists between a parent and its subsidiaries, the question is whether the parent "totally controls the actions of the subsidiary so that the subsidiary is the mere alter ego of the parent."  Howard v. Everex Sys., Inc., 228 F.3d 1057, 1069 n.17 (9th Cir. 2000) (emphasis added). Teva claims that Plaintiffs have not shown "total control" and thus, "the

subsidiaries cannot be 'merely a shell' for Teva Ltd." <u>See</u> Petition at 23.  Teva further describes each of the bases for the District Court's decision as "conflict[ing] directly" with Ninth Circuit law and thus, constituting clear error. <u>See</u> Petition at 22.

As an initial matter, the Court's factual analysis was cumulative, not individualized.  <u>See</u> Order at 12–15.  Thus, Teva's assertion that the presence of any single factor, such as "macro-management of . . .  subsidiaries," "shared management personnel," or "shared financial structures," is not enough—alone— to establish "total control," is true but irrelevant.  <u>See</u> Petition at 22, 24, 25.  The Court found that "the [Plaintiffs'] allegations satisfy several factors indicative of a 'unity of interests and ownership[,]'" including (1) "the commingling of funds and other assets"; (2) "the use of the same employees"; (3) "virtually identical officers and committee members"; and (4) "manipulat[ion] [of] assets between . . . entities."  <u>See</u> Order at 14.  Indeed, in California, courts employ a fact-laden, multi-factor inquiry when assessing the alter ego theory of jurisdiction; no single factor controls.  <u>See, e.g.</u>, <u>Orloff v. Allman</u>, 819 F.2d 904, 909 (9th Cir. 1987), abrogated on other grounds by <u>Hollinger v. Titan Cap. Corp.</u>, 914 F.2d 1564 (9th Cir. 1990) (en banc); <u>Walsh v. Kindred Healthcare</u>, 798 F. Supp. 2d 1073, 1083–84 (N.D. Cal. 2011).

This emphasis on the unique facts of the case allows courts to disregard corporate form when failing to do so would permit fraud, circumvention of a statute, or the achievement of some other wrongful or inequitable purpose.  <u>See</u> <u>Sonora Diamond Corp.</u>, 83 Cal. App. 4th at 538; <u>see also</u> <u>Mesler v. Bragg Mgmt. Co.</u>, 39 Cal. 3d 290, 301 (1985) ("The essence of the alter ego doctrine is that justice be done.  'What the formula comes down to, once shorn of verbiage about control, instrumentality, agency, and corporate entity, is that liability is imposed to reach an equitable result.'") (internal citation omitted).  The Court's holding,

therefore, correctly applies California law.  That it relied predominantly on Teva's shared corporate history and management, control of if its subsidiaries' day-to-day activities, and the shared financial structure of the Teva entities does not change the result nor deny Teva due process under law.[4]

Further, while the Petition challenges the District Court's finding that the "allegations, accepted as true, establish a prima facie case that [Teva] and its U.S. subsidiaries . . . are unified in interests and ownership," Plaintiffs have alleged more than just control.  See Order at 15.  Plaintiffs allege that Teva "commingled its funds and assets, shared virtually identical officers and committee members on its Executive Committee and subsidiaries' subcommittees, manipulated its subsidiaries assets to benefit itself, controlled both the high-level and day-to-day decisions of its subsidiaries, and integrated its subsidiaries into a single economic unit."  See Order at 12; Teva Opp. (dkt. 205-3) at 6–14 (citing Fahey Decl. at 11, 21–22, 25–29).[5]  In factually analogous situations, courts have held that such allegations warrant disregard of the corporate form.  See, e.g., Limestone Memory Sys. LLC v. Micron Tech., Inc., 2019 WL 8690217, at *4–5 (C.D. Cal. Dec. 26, 2019); Updateme Inc. v. Axel Springer SE, 2018 WL 1184797, at *10–11 (N.D. Cal. Mar. 7, 2018); Pac. Bell. Tele. Co. v. 88 Connection Corp., No. 15-cv-04554-LB, 2016 WL 3257656, *5–6 (N.D. Cal. June 14, 2016); Johnson v. Serenity

---

[4] Moreover, the cluster of factual disputes on this subject counseled in favor of resolving the issue at a preliminary hearing or after trial.  See Order at 15.  For example, Plaintiffs alleged that Teva forced its subsidiaries into an SPE program that commingled its subsidiaries' revenue and gave Teva sole control over its subsidiaries' financials.  Id. at 14.  Teva vehemently disputes this allegation.  See Petition at 25. ("[N]one of Teva Ltd.'s U.S.-based subsidiaries participate in the SPE program.").

[5] "Courts may consider evidence presented in affidavits and declarations in determining personal jurisdiction." Krypt, Inc. v. Ropaar LLC, No. 19-cv-03226-BLF, 2020 WL 3639651, at *3 (N.D. Cal. July 6, 2020) (citing Doe, 248 F.3d at 922).

Transp., Inc., 141 F. Supp. 3d 974, 985–86 (N.D. Cal. 2015); Walsh, 789 F. Supp. 2d at 1083–84.

Accordingly, the Court followed the relevant authority in concluding that Plaintiffs had adequately alleged that a "unity of interest" exists between Teva and its subsidiaries.

### C.    Viable Theory of Personal Jurisdiction

Teva next argues that the District Court was not entitled to assume jurisdiction because Plaintiffs "failed to plead a viable theory of personal jurisdiction" over Teva altogether.  Petition at 18.  Teva's main assertion here is that "a complaint must contain . . . the grounds for the court's jurisdiction," Petition at 31, and because the District Court's Order relied on allegations made outside of the complaint, that was clear error.  Not so.

The alter ego theory of personal jurisdiction does not need to be pled in a complaint.  The law explicitly permits plaintiffs to use affidavits and other pleadings to support a personal jurisdiction theory.  Doe, 248 F.3d at 922 ("The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues.") (citing Data Disc, 557 F.2d at 1285).  The plaintiffs in Boon Global did not plead the alter-ego theory of personal jurisdiction in their complaint, but the Ninth Circuit and District Court still analyzed the alter-ego theory to assert personal jurisdiction over the defendants.  See 923 F.3d 643.

This, too, was not error.

### D.    The Court's Intentions

The Court's Order was very much governed by the case's procedural posture.  In a motion to dismiss for lack of jurisdiction, a plaintiff's allegations are to be treated as true, and conflicts are to be resolved in plaintiffs' favor for

purposes of deciding whether a prima facie case of personal jurisdiction exists.
Doe, 248 F.3d at 922 (citing American Tel., 94 F.3d at 588).  Plaintiffs'
allegations, accepted as true, showed more than just control by Teva of its
subsidiaries; they showed commingling of funds and assets, virtually identical
officers and committee members between parent and subsidiaries, manipulation of
assets to benefit the parent, control of day-to-day decisions of Teva's U.S.
subsidiaries, and integration of those subsidiaries into a single economic unit.  See
Order at 12; Teva Opp. at 6–14 (citing Fahey Decl. at 11, 21–22, 25–29).

      In addition, if the pleading and submitted materials raise "disputed questions
of fact with regard to jurisdiction," a district court can hold a preliminary hearing
in order to resolve the dispute.  Data Disc, 557 F.2d at 1285, n.2.  Likewise, if the
"jurisdictional facts are intertwined with the merits," the judge can reserve the
issue for trial, where a plaintiff may present his case in a "coherent, orderly fashion
and without the risk of prejudicing his case."  Id.  The pleadings here raised
disputed questions of material fact. See Order at 13, 14; compare Teva Reply 8
(citing 2nd Herman Decl. ¶ 4) with Teva. Opp. at 9 (citing Fahey Decl. at 25).
Further, whether Teva actively controlled its U.S. subsidiaries to commit fraud is
closely intertwined with the question of whether proper jurisdiction lies, such that
the merits and the jurisdictional facts are intertwined to a degree.  See Madsen v.
Buffum, No. 12-01605-MWF (SPx), 2013 WL 12139139, at *4 (C.D. Cal. July 17,
2013) (deferring personal jurisdiction resolution until after trial when
demonstrating personal jurisdiction based on the allegations would "in all
likelihood" demonstrate "certain elements of the [underlying] claim.").

      Given the allegations of parental control and the factual disputes in this
matter, it makes good sense to wait to address the issue of alter-ego jurisdiction
once there is evidence to examine.  To that end, the Court held in its Order that
"Teva Ltd. raises questions of fact that must be resolved either at a preliminary

hearing or at trial." <u>See</u> Order at 15 (emphasis added).  The Court will of course permit jurisdictional discovery to occur contemporaneously with merits discovery. While Teva would prefer to be spared such discovery, the Court concluded in accordance with law, as explained above, that there is enough here to warrant the imposition.  Following discovery, and depending upon trial concerns, the Court will either (1) invite the parties to participate in a preliminary hearing on jurisdiction or, (2) if the jurisdictional facts are inextricably intertwined with the merits, resolve the issue at trial.  In either case, the Court will be in a much better position to resolve the jurisdictional issue at that point.

Finally, the Court wishes to address the suggestion in Teva's Petition that it feels "pressure to settle a case once a wrongful determination of personal jurisdiction has been made in a large, high-stakes litigation . . . ." <u>See</u> Petition at 15.  The Court has put no pressure on Teva to settle.[6]  This case is one of 2,700 lawsuits filed against opioid manufacturers, distributors, and dispensers.  Order at 3.  It was transferred by the Panel on Multidistrict Litigation to Judge Polster, in the U.S. District Court for the Northern District of Ohio, and then remanded to this district to proceed as a bellwether trial.  <u>Id.</u>  The case is most valuable to the MDL if there is a determination on liability and (if any defendants are found liable) a determination on damages.  Teva, like any civil litigant, is free to settle or to go to trial.

Again, the Court appreciates the Circuit's invitation to explain its thinking, and respectfully submits that the Petition should be denied.

---

[6] Regardless, "[b]y itself . . . such pressure is not enough to justify an encroachment on the final-judgment rule by use of mandamus." <u>Abelesz v. OTP Bank</u>, 692 F.3d 638, 652–53 (7th Cir. 2012).

Respectfully submitted,

Dated: December 22, 2020.

_____

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE