*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

**JOINT DISCOVERY DISPUTE LETTER REGARDING WALGREENS' PRODUCTION OF DISPENSING DATA**

## I.     Plaintiff's Initial Statement

Pursuant to the dispute resolution protocol outlined in the Court's Discovery Order No. 2 (ECF No. 382), Plaintiff submits this statement seeking an order compelling Walgreens to produce dispensing data for the San Jose-San Francisco-Oakland Combined Statistical Area, as defined by the United States Office of Management and Budget.[1]  This is a compromise position, particularly in light of the fact that, in the MDL, Walgreens was ordered to produce dispensing data to individual county plaintiffs on a *statewide* basis.  After months of meeting and conferring, Walgreens still has not articulated any undue burden, yet it remains steadfast in its refusal to produce dispensing data beyond San Francisco.

### A.  Summary of Meet and Confer Process

Plaintiff's very first Request for Production of Documents, served on Walgreens on May 21, 2020, sought Walgreens' dispensing data on a California-wide basis.  *See* Ex. 1 at 4.  In its July 20 responses, Walgreens stated it would "meet and confer with Plaintiff[] on the production of dispensing data."  Ex. 2 at 6.  After trading letters laying out initial positions, on October 19, Plaintiff requested that Walgreens advise "whether [it] will produce . . . data on a California-wide basis" and asked that if it "propose[d] different geography," to provide its justification.  Ex. 3 at 2.  The parties then conducted a video meet and confer on October 28, during which Walgreens conditioned its production of dispensing data for its San Francisco pharmacies on Plaintiff producing dispensing data from public safety net facilities, which Walgreens had not yet even requested.[2]  During the meet and confer, Walgreens did not offer a counterproposal on the geographic scope of dispensing data and committed to responding to Plaintiff's California-wide proposal by the end of that week.  Ex. 4 at 1-2.  On October 30, Walgreens stated that discovery *generally* should not be statewide, without responding specifically to Plaintiff's request regarding dispensing data.  Ex. 5.

The next month, Plaintiff reiterated that Walgreens' dispensing data production should be statewide and stated that if Walgreens did not agree, Plaintiff "ask[ed] once again, what alternative geography [Walgreens] propose[d] and [its] rationale."  Ex. 6 at 2.  The parties then engaged in a video meet and confer on December 9, during which Walgreens rejected Plaintiff's position and provided no counterproposal, while nevertheless not confirming the parties had reached impasse and directing Plaintiff to inquire of other attorneys representing Walgreens who

---

[1] *See* OMB Bulletin No. 18-04 (Sep. 14, 2018), *available at* https://www.whitehouse.gov/wp-content/uploads/2018/09/Bulletin-18-04.pdf.  *See also* Wikipedia, *San Jose-San Francisco-Oakland, CA Combined Statistical Area*, https://en.wikipedia.org/wiki/San_Jose%E2%80%93 San_Francisco% E2%80%93Oakland,_CA_Combined_Statistical_Area.

[2] The following attorneys were in attendance at the October 28, 2020 meet and confer: Kevin Budner (Plaintiff), Michael Levin-Gesundheit (Plaintiff), Sharon Desh (Walgreens), and Sten Jernudd (Walgreens).

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

were not in attendance.[3]  Ex. 7.  Plaintiff did so, and Walgreens responded, asking Plaintiff "to make a proposal for some other geographic scope."  Ex. 8.

On December 15, despite having received no counterproposal from Walgreens, Plaintiff offered a compromise, proposing that Walgreens produce dispensing data for Northern California.[4]  Ex. 9.  Plaintiff highlighted in the parties' December 17 Joint Status Update that "Court intervention may soon be required with respect to the production of Walgreens' dispensing data," including as to "the geographic scope (whether data will be provided for all of California, only San Francisco, or something in between)."  ECF No. 404 at 7.  On January 7, 2021, Walgreens rejected Plaintiff's compromise proposal and offered no counterproposal of its own.  Ex. 10.

While the parties' impasse was clear as of no later than January 7, Plaintiff agreed to a video conference on January 11.[5]  Walgreens' position remained unchanged and the conference merely confirmed the pre-existing impasse on the geographic scope of dispensing data.

### B.  The People are entitled to dispensing data beyond San Francisco's borders.

As this Court already acknowledged, San Francisco exists within an integrated metropolitan region, and limiting discovery to "just San Francisco doesn't really make sense." *See* Dec. 18, 2020 Hr'g Tr. 9:1-2.  This is particularly true for dispensing data, given that opioid pills are small and easily transportable, and individuals need not fill their prescriptions in their home city or county.  Walgreens' San Francisco dispensing data, therefore, simply cannot tell the complete story of the effect of its dispensing practices on San Francisco.

Walgreens operates pharmacies throughout California, serving as a potential source of migration of pills into San Francisco and cause of opioid use disorder in the community. Because dispensing data includes zip codes of de-identified patients, access to dispensing data beyond San Francisco will, at a minimum, allow Plaintiff to analyze the extent to which San Francisco residents traveled beyond San Francisco to obtain opioids from Walgreens pharmacies. Based on the nationwide and California-specific "migration" evidence developed in news reports and other litigation, Plaintiff specifically alleged that opioids have migrated to San Francisco from other jurisdictions.  *See* Am. Compl. ¶¶ 36, 681-685, ECF No. 128.  Those allegations have survived motions to dismiss, and Plaintiff must be allowed the discovery essential to proving them.

---

[3] The following attorneys were in attendance: Kevin Budner (Plaintiff), Michael Levin-Gesundheit (Plaintiff), and Sharon Desh (Walgreens).

[4] Plaintiff defined Northern California as Alameda, Amador, Calaveras, Colusa, Contra Costa, El Dorado, Glenn, Humboldt, Lake, Marin, Mariposa, Mendocino, Merced, Monterey, Napa, Placer, Sacramento, San Benito, San Francisco, San Joaquin, San Mateo, Santa Clara, Santa Cruz, Solano, Sonoma, Stanislaus, Sutter, Tehama, Tuolumne, Trinity, and Yolo Counties. *See* Garrett Dash Nelson & Alasdair Rae, An Economic Geography of the United States, *PLOS One* (Nov. 30, 2016), https://journals.plos.org/plosone/article?id=10.1371/journal.pone.0166083. *See also* ECF No. 397 at 2 n.4.

[5] The following attorneys were in attendance: Kevin Budner (Plaintiff), Michael Levin-Gesundheit (Plaintiff), Kate Swift (Walgreens), and Sharon Desh (Walgreens).

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

For this and other reasons, the transferee court has consistently ordered the pharmacy defendants to produce dispensing data *statewide* in litigation brought by individual counties. *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804-DAP (N.D. Ohio June 17, 2020), ECF No. 3341, at 3 ("This Court has always believed that, at a minimum, transactional dispensing data for the entire state of Ohio is relevant and proportional to the needs of Track One-B. The Sixth Circuit, although expressing some reservations about the proportionality of nationwide dispensing data, implicitly also concluded that the production of transaction dispensing data for Ohio was appropriate for Track One-B."); *id.* at 3 n.4 ("[T]his order confirms that production of transactional dispensing data for *all of Ohio* is relevant and proportional to Track Three and must be produced.) (emphasis in original). Plaintiff maintains that statewide production, as initially requested, would be equally appropriate here.

Importantly, throughout the months-long meet and confer process, Walgreens did not articulate any significant burden associated with incremental production of dispensing data. It has repeatedly referenced the number of stores that would be implicated by Plaintiff's proposals but conceded that the number of stores does not meaningfully affect the burden of collection and production. The only burden Walgreens has identified is not a discovery burden at all but rather the theoretical burden of defending its dispensing conduct beyond San Francisco's 49 square miles. *See* Ex. 5 at 2-4. Nevertheless, Plaintiff has repeatedly sought compromise and now presents a significantly narrowed request.

Plaintiff now seeks dispensing data only for the 14-county San Jose-San Francisco-Oakland Combined Statistical Area, as defined by the United States Office of Management and Budget. This economically connected region comprises Alameda, Contra Costa, Marin, Merced, Napa, San Benito, San Francisco, San Joaquin, San Mateo, Santa Clara, Santa Cruz, Solano, Sonoma, and Stanislaus Counties.[6] Although this proposal slightly exceeds the scope of the geographic region in the Court's most recent order on due diligence files (ECF No. 419 at 1), Plaintiff notes that documents produced in the MDL show that Walgreens' leadership was aware of suspicious opioid dispensing in the Modesto area, and Plaintiff observes that daily commutes from Stockton and Modesto to job centers of the Bay Area are increasingly common.[7]

Walgreens' dispensing data is foundational to Plaintiff's public nuisance claim against Walgreens. Plaintiff cannot understand the effect of Walgreens' dispensing practices in the region—or the effect of those dispensing practices on San Francisco—without it. Walgreens has not identified any particular burden associated with the collection or production sought, and thus Plaintiff's request is more than "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). After months of meeting and conferring, the time has come for Walgreens to share basic facts with Plaintiff in the form of its dispensing data for the greater Bay Area region.

---

[6] *See, supra*, n.1.

[7] *See, e.g., Stockton, Modesto 'Super' Commutes of 90+ Minutes Lead Nation Again*, CBS SF Bay Area (Mar. 18, 2019), https://sanfrancisco.cbslocal.com/2019/03/18/super-commuters-stockton-modesto-again-lead-nation/.

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

## II.    Defendant's Position Statement

### A.    Walgreens has produced dispensing data from all of its San Francisco stores.

On December 28, Walgreens produced 1.58 million prescription records for patients who filled opioids prescriptions at any San Francisco Walgreens. Walgreens has *more than five times* as many stores in San Francisco than it has in the MDL Track 3 plaintiff counties combined. Walgreens produced dispensing data from all of those San Francisco stores, providing Plaintiff a wealth of data on its dispensing practices over the past decade.

Each of those 1.58 million records contains 34 fields of information about the patient's prescription, including sensitive health information about the patient, the medication, and the prescriber. Walgreens made this production just one week after the parties completed negotiations about the scope of the data to be produced. Plaintiff's statement does not even acknowledge this production, much less explain why it might be insufficient. In fact, it is not.

Plaintiff now seeks five times more data—almost *8 million* additional prescription records—from *170* additional Walgreens stores in 13 additional counties. Plaintiffs demand data from stores that filled almost no prescriptions for San Francisco residents, and from stores that are almost 90 miles away.

As discussed below, that request is totally disproportionate to the needs of this case and unlikely to lead to relevant information. Plaintiff's request is also premature. In rushing this dispute to Court, Plaintiff has made no showing that the 1.58 million prescription records Walgreens has already produced in this case are insufficient to meet its needs here.

### B.    Plaintiff's shifting demands belie any actual need for more data.

Plaintiff's demands for dispensing data also have been a moving target. Initially, Plaintiff sought statewide dispensing data. *See supra* at 1. After months of refusing to provide even basic support for that expansive request, Plaintiff changed its position and declared instead that it sought dispensing data from 30 additional counties. *See id* at 2 & n.4. Then, on January 7, Plaintiff unilaterally announced that the parties were at impasse and asked for a final meet and confer. *See* Ex. 11, Levin-Gesundheit Email, January 7, 2020. Walgreens objected to the declaration of impasse, because it was unclear at that point what relief Plaintiff planned to seek, but agreed to meet and confer. *See* Ex. 12 at 2, 5, Swift Email January 8, 2020. The parties met and conferred four days later on Monday, January 11.

On the January 11 meet and confer, Walgreens asked again why Plaintiff believed that dispensing data from 30 counties was necessary or appropriate. Plaintiff provided no additional information. Then, in its statement served the following day, Plaintiff changed course again. [8]

---

[8] Plaintiff submitted its statement one day after the meet and confer, despite the requirement to send its statement "no earlier than three business days after the parties have concluded the meet and confer process." ECF No. 382 at 3. Walgreens objected, but Plaintiff insisted Walgreens follow its accelerated schedule. *See* Ex. 13. Walgreens complied, without waiving its objections. Plaintiff also demanded the final meet and confer take place just one business day, not two, after the submission of Walgreens' statement. Given the January 18 holiday, the final

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

For the first time, Plaintiff demanded dispensing data from 13 counties that, with San Francisco, make up a "Combined Statistical Area." *Supra* at 1. Plaintiff does not explain why this group of counties is appropriate for discovery purposes in this case, and the Office of Management and Budget notes that Combined Statistical Areas "should not serve as a general-purpose geographic framework for nonstatistical activities."[9]

In any event, the repeated changes in Plaintiff's position show that Plaintiff does not actually need any particular scope of dispensing data beyond San Francisco. On the current record, there is no basis to order Walgreens to produce additional dispensing data.

### C. Plaintiff's demand is disproportionate, unduly burdensome, and prejudicial.

Plaintiff's demand that Walgreens produce sensitive patient dispensing data for 13 additional counties beyond San Francisco is disproportionate to the needs of this case and therefore beyond the scope of discovery allowed by the Federal Rules of Civil Procedure. It would also unduly prejudice Walgreens to have to defend its dispensing conduct in 13 other, unrelated counties in a case brought by just one county.

Plaintiff offers no justification for *any* additional dispensing data, beyond a single, vague allegation that "Walgreens' leadership was aware of suspicious opioid dispensing in the Modesto area." *Supra* at 3. Modesto is almost 90 miles from San Francisco. Based on a preliminary review, just *0.04 percent* of the prescriptions Walgreens filled in its Modesto stores were presented by patients who lived in San Francisco. Plaintiff has identified no connection between Walgreens' dispensing in Modesto and its claims in this case.

Nor has Plaintiff made any effort to demonstrate that dispensing data from Modesto is likely to lead to any *other* relevant information. Plaintiff imagines commuters who travel from Modesto and Stockton to work in San Francisco, but points to nothing to even suggest that any harms to those commuters—who do *not* live in San Francisco—have anything to do with the harms Plaintiff alleges in this lawsuit. Thus, even giving Plaintiff every benefit of the doubt with respect to its allegation about suspicious dispensing in Modesto, that allegation provides no basis for an order to produce Modesto dispensing data. Putting Modesto aside, Plaintiff provides no basis whatsoever for its demand that Walgreens produce such sensitive patient health information from *170 additional Walgreens stores* in 13 *other* counties.[10]

---

meet and confer is to take place by Wednesday, January 20. *See* ECF No. 382 at 3. Plaintiff's disregard of the Court's process has hindered the parties' ability to reach agreement.

[9]  *See* OMB Bulletin No. 18-04 (Sep. 14, 2018) at 3, *available at* https://www.whitehouse.gov/wp-content/uploads/2018/09/Bulletin-18-04.pdf.

[10]  Plaintiff's passing reference to allegations about opioid "migration" in the Amended Complaint also falls short. *See supra* at 2, citing Am. Compl. ¶¶ 36, 681-685. Paragraph 36 alleges certain defendants engaged in false marketing and ignored suspicious orders; it says nothing about migration of opioids from one place to another. Paragraphs 681-685 make vague, conclusory allegations about migration from Florida, Maine, and Los Angeles, but say nothing about opioids migrating from the large number of counties surrounding San Francisco into San Francisco proper.

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

Absent any basis to connect this large body of sensitive patient data to Plaintiff's claims, any order to produce it would be unduly burdensome and prejudicial.  The burdens, moreover, fall heavily on more than just Walgreens: The resulting agglomeration of data will contain sensitive personal medical information of hundreds of thousands of Americans.  Although efforts have been made to anonymize the data, large datasets of this kind are known to be susceptible to re-identification. *See, e.g.*, Stuart A. Thompson and Charlie Warze, *Twelve Million Phones, One Dataset, Zero Privacy*, N.Y. Times (Dec. 19, 2019), available at https://www.nytimes.com/interactive/2019/12/19/opinion/location-tracking-cell-phone.html (reporting that the New York Times succeeded in matching purportedly anonymous cell phone data with specific individuals).  Moreover, data breaches can occur even despite best efforts.  *See* Dustin Volz and Robert McMillan, *Federal Judiciary's Systems Likely Breached in SolarWinds Hack*, Wall St. J. (Jan. 7, 2021), available at https://www.wsj.com/articles/federal-judiciarys-systems-likely-breached-in-solarwinds-hack-11610040175.

Such an order also would force Walgreens to defend its dispensing conduct in 13 additional counties beyond the one (already very large) county that actually brought suit.  The additional discovery necessary to defend against such an expanded dispensing case would require extending the case schedule.  Not only would Walgreens have to identify witnesses and documents in defense of scores of non-San Francisco stores, it also would need to take third-party discovery from law enforcement agencies and many others in the 13 additional counties to show that Walgreens' dispensing practices in those counties were lawful and appropriate.

**D.**     **Multiple opioids courts have limited the production of dispensing data.**

Finally, multiple other courts that have confronted the question have limited production of dispensing data to a much narrower geographic area than Plaintiff here has demanded.  For example, in New York's consolidated opioid litigation, plaintiffs sought production of dispensing data from New York City pharmacies, in addition to the two Long Island counties that brought suit; the court limited the production to data from just the two plaintiff counties.  *See* Ex. 14, Decision and Order, *In re: Opioid Litigation*, Index No.: 400000/2017, NYSCEF No. 3388 at 4.  In the City of Springfield (Massachusetts) case, plaintiff requested statewide dispensing data, but the court rejected plaintiff's demand and limited the production of dispensing data to the county in which the plaintiff city is located.  *See* Ex. 15, *City of Springfield v. Purdue Pharma*, 1884-cv-02860, Doc. No. 19-1733 at 53.

Moreover, although Plaintiff asserts that ordering such a broad production of dispensing data is consistent with court orders in the opioid MDL, Plaintiff neglects to mention that the Sixth Circuit ruling "expressing some reservations" about the proportionality of nationwide dispensing data, *supra*, at 3, was an extraordinary order granting the Pharmacy Defendants' petition for a writ of mandamus and ordering the MDL court to strike the dispensing claims from the Track 1 MDL complaints entirely.  *See* Ex. 16, *In re: CVS Pharmacy, Inc., et al.*, Case No. 20-3075, Opinion, Doc. 50-3 at 8 (Sixth Cir. April 15, 2020) (holding that "the district court's decision to grant leave to amend [the Track 1 complaints] was plainly incorrect as a matter of law" and "manifests a persistent disregard of the federal rules").  That relief rendered the petition moot as to the other grounds on which the Pharmacy Defendants sought relief, including with respect to the district court's order to produce nationwide dispensing data.  *See id.* at 9.  Suffice it to say, however, that Walgreens has consistently, strenuously, objected to producing its patients' dispensing data beyond the jurisdictional borders of a given case.

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

      Given the extremely sensitive nature of the large volume of data in question, the fact that Walgreens already has made a substantial production of 1.58 million San Francisco prescription records, and the fact that Plaintiff has not demonstrated any connection between non-San Francisco prescription data and its claims here, Plaintiff's motion should be denied.

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

### III.    Plaintiff's One-Page Statement on Remaining Issues

The parties conferred again on January 19 and remain at impasse.  (Kevin Budner, Michael Levin-Gesundheit, and Miriam Marks appeared for Plaintiff.)  Walgreens still presents no compelling reason to deny Plaintiff the regional dispensing data it seeks.

***San Francisco data alone cannot paint the complete, relevant picture***.  Regardless of how many prescriptions Walgreens filled in San Francisco, Plaintiff's public nuisance claim does not depend on proving harms to particular individuals in San Francisco.  Data for the greater region is required to analyze the extent to which Walgreens' dispensing practices—through the movement of pills or the people dependent on them—contributed to the public nuisance in San Francisco.  "Migration" is familiar to Walgreens, having been litigated in several opioid case tracks.  The compromise region Plaintiff proposes—the San Jose-San Francisco-Oakland Combined Statistical Area ("CSA")—appropriately reflects the interconnectedness of the greater Bay Area, in which people and pills regularly cross county lines.  *Supra*, n.1 at 2 (noting that CSAs "represent[] larger regions that reflect broader social and economic interactions").  Walgreens all but concedes relevance by arguing that a regional data production would require it to "defend its dispensing conduct" in other counties.  Of course, if, as Walgreens elsewhere argues, its dispensing data shows that its conduct in the region did not affect San Francisco, then there is nothing to defend.  Walgreens cannot have it both ways.  In any case, there is nothing "prejudicial" about sharing basic facts at Walgreens' disposal.  That is the purpose of discovery.

***Walgreens has made no showing of burden, let alone undue burden.***  Walgreens does not dispute that there is no real burden associated with the production of the additional dispensing data Plaintiff seeks.  Further, by quickly highlighting entirely new, unverified statistics drawn from greater Bay Area dispensing data, Walgreens confirms that manipulable data files are already available.  Plaintiff is entitled to the same data from which Walgreens has cherry-picked self-serving summary statistics to analyze opioid migration and litigate this case on the merits.

***Plaintiff cannot be faulted for offering compromise to avoid court intervention.***  Plaintiff maintains that statewide production of dispensing data, as has been ordered in multiple other cases, is appropriate.  *See, e.g.*, *supra*, at 3 (describing Ohio-wide production in MDL Tracks 1B and 3); *cf.* MDL ECF No. 2950 at 5 (ordering defendants to produce transactional data from tri-state area).  Plaintiff has offered to compromise, but this unilateral effort to reach resolution without Court intervention in no way "belie[s] actual need."

***Speculative concerns about hacking are not grounds to deny Plaintiff discovery.***  Both sides in this litigation have exchanged sensitive information—hence the protective orders to which all parties stipulated.  Moreover, dispensing data is exchanged on encrypted, PIN- and password-protected hard drives with all patient information de-identified.  Walgreens has produced dispensing data in at least seven cases—in some cases, transmitting the data more than once—and no breaches have occurred.  Walgreens' privacy arguments are a distraction.

***Walgreens' allegations of procedural impropriety are bogus.***  Plaintiff satisfied all prerequisites of Discovery Order No. 2 and exchanged its statement regarding discovery served eight months ago (at least) three business days after the parties had reached impasse.  Plaintiff's request that the parties confer again four calendar days (and one business day) after receiving Walgreens' response did not "disregard" the Court's order that such conferences be held "*[w]ithin* two business days."  In any case, Walgreens did not explain how a few additional days would have caused it to rethink a position from which it has never moved.

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

## IV.   Defendant's One-Page Reply on Remaining Issues

Instead of explaining how the 1.58 million prescription records Walgreens has already produced might somehow be insufficient to analyze whether Walgreens' dispensing practices contributed to a public nuisance in San Francisco, Plaintiff concedes that if Walgreens' non-San Francisco dispensing data "shows that its conduct in the region did not affect San Francisco, then there is nothing to defend."  *Supra* at 7.  Walgreens does not need to produce more dispensing data to make that showing.  If Plaintiff had asked, Walgreens would have produced summary data demonstrating that San Francisco residents filled ***just 1.05%*** of the prescriptions at Walgreens stores in the 13 counties from which Plaintiff seeks additional data.

Walgreens is still amenable to producing summary data, in hopes that it will resolve this dispute.[11]  But in any event, the asserted need for non-San Francisco dispensing data falls away in light of the fact that almost 99% of that data has nothing to do with San Francisco residents.

Given the minimal relevance, there is no reason to order Walgreens to produce more dispensing data, and several reasons not to.  First, as Walgreens explained (*supra* at 6) and Plaintiff does not dispute, it would be necessary to identify documents and witnesses from a large number of stores and third parties outside San Francisco to respond to whatever Plaintiff might say about non-San Francisco dispensing.  Even if Walgreens ultimately were successful in excluding that non-San Francisco evidence from trial, it would still be necessary to develop that discovery in advance of evidentiary rulings—a significant burden.  Second, Plaintiff dismisses the real privacy concerns relating to such a large volume of sensitive patient prescription data as a mere "distraction."  *Supra* at 7.  Plaintiff asserts there is no concern because no data breaches have occurred in the handful of cases where dispensing data has been produced.  But it should go without saying that a risk need not come to pass—indeed, Walgreens has taken considerable steps to ensure that it does ***not*** come to pass—in order to take that risk seriously in determining whether the need for discovery is proportional.  Here, the need is minimal, and the burdens are real.  The balance therefore tips against production.

Finally, to justify its request, Plaintiff mistakenly asserts that the MDL court ordered the pharmacies to produce dispensing data from a "tri-state area."  *Id.* (citing MDL ECF No. 2950 at 5).  The order Plaintiff cites relates to the Track 2 MDL cases in West Virginia.  The MDL court severed the pharmacies from Track 2, and the pharmacies have never been ordered to produce any discovery in those cases.  *See* MDL Case No. 1:17-op-45054, ECF No. 123.  Plaintiff does not dispute that multiple courts have limited the scope of dispensing data to the counties in which Walgreens has been sued.  *See supra* at 6.  Only one court has ruled otherwise.

Given the minimal relevance, and the burdens to Walgreens and its patients, there is no basis to order the production of additional dispensing data from outside San Francisco. Plaintiff's motion should be denied.

---

[11] The communication failure regarding whether non-San Francisco dispensing data bears on San Francisco at all demonstrates how Plaintiff's unwillingness to follow the Court-ordered dispute resolution process, *see supra at* 4 & n.8, has hindered the parties' ability to reach agreement. The parties held a final meet and confer January 19, one business day after Walgreens submitted its three-page statement.  Kate Swift and Sten Jernudd participated for Walgreens.

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

Dated:  January 21, 2021

Respectfully submitted,

LIEFF, CABRASER, HEIMANN
  & BERNSTEIN, LLP

*/s Elizabeth J. Cabraser*

ELIZABETH J. CABRASER
RICHARD M. HEIMANN
PAULINA DO AMARAL
KEVIN R. BUDNER
MICHAEL LEVIN-GESUNDHEIT
JACOB H. POLIN
MIRIAM MARKS
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415/956-1000
415/956-1008 (fax)
ecabraser@lchb.com
rheimann@lchb.com
pdoamaral@lchb.com
kbudner@lchb.com
mlevin@lchb.com
jpolin@lchb.com
mmarks@lchb.com


DENNIS J. HERRERA
City Attorney
RONALD P. FLYNN
YVONNE R. MERE
OWEN J. CLEMENTS
SARA J. EISENBERG
JAIME M. HULING DELAYE
Deputy City Attorneys
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, CA  94102
Telephone:  415/554-3957
415/437-4644 (fax)
jaime.hulingdelaye@sfcityatty.org

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

ROBBINS GELLER RUDMAN
  & DOWD LLP
AELISH M. BAIG
MATTHEW S. MELAMED
HADIYA K. DESHMUKH
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
aelishb@rgrdlaw.com
mmelamed@rgrdlaw.com
hdeshmukh@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
MARK J. DEARMAN
DOROTHY P. ANTULLIS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com
dantullis@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THOMAS E. EGLER
CARISSA J. DOLAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tome@rgrdlaw.com
cdolan@rgrdlaw.com

RENNE PUBLIC LAW GROUP
LOUISE RENNE
350 Sansome Street, Suite 300
San Francisco, CA 94104
Telephone:  415/848-7240
415/848-7230 (fax)
lrenne@publiclawgroup.com

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

ANDRUS ANDERSON LLP
JENNIE LEE ANDERSON
AUDREY SIEGEL
155 Montgomery Street, Suite 900
San Francisco, CA  94104
Telephone:  415/986-1400
415/986-1474 (fax)
jennie@andrusanderson.com
audrey.siegel@andrusanderson.com

SANFORD HEISLER SHARP, LLP
KEVIN SHARP
611 Commerce Street, Suite 3100
Nashville, TN  37203
Telephone:  615/434-7000
615/434-7020 (fax)
ksharp@sanfordheisler.com

SANFORD HEISLER SHARP, LLP
EDWARD CHAPIN
655 West Broadway, Suite 1700
San Diego, CA  92101
Telephone:  619/577-4253
619/577-4250 (fax)
echapin2@sanfordheisler.com

CASEY GERRY SCHENK FRANCAVILLA
  BLATT & PENFIELD LLP
DAVID S. CASEY, JR.
GAYLE M. BLATT
ALYSSA WILLIAMS
110 Laurel Street
San Diego, CA  92101-1486
Telephone:  619/238-1811
619/544-9232 (fax)
dcasey@cglaw.com
gmb@cglaw.com
awilliams@cglaw.com

WEITZ & LUXENBERG P.C.
ELLEN RELKIN
PAUL PENNOCK
700 Broadway
New York, NY  10003
Telephone:  212/558-5500
212/344-5461 (fax)
erelkin@weitzlux.com
ppennock@weitzlux.com

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

WEITZ & LUXENBERG P.C.
MELINDA DAVIS NOKES
1880 Century Park East
Los Angeles, CA  90067
Telephone:  310/247-0921
310/786-9927 (fax)
mnokes@weitzlux.com

*Attorneys for The People of the State of California, acting by and through San Francisco City Attorney Dennis J. Herrera*