*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*, 3:18-cv-7591-CRB-JSC
**FURTHER DISPUTE LETTER RE: WALGREENS' DUE DILIGENCE NOTES**

**I.     Plaintiff's Initial Statement**

The dispensing case against Walgreens rests on claims that Walgreens did not adequately investigate suspicious opioid prescriptions before filling them. In its defense, Walgreens claims that its pharmacists did conduct investigations and that they memorialized their due diligence in one of a few places: (1) free-text database fields stored within its electronic dispensing data; (2) handwritten notes on hard-copy prescriptions; and (3) hard-copy checklists and refusal to fill files. At the Court's direction, the parties continued conferring about these sources after the last hearing. Unfortunately, Walgreens still refuses to produce 99.8% of its electronic notes, even though they contain little PHI, the vast majority of which can be *automatically* redacted with virtually no burden. Walgreens also refuses to collect hard-copy prescriptions from the most critical timeframe, all of which are stored at a single, professionally managed facility. Finally, Walgreens refuses to fix a fatal error in the production of its hard-copy checklists. Respectfully, Walgreens should be compelled to complete and cure all three productions without delay.

**A.  Electronic Notes**

This topic will be familiar to the Court. Plaintiff filed a discovery dispute about it on April 12. Doc. 526. In a subsequent order, the Court concluded that the notes are "directly relevant." Doc. 545 at 1. The Court also confirmed that "[i]t violates the rules of civil discovery to allow Walgreens to defend its conduct based on records that it refuses to produce." *Id.* at 2.

Before entering an order on the scope of the production, however, the Court sought further clarification on the protective order to better assess Walgreens' burden objection. The parties briefed that too. Doc. 552. The upshot is that the protective order authorizes all entities subject to HIPPA or "state privacy law requirements" to disclose protected health information ("PHI"), explaining that failure to do so "would be contrary to the public interest or to the detriment of one or more parties to the proceedings." *Id.* at 1. To the extent the protective order authorizes the parties to redact PHI, it is discretionary (not mandatory). *Id.* at 1-2. Still, Walgreens refused to produce its electronic notes, effectively ignoring the protective order, and arguing it would have to review every single one of the potentially millions of notes at issue.

The Court appeared dissatisfied. At the May hearing, the Court initially concluded that Walgreens "need[ed] to produce these electronic notes subject to the strict protective order." Doc. 565 at 21:23-25; *see also id.* at 23:5-6 ("What I am saying is you're going to have to produce electronic notes."). Yet, despite the fact the Court was "not convinced there's a burden" associated with the production of either party's electronic notes, the Court gave the parties one last opportunity to work it out. The directive for that final meet-and-confer was clear: by May 19, each side was to share enough information to represent both the ***nature*** and ***frequency*** of any PHI substantiating a burden objection.

Plaintiff took that order seriously. Plaintiff collected **all** relevant electronic notes, inserted them into the dispensing data for context, shared that data with Walgreens through two videoconferences, and then, before the meet-and-confer deadline had passed, produced all of that data without redaction and subject to the protective order's "Confidential PHI" designation.

Walgreens took a different tack. Despite the Court's clear instructions, Walgreens showed Plaintiff a sample collected from just **two** of the "roughly half a dozen electronic notes fields" (Doc. 565 at 19:22), and only one of them was from the San Francisco dispensing data. The San Francisco data was pulled from a field called "Patient Comments" and included 1,000

- 1 -

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*, 3:18-cv-7591-CRB-JSC
**FURTHER DISPUTE LETTER RE: WALGREENS' DUE DILIGENCE NOTES**

populated entries. Of those, 837 contained only an email address, and the remaining 163 had nothing even resembling PHI. The second data field, called "Annotations," was collected from dispensing data in Ohio, not San Francisco, as the Court instructed. It included only entries that Walgreens had already deemed to include PHI, which appeared to be primarily phone numbers, nicknames, street addresses, and dates of birth with no accompanying patient name.

Three things stood out from this demonstration. First, despite Plaintiff's queries before, during, and after the meet-and-confers, Walgreens refused to reveal how often the Patient Comment or Annotations fields were populated with any text at all, making it impossible to estimate the number of entries that could even arguably require review. If this information supported Walgreens' position, it would certainly have shared it by now.

Second, even among populated entries, PHI is rare, and much of what Walgreens contended to be PHI clearly does not need to be redacted. *See, e.g.*, Doc. 565 at 26:18-19 (THE COURT: "Does that mean someone's first name has to be redacted? Of course not. Does that mean someone's phone number has to be redacted? No.").

Third, and perhaps most importantly, the vast majority of the potential PHI that Walgreens disclosed can be ***automatically*** redacted using search-and-replace-type techniques. These standard processes are explained in the attached declaration of Jonathan Jaffe, a technology consultant who participated in the meet and confers and has offered to meet with Walgreens' technical team, if helpful. Ex. A, Jaffe Decl. ¶¶ 21-29.

To recap: (1) there does not appear to be much PHI in Walgreens' electronic notes and (2) what little there is can be redacted almost entirely through simple automation. Whatever PHI remained would be minimal and could not possibly justify Walgreens' insistence on manually reviewing every line of every field for millions of prescriptions, particularly given the protective order in place. Doc. 565 at 22:9-12 (observing that if one in "10,000 has someone's first name or a care[giver]" name, that is "like a needle in a haystack," and "that's just not a good balance").

Put simply, Walgreens has not substantiated its burden claim or otherwise supported its proposal to produce only a tiny fraction (less than 0.2%) of its electronic notes. Walgreens can and should be ordered to fully produce all notes with automated redactions (if it so chooses), without manual review, and subject to the strict provisions of the protective order, which was designed to facilitate precisely this type of production.

### B. Hard-Copy Prescriptions

The facts surrounding Walgreens' hard-copy prescriptions remain murky. Walgreens submitted a declaration stating hard copies were scanned into an electronic database. Doc. 526-17. A month later, counsel represented that those prescriptions might have been scanned *before* notes were written on them. Doc. 565 at 19:16-20. Plaintiff asked for a supplemental declaration clarifying that process. Walgreens declined to provide one, and questions remain, including about whether the hard copies are *re-scanned* after annotations are made, as Plaintiff understands could be standard practice. Furthermore, despite the Court's direction, Walgreens did not provide a "sample of hard copies" for Plaintiff to review. Doc. 565 at 30:13-31:10.

To move the ball forward, however, Plaintiff is trying to work with what it *does* know (or reasonably believes) about the hard-copy prescriptions: namely, that Walgreens typically maintains copies in stores for the three years required by law; after that, prescriptions are sent to the records management firm Iron Mountain, where they remain for the balance of

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*, 3:18-cv-7591-CRB-JSC
**FURTHER DISPUTE LETTER RE: WALGREENS' DUE DILIGENCE NOTES**

approximately 10 years; all off-site San Francisco prescriptions are stored in the same Iron Mountain facility in or near the City; and, whether in-store or off-site, the prescriptions are stored sequentially by prescription number. Surprisingly, Walgreens had not even asked whether Iron Mountain could retrieve the relevant documents, but internet research confirms it can. As the company advertises, "Offsite Doesn't Mean Offline": "With just a few clicks, you can search through your offsite inventory, locate what's required to satisfy internal or external requests and arrange for it to be quickly scanned or delivered by one of our vetted and trained employees."[1]

Based on this, Plaintiff proposed that the parties randomly select 1,000 prescription numbers per year from Walgreens' San Francisco dispensing data for the years of records within Iron Mountain's inventory and 500 for the last three years' of prescriptions still stored at Walgreens pharmacies.[2] Plaintiff is also amenable to deploying a randomization algorithm that would limit the number of boxes of prescriptions at issue. This is a reasonable compromise.

Walgreens' counter—sent a week after the negotiations were to have ended—recognizes that 1,000 prescriptions per year is sensible. But, in a bizarre twist, Walgreens categorically refused to collect off-site records stored in a single, dedicated facility overseen by a professional document retrieval service. Instead, it offered only to collect recent records from twelve separate, active pharmacies spread across the City. Why? Walgreens will not explain, leaving Plaintiff to infer that Walgreens wants the evidence in a case implicating decades of conduct to be limited to the past three years in which Walgreens has been defending opioid cases—*i.e.*, when its due diligence policies and practices likely changed. This self-serving proposal should be denied.

### C. Target Drug Good Faith Dispensing Checklists and Refusal to Fill Forms

More than three months ago, the Court ordered Walgreens to produce these documents from 12 (out of approximately 70 current and former) San Francisco stores. Doc. 467. Walgreens completed its production on May 17, but as Plaintiff discovered, the production is critically flawed. Without notice to Plaintiff, Walgreens redacted all the prescription numbers, which do not themselves identify patients. As a result, it is impossible to link Walgreens' purported due diligence efforts with prescriptions in the dispensing data, rendering the documents useless for the purpose for which the Court ordered Walgreens to produce them. Walgreens waited two weeks to acknowledge Plaintiffs' repeated inquiries and then flatly refused to correct the error because, according to Walgreens, it would be "unduly burdensome . . . to redo this production." Even if a burden objection were tenable in this context, however, Walgreens has not come close to proving it—especially given that, at least for the checklists, the prescription numbers appear in the same place on the first page of every document. Plaintiff is flexible and has even proposed an overlay linking the Bates-numbered documents to the dispensing data. But, whatever the burden, Walgreens cannot shirk its discovery obligations by sabotaging its own productions. Walgreens created this problem and should be ordered to fix it.

---

[1] Iron Mountain, *Offsite Records Storage*, https://www.ironmountain.com/services/offsite-recordsstorage (last visited May 28, 2021).

[2] Of course, any sampling arrangement must be accompanied by an agreement not to challenge the validity of the sample size or method. In other words, Walgreens cannot limit the scope of the production only to later claim the production is not representative or statistically significant.

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

**II.**  **Walgreens' Responsive Statement**

**A.**  **Walgreens Will Produce Notes From 12 Stores and a Sample of Hard Copy Notes.**

During the May 10 status conference, this Court instructed the parties:

> We had the 12 stores that the hard copy due diligence records came from; right? It seems to me, I'll let you decide, that if we stay within those 12 stores, we're going to have a better picture -- right? -- that those are our samples, if we looked at the electronic notes and a sample of the hard copies, and maybe those three years would be, you know, that are there in the store.

Ex. B, 5/10/21 Hr'g Tr. 30:22-31:3. Walgreens took the Court's guidance to heart, and after substantial work determining what is possible over the coming months of fact discovery, has agreed to produce what the Court suggested: all electronic notes from the twelve San Francisco stores associated with Walgreens' previous due diligence production, and notes from a sample of 300 hard copy prescriptions per year, dating back ten years, for a total of 3,000 prescriptions.

This production of electronic notes and hard copy prescriptions will be ***444 times larger*** than the sample of 2,000 prescriptions that the MDL Court ordered Walgreens to produce in Track 3. *See* Ex. C, MDL Doc. 3725 at 2 (ordering production of notes for a sample of 200 prescriptions per year from 2010-2019). It is more than proportional to the needs of the case. Walgreens is making this production proactively, given the additional time in the schedule before expert reports, and in hopes of avoiding the need for further Court intervention.[3]

So far, however, despite numerous meet-and-confers and Walgreens' repeated offers of compromise, Plaintiff has refused to negotiate. Instead, Plaintiff continues to demand that Walgreens produce *all* electronic notes from over 70 Walgreens stores—notes on nearly 3 million prescriptions—and a sample of 1,000 prescriptions per year dating back 14 years, for a total of 14,000 hard-copy prescriptions. In digging its heels in, Plaintiff has ignored the Court's guidance that the parties do a better job working out their disputes, not to mention the Court's previous ruling that diligence documents from a 12-store sample was sufficient. Doc. 467.

The production Plaintiff wants would take several more months and would be completely disproportionate to the needs of the case. In any event, this issue should be moot, as Walgreens already has begun work on a substantial production along the lines the Court instructed.

**B.**  **Plaintiff Misstates the Burden of Collecting and Redacting Pharmacist Notes.**

In demanding much more than Walgreens is already working to produce, Plaintiff ignores the significant burden of ***collecting*** Walgreens' electronic notes and hard copy prescriptions.

---

[3] By contrast, the small set of notes Plaintiff produced includes many duplicates that were repeatedly inserted into the data for every prescription associated with a patient. It also appears that Plaintiff may ***not*** have produced all notes, as Plaintiff has not produced all of its dispensing data. Walgreens is conferring with Plaintiff on these issues, in hopes of avoiding a dispute.

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

Walgreens' data team began the collection of these records months ago and has stepped up that process in the past month. Walgreens has collected billions of records to date but has billions of records left to collect.[4] It is a collection the size and complexity of which Walgreens has never attempted, and there are certain immovable constraints on how fast it can be done. *See* Ex. D ¶¶ 9-11, Wetzold Decl. Walgreens has structured the querying and export process to maximize efficiency, but anticipates it will take at least three weeks to export the remaining records because of (1) the amount of data to be exported; (2) the fact that Walgreens' database is a legacy system used every day by a number of teams at Walgreens; and (3) resource constraints with respect to both people and processing power. *Id.* ¶¶ 10-11.

After collection is complete, Walgreens' team must **process, load, and quality control** the data before redacting it. These processes will occur in parallel, and Walgreens hopes to complete them for the proposed 12-store sample of electronic notes by mid-July. At the same time, Walgreens must **locate** the sample of hard copy prescriptions at 12 stores and potentially multiple off-site storage facilities.[5] A mid-July projection for this portion of the process is ambitious. The MDL Court's recent ruling on this issue underscores the inherent burden, setting a July 9 **"aspirational"** deadline for the pharmacy defendants to produce notes on a sample of 2,000 prescriptions. *See* Ex. E, 6/1/21 Special Master Cohen Email at 1; Ex. C, MDL Doc. 3725 at 2 (acknowledging the "burden associated with identifying the notes field data."). Despite Plaintiff's assertions, these processes cannot be short-circuited.

Following collection, there is a significant burden to **reviewing and redacting** for PHI. Plaintiff gives short shrift to the amount of PHI in Walgreens' pharmacist notes, and also to the time and effort necessary to redact it. But as Walgreens demonstrated in sharing samples of notes during multiple meet-and-confers—and as Plaintiff's own technology consultant explains in his supporting declaration—Walgreens' samples of notes included email addresses, many of which include patient names, as well as patient addresses, names, dates of birth, and phone numbers. *See* Ex. A, Jaffe Decl. at 4-5. There is a disconnect between the consultant's sworn declaration and Plaintiff's three-page statement, which functionally ignores the PHI in Walgreens' electronic notes fields.[6]

Moreover, the redaction process takes time, even to the extent it is possible to automate the process. Plaintiff's consultant recommends that Walgreens use "standard pattern matching techniques," "regular expressions," and "pattern matching" to "automatically find and replace PHI." Walgreens is doing all of that. *See* Ex. D ¶ 13, Wetzold Decl. Plaintiff's consultant also

---

[4] In order to collect the records as quickly as possible, Walgreens is collecting entire tables of data nationwide, rather than formulating queries to extract just the notes fields associated with the prescription records Walgreens has produced here. *See* Ex. D ¶ 9, Wetzold Decl.

[5] Plaintiff asserts that all hard copy prescriptions that are stored off-site are located in a single Iron Mountain facility. Of course, Plaintiff has no way of knowing that and, as Walgreens informed Plaintiff, it may not be true.

[6] Plaintiff also complains that Walgreens only shared samples of two notes fields. But as Walgreens explained to Plaintiff, and as described above, Walgreens is still collecting notes data—a significant burden unto itself. Walgreens offered to share PHI samples of additional fields on a rolling basis, but Plaintiff has not accepted that offer.

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

suggests that Walgreens "examin[e] samples of [its] own data to identify PHI," "make efforts to identify the exact types of PHI actually present in quantity in [its] data," and "after such an automatic redaction, to validate accuracy … take a statistically valid random sample to compare what was redacted to the unredacted original and confirm the redaction was neither over nor under inclusive, adjusting accordingly." Again, Walgreens is already doing that. *See id.* at ¶ 13. But, as Plaintiff concedes, these steps only redact the majority of PHI—they do not eliminate it. *See* Ex. A, Jaffe Decl. at 5-6 (around 10% of PHI cannot be automatically redacted); Ex. D, Wetzold Decl.. Additionally, Walgreens still must review the data to confirm these automated techniques were effective.

Finally, it is undisputed that Walgreens must redact every hard copy prescription, because every single one contains a patient's name. That is true whether the prescription is collected in hard copy or electronically. As Walgreens has explained, hard copy prescriptions are scanned at data entry—the first phase of the dispensing process—by pharmacy technicians, not pharmacists. Ex. F, Jernudd to Levin-Gesundheit, May 19, 2021 at 3; *see also* Ex. G, Jernudd Decl. A pharmacist typically does not review the prescription, or make notes on it, until later in the process. *See id.*[7] So, scanned versions do not contain pharmacist notes. Even if that were not the case, it would not reduce the burden to collect scanned copies, because there is no way to export large numbers of scanned hard copies from Walgreens' proprietary system. *See* Doc. 526-17 at ¶ 4, Wetzold Decl.

Again, Walgreens believes it can complete redactions for the large sample of notes it has proposed to produce by mid-July. The vastly larger production that Plaintiff demands would take months more, even employing the auto-redaction methods Plaintiff suggests.

### C.    Walgreens Should Not Be Ordered to Un-redact Due Diligence Checklists.

This Court ordered Walgreens to produce due diligence checklists from twelve San Francisco stores. Doc. 467. Walgreens did so on an expedited schedule, at Plaintiff's insistence. Although Walgreens produced checklists on a rolling basis (also at Plaintiff's insistence), Plaintiff waited until the production was complete before also demanding that Walgreens un-redact prescription numbers that appear on those checklists, supposedly to help Plaintiff link the checklists to specific prescriptions in the data Walgreens has produced. No such link exists. To provide what Plaintiff now demands, Walgreens would not only have to manually re-review and un-redact prescription numbers from 35,000 documents (something no other court has ordered Walgreens to do), someone would also have to add the prescription number to the metadata for the hard copy checklists. That is not required by the ESI protocol. Indeed, MDL plaintiffs have made use of redacted checklists in their expert reports, produced exactly as they were here. Walgreens should not be required to do more, especially considering the burden it already is undertaking to produce pharmacist notes.

Plaintiff's renewed motion should be denied in its entirety.

---

[7] Plaintiff asserts that hard copies may be re-scanned later in the process. That is not Walgreens policy, and it is unclear how Plaintiff got that impression.

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*, 3:18-cv-7591-CRB-JSC
**FURTHER DISPUTE LETTER RE: WALGREENS' DUE DILIGENCE NOTES**

### III. Plaintiff's One-Page Statement on Remaining Issues

*Electronic due diligence notes.* In its responsive statement, Walgreens announced for the first time that it would act unilaterally to produce electronic notes from the 12 stores (out of 70) selected for collection of hard-copy checklists. Walgreens would engage in a manual review, and the production would be complete no earlier than mid-July, weeks after the substantial completion deadline. Doc. 568. To support its proposal, Walgreens misconstrues the Court's comments, claiming that the Court "instructed" Walgreens to produce notes from only these 12 stores. Instead, the Court suggested it would be reasonable for Walgreens to "let the plaintiffs' lawyers come in and look" at "electronic notes and a sample of the hard copies" from those 12 stores to assess burden. The Court explained that doing so would allow the parties to determine, for example, if "there's only notes on 10 percent, 1 percent, 50 percent." Doc. 552 at 30:15-31:9.

Walgreens has not demonstrated burden. The Court's directive was clear: "[I]f someone's going to argue that it's too burdensome, then they're going actually have to come with actual data that proves that." *Id.* at 43:5-7. On May 19, Walgreens showed Plaintiff a sample of primarily email addresses (and no other PHI) from a single San Francisco data field. At the parties' June 4 videoconference, Plaintiff reiterated that it would certainly consider "PHI samples of additional fields." *Supra* at 5 n.7. Walgreens had nothing else to share.

The protective order, which Walgreens still ignores, authorizes production of PHI. Redaction is not necessary, and Walgreens cannot withhold evidence because of its preference. Plaintiff, of course, does not need the limited PHI in Walgreens' electronic notes. Thus, Plaintiff's technology consultant explained how the vast majority of potential PHI Walgreens disclosed— *e.g.*, email addresses, phone numbers, surnames (though rarely present), etc.—could be redacted *automatically*. *See* Ex. A. Walgreens' consultant agrees that these methods "can identify a majority of text" in all notes that Walgreens contends "require[e] redaction." Ex. D. ¶ 13. Therefore, after deploying automated redaction, Walgreens should produce all electronic notes, subject to the protective order and by the substantial completion deadline of June 21. Doc. 568.

*Handwritten notes on hard-copy prescriptions.* Walgreens proposes that it produce 300 hard copy prescriptions per year from 2010 to 2020 randomly selected from prescriptions filled at the 12 stores referenced above. In the context of approximately 3 million prescriptions in total, Walgreens should produce at least 1,000 prescriptions per year (<0.4%) randomly distributed across all stores. The time period should be however long Walgreens actually maintains these records, which Plaintiff understands to be approximately 10 years from whenever Walgreens initiated a litigation hold. Finally, when Walgreens produces these hard-copy prescriptions, it should provide a means of linking them to prescriptions in its dispensing data.

*Hard-copy dispensing checklists.* An MDL Track 3 expert was indeed able to comment on the dearth of completed checklists, but without prescription numbers, the expert could not associate checklists with red-flagged prescriptions. The problem can be solved either by removing unauthorized redactions or providing an overlay. Walgreens confirmed that prescription numbers are generally computer-printed and thus already available electronically via an optical character recognition (OCR) function—meaning that, to produce an overlay, Walgreens would have to manually review only those relatively few (how many, Walgreens did not say) that did not OCR properly. This is a more than proportional task to fix a problem of Walgreens' own making. Finally, contrary to Walgreens' description, Plaintiff identified the problem promptly—before the production was complete and less than three weeks after it began—and raised it immediately.

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*
Case No. 3:18-cv-7591-CRB-JSC

### IV.     Walgreens' One-Page Statement on Remaining Issues

***Plaintiff Refused to Negotiate.***  Throughout the notes dispute, Plaintiff has rejected every offer Walgreens has made.  *See supra* at 4; Ex. H, Jernudd to Levin-Gesundheit, June 7, 2021; Ex. I, Jernudd to Levin-Gesundheit, May 27, 2021; Ex. J, Jernudd to Levin-Gesundheit, May 19, 2021.  Plaintiff has done so despite this Court's guidance to the parties about working harder to resolve discovery disputes.  Walgreens has undertaken a significant production to resolve this dispute in line with its best interpretation of this Court's guidance.  Despite Walgreens' best efforts, and yet another meet and confer, Plaintiff refused to make any counteroffer.[1]  Nevertheless, in an attempt to advance the ball, Walgreens hopes to begin producing notes from 12 San Francisco pharmacies within a week.

***Electronic Due Diligence Notes.***  Walgreens explained the significant burden of collecting its electronic notes, the constraints inherent in that process, and the steps Walgreens has taken to complete collection as quickly as possible.  Plaintiff's one-page statement does not dispute, or even mention, the burden of collection.  Instead, Plaintiff rehashes its arguments about PHI.  This misses the mark, as Walgreens already has employed most of the auto-redaction methods Plaintiff has suggested to speed the process.  *See* Ex. D, Wetzold Decl. ¶¶ 13-15.  Most importantly, Plaintiff does not even attempt to show that the production of electronic notes Walgreens is making is insufficient.  That is because the production is ***hundreds of times*** larger than the production ordered in the MDL, which that court deemed appropriate and proportional.  And Walgreens is moving mountains to get it done as quickly as possible.

***Hard-Copy Prescriptions.***  Likewise, Walgreens has committed to producing a much larger sample of hard-copy prescription notes than the Court ordered in the MDL: 300 prescriptions per year dating back to 2010, which is as far back as Walgreens retains these records.  Ex. H, Jernudd to Levin-Gesundheit, June 7, 2021, at 1 (describing the sampling process).  Once again, Plaintiff has failed to explain why it could possibly need more.  As Walgreens has established, Plaintiff's request for 1,000 hard copy prescriptions per year—five times as many as ordered in the MDL—is burdensome, overbroad, and disproportionate to the needs of the case.

***Hard-Copy Checklists.***  In its one-page statement, Plaintiff asks for the very first time that ***Walgreens*** be required to create the key Plaintiff wants, in order to connect hard copy checklists to Walgreens' dispensing data—a key that does not exist at Walgreens and would have to be manually created for this case.  Such a requirement would go well beyond what the Federal Rules require.  Moreover, as Walgreens explained to Plaintiff, it cannot simply rely on OCR to capture prescription numbers.  The checklists originated as hard copies, and most of the prescription numbers are on stickers.  OCR will fail to pick up numbers on stickers applied at an angle.  Even where OCR does pick up a number, a human reviewer will need to confirm there are no mistakes, which frequently occur.  Therefore, Walgreens would still have to conduct a largely manual process to cross-reference the prescription numbers for the produced checklists with Walgreens' dispensing data.  The Court should deny Plaintiff's request.

---

[8] At 7:30 pm Eastern the day this brief was due, Plaintiff finally offered to negotiate if Walgreens was willing to agree to two demands by 3 p.m. Eastern the following day. Walgreens completed the briefing process, but wrote that it was, of course, open to continued negotiation.

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*, 3:18-cv-7591-CRB-JSC
**FURTHER DISPUTE LETTER RE: WALGREENS' DUE DILIGENCE NOTES**

| | |
|---|---|
| Dated: June 10, 2021 | Respectfully submitted,<br>LIEFF, CABRASER, HEIMANN<br>    & BERNSTEIN, LLP<br><br>*/s Michael Levin-Gesundheit*<br>ELIZABETH J. CABRASER<br>RICHARD M. HEIMANN<br>PAULINA DO AMARAL<br>KEVIN R. BUDNER<br>MICHAEL LEVIN-GESUNDHEIT<br>JACOB H. POLIN<br>MIRIAM MARKS<br>275 Battery Street, 29th Floor<br>San Francisco, CA  94111-3339<br>Telephone:  415/956-1000<br>415/956-1008 (fax)<br>ecabraser@lchb.com<br>rheimann@lchb.com<br>pdoamaral@lchb.com<br>kbudner@lchb.com<br>mlevin@lchb.com<br>jpolin@lchb.com<br>mmarks@lchb.com<br><br>DENNIS J. HERRERA<br>City Attorney<br>RONALD P. FLYNN<br>YVONNE R. MERE<br>OWEN J. CLEMENTS<br>SARA J. EISENBERG<br>JAIME M. HULING DELAYE<br>Deputy City Attorneys<br>Fox Plaza<br>1390 Market Street, Sixth Floor<br>San Francisco, CA  94102<br>Telephone:  415/554-3957<br>415/437-4644 (fax)<br>jaime.hulingdelaye@sfcityatty.org |

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*, 3:18-cv-7591-CRB-JSC
**FURTHER DISPUTE LETTER RE: WALGREENS' DUE DILIGENCE NOTES**

ROBBINS GELLER RUDMAN
  & DOWD LLP
AELISH M. BAIG
HADIYA K. DESHMUKH
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
aelishb@rgrdlaw.com
hdeshmukh@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
MARK J. DEARMAN
DOROTHY P. ANTULLIS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com
dantullis@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THOMAS E. EGLER
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tome@rgrdlaw.com

RENNE PUBLIC LAW GROUP
LOUISE RENNE
350 Sansome Street, Suite 300
San Francisco, CA 94104
Telephone:  415/848-7240
415/848-7230 (fax)
lrenne@publiclawgroup.com

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*, 3:18-cv-7591-CRB-JSC
**FURTHER DISPUTE LETTER RE: WALGREENS' DUE DILIGENCE NOTES**

ANDRUS ANDERSON LLP
JENNIE LEE ANDERSON
AUDREY SIEGEL
155 Montgomery Street, Suite 900
San Francisco, CA  94104
Telephone:  415/986-1400
415/986-1474 (fax)
jennie@andrusanderson.com
audrey.siegel@andrusanderson.com

SANFORD HEISLER SHARP, LLP
KEVIN SHARP
611 Commerce Street, Suite 3100
Nashville, TN  37203
Telephone:  615/434-7000
615/434-7020 (fax)
ksharp@sanfordheisler.com

SANFORD HEISLER SHARP, LLP
EDWARD CHAPIN
655 West Broadway, Suite 1700
San Diego, CA  92101
Telephone:  619/577-4253
619/577-4250 (fax)
echapin2@sanfordheisler.com

CASEY GERRY SCHENK FRANCAVILLA
   BLATT & PENFIELD LLP
DAVID S. CASEY, JR.
GAYLE M. BLATT
ALYSSA WILLIAMS
110 Laurel Street
San Diego, CA  92101-1486
Telephone:  619/238-1811
619/544-9232 (fax)
dcasey@cglaw.com
gmb@cglaw.com
awilliams@cglaw.com

WEITZ & LUXENBERG P.C.
ELLEN RELKIN
PAUL PENNOCK
700 Broadway
New York, NY  10003
Telephone:  212/558-5500
212/344-5461 (fax)
erelkin@weitzlux.com
ppennock@weitzlux.com

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*, 3:18-cv-7591-CRB-JSC
**FURTHER DISPUTE LETTER RE: WALGREENS' DUE DILIGENCE NOTES**

                WEITZ & LUXENBERG P.C.
                MELINDA DAVIS NOKES
                1880 Century Park East
                Los Angeles, CA  90067
                Telephone:  310/247-0921
                310/786-9927 (fax)
                mnokes@weitzlux.com

                *Attorneys for The People of the State of California, acting by and through San Francisco City Attorney Dennis J. Herrera*