# EXHIBIT B

1

1            Pages 1 - 47

2            UNITED STATES DISTRICT COURT

3            NORTHERN DISTRICT OF CALIFORNIA

4   Before The Honorable Jacqueline Scott Corley, Magistrate Judge

5   CITY AND COUNTY OF SAN        )
    FRANCISCO and THE PEOPLE OF THE)
6   STATE OF CALIFORNIA acting by )
    and through San Francisco City )
7   Attorney Dennis J. Herrera,   )
                                   )
8            Plaintiffs,           )
                                   )
9     VS.                          )    NO. C 18-07591 CRB (JSC)
                                   )
10  PURDUE PHARMA L.P.; et al.,    )
                                   )
11           Defendants.           )
                                   )

12                        San Francisco, California
13                        Monday, May 10, 2021

14

15            TRANSCRIPT OF PROCEEDINGS BY ZOOM WEBINAR

16
    APPEARANCES BY ZOOM WEBINAR:
17
    For Plaintiffs:
18                    LIEFF, CABRASER, HEIMANN & BERNSTEIN LLP
                      275 Battery Street - 29th Floor
19                    San Francisco, California  94111
                BY:   KEVIN R. BUDNER, ATTORNEY AT LAW
20                    MICHAEL I. LEVIN-GESUNDHEIT, ATTORNEY AT LAW
                      PAULINA DO AMARAL, ATTORNEY AT LAW
21                    MIRIAM MARKS, ATTORNEY AT LAW

22            (APPEARANCES CONTINUED ON FOLLOWING PAGE)

23

24  REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                  Official Reporter
25

1    plaintiffs -- it's not even clear to me that you guys have

2    really met and conferred on this now.

3         MR. BUDNER:  Your Honor, I think we have.  I think

4    we've encountered some of the roadblocks that Your Honor is

5    encountering now, which is that we frankly just don't get a lot

6    of information to flesh out and substantiate the burden

7    objection.

8        I understand that these may be difficult to locate, to

9    review.  I have to say I was quite surprised to learn this

10   morning, as you did, that what we had thought was a universe of

11   scanned prescriptions, now we're told was scanned at a moment

12   in time before any notes were written on them.  So that changes

13   our understanding.

14       And I guess I would like some confirmation that that is,

15   in fact, true, and we'd like to see -- I mean, we'd like to see

16   that in some sort of written declaration because before what we

17   had in a declaration was all of the prescriptions were scanned

18   front and back, at least there was no exclusion as to front or

19   back, and that the only impediment was that they have to figure

20   out some sort of data architecture to export it.

21       That's a lot different than going back through thousands

22   of boxes in stores and in offsite storage.  And so this is I

23   think a really significant new piece of information that we're

24   getting a month after the briefing on this.

25         MS. SWIFT:  It's something I learned --

1          MR. BUDNER:  It's surprising.

2          MS. SWIFT:  It's something I learned at the very end

3     of last week, and I told you as soon as I learned it.

4        We've never said we could --

5          THE COURT:  It is a little troubling that you just

6     learned it given all the briefing and stuff that we've had it;

7     but that just goes back to what I said at the beginning,

8     Ms. Swift, is I don't think Walgreens has met its burden of

9     showing burden because I don't think Walgreens, maybe until

10    just today, actually understood what's there, but even today,

11    as to the electronic notes and the fields, doesn't understand

12    what's there.

13       So what I want you to do is go back and you need to go and

14    Walgreens needs to, like, give access to, and maybe this is

15    what I said at the very beginning, let the plaintiffs' lawyers

16    come in and look too.  Sit down and do it together.  Not your

17    client tells you something and you tell them something and it's

18    telephone, and it's not working because we're getting

19    inaccurate information.  Okay?  Because we have gotten

20    inaccurate information in the past so they need to sit down

21    together.

22       We had the 12 stores that the hard copy due diligence

23    records came from; right?  It seems to me, I'll let you decide,

24    that if we stay within those 12 stores, we're going to have a

25    better picture -- right? -- that those are our samples, if we

1    looked at the electronic notes and a sample of the hard copies,

2    and maybe those three years would be, you know, that are there

3    in the store.

4      I guess what I'm saying is if you pick a stack and you say

5    to plaintiffs, "Well, come look at this stack," and then they

6    can figure out how many.  At least initially take a stack, a

7    box, file cabinet, whatever it is, they can look through, you

8    can look through together and say, "Oh, there's only notes on

9    10 percent, 1 percent, 50 percent."  Whatever it is.  As we sit

10   here today, we have no idea; right?

11         MS. SWIFT:  Your Honor, we will be happy to meet and

12   confer further with plaintiffs on this issue.

13      I just want to make very clear, all of the information

14   that we have collected and provided to the Court has been

15   completely accurate to the best of our knowledge, and we have

16   been investigating this and talking to lots and lots of people.

17         THE COURT:  No, no, to the best of your knowledge.

18   I'm not suggesting at all, Ms. Swift, that you said something

19   that you knew was inaccurate, but apparently you had received

20   information that was inaccurate and so that was --

21         MS. SWIFT:  It was potentially incomplete is the way I

22   would put it, but understood.  We will go back and meet and

23   confer further with plaintiffs on this.

24         THE COURT:  Okay.  I think that it was my -- it was

25   certainly my understanding, I think plaintiffs' understanding,

1    and it wasn't corrected, that these scanned notes had -- there

2    was no argument in any letter brief that we had to go back and

3    collect hard copy prescriptions as far as I understand it.

4            MS. SWIFT:  There was, Your Honor.  We put in a

5    separate declaration specifically on that issue.

6            THE COURT:  All right.  In any event, but I want this

7    resolved also by -- it was a week -- it was next Wednesday;

8    right?  Not this coming Wednesday, the following Wednesday.

9    The same as what the plaintiffs had with theirs.  All this,

10   we've got to tie this up and move it forward.

11       But, again, you're going to have to produce something --

12   right? -- or you can't talk about it.

13           MR. BUDNER:  If I may, Your Honor, just to understand

14   what is going to happen really after a week from Wednesday, you

15   know, I really hope we can come to some resolution with

16   Walgreens on what an appropriate path forward is.

17       I think that there is at least a possibility that we

18   are -- that our minds do not meet on this given that it's an

19   issue we've discussed for many months, and that Walgreens' idea

20   of what appropriate sampling is does not meet ours.

21       Is there a way that we can -- can you offer a way for us

22   or may I propose a way for us to get this back before

23   Your Honor's attention if the parties are unable to come to an

24   agreement?

25           THE COURT:  Well, you can submit a brief and I'll do