# EXHIBIT J

**From:** Sten Jernudd <Sten.jernudd@bartlitbeck.com>
**Sent:** Wednesday, May 19, 2021 10:34:25 PM (UTC-06:00) Central Time (US & Canada)
**To:** Kevin Budner <kbudner@lchb.com>; Levin-Gesundheit, Michael <mlevin@lchb.com>; Marks, Miriam E. <mmarks@lchb.com>
**Cc:** Kate Swift <kate.swift@bartlitbeck.com>; Sharon Desh <Sharon.desh@bartlitbeck.com>; 'SFOpioidsPlaintiffs@rgrdlaw.com' <SFOpioidsPlaintiffs@rgrdlaw.com>; 'xOpioid SF Nonstayed Defs' <xOpioidSFNonstayedDefs@arnoldporter.com>
**Subject:** Pharmacist Due Diligence Meet and Confer Follow-Up

External E-mail

Counsel,

We write to follow up on the series of meet and confers we've conducted today and yesterday regarding Docs. 526, 549, 552, and 553 (all relating to the parties' production of prescriptions due diligence). Unfortunately, plaintiff waited until today to disclose a significant amount of information about how plaintiff's pharmacists make notes on prescriptions. We have done our best to outline the current state of play below, and have highlighted a number of follow up questions, designed to confirm our understanding of what plaintiff has agreed to produce regarding its pharmacists' prescription due diligence. We have also done our best to answer plaintiff's questions regarding Walgreens' prescription notes, though as we noted during our second call today, those questions have continued to evolve, and it is difficult to answer brand new questions on the fly during our meet and confers.

**Plaintiff's prescription notes:**

During our meet and confer today, plaintiff's counsel disclosed for the first time that plaintiff has only collected notes from the Zuckerberg and Laguna Honda pharmacies, though you understand (contrary to previous assertions) that plaintiff also dispenses methadone from at least one other location in connection with its Behavior Health Services pharmacies. You have not collected any of plaintiff's methadone dispensing data—related to notes or otherwise—though methadone data is responsive to several of our discovery requests and is one of the 26 medications for which both parties agreed to produce dispensing data. You said that you were "looking into" whether you would agree to produce plaintiff's methadone data, and that you would let us know whether there are any "notes" associated with that data. You have failed to raise (much less substantiate) any burden associated with producing any of that data. **Please confirm as soon as possible that plaintiff will produce all methadone dispensing data, any other dispensing data responsive to our requests that you have not yet disclosed, and any associated notes. Please also confirm how far back such data exists and when it will be produced.**

You also told us today (contrary to previous assertions) that plaintiff's pharmacists *do* sometimes

make notes on hard copy prescriptions, but that plaintiff will not make any claim at trial that such notes reflect due diligence.  **Please confirm in writing that plaintiff will enter a stipulation to that effect, or that you will produce your hard copy prescriptions with notes.**

With respect to the limited set of "patient notes" you showed us this morning, you said that the notes are associated with patients, not prescriptions, but that you (the outside lawyers) have associated those notes with individual prescriptions in plaintiff's dispensing data, such that one note may be duplicated many times if a single patient fills many prescriptions.  You said there is no way to tell the date a patient note is entered, unless the date is reflected in the free text note itself, and that old notes may be deleted or altered, and there is no way to see anything but the most recent note.  Nonetheless, you associated each patient's note with every prescription filled for that patient, regardless of when the prescription was filled.  We understand that plaintiff has agreed to produce all patient notes in your possession.  **Please let us know if our understanding of any of these details is incorrect.**

You also told us after our first meet and confer today (and contrary to previous assertions as recent as this morning) that in addition to "patient notes" in the pharmacies' patient profile, plaintiff maintains at least three other types of notes, "prescription notes," "prescription alerts," and "prescription outcomes."  **Please confirm as soon as possible that there are no other types of notes in plaintiff's possession, custody, or control.  We also reiterate our request that you explain what you have done to confirm what notes and other prescription due diligence you do and don't have, as many of your previous representations have turned out to be incorrect.**

**Redaction of PHI:**

You agreed during our call today that the PHI we have identified in our own notes is, in fact, protected health information, including patient names, birthdates, phone numbers, emails, and addresses.  You also agreed that such information may be redacted.  In fact, you said that you were considering redacting the same type of PHI from your own prescription notes, albeit after first producing the notes in unredacted form.  We expressed surprise about this plan (which you only shared for the first time today), as (1) we don't believe it is appropriate to voluntarily produce protected health information, and (2) we don't understand why you would produce it unredacted first if your ultimate plan is to produce a redacted version of the same data later, unless you have recognized that it is burdensome and time-consuming to review and redact notes for PHI.  **Please let us know as soon as possible whether plaintiff intends to produce a redacted version of its notes data and, if so, when.  This is important because, among other reasons, it may affect what we show deponents at upcoming depositions.**

In your email last night at 11 pm, you suggested for the first time various ways that such redactions might be done in an automated fashion.  We are evaluating your suggestions to determine the extent to which they might speed up any review process, but we do not believe auto-redaction will remove the need for a manual review.

**Plaintiff's questions:**

With respect to your questions, we provide the following information, much of which we also provided during our meet and confers or in earlier declarations:

- The 1,000 patient comments we shared with you yesterday were randomly sampled from San Francisco comment narratives using Excel functions.  We sampled notes data associated with responsive San Francisco prescriptions (i.e., prescriptions we have already produced), dating from 2006 to 2019.  The sample was drawn from 540,834 patient records.  Roughly 83% of the sample included email addresses that would need to be reviewed for redaction.  To identify PHI, all of the notes have to be reviewed.

- We also shared a sample of annotations from the Ohio cases, which included a variety of PHI, including but not limited to patient names, addresses, birthdates, and phone numbers.  Roughly 3% of the annotations reviewed to date include PHI that would need to be reviewed for redaction.  Again, to identify that PHI, all of the notes have to be reviewed.

- We are in the process of collecting additional San Francisco notes fields, a process that takes a considerable amount of time given the volume of the data and the fact that it is maintained on a legacy enterprise system that is in use every day at Walgreens.  We will keep you posted on the progress of that collection.

- With respect to your questions about hard copy prescriptions, hard copies are scanned by pharmacy technicians at "data entry," the beginning of the prescription filling process, before the prescription is reviewed by a pharmacist and therefore typically before any notes would be made on the hard copy.  As plaintiff has represented is also true with respect to its own pharmacists, however, Walgreens pharmacists do make notes on hard copy prescriptions.  Without reviewing those hard copies, prescription by prescription, it is impossible to know how many of them have notes.  As we have previously explained, it is also impossible to extract the scans of the hard copies en masse without building a new IT system, even if the scans did include a pharmacist's notes.  As we have also previously explained, in order to produce notes on hard copy prescriptions, we would have to do a manual collection and review of every prescription in question, an extraordinarily burdensome, time-consuming process.

- Hard copy prescriptions are maintained at the pharmacy that filled the prescription for three years (unless the store has sought a waiver from the Board of Pharmacy, in which case they may be retained on site for less time).  After the on-site retention period, and as we have previously explained, the pharmacy typically sends hard copy prescriptions to an off-site storage facility, Iron Mountain.  We know from our work collecting other hard copy documents that pharmacies may retain hard copy prescriptions for longer periods if they have the space.  We have inquired whether there is a centralized system with a record of how far back each San Francisco store currently has hard copy prescriptions.  Walgreens uses several Iron Mountain facilities for off-site storage.  For one county, all hard copy prescriptions are likely but not definitely stored at one Iron Mountain facility.  We have asked for the location of the facility likely to be used by Walgreens' San Francisco pharmacies.  To know for sure, we believe we would need to check the prescription number for each prescription in question.

Prescriptions are stored up to 1,000 prescriptions per box, but they are stored by prescription number, not by patient or by drug.  Therefore, for the 1.1 million responsive hard copy prescriptions associated with our San Francisco pharmacies, we would be talking about pulling many thousands of boxes.  You inquired whether Iron Mountain has a service that will pull those prescriptions on our behalf.  To the best of our understanding they do, but it would entail the same manual review of thousands of boxes that would be required if Walgreens or outside counsel conducted the search—having Iron Mountain pull the prescriptions would not save time.  You asked where prescriptions for closed pharmacies are stored.  Based on our work collecting checklists and refusals to fill, which included collections for three closed stores, hard copy prescriptions for closed stores are likely moved to other locations.  For example, hard copy documents for closed store #1126 were moved to store #4231 (from which we collected and produced over 5,000 documents).  Hard copy documents for closed store #13666 were moved to store #887 (from which we collected and produced over 1,400 documents).  Hard copy documents for closed store #13668 were moved to store #4609 (from which we produced over 2,700 documents).

**In light of all of this, we reiterate our sampling offer with respect to Walgreens' production of prescription notes:**
- We will produce notes on hard copy prescriptions for a random sample of 200 prescriptions per year, going back three years, to the extent those documents remain at the stores.
- We will produce electronic notes for a random sample of 200 prescriptions per year, going back to 2006.

As part of this proposal, Walgreens has already produced a large volume of additional dispensing data for 2006-2012, despite the fact that plaintiff has not done the same and has represented that it does not even retain dispensing data that far back for any of its pharmacies.  We are also evaluating your suggestions regarding "auto-redaction," which we received for the first time late last night, to determine whether they might allow us to produce a larger sample of notes.  We will get back to you as quickly as we can on that front, and we would appreciate prompt responses to our questions above as well.

Thanks,

Sten

**BartlitBeck** LLP

Sten A. Jernudd | p: 312.494.4439 | c: 206.271.5594 | [sten.jernudd@bartlitbeck.com](mailto:sten.jernudd@bartlitbeck.com) | Courthouse Place, 54 West Hubbard Street, Chicago, IL 60654

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly proh bited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

_____
For more information about Arnold & Porter, click here:
http://www.arnoldporter.com