1  DENNIS J. HERRERA, State Bar # 139669
   City Attorney
2  RONALD P. FLYNN, State Bar # 184186
   Chief Deputy City Attorney
3  YVONNE R. MÉRE, State Bar # 173594
   Chief of Complex & Affirmative Litigation
4  OWEN J. CLEMENTS, State Bar # 141805
   SARA J. EISENBERG, State Bar # 269303
5  JAIME M. HULING DELAYE, State Bar # 270784
   Deputy City Attorneys
6  Fox Plaza
   1390 Market Street, Sixth Floor
7  San Francisco, CA  94102
   Telephone:  415.554.3597
8  jaime.hulingdelaye@sfcityatty.org

9  *Attorneys for Plaintiff The People of the State of*
   *California, acting by and through San*
10 *Francisco City Attorney Dennis J. Herrera*

11 Additional counsel appear on signature page

12                  UNITED STATES DISTRICT COURT

13               NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15 | THE CITY AND COUNTY OF SAN | Case No. 3:18-cv-07591-CRB-JSC |
   FRANCISCO, CALIFORNIA and THE
16 PEOPLE OF THE STATE OF
   CALIFORNIA, Acting by and through San    **JOINT STATUS UPDATE**
17 Francisco City Attorney DENNIS J.
   HERRERA,                                  **Judges**: Hon. Charles R. Breyer and Jacqueline
18                                           Scott Corley
                    Plaintiffs,
19                                           **Courtroom**: Via Videoconference
             v.
20                                           **Hearing Date**: July 21, 2021
   PURDUE PHARMA L.P., et al.
21                                           **Hearing Time**: 8:30 a.m.
                    Defendants.
22

23

24

25

26

27

28

The parties respectfully submit this Joint Status Update in advance of the Court's discovery conference scheduled for July 21, 2021 at 8:30 a.m.

## I.     JOINT STATEMENT REGARDING SCHEDULE AND DISPUTE RESOLUTION

The parties jointly report on a number of case developments that have taken place since the last conference with the Court.

### A.     Case Schedule

On June 15, the Court entered the parties' joint stipulation and proposed order to modify the case schedule. Doc. 572. The specific dates are reflected in the chart below:

| Event | Current Schedule |
|---|---|
| Custodial Productions Substantial Completion Deadline | June 4, 2021 |
| Document Production Substantial Completion Deadline | June 21, 2021 |
| Plaintiff's Expert Reports | October 5, 2021 |
| Close of Fact Discovery | November 12, 2021 |
| Defendants' Expert Reports | December 2, 2021 |
| Plaintiff's Expert Rebuttal Reports | December 23, 2021 |
| Close of Expert Discovery | January 14, 2022 |
| Motions for Summary Judgment and *Daubert* Motions | January 24, 2022 |
| Oppositions to Motions for Summary Judgment and *Daubert* Motions | February 25, 2022 |
| Replies in Support of Motions for Summary Judgment and *Daubert* Motions | March 11, 2022 |
| All Trial Materials Due | March 24, 2022 |
| Final Pretrial Conference | April 4, 2022 |
| Trial | April 25, 2022 |

### A.     Update on Status of Settlement Among Stipulating Parties (Docs. 518-19, 562, 564, 570, 586)

On January 26, 2021, the Court stayed the proceedings as to the Stipulating Defendants.[1] On June 11, the Stipulating Parties filed a Third Joint Notice Regarding Update on Status of Settlement, suggesting they provide a further update to the Court on August 9. Doc. 570. The

---

[1] The Stipulating Defendants are distributors McKesson Corporation, AmerisourceBergen Drug Corporation and Cardinal Health, Inc.; and manufacturer Johnson & Johnson, its subsidiary Janssen Pharmaceuticals Inc. f/k/a Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. and its former affiliate Noramco, Inc. (with Plaintiff, the "Stipulating Parties").

1   Court ordered the Stipulating Parties to provide an update on the status of the settlement on

2   August 9.  Doc. 586.

3           **B.**      **Discovery Orders Issued Since Prior Conference (Docs. 578, 592)**

4         Following the last status conference, the Court issued two discovery orders.  In the first,

5   the Court set deadlines regarding Walgreens' due diligence records; ordered that Plaintiff and

6   Walgreens submit a status update to the Court by June 30, 2021 regarding their progress; and

7   ordered Plaintiff to provide Walgreens with an updated Red Flag analysis on or before June 30,

8   2021.  Doc. 578.  The Court also ordered that Endo submit an update to the Court by June 30,

9   2021 regarding the status of its investigation into data and other information potentially

10  responsive to Plaintiff's Interrogatory Nos. 1-4 and the expected date of completion.  *Id.*  In the

11  second discovery order, after reviewing the Parties' respective status reports of June 30, 2021

12  (Docs. 589, 590), the Court ordered Plaintiff and Walgreens to provide an update on their

13  progress in linking the due diligence records to Plaintiff's Red Flag analysis data, and ordered

14  Walgreens to complete production of its due diligence records by August 16, 2021 to include

15  500 hardcopy prescriptions from 2010.  Doc. 592.  The Court also ordered Endo to complete its

16  investigation of the Commercial Data Warehouse and the StayinFront CRM database and

17  database backups and produce any responsive materials discovered therein by July 21, 2021.  *Id.*

18          **C.**      **Discovery Motions**

19        There are no fully briefed discovery disputes before the Court.  However, Defendants

20  filed a motion for an order governing production of medical and prescription insurance claims

21  information, which Plaintiff did not oppose.  Doc. 598.  The Court granted the motion and

22  entered the order on July 20.  Doc. 600.

23  **II.**     **PLAINTIFF'S STATEMENT**

24          **A.**      **Plaintiff Productions**

25        Plaintiff provided its updated Red Flag analysis to Walgreens on June 30, 2021, pursuant

26  to this Court's order.  Walgreens' statement to the contrary is simply not true.  On June 6, nearly

27  a week after Plaintiff produced the updated Red Flag analysis, Walgreens confirmed that they

28  had "loaded Plaintiff's red flag file and developed the random sample code."  Walgreens'

counsel also asked if Plaintiff would break down the analysis into "yearly files," which Plaintiff did. But Walgreens' belated response and request for the data in a different format in no way excuses Walgreens from meeting the Court-imposed deadline for producing due diligence files, as Walgreens suggests below.

Plaintiff has also produced millions of pages of custodial and non-custodial documents in this litigation and disputes Defendants' assertion below that those productions are deficient. Plaintiff also disagrees with Defendants' inaccurate characterizations of Plaintiff's dispensing data but continues to meet and confer with Defendants to answer their questions.[2]

**B.** **Defendants' Discovery Deficiencies and Other Issues Requiring the Court's Attention**

Plaintiff has addressed Defendants' discovery deficiencies in past status reports and will not repeat them all here. But a select few, including several that have become evident only recently, require emphasis.

**1.** **Walgreens**

The Court ordered Walgreens to produce "500 hardcopy prescriptions per year from the same 12 stores dating back to 2010." Doc. 578. Notwithstanding the Order's plain language, Walgreens previously refused to produce more than 250 prescriptions for the years 2010 and 2020. Plaintiff was willing to accept 250 for 2020 because Walgreens produced dispensing data for only half of that year. Plaintiff was unwilling to accept fewer than the 500 Court-ordered hard copies for 2010. The parties flagged the disagreement in a status report (Doc. 589), after which the Court again confirmed that Walgreens was to produce "500 hardcopy prescriptions from 2010" (Doc. 592). Now, Walgreens refuses to produce *any* hard copy prescriptions for 2020, which again violates the Court's orders.

---

[2] Particularly perplexing is Walgreens' assertion that it first learned about Methasoft during the deposition of Michelle Geier on July 12. During a June 7 meet and confer, Plaintiff (again) explained that federally regulated narcotics treatment program—like the Opiate Treatment Outpatient Program ("OTOP")—are governed by 42 C.F.R., Part 2, and that the drugs administered through those programs are documented in a segregated record keeping system. Methasoft is the trade name for that system, and Plaintiff has produced more than 1,700 documents referring to it.

1   Separately, Plaintiff and Walgreens have met and conferred for two months about what

2   Plaintiff believes are significant deficiencies in Walgreens' custodial productions.  Plaintiff

3   intends to initiate the discovery dispute briefing process shortly to address unresolved issues,

4   and Walgreens' characterization of the meet and confer is inaccurate.  The parties are also

5   meeting and conferring about a discrete set of non-custodial document requests, including

6   requests related to employee misconduct, Plaintiff's challenges to certain entries in Walgreens'

7   privilege logs, and a pending request to inspect Walgreens' pharmacy computer system.[3]

8   **2.    Allergan and Teva**

9   On June 25, Plaintiff sent a letter to Teva seeking, *inter alia*, additional information

10   regarding the number of opioids sold by the Teva Defendants that entered San Francisco.  The

11   parties met and conferred on July 19, and Teva has agreed to supplement on various issues and

12   to continue investigating others.  On July 8, Plaintiff sent a letter to Allergan regarding similar

13   issues, including the same request regarding the number of its opioids that entered San

14   Francisco, but has yet to receive a response.

15   **3.    Endo/Par**

16   *Missing Data Issues Related to Interrogatory Nos. 1-4.*

17   On July 2, 2021, this Court ordered that Endo must complete its investigation of and

18   produce all responsive materials from the Commercial Data Warehouse ("CDW"), the

19   StayinFront CRM database, and database backups by July 21, 2021.  Doc. 592.  Plaintiff has

20   received or is expecting productions from the four following data sources:

21   •   **Call Data with Message Description and Message Names Located in Endo's**

22   **CDW ("CDW_ADS Calls with Messages")**.  In Endo's June 30, 2021, Status

23   Report, it stated that it anticipated producing data "during the week of July 5,

24   2021."  On July 16, 2021, Endo produced data from this source, which Plaintiff

25   is in the process of evaluating.

26   _____

27   [3] Just thirty minutes before this statement was due to be filed, Walgreens inserted new (and from Plaintiff's perspective, inaccurate) arguments regarding methadone, the Community Behavioral Health Services pharmacy (which does *not* dispense any responsive opioids), as well as this

28   Court's prior due diligence orders.  Plaintiff does not have time to respond to all of Walgreens' improper, 11th hour additions.

- **Additional Fields of Call Data from 2008 to 2012 Entered from Endo's StayinFront Customer Relationship Management ("CRM") Database ("SIF2008-2012").**  Endo first disclosed the existence of this database, located within Endo's computer environment, during the parties' June 30, 2021, Zoom conference.  In Endo's June 30, 2021, Status Report, Endo stated that it anticipated producing this data "during the week of July 12, 2021."  On July 16, 2021, Endo produced data from this source, which Plaintiff is in the process of evaluating. Endo has not yet provided a satisfactory explanation for why SIF2008-2012 was not previously identified and searched here, or in any other opioid action prior to June 2021, however.  Indeed, it is evident from the parties' discussions that the data could just as easily have been extracted and searched at the outset of the litigation.

- **Call Data Provided to Endo's Lidoderm Discovery Vendor (Celerity) ("SIF2007 Backup").**  On June 15, 2021, Endo indicated that additional call data may have been collected by a discovery vendor in connection with a 2008-2009 Lidoderm investigation.  On July 7, 2021, Endo confirmed that this data source does, indeed, contain responsive non-duplicative data.  During the parties' July 14, 2021, Zoom conference, Endo represented that this data would "likely" be produced on July 21, 2021, in compliance with this Court's July 2, 2021, Order.

- **Provider Data Located on the SIF Database ("SIF Provider Data").**  During the parties' July 14, 2021, Zoom conference, Endo disclosed for the first time that it has located additional data regarding prescribers and "excluded products." Endo has not provided an anticipated date of production.

On July 19, 2021, Endo advised Plaintiff for the first time that it had located missing "materials dropped information associated with calls between 1/2/2013 and 10/24/2014." However, Endo has not yet located missing materials dropped data from October 24, 2011, to January 2, 2013, or October 24, 2014, to June 8, 2015, as Plaintiff requested.  Endo has not

1    provided any explanation for the outstanding gaps in the Materials Dropped File or why the data

2    it is just now producing in June 2021 was not previously identified.  Endo represents it will

3    produce the materials dropped data found by July 21, 2021.

4         **C.      Plaintiff Depositions**

5              Plaintiff and the Endo Defendants will likely seek Court intervention on the upcoming

6    deposition of Tracey Norton.  Norton worked for one of the Endo Defendants' subsidiaries from

7    2011 to 2014, and in early 2019 was deposed about her time there.  Plaintiff now seeks to

8    depose Norton regarding her work for the Allergan/Actavis Defendants from 2002 through

9    2009.  Plaintiff and the Endo Defendants dispute the proper scope of the deposition, specifically

10   under what circumstances Plaintiff may also examine Norton about her time at Endo.  The

11   parties have met and conferred and expect to submit papers in the near future.

12   **III.     DEFENDANTS' STATEMENT**

13        **A.      Status of Party Discovery**

14             **1.      Defendants' Discovery Requests**

15             In advance of the Court's February 26, 2021 deadline for substantial completion of

16   document productions, Plaintiff identified 30 custodial email productions as substantially

17   complete. On April 12, 2021, Plaintiff represented it had substantially completed email

18   production of eight additional custodians. On April 16, Plaintiff notified Defendants that its

19   email production for one additional custodian was substantially complete. On May 18, Plaintiff

20   informed Defendants that around one quarter of its non-email custodial files had not been

21   completely produced. On June 4, Plaintiff produced an additional 52,123 documents totaling

22   694,201 pages, from 40 individual custodians and 18 non-custodial sources. On June 17,

23   Plaintiff represented it was producing an additional 16,314 documents totaling 168,200 pages,[4]

24   and on June 29, Plaintiff produced an additional 20,392 documents totaling 99,239 pages.

25   Defendants are still evaluating these productions, but have discovered what appear to be

26   deficiencies in Plaintiff's overall document production for various time periods, custodians, and

27   _____

28   [4] This production was not made on June 17. Defendants actually received this production on July 8.

1   non-custodial sources. Defendants have raised these issues with Plaintiff, and the parties will

2   meet and confer to attempt to resolve the issues without this Court's intervention.

3      Following the Court's April 15, 2021 Order for Plaintiff to produce Crime Data

4   Warehouse ("CDW") narratives (Doc. 530), Plaintiff made multiple productions of CDW

5   documents, which were complete on June 10. On June 17, following review of those

6   productions, Defendants followed up to narrow their prior requests for police department

7   investigation files in response to Defendants' discovery requests to a small percentage of

8   incidents listed in the CDW for which Plaintiff produced the CDW incident reports. Plaintiff has

9   informed Defendants that it will agree to produce the investigation files associated with these

10  incidents (to the extent such files exist) on a rolling basis, but has not yet committed to a

11  timeframe in which it will complete this production. Defendants request that the Court order a

12  deadline of August 27, 2021 for Plaintiff to complete this production of investigation files.

13     Defendants have also enquired about equivalent databases for incident reports from the

14  San Francisco Sheriff's Department, but as of the date of this status report, have not heard back

15  from Plaintiff.

16     Defendants are also evaluating the sufficiency of Plaintiff's other productions, and have

17  identified additional apparent deficiencies in Plaintiff's dispensing data, including as informed

18  by testimony from the recent depositions of Dr. Michelle Fouts, the Director of Pharmacy at

19  Plaintiff's Laguna Honda Hospital, and Dr. Michelle Geier, a Psychiatric Clinical Pharmacist

20  Supervisor at San Francisco's Community Behavioral Health Services ("CBHS") pharmacy.

21  Amongst other issues, Plaintiff did not produce methadone data  or benzodiazepine data from

22  CBHS, despite the fact that those medications are subject to the parties' agreement regarding

23  dispensing data. Indeed, during Dr. Geier's deposition, she disclosed that Plaintiff keeps and

24  maintains methadone data on a separate system called "Methasoft," which includes many of the

25  same data fields the parties long ago agreed to produce.  That was news to Defendants.  Plaintiff

26  has not argued that producing any of this data would be burdensome.[5] On July 16, Defendants

27  also submitted privilege challenges to Plaintiff.

28

---

[5] Just moments before this status report was due, Plaintiff provided additional revisions, asserting

2274632.8                                                            JOINT STATUS UPDATE
                                                                     CASE. NO. 18-CV-07591-CRB-JSC

1    Defendants are continuing to evaluate the extent of the deficiencies, but have identified

2  the issues they are aware of for Plaintiff, and the parties are meeting and conferring and hope to

3  resolve the issues without this Court's intervention. Defendants are moving forward as quickly

4  as they can in pursuing depositions, but continue to be hamstrung by Plaintiff's ongoing delays

5  in producing the requisite documents and data Defendants need in order to do so.

6              **2.    Plaintiff's Discovery Requests**

7    Defendants have produced millions of documents in the MDL, which are deemed

8  produced in this case.  In addition, Defendants have made additional productions specific to this

9  case.

10    In advance of the last status conference, **Walgreens** completed its custodial productions,

11  resulting in a production of approximately 50,000 custodial documents, on top of the more than

12  380,000 documents Walgreens has produced in the MDL.  On May 17, Walgreens completed its

13  production of hard copy refusals to fill and Target Drug Good Faith Dispensing checklists

14  resulting in a total hard copy production of over 35,000 documents and over 135,000 pages.[6]

15  Walgreens substantially completed its production of documents responsive to Plaintiff's new set

16  of RFPs on July 16, and is continuing to meet and confer with Plaintiff on other items. On July

17  8, in response to Plaintiff's requests, Walgreens made an offer to Plaintiff on new custodians

18  and offered to meet and confer with Plaintiff. Plaintiff rejected the meet and confer and stated it

19  would initiate the discovery dispute process, but Walgreens has not seen that briefing. In

20  subsequent conversations, Plaintiff indicated it may be willing to work out a compromise with

21  Walgreens. Walgreens awaits Plaintiff's position. Walgreens sent responses to Plaintiff's

22  privilege challenges on July 16.

23    On July 9, Walgreens produced unredacted hard copy due diligence records as well as an

24  overlay for its dispensing data enabling Plaintiff to link these records to the prescriptions in

25  Walgreens' dispensing data. Walgreens also produced almost 15 million records relating

26  _____

27  that Walgreens had "inserted many other inaccuracies" into the status report.  Those statements
    are both unexplained and untrue.  Walgreens also objects to Plaintiff's complaint about late
    additions to the status report, as Plaintiff routinely (including in this instance) makes last minute
28  changes to these reports.

    [6] Walgreens has also updated its Interrogatory responses several times at Plaintiff's request.

1   toelectronic pharmacist notes and other due diligence. Walgreens estimates that production
2   constitutes about one-third of its overall electronic notes/due diligence production, and anticipates
3   completing that electronic production by the Court's August 16 deadline. Walgreens' production
4   of notes associated with hard copy prescriptions, however, has been delayed by Plaintiff's failure
5   to provide the discrete prescriptions it flagged in its "red flag analysis" for the 12 relevant stores
6   until July 13, almost two weeks after the Court's June 30 deadline.[7] Once Walgreens received
7   these prescriptions, it immediately ran the sample and began the lengthy process of tracking down
8   these prescriptions. Given Plaintiff's delay and the burden inherent to this production, Walgreens
9   is unable to determine at this time whether it will be able to meet this Court's August 16 deadline
10  for production. But Walgreens is producing 5,000 prescriptions, from 2010-19, as ordered by this
11  Court, as quickly as it can. Walgreens will provide additional updates to Plaintiff and this Court
12  as it determines where the 5,000 prescriptions are all stored, and whether it will be able to meet
13  the August 16 deadline.[8]
14       The **Endo** and **Par** Defendants have produced over 5.4 million documents, including
15  over 232,000 documents in this matter specifically. Consistent with the Court's Order dated July
16  2, 2021 (Doc. 592), by July 21, 2021, Endo will complete its investigation of Endo's
17  Commercial Data Warehouse, the SIF2008-2012 database, and the SIF2007 Backup (in each
18  case as defined in the June 30, 2021 Status Report (Doc. 590)) for any additional data
19  responsive to Plaintiff's Interrogatory Nos. 1-4, and produce any such data.  Specifically, Endo
20  has or by July 21, 2021 will produce:

21

22

23  [7] Plaintiff's assertion above that it provided its "red flag" analysis on June 30 ignores the fact that
    Walgreens repeatedly had to request corrections to that analysis before Walgreens could create
24  the sample of hard copy prescriptions to collect. Plaintiff initially provided a file that included ***all***
    prescriptions from the 12 stores, not just the prescriptions that Plaintiff had "flagged." Walgreens
25  did not have a final analysis from which to draw a sample of "flagged" prescriptions until almost
    two weeks after the Court's deadline.  Since that time, Walgreens has been working diligently to
26  collect sampled hard copy prescriptions from more than a dozen stores and off-site facilities.
    [8] Plaintiff's assertion that the Court ordered Walgreens to produce 5,500 hard copy prescriptions
27  is incorrect.  *See* 6/16/21 Court Tr. 30:23-24 ("THE COURT:  I think that's – that's ten years.
    That's 5,000 prescriptions."  In any event, Walgreens does not believe it would be able to
28  complete a production of 5,500 hard copy prescriptions by August 16, nor is such an increase
    proportional to the needs of this case.

- Call Data containing available information in "message description", "message name", and "reaction description" fields located in and extracted from Endo's Commercial Data Warehouse;

- Call Data containing additional fields of data for the period 2008 to 2012 (inclusive) entered into Endo's former StayinFront customer relationship management ("CRM") database ("SIF2008-2012")[9];

- Call Data from a 2007 backup of its StayinFront CRM database ("SIF2007 Backup") that was located on media maintained by a former eDiscovery vendor Endo used in a prior government investigation involving Lidoderm ("Lidoderm Vendor Media");[10]

- Materials dropped information associated with calls between 1/2/2013 and 10/24/2014.[11]

**Allergan** has deemed produced in this case 724,488 documents and 5,145,819 pages gathered and produced—without geographic limitation—in other opioid cases. It has also agreed to provide its production in the MDL regarding suspicious order monitoring-related documents. In late January and early February, Allergan agreed to conduct several additional

---

[9] Plaintiff asserts that "Endo has not yet provided a satisfactory explanation for why SIF2008-2012 was not previously identified and searched." In fact, Endo provided an explanation to Plaintiff in a July 13, 2021 letter. In any event, discovery remains open, no Endo depositions have been taken, and Endo is now producing the above data.

[10] During the parties' July 14, 2021 Zoom status update conference, counsel for Endo informed Plaintiff that in the course of Endo's investigation to locate additional information responsive to Interrogatory Nos. 1-4 in various data sources, Endo located information related to HCPs in a field present in SIF2008-2012, which is not responsive to Interrogatory Nos. 1-4. Endo expects to produce this additional data after July 21, 2021 to the extent it is relevant and responsive to Plaintiff's discovery requests.

[11] On Monday, July 19, 2021, Endo confirmed that it located materials dropped information associated with calls between 1/2/2013 and 10/24/2014. Endo located this information in a legacy SQL environment that contains data from Endo's Veeva/Atlas Customer Relationship Management system. Endo is preparing this materials dropped information for production and expects to produce this information on Wednesday, July 21, 2021. Endo has conducted an exhaustive investigation of the Endo Commercial Data Warehouse in its effort to locate materials dropped data for the remainder of the time period raised by Plaintiff as missing information in previous productions. Endo has not located additional materials dropped data other than what is described above and what it previously produced. It is possible that in the future, Endo will locate additional data points that will allow Endo to perform additional SQL searches of the Endo Commercial Data Warehouse, and in such event, Endo will perform such searches.

1   searches for this case in particular at Plaintiff's request. On February 26, 2021, Allergan

2   produced an additional 47,984 documents, including 190,209 pages, which includes the results

3   of several of those searches.  On March 13, 2021, Allergan made another substantial additional

4   production.  On March 24, 2021, Allergan produced additional chargeback and rebate data as

5   well as its privilege log.  Allergan's production is substantially complete.

6       The **Teva** Defendants have produced over 3.2 million documents available to Plaintiff,

7   and have completed the production of documents for the additional agreed regional custodians.

8       **B.      Status of Other Third-Party Discovery**

9       The California Department of Justice ("CA DOJ") produced its CURES data on April

10   28.  On May 14, DOJ made a supplemental production of CURES data correcting issues

11   identified by Walgreens. Walgreens recently notified Plaintiff and the CA DOJ that it intends to

12   seek re-identification of certain prescribers, including all of Plaintiff's prescribers, contained in

13   the CURES data that CA DOJ produced. The parties and CA DOJ met and conferred about this

14   issue on July 14. CA DOJ indicated it was not willing to identify Plaintiff's prescribers in the

15   CURES data, even if notice was properly provided, because of its "other" outstanding

16   objections. The parties asked whether CA DOJ would agree to provide an overlay for the

17   CURES data flagging which prescribers are employed by Plaintiff, but not actually identifying

18   them, in order to help Walgreens limit the number of names it ultimately must seek for

19   identification. CA DOJ is considering the issue.

20       In April 2020, Defendants served requests for production on Plaintiff for the production

21   of documents and data from all pertinent subdivisions of the City and County of San Francisco.

22   When the City and County was dismissed as a plaintiff, Plaintiff took the position that certain of

23   its subdivisions were not within Plaintiff's custody and control, requiring third-party subpoenas.

24   Defendants therefore served subpoenas on the San Francisco departments and entities that

25   Plaintiff has deemed outside of its custody and control, including the Department of the

26   Environment, Department of Emergency Management, Board of Supervisors, Controller's

27   Office, Mayor's Office, District Attorney's Office, Department of Human Resources, Health

28

1  Service System, and Human Services Agency.[12] These subdivisions have responded to the

2  subpoenas, and the parties are in the process of meeting and conferring regarding those

3  responses. The parties will submit disputes to the Court as necessary.

4      Defendants are also pursuing third-party discovery from various state agencies, law

5  enforcement entities, and third-party pharmacies, and have subpoenaed the Medical Board of

6  California, the Dental Board of California, the California Board of Registered Nursing, and the

7  United States Drug Enforcement Administration. Certain of the third-party law enforcement

8  agencies (represented by one of the firms also representing Plaintiff) have objected to the

9  subpoenas, including on the basis that their municipality has an opioid-related case pending in

10  the MDL. Defendants dispute this objection, which cannot deprive Defendants of discovery

11  regarding geographic areas Plaintiff has put at issue in this case, and are meeting-and-conferring

12  with these agencies to attempt to resolve this issue without Court intervention. Defendants have

13  met and conferred with the Medical Board of California, the Dental Board of California, the

14  California Board of Registered Nursing, and the United States Drug Enforcement

15  Administration, and are negotiating the scope of their productions.

16

17  DATED:   July 20, 2021                          Respectfully submitted,

18                                                  /s/ Kevin R. Budner
    DENNIS J. HERRERA                               Elizabeth J. Cabraser
19  City Attorney                                   Richard M. Heimann
    RONALD P. FLYNN                                 Paulina do Amaral
20  YVONNE R. MERE                                  Kevin R. Budner
    OWEN J. CLEMENTS                                Michael Levin-Gesundheit
21  SARA J. EISENBERG                               Jacob H. Polin
    JAIME M. HULING DELAYE                          Miriam Marks
22  Deputy City Attorneys                           LIEFF CABRASER HEIMANN &
    Fox Plaza                                       BERNSTEIN, LLP
23  1390 Market Street, Sixth Floor                 275 Battery Street, 29th Floor
    San Francisco, CA  94102                        San Francisco, California 94111-3339
24  Telephone:  415/554-3957                        Telephone: 415.956.1000
    jaime.hulingdelaye@sfcityatty.org               Facsimile: 415.956.1008
25                                                  ecabraser@lchb.com

26  Aelish M. Baig                                  Paul J. Geller
    Hadiya K. Deshmukh                              Mark J. Dearman

27

28  _____
    [12] Defendants have also served subpoenas on the San Francisco Superior Court and the University of California San Francisco Hospital.

Taeva Shefler
ROBBINS GELLER RUDMAN & DOWD
LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
aelishb@rgrdlaw.com

Thomas E. Egler
Jay Alvarez
ROBBINS GELLER RUDMAN & DOWD
LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tome@rgrdlaw.com

Jennie Lee Anderson
Audrey Siegel
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA  94104
Telephone:  415/986-1400
415/986-1474 (fax)
jennie@andrusanderson.com
audrey.siegel@andrusanderson.com

Edward Chapin
SANFORD HEISLER SHARP, LLP
655 West Broadway, Suite 1700
San Diego, CA  92101
Telephone:  619/577-4253
619/577-4250 (fax)
echapin2@sanfordheisler.com

Ellen Relkin
WEITZ & LUXENBERG P.C.
700 Broadway
New York, NY  10003
Telephone:  212/558-5500
212/344-5461 (fax)
erelkin@weitzlux.com

Paul F. Novak
Tiffany Ellis
WEITZ & LUXENBERG, P.C.
24th Floor, The Fisher Building

Dorothy P. Antullis
Nicolle Brito
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com

Louise Renne
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, CA 94104
Telephone:  415/848-7240
415/848-7230 (fax)
lrenne@publiclawgroup.com

Kevin Sharp
SANFORD HEISLER SHARP, LLP
611 Commerce Street, Suite 3100
Nashville, TN  37203
Telephone:  615/434-7000
615/434-7020 (fax)
ksharp@sanfordheisler.com

David S. Casey, Jr.
Gayle M. Blatt
Alyssa Williams
CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD LLP
110 Laurel Street
San Diego, CA  92101-1486
Telephone:  619/238-1811
619/544-9232 (fax)
dcasey@cglaw.com
gmb@cglaw.com
awilliams@cglaw.com

Melinda Davis Nokes
WEITZ & LUXENBERG P.C.
1880 Century Park East
Los Angeles, CA  90067
Telephone:  310/247-0921
310/786-9927 (fax)
mnokes@weitzlux.com

2274632.8

3011 W. Grand Boulevard
Detroit, Michigan 48202
Tel: (313) 800-4170
pnovak@weitzlux.com

*Attorneys for Plaintiff The People of the State of California, acting by and through San Francisco City Attorney Dennis J. Herrera*

- 14 -

1    DATED:  July 20, 2021                    Respectfully submitted,

2          s/ Sean O. Morris                           s/ Brent A. Hawkins

3    Sean O. Morris (SBN 200368)              Brent A. Hawkins (S.B. # 314266)
     John D. Lombardo (SBN 187142)           Zachary Hill (S.B. #275886)
4    ARNOLD & PORTER KAYE                     MORGAN, LEWIS & BOCKIUS LLP
     SCHOLER LLP                             One Market, Spear Street Tower
5    777 South Figueroa Street, 44th Floor    San Francisco, CA  94105-1596
     Los Angeles, CA  90017-5844             Telephone: (415) 442-1000
6    Telephone: (213) 243-4000               brent.hawkins@morganlewis.com
     Facsimile: (213) 243-4199               zachary.hill@morganlewis.com
7    sean.morris@arnoldporter.com
     john.lombardo@arnoldporter.com          Eric W. Sitarchuk*
8                                            Rebecca J. Hillyer*
     Jeremy T. Kamras (State Bar No. 237377)  MORGAN, LEWIS & BOCKIUS LLP
9    Jeremy.Kamras@arnoldporter.com          eric.sitarchuk@morganlewis.com
     ARNOLD & PORTER KAYE                     rebecca.hillyer@morganlewis.com
10   SCHOLER LLP                             1701 Market Street
     Three Embarcadero Center, 10th Floor     Philadelphia, PA  19103-2921
11   San Francisco, CA 94111-4024            Telephone: +1.215.963.5000
     Telephone: (415) 471-3100               Facsimile: +1.215.963-5001
12   Fax: (415) 471-3400
                                             Wendy West Feinstein (*pro hac vice*)
13   *Attorneys for Defendants Endo*          MORGAN, LEWIS & BOCKIUS LLP
     *Pharmaceuticals Inc., Endo Health*      One Oxford Centre, 32nd Floor
14   *Solutions Inc., Par Pharmaceutical, Inc.,*  Pittsburgh, PA  15219-6401
     *and Par Pharmaceutical Companies, Inc.*   Telephone: (412) 560-7455
15                                            wendy.feinstein@morganlewis.com

16                                            *Attorneys for Defendants*
                                             *Teva Pharmaceuticals USA, Inc., Cephalon,*
17                                            *Inc., Actavis LLC, Watson Laboratories, Inc.,*
                                             *and Actavis Pharma, Inc. f/k/a Watson*
18                                            *Pharma, Inc.*

19                                            *Denotes national counsel, pro hac vice*
                                             *forthcoming*
20

21   Zachary W. Byer (S.B. #301382)          Charles J. Stevens (SBN 106981)
     KIRKLAND & ELLIS LLP                    cstevens@gibsondunn.com
22   555 South Flower Street                 Joshua D. Dick (SBN 268853)
     Los Angeles, CA  90071                  jdick@gibsondunn.com
23   Telephone: (213) 680-8400               Kelsey J. Helland (SBN 298888)
     zachary.byer@kirkland.com               khelland@gibsondunn.com
24                                           GIBSON DUNN & CRUTCHER LLP
     Jennifer G. Levy, P.C. (*pro hac vice*)  555 Mission Street, Suite 3000
25   KIRKLAND & ELLIS LLP                    San Francisco, CA  94105
     1301 Pennsylvania Ave., N.W.            Telephone: 415.393.8200
26   Washington, DC  20004                   Facsimile: 415.393.8306
     Telephone: (202) 879-5000
27   Facsimile: (202) 879-5200
     jennifer.levy@kirkland.com
28

2274632.8

1

2   Donna Welch, P.C. (*pro hac vice*)
    Timothy W. Knapp, P.C. (*pro hac vice*)
3   Karl Stampfl (*pro hac vice*)
    KIRKLAND & ELLIS LLP
4   300 North LaSalle
    Chicago, IL  60654
5   Telephone: (312) 862-2000
    Facsimile: (312) 862-2200
6   donna.welch@kirkland.com
    tknapp@kirkland.com
7   karl.stampfl@kirkland.com

8   *Attorneys for Defendants*
    *Allergan Finance, LLC f/k/a Actavis, Inc.*
9   *f/k/a Watson Pharmaceuticals, Inc.,*
    *Allergan Sales, LLC and Allergan USA,*
10  *Inc. and specially appearing defendant*
    *Allergan plc f/k/a Actavis plc*

11

12

13

Kaspar Stoffelmayr
(*pro hac vice*)
kaspar.stoffelmayr@bartlitbeck.com
Katherine M. Swift
(*pro hac vice*)
kate.swift@bartlitbeck.com
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL  60654
Telephone: 312.494.4400
Facsimile: 312.494.4440

Alex Harris
(*pro hac vice*)
alex.harris@bartlitbeck.com
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO  80202
Telephone: 303.592.3100
Facsimile: 303.592.3140

*Attorneys for Defendant*
*Walgreen Co.*

14

15  Alan R. Ouellette (CA Bar. No. 272745)
    FOLEY & LARDNER LLP
16  555 California Street, Suite 1700
    San Francisco, CA  94104-1520
17  Telephone: (415) 434-4484
    Facsimile: (415) 434-4507
18  aouellette@foley.com

19  James W. Matthews (*pro hac vice*)
    Ana M. Francisco (*pro hac vice*)
20  Katy E. Koski (*pro hac vice*)
    FOLEY & LARDNER LLP
21  111 Huntington Avenue
    Boston, MA  02199-7610
22  Telephone: (617) 342-4000
    Facsimile: (617) 342-4000
23  jmatthews@foley.com
    francisco@foley.com
24  kkoski@foley.com
    *Attorneys for Defendant*
25  *Anda, Inc.*

26

27

28

2274632.8

- 16 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from the above signatories.

Dated: July 20, 2021                      By: /s/ *Kevin R. Budner*

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that, on July 20, 2021, service of this document was accomplished

3    pursuant to the Court's electronic filing procedures by filing this document through the ECF

4    system.

5

/s/ *Kevin R. Budner*

6    Kevin R. Budner

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -