DAVID CHIU, State Bar # 189542
City Attorney
YVONNE R. MERE, State Bar # 173594
Chief Deputy City Attorney
SARA J. EISENBERG, State Bar # 269303
Chief of Complex & Affirmative Litigation
OWEN J. CLEMENTS, State Bar # 141805
JAIME M. HULING DELAYE, State Bar # 270784
Deputy City Attorneys
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, CA  94102
Telephone:  415.554.3597
jaime.hulingdelaye@sfcityatty.org

*Attorneys for Plaintiff The People of the State of
California, acting by and through San Francisco
City Attorney David Chiu*

[Additional counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| THE CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA and THE PEOPLE OF THE STATE OF CALIFORNIA, Acting by and through San Francisco City Attorney DAVID CHIU, <br><br> Plaintiffs, <br><br> v. <br><br> PURDUE PHARMA L.P., et al. <br><br> Defendants. | Case No. 3:18-cv-07591-CRB-JSC <br><br> **JOINT STATUS UPDATE** <br><br> **Judges**: Hon. Charles R. Breyer and Jacqueline Scott Corley <br><br> **Courtroom**: Via Videoconference <br><br> **Hearing Date**: January 7, 2022 <br><br> **Hearing Time**: 8:30 a.m. |

2339831.3

The parties respectfully submit this Joint Status Update in advance of the Court's discovery conference scheduled for January 7, 2022, at 8:30 a.m.

**JOINT STATEMENT REGARDING SCHEDULE AND DISPUTE RESOLUTION**

The parties jointly report on a number of case developments that have taken place since the last conference with the Court.

## I.   Case Schedule

On June 15, the Court entered the Parties' Joint Stipulation and Amended Order to Modify Case Schedule. Doc. 572. The specific dates are reflected in the chart below:

| Event | Current Schedule |
|---|---|
| Custodial Productions Substantial Completion Deadline | June 4, 2021 |
| Document Production Substantial Completion Deadline | June 21, 2021 |
| Plaintiff's Expert Reports | October 5, 2021 |
| Plaintiff's Endo- and Walgreens-Related Expert Reports | October 19, 2021 |
| Close of Fact Discovery | November 12, 2021 |
| Defendants' Expert Reports | December 2, 2021 |
| Walgreens' two responsive reports for Drs. Park and McCann | December 9, 2021 |
| Plaintiff's Expert Rebuttal Reports | December 23, 2021 |
| Close of Expert Discovery | January 14, 2022 |
| Rebuttal Reports for Experts Park and Catizone | January 21, 2022 |
| Motions for Summary Judgment and *Daubert* Motions | January 24, 2022 |
| *Daubert* Motions related to Park and Catizone | February 7, 2022 |
| Oppositions to Motions for Summary Judgment and *Daubert* Motions | February 25, 2022 |
| Oppositions to *Daubert* Motions for Park and Catizone | March 9, 2022 |
| Replies in Support of Motions for Summary Judgment and *Daubert* Motions | March 11, 2022 |
| Replies in support of *Daubert* Motions for Park and Catizone | March 21, 2022 |
| All Trial Materials Due | March 24, 2022 |
| Final Pretrial Conference | April 4, 2022 |
| Trial | April 25, 2022 |

**II.      Update on Status of Settlement Among Stipulating Parties**

On January 26, 2021, the Court stayed the proceedings as to the Stipulating Defendants.[1] The Stipulating Parties will submit a further update to the Court on January 7, 2022. Doc. 670.

**III.      Discovery Orders Issued Since Prior Conference**

The Court issued four orders since the last hearing. In the first order immediately following the last hearing, the Court resolved a number of disputes regarding the scheduling of expert depositions and addressed several other issues raised in the preceding status report. Doc. 856. In the second order, the Court resolved Plaintiff's motion to compel Anda's further responses to Plaintiff's third set of interrogatories. Doc. 863. In the third order, pursuant to stipulation between Plaintiff and Walgreens, the Court ordered Walgreens to promptly identify a new date for the inspection of its pharmacy computer systems. Doc. 873. And, in the fourth order, the Court granted Walgreens' motion to compel the California Department of Justice to identify certain prescribers in the CURES database. Doc. 880.

**IV.      Discovery Motions**

There are no fully briefed discovery disputes pending before the Court.

**V.      Other Pending Motions**

On December 22, the non-stayed manufacturer Defendants filed a motion to stay the case against them. Doc. 868. Pursuant to the parties' stipulated schedule, the briefing will conclude on February 7, and the matter is set for a hearing before Judge Breyer on February 24, 2022. Doc. 886.[2]

---

[1] The Stipulating Defendants are distributors McKesson Corporation, AmerisourceBergen Drug Corporation, and Cardinal Health, Inc.; and manufacturer Johnson & Johnson, its subsidiary Janssen Pharmaceuticals Inc. f/k/a Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. and its former affiliate Noramco, Inc. (with Plaintiff, the "Stipulating Parties").

[2] On January 3, Walgreens informed Plaintiff that it, too, intended to file another motion to stay the case, and asked Plaintiff's consent to have the motion heard on the same date as the manufacturer-Defendants' motion. The parties are attempting to negotiate an appropriate briefing schedule under the circumstances.

JOINT STATUS UPDATE
CASE. NO. 18-CV-07591-CRB-JSC

**PLAINTIFF'S STATEMENT**

**I.     Request for Status Conference on Pre-Trial Deadlines and Logistics**

As of now, the case schedule is silent on certain pre-trial deadlines—including, for example, a schedule for motions *in limine*—that will likely be fast approaching. Plaintiff will be initiating discussion with the Defendants about these topics and suggests the Court set a deadline for the Parties to submit proposals on these deadlines and other trial-related logistics.

**II.      Defendants' Discovery Deficiencies**

Plaintiff addresses a few of Defendants' discovery deficiencies below.

**A.     Walgreens**

**1.     Inspection of Walgreens' Pharmacy Software System**

This is, unfortunately, the third time Plaintiff has been forced to raise this issue with the Court. At the last hearing, the Court ordered Walgreens to allow the inspection (again), first with a test system based on its counsel's representation that there would be "no material differences" from the live system. 12/20/21 Hr'g Tr. at 21:21-23; *see also* 12/16/21 email (representing that the test system would allow Plaintiff to "inspect every aspect of Walgreens' system," including "prescription history"). The Court further ordered that, given Walgreens' last-minute cancellation of the original December 15 inspection, the rescheduled inspection would be "going forward on Wednesday," December 22, and "shall not be cancelled." 12/20/21 Hr'g Tr. at 23:13-14.

There have been two significant developments since then. First, notwithstanding the Court's clear direction, Walgreens again cancelled the inspection the evening before it was scheduled to occur. Doc. 873. Despite its commitment to "promptly identify a new date for the inspection that works for both parties" (*id.*), Walgreens provided no dates until January 5, immediately before the status report was to be exchanged, and the only date it offered was January 20, nearly a month after the second inspection it cancelled. Plaintiff asked Walgreens to proceed on January 12, a date when its experts are available. Walgreens has not responded. Equally as troubling, after the last hearing, Walgreens told Plaintiff that it could *not* enter prescriptions with a date earlier than the present, meaning it could not a create a meaningful "prescription history," one of the key elements of the system that Walgreens represented it could

replicate. Plaintiff raised this issue with Walgreens multiple times, and Walgreens has not offered a solution. During the meet and confer, Plaintiff asked Walgreens' counsel if they disputed this characterization or had any substantive response regarding the effect of their inability to recreate an accurate "prescription history" interface. They had no response. The response they provided the next day, in the near-final version of the status report, misses the mark. The parties' agreement to use test data was based on representations that prescriptions could be "backdated" to create a working prescription history. Entering the prescriptions a week in advance will not solve the problem because the prescriptions will not be spaced out over time, and thus, Plaintiff will not be able to explore, for example, time-related alerts and drug interaction alerts.

### 2.   Employee Disputes

***Walgreens' Incomplete Log***

On December 2, the Court issued an order compelling Walgreens to produce "a log of employee legal disputes documenting claims that Walgreens took adverse employment actions against pharmacists relating to their prescription due diligence." Doc. 796. Walgreens' log contained just six barebones entries covering 2017 to present and omitted clearly relevant cases Plaintiff identified from its own research both before and after 2017. *See* Doc. 851 at 5. The log also did not include a number of data fields Plaintiff had requested in its briefing to the Court. On December 20, upon Plaintiff's request, the Court ordered Walgreens to make an in-house counsel employee "knowledgeable about the employee dispute log is prepared and maintained" available for a meet and confer. Doc. 856 at 3.

That meeting occurred on January 4 and confirmed that Walgreens had not made a diligent effort to comply with the Court's order. The in-house attorney stated that employee legal disputes are cataloged in a legal management database that has been in use since 2014 (and Walgreens later confirmed contains data back to 2010). He explained that the log Walgreens produced was limited to matters tagged to a designation called "Rx P Claim," a designation he described as "used occasionally" since 2017 and inputted on an "ad hoc" basis by a non-lawyer "coordinator" at intake. The in-house attorney said that if he were compiling a log compliant with the Court's order, he would review the narrative text field for all matters cataloged under certain

categories like "Wrongful Discharge" and "Retaliation." He also identified a number of other potentially relevant categories and explained that claims brought by unionized San Francisco pharmacists likely would be cataloged under "Labor Relations." Walgreens apparently conducted no review of matters designated under any of these categories, notwithstanding the Court's December orders.

Following the meeting, Plaintiff asked Walgreens' outside counsel what, if anything Walgreens would offer to provide Plaintiff with a compliant employee dispute log. Incredibly, Walgreens' outside counsel remarked, "I don't believe there are holes in this log," and made no offer. With time short, Plaintiff proposed to Walgreens and now respectfully asks that the Court order Walgreens to export and produce in an Excel file all content, including narrative fields, for cases tagged to the following claim types identified during the meet and confer: "Wrongful Discharge," "Retaliation," "Management Practices," "Compliance," "Performance Issue," "Company Policy," "Labor Relations," Compensation and Benefits," and "n/a."[3] Plaintiff would then undertake the work of reviewing narrative fields to identify which legal disputes are responsive and request a limited number of settlements, civil complaints (if, as is the case in certain state court systems, not available online), and demand letters. Plaintiff notes that, on December 17, Walgreens stated it would provide the narrative text for the six entries that did appear on its log (demonstrating that they were not privileged), but now refuses to do so, claiming it did not understand what was in the narrative fields when it made the offer. Walgreens could produce the material subject to the protective order and with the opportunity to claw back under FRE 502(d) any content it later contends is privileged (though it has not identified any such content to date and basic factual summaries are not privileged). The process would be analogous to that employed to address Walgreens' failure to cooperate in producing content from its internal complaint database. *See* Doc. 691 at 1-2 (ordering Walgreens to produce all "incident report summaries" for Plaintiff's chosen categories).

---

[3] Plaintiff has confirmed from the publicly available software manual for Walgreens' database software that an Excel export is possible.

- 5 -

Shortly before the report drafts were to be exchanged, Walgreens made an unduly narrow proposal that, among other things: (1) would cover just two of the many potentially responsive "claim type" categories; (2) would exclude many responsive fields, including, e.g., non-privileged information from the narratives, outcome, resolution type, and resolution amount; (3) would deny Plaintiff access to any non-public documents, including settlement agreements; and, most surprisingly, (4) would be limited to incidents within California, despite the Court's repeated rulings recognizing the relevance of nationwide disputes. *See* 11/17/21 Hr'g Tr. 12:16-19 ("Seems to me nationwide is appropriate. Walgreens kind of unilaterally limited it to California. I don't believe that's an appropriate cutoff."); 10/19/21 Hr'g Tr. 34:18-19 ("Nationwide. Nationwide. I already said it's relevant nationwide.").

### Settlement Agreements

On December 22, Plaintiff requested that Walgreens produce any settlement agreements related to five matters (three contained on Walgreens' dispute log and two identified from Plaintiff's independent research that should have appeared on the log). On January 4, Walgreens declined to produce the settlement agreements. Plaintiff requests that the Court order Walgreens to produce these settlement agreements, which are responsive to the same discovery request as the log. That request sought "all documents . . . from any litigation . . . regarding the dispensing . . . of Opioids or Cocktail Drugs." Walgreens cannot reasonably deny that the settlement agreements are responsive, and there is no burden. Walgreens' primary rationale for withholding these few agreements appears to be that they are unflattering. Respectfully, Walgreens' Fed. R. Evid. 403 argument should be raised *in limine* and is not a basis to avoid production pursuant to a protective order.

Walgreens' misrepresentation about the first employee legal dispute Plaintiff identified in November from Walgreens' late-produced employee survey underscores the importance of receiving these settlement agreements. On November 17, Walgreens' counsel stated that the plaintiff, G.K., "received $250.00 as a result of the settlement" of her "seemingly meritless claims." Following the last hearing, Walgreens produced the settlement agreement, revealing that

its representation as to the size of the settlement was, to put it mildly, an extreme misrepresentation.

### 3.    Interrogatory Response

In its section, Walgreens asks the Court to compel a further supplement to an interrogatory response about which the parties had already reached agreement. The dispute relates to an interrogatory that Plaintiff last answered on September 18, 2020. Plaintiff heard not a peep until November 4, 2021, more than a year later, when Walgreens asked Plaintiff to supplement. After a meet and confer with Walgreens' counsel, Mr. Jernudd, Plaintiff agreed to add a list of the prescribers "whose opioid prescribing the People may identify, mention, discuss or reference at trial." *See* Dkt. 788 (reflecting the agreement). Plaintiff served the supplement to which the parties agreed on December 10. Two-and-half weeks later, Walgreens' counsel, Ms. Swift (who was not involved in the earlier negotiations regarding the scope of the supplement), sent an email requesting additional information about the prescribers that went far beyond the terms of the agreement reached weeks earlier. Respectfully, the Court should reject Walgreens' efforts to compel a supplemental response.

### 4.    Dr. Elizabeth Park's Reliance Materials

In Walgreens' section of this report, it incorrectly states that "Plaintiff has not confirmed whether it has produced all of the information that [Dr.] Park may have reviewed and relied upon." Plaintiff has confirmed multiple times, as recently as twice on January 5 (at both a videoconference and in a subsequent email) that it identified and produced all of Dr. Park's reliance materials, consistent with Fed. R. Civ. P. 26(b)(2)(ii). Plaintiff has asked and does not understand what else Walgreens is requesting.

### B.    Endo/Par

### 1.    Endo's Ongoing Production of Documents

On December 30, the Endo defendants produced over three thousand new documents from the files of both national and regional custodians, and also advised that it would be producing additional "commitment logs" relating to vendors that worked on Opana and Opana ER from

2006 to 2016 that were previously and improperly withheld as privileged communications. Endo states that it will produce privilege logs related to its December 30 production on Jan 6.

On the same day, Endo advised that it had run some form of technology assisted review ("TAR") on the more than one million documents it has placed in its Ankura repository for documents that were identified by running the negotiated search terms but withheld from production for unspecified reasons. While the repository is extremely difficult to work with, a cursory review indicates that a significant number of documents are responsive and should have been produced months and years prior. However, forcing Plaintiff to engage in a document review of more than one million documents, after the close of discovery and as Plaintiff is also trying to prepare for trial and complete dozens of expert depositions, is extremely burdensome. Therefore, it is appropriate that Plaintiff be permitted to use any relevant documents Endo produces after the close of discovery at trial, but that defendants be barred from doing so. Plaintiff also reserves the right to seek additional evidentiary sanctions as may be necessary and appropriate.

### 2.     Deposition of Linda Kitlinski

Plaintiff's counsel have been in contact with Ms. Kitlinski's counsel and advised what dates in late January are workable to continue her deposition, but have yet to receive confirmation. Plaintiff asks that Endo bear any costs associated with the additional days of presenting Ms. Kitlinski as a witness in the cross-noticed proceedings.

### 3.     Evidentiary Stipulation and Rule 30(b)(6) Testimony

The parties have agreed in principle to a number of evidentiary stipulations, including stipulations relating to the distribution of opioid-related marketing materials. The parties continue to meet and confer regarding the accuracy and completeness of the exhibits. Defendants also agreed to produce a Rule 30(b)(6) witness by the first week of February, but have not yet provided Plaintiff with dates. Plaintiff asks the Court to impose a deadline of January 12 for Endo to provide a selection of dates before February 9.

2339831.3

### C.    Teva/Actavis Defendants

On December 16, 2021, Plaintiff and the Teva/Actavis Defendants reached agreement on Plaintiff's 30(b)(6) Notice of Deposition, served on October 29, 2021. In the agreement, the Teva/Actavis Defendants agreed to provide verified written responses for certain topics, designate the testimony of Amy Gaither for two topics, and enter into a stipulation regarding the authenticity of certain business records for certain topics by January 28, 2022.

### D.    Anda

On December 21, 2021, the Court ordered that "Anda shall meet with Plaintiff's counsel and demonstrate how to search the produced documents for due diligence documents related to particular customers." Doc. 863 at 2 (citing Fed. R. Civ. P. 33(d)(1)). This meet and confer is scheduled for Monday, January 10.

## III.    Third Party Discovery

Plaintiff served several third-party subpoenas, including one to RR Donnelley, formerly Digital Direct, a vendor related to Allergan, on August 10. The parties have engaged in several discussions to narrow the scope of Plaintiff's requests. However, RR Donnelley has yet to produce documents requested. Should agreement not be reached by the parties, Plaintiff will request intervention by the Court.

Plaintiff also served a subpoena on the California Department of Justice seeking re-identification of Defendants' experts Dr. Vanila Singh's and Douglas Tucker's prescriptions from the CURES database. Plaintiff provided the necessary consumer notice documents to Defendants' counsel who have accepted service.

## DEFENDANTS' STATEMENT

## I.    Status of Party Discovery

### A.    The Distributor Defendants' Interrogatories.

On January 5, Plaintiff further supplemented its responses to Distributor Defendants' Interrogatories 19 and 20, in light of a meet-and-confer with Anda and the Court's recent guidance related to Plaintiff's responses to the Manufacturer Defendants' Interrogatories.  The parties have agreed that if Anda believes there are remaining deficiencies following this additional supplement,

1   the parties will meet-and-confer on January 6, Anda will submit a 3-page statement to Plaintiff by

2   January 10, Plaintiff will submit a responsive 3-page statement by January 12, and the combined

3   dispute letter will be filed by January 13.

4       **B.**      **Plaintiff's Objection to the Re-Identification of its Prescribers in the CURES**

5               **Data.**

6           Since the last joint status update, the Court has issued two orders on this issue. On

7   December 20, 2021, the Court ordered the re-identification of the prescribing records of

8   Plaintiff's expert Dr. Anna Lembke. Dkt. 856, p. 2. On December 30, 2021, the Court granted

9   Walgreens' request that the California Department of Justice ("DOJ") identify 26 non-objecting

10  prescribers from the already-produced CURES data. Dkt. 880.

11          On January 3, 2021, in compliance with the Court's order, Walgreens provided DOJ with

12  (1) a declaration from Walgreen's counsel stating that the 26 non-objecting prescribers did not

13  submit objections to Walgreens and (2) a draft notice letter to the 26 prescribers informing them

14  of the Court's December 30, 2021 Order. To date, DOJ has not provided Walgreens with the

15  identifying information for the 26 non-objecting prescribers.

16          In the time since Walgreens submitted its request that DOJ identify 26 non-objecting

17  prescribers in the CURES database (Dkt. 869), the objection deadline has passed for four

18  additional prescribers. Walgreens requests a supplemental order from the Court consistent with its

19  December 30 Order, requiring the re-identification of the four additional non-objecting

20  prescribers—Guido Gores, Collin Leong, Mark Altchek, and Kenneth Light. Walgreens will

21  again provide DOJ with proofs of service, a declaration stating that these prescribers did not

22  submit objections to Walgreens, and a draft notice letter to the prescribers.

23          At the last status conference, Plaintiff represented that it was not opposed to the re-

24  identification of some number of Plaintiff's own prescribers, and the Court indicated that a

25  reasonable number would be the list of prescribers who are witnesses in the case.  *See* 12/20/21

26  Hr'g Tr. 29:23-25; *id.* 31:17-20.  Subsequently, Walgreens asked Plaintiff to identify each

27  prescriber who Plaintiff may call at trial, and to confirm that Plaintiff does not object to re-

28  identification of those witnesses' CURES data.  *See* Swift to Budner Email, December 23, 2021.

Walgreens also asked Plaintiff to confirm that it does not object to the re-identification of CURES data for a specific list of 30 Plaintiff prescribers who have either been deposed in this case or disclosed in Plaintiff's discovery responses.  *See id.*  Plaintiff responded that it does not object to the re-identification of these prescribers. See Levin-Gesundheit to Swift Email, January 4, 2022. At Plaintiff's request, Walgreens will provide Plaintiff with consumer notice for 14 of these prescribers who are employed by Plaintiff and allow each prescriber ten days to object.

Plaintiff has refused Walgreens' request that it identify any other Plaintiff-employed prescribers that Plaintiff may call as witnesses at trial.  Walgreens therefore asks the Court to instruct Plaintiff to provide a response, so that Walgreens can proceed with its efforts to re-identify Plaintiff's prescriber data, particularly for any witnesses in this case.

Finally, DOJ has refused to re-identify Dr. Lembke's CURES data despite the Court's December 20, 2021 Order because "it Orders *Plaintiff* to re-identify Dr. Anna Lembke in the CURES data."  *See* Wurster to Levin Email, December 31, 2021 (emphasis added).  "DOJ is not the Plaintiff in this matter and DOJ has not been ordered to re-identify CURES data for Dr. Anna Lembke . . . ."  *See id.*  Therefore, Walgreens requests that the Court issue a revised Order instructing DOJ to comply with the Court's Order, given that DOJ (and not Plaintiff) maintains the CURES database.

### C.      **Walgreens' Interrogatory No. 4 (First Set)**

On December 10, 2021, Plaintiff served a supplemental response to Walgreens' Interrogatory No. 4 (First Set).  Interrogatory No. 4 asked Plaintiff to "Identify each instance when a Person in the City and County of San Francisco was suspected or alleged to have been involved in the improper prescribing or improper or excessive dispensing, unlawful sale, or other suspected wrongdoing related to Prescription Opioids or the submission to a distributor of a Suspicious Order.  For each instance, identify (a) the date of the suspected or alleged conduct; (b) the Person involved, (c) the nature of her or his involvement, and (d) the Prescription Opioid(s) involved."

1    Plaintiff's supplemental response identified 42 additional prescribers "whose opioid

2   prescribing the People may identify, mention, discuss or reference at trial."  Plaintiff's response

3   does not identify the nature of the suspected or alleged wrongdoing for any of these prescribers,

4   nor does it provide the date of the alleged conduct or the prescription opioids involved.  On

5   December 28, 2021, Walgreens asked Plaintiff to provide this information, and to supplement

6   Plaintiff's document production with documents related to these prescribers that are responsive to

7   Walgreens' document requests.[4]  *See* Swift to Budner Email, December 28, 2021.  Plaintiff

8   refused to do so.  *See* Budner to Swift Email, January 2, 2022.  Walgreens therefore requests that

9   the Court order Plaintiff to supplement its response to Walgreens' Interrogatory No. 4 (First Set)

10  by (1) identifying the nature of the suspected or alleged wrongdoing for these 42 named

11  prescribers, (2) providing the date of the alleged conduct, and (3) identifying the prescription

12  opioids involved.  Walgreens further requests that the Court order Plaintiff to supplement its

13  document production with documents related to these prescribers.

14    Plaintiff claims that Walgreens agreed to limit Plaintiff's supplemental response to include

15  a list of 42 prescriber names (and no more). But that is not what Walgreens agreed to. Plaintiff

16  relies on a single paragraph in the November 23, 2021 Joint Status Update in support of its

17  argument: "By December 10, Plaintiff agreed to supplement its response to Walgreens'

18  Interrogatory No. 4 (First Set). Walgreens has asked Plaintiff that, to the extent it plans to

19  'identify, mention, discuss, or reference any other prescribers at trial in relation to their

20  prescribing or any suspected wrongdoing related to prescription opioids, please supplement [its]

21  response to include them." (Dkt. 788, p. 5:7-12). But this language does not reflect an agreement

22  limited to identifying prescribers as Plaintiff now claims; instead, it reflects an agreement to

23  supplement the response to include the information requested in Interrogatory No. 4 with respect

---

24  [4] *See, e.g.*, Walgreens' Request for Production No. 3 (First Set) (seeking all documents related to
25  any alleged illegal or wrongful conduct by a medical doctor); Walgreens' Request for Production
    No. 4 (Third Set) (seeking all assessments of compliance with laws and professional standards
26  regarding dispensing of controlled substances for each pharmacy or healthcare provider affiliated
    with Plaintiff); Walgreens' Request for Production No.  5 (Third Set) (seeking all documents
27  related to government actions potentially affecting Plaintiff's employees' licenses and
    registrations to prescribe or dispense certain prescription medications); Walgreens' Request for
28  Production No. 9 (Third Set) (seeking all documents that refer to diversion of prescription opioids
    or illicit opioids).

1  to the prescribers that Plaintiff plans on identifying at trial related to prescribing or any suspected

2  wrongdoing related to opioids.

3       **D.**     **Elizabeth Park's Reliance Materials**

4       Plaintiff's pharmacy expert Elizabeth Park did not provide any supporting materials with

5  her expert report showing what she reviewed or relied upon with respect to a set of 2,300

6  Walgreens prescriptions that she discussed in her report.  Plaintiff provided a partial response to

7  Walgreens' request for those materials, identifying materials previously produced in response to a

8  request for missing materials supporting another expert's report.  *See* Levin-Gesundheit to Swift

9  Email, January 3, 2022.  But Plaintiff has not confirmed whether it has produced all of the

10  information that Ms. Park may have reviewed and relied upon.  Walgreens requests an order

11  instructing Plaintiff to either provide that confirmation or produce any missing reliance materials

12  supporting Ms. Park's opinions immediately.

13       **E.**     **Plaintiff's Discovery Requests.**

14       Defendants have produced millions of documents in the MDL, which are deemed

15  produced in this case, and have made major additional productions specific to this case.

16       **Walgreens** has complied with all the Court's instructions and requests at the last

17  conference. On October 20, Walgreens provided Plaintiff with a list of all predicate categories of

18  incident reports. The same day, Plaintiff provided a list of all predicate categories for which it

19  wanted summaries of incident reports produced on a nationwide basis. Within 5 business days, on

20  October 27, Walgreens produced the summary spreadsheet to Plaintiff.  Walgreens reserved all

21  rights related to the production, as the Court permitted at the October 19 status conference.

22       Plaintiff subsequently asked Walgreens to produce the full APIS files, as well as any

23  related Salesforce documents, from five separate tranches of incidents.  Walgreens produced

24  these documents.  Walgreens also agreed to produce a sixth tranche of documents from the APIS

25  database, based on Plaintiff's agreement that it would be the last of such requests. Plaintiff sent

26  that request on December 10, and Walgreens produced the sixth tranche on December 23.

27  Nevertheless, Plaintiff makes three unfounded complaints regarding Walgreens in its section of

28  this joint status report.  Walgreens responds to each of them here.

1

**1.    Walgreens Has Timely Provided Dates for the Rescheduled Inspection**

2

**of Its Pharmacy Software System.**

3      As explained in a December 22, 2021 submission to the Court, Dkt. 873, the Walgreens

4    employee who had been scheduled and prepared to operate Walgreen's system during the

5    inspection (Cheryl Creek, Walgreens' Director of Pharmacy Systems) alerted counsel late in the

6    day on December 21, 2021 that she had a family emergency preventing her from conducting the

7    inspection as planned.  Walgreens contacted Plaintiff shortly after learning of Ms. Creek's

8    emergency to reschedule.

9      Given the crowded schedule in early January, Walgreens has offered January 20, 2022 for

10    the rescheduled inspection. In the alternative, Walgreens can offer January 19, 2022 for the

11    inspection. Plaintiff does not claim that the offered dates present a conflict; instead, Plaintiff

12    demands an earlier inspection date without explanation.

13      In addition, Plaintiff also incorrectly claims that Walgreens cannot create a "meaningful

14    prescription history" in the test system.  That is incorrect.  While Walgreens cannot enter in

15    prescriptions with a date earlier than the present (as that would involve improperly back-dating

16    prescriptions), Walgreens has offered to enter prescriptions into the test system prior to the

17    scheduled inspection date, which will allow Plaintiff to observe time-related alerts and drug

18    interaction alerts (contrary to Plaintiff's claim). Walgreens and Plaintiff have already agreed to

19    the specific test patients and test prescriptions to be entered into the system in advance. Therefore,

20    there is no "issue" regarding observing prescription history as Plaintiff suggests.

21

**2.    Walgreens has complied with the Court's order to produce an**

22

**employee dispute log.**

23      Walgreens has complied with the Court's order to produce a "a log of employee legal

24    disputes documenting claims that Walgreens took adverse employment actions against

25    pharmacists relating to their prescription due diligence."  Walgreens has also been more than

26    responsive to each of Plaintiff's requests.  Walgreens produced a log containing entries that had

27    been designated "Rx P Claim" because that is the only way in which Walgreens' database

28    classifies matters as related to pharmacy practice.  Plaintiff emphasizes that Walgreens' initial log

1   excluded three relevant cases that it subsequently identified, but Plaintiff ignores that Walgreens

2   has answered each of Plaintiff's questions related to these cases—providing information about

3   how they were classified in Walgreens' system.

4          On January 4, Walgreens made David Metz, an in-house employment lawyer, available

5   for a meet and confer with Plaintiff.  The meeting lasted over an hour and Mr. Metz answered

6   every question posed by Plaintiff, including listing the fields maintained in Walgreens' database

7   and each claim type used to classify a matter.  Mr. Metz also searched for matters that Plaintiff

8   requested on the fly and explained how each one is classified in Walgreens' system.

9          Plaintiff mischaracterizes Mr. Metz's statements made during the meet and confer.  Mr.

10  Metz did not identify "Management Practices," "Compliance," "Performance Issue," "Company

11  Policy," "Labor Relations," "Compensation and Benefits," and "N/A" as potentially relevant

12  fields.  Instead, he mentioned the majority of those classifications only in response to Plaintiff's

13  request that he list every single classification available in Walgreens' database.  As Plaintiff

14  acknowledges, Mr. Metz identified "wrongful discharge" and "retaliation" as the claim types

15  most likely to be relevant.

16         Consistent with Mr. Metz's statements, Walgreen made a proposal that would allow

17  Plaintiff to propose search terms to be used to search the narrative field of matters classified as

18  "retaliation" or "wrongful discharge."  Plaintiff would propose a limited number (5 or fewer) of

19  search terms that Walgreens would use to search its narrative fields.  Walgreens would then

20  review the matters that hit on search terms for potentially responsive administrative claims and

21  lawsuits classified as "retaliation" or "wrongful discharge" within the state of California, and

22  produce those that are responsive.  Walgreens' production would include the categories used to

23  summarize a matter at the time of entry into the system and would not include fields like the

24  narrative field, which—as Plaintiff's counsel acknowledged during the meet and confer—are

25  privileged.

26         Plaintiff's claim that Walgreens' proposal is "unduly narrow" is unfounded.  Plaintiff

27  states that focusing on wrongful discharge and retaliation claims is insufficient, but this ignores

28  that each matter Plaintiff has asked about was classified under either or both of these categories.

1  Plaintiff also states that Walgreens' proposal would exclude many non-privileged fields such as

2  the narrative field, but the narrative fields are privileged.  They are drafted by the attorneys

3  handling a given matter to document legal strategy, mental impressions, and other attorney notes

4  regarding the case.  Mr. Metz explained this during the meet and confer, and Plaintiff's counsel

5  stated that he understood and that Plaintiff was not seeking privileged information.[5]  Plaintiff's

6  proposal, in contrast, would require Walgreens to produce an array of privileged information not

7  relevant to Plaintiff's claims.[6]

8          Walgreens' proposal exceeds what is proportional to the needs of the case, particularly

9  given how late we are in discovery, the burden of reviewing a database that was not set up for this

10  purpose, and the limited relevance of the underlying information.  Nonetheless, to put this matter

11  to rest, and in exchange for Plaintiff's agreement not to seek additional information about

12  employee disputes, Walgreens agreed to undertake this additional work, and asks the Court to

13  order that no more is required.

14          **3.      There is no basis for Plaintiff's belated request for settlement**

15          **agreements between Walgreens and its former employees.**

16          Plaintiff has requested that Walgreens produce five settlement agreements between

17  Walgreens and its former employees.  There is no basis for this request as Plaintiff did not seek

18  such documents during fact discovery.  Plaintiff cites to Request No. 8, which seeks "Copies of

19  all documents and discovery, including sworn statements, testimony, video-taped testimony,

20  written discovery responses, expert reports, and any accompanying documents, from any

21  litigation, mediation, government investigation, government hearing, or arbitration regarding the

22  marketing, sales, dispensing, or distribution of Opioids or Cocktail Drugs."  Plaintiff's Request

23  for Production No. 8 (First Set).  This Request does not ask for settlement agreements in claims

---

24  [5] Walgreens' counsel had previously agreed to produce the narrative field before learning that this
25  field was drafted by lawyers working on the cases and included strategy, notes, and mental
impressions about each case.  Walgreens' agreement also concerned its initial production of six
26  matters and not the much more extensive production that Plaintiff now seeks.
[6] Plaintiff asserts that its proposal is analogous to the process used in Walgreens' production of its
27  internal complaint database, but unlike the employee dispute log, which is created and maintained
by and for Walgreens in-house attorneys, the internal complaint database rarely includes
28  privileged narratives by Walgreens' in-house attorneys.  And Walgreens redacted the privileged
content before production.

1    brought by employees or otherwise.  Furthermore, Walgreens objected on multiple grounds and

2    agreed "to produce only its document production, deposition transcripts, and expert reports" from

3    the MDL subject to its objections.  Walgreens' Response to Plaintiff's Request for Production

4    No. 8 (First Set).  Plaintiff never asked Walgreens to supplement this response nor did it move to

5    compel production of employee settlement agreements based on this request.  Settlement

6    agreements in these unrelated cases are also of limited, if any, relevance and would be

7    inadmissible at trial under Rule 403 in any event, as any probative value is substantially

8    outweighed by the danger of confusing the issues and wasting time.

9                   **4.         Walgreens' 30(b)(6) Depositions**

10         Plaintiff refers to Topic 10, which relates to document authentication and admissibility.

11   Plaintiff acknowledges that it is in the process of compiling a list of documents to provide to

12   Walgreens on this topic. Once received, Walgreens will review and respond to the list.

13         As reported in the parties' past Joint Status Updates, **Endo and Par** continue to assess

14   historical pre-MDL and MDL productions, including in connection with (1) an on-going special

15   master process in another federal case remanded from the MDL, City of Chicago v. Purdue

16   Pharma, L.P. et al., No. 1:14-cv-04361 (N.D. Ill.), where Endo is a defendant, and (2) the

17   administration of the document repositories that Endo and Par established where plaintiffs can

18   view documents determined to be non-responsive to discovery requests in opioid litigation. In

19   connection with that work, on December 30, 2021, Endo and Par provided an update to Plaintiff

20   and others and made certain supplemental document productions. Endo and Par will promptly

21   notify Plaintiff if they determine that any further supplementation is necessary.[7]

22         Endo and Par disagree with Plaintiff's assertions, and the inferences Plaintiff draws,

23   concerning Endo's and Par's December 30 productions and the documents in the Ankura

24   repositories. Plaintiff's requests for relief are premature and not properly before the Court.

25

26

27

---

28   [7] Endo's and Par's productions in other opioid matters will continue notwithstanding the close of
     fact discovery in this case.

1    Endo is working diligently to identify a deponent to testify concerned the agreed Rule

2    30(b)(6) deposition topics and will provide Plaintiff with possible dates for that deposition no

3    later than January 14, 2022.

4        **F.    Plaintiff's Request for Admissibility and Authentication Stipulations.**

5    During the meet-and-confer on this topic, Plaintiff made a very broad proposal that

6    seemed to ask Defendants to stipulate to a huge universe of documents as both authentic and

7    admissible as business records. Plaintiff provided a revised proposal in writing on October 29,

8    2021. To better understand and consider Plaintiff's proposal, which remains very broad,

9    Defendants wrote back on November 12, 2021, with a series of questions. Plaintiff has not yet

10   responded to the questions in Defendants' letter. Defendants remain willing to continue to meet

11   and confer on this topic, but Defendants continue to believe that any such discussion will be more

12   focused and productive once the parties identify exhibits for trial.

13

14   DATED:  January 6, 2022                       Respectfully submitted,

15   DAVID CHIU                                    /s/ Kevin R. Budner

16   City Attorney                                 Elizabeth J. Cabraser
     YVONNE R. MERE                                Richard M. Heimann
17   SARA J. EISENBERG                             Paulina do Amaral
     OWEN J. CLEMENTS                              Kevin R. Budner
18   JAIME M. HULING DELAYE                        Michael Levin-Gesundheit
     Deputy City Attorneys                         Jacob H. Polin
19   Fox Plaza                                     Miriam E. Marks
     1390 Market Street, Sixth Floor              LIEFF CABRASER HEIMANN &
20   San Francisco, CA  94102                      BERNSTEIN, LLP
     Telephone:  415/554-3957                      275 Battery Street, 29th Floor
21   jaime.hulingdelaye@sfcityatty.org             San Francisco, California 94111-3339
                                                   Telephone: 415.956.1000
22                                                 Facsimile: 415.956.1008
                                                   ecabraser@lchb.com
23
     Aelish M. Baig                                Paul J. Geller
24   Taeva C. Shefler                              Mark J. Dearman
     Hadiya K. Deshmukh                            Dorothy P. Antullis
25   ROBBINS GELLER RUDMAN & DOWD                  Nicolle B. Brito
     LLP                                           ROBBINS GELLER RUDMAN & DOWD
26   Post Montgomery Center                        LLP
     One Montgomery Street, Suite 1800             120 East Palmetto Park Road, Suite 500
27   San Francisco, CA  94104                      Boca Raton, FL  33432
     Telephone:  415/288-4545                      Telephone:  561/750-3000
28   415/288-4534 (fax)                            561/750-3364 (fax)
     aelishb@rgrdlaw.com                           pgeller@rgrdlaw.com

1  tshefler@rgrdlaw.com
   hdeshmukh@rgrdlaw.com

2

3  X. Jay Alvarez
   Thomas E. Egler

4  ROBBINS GELLER RUDMAN & DOWD
   LLP

5  655 West Broadway, Suite 1900
   San Diego, CA  92101

6  Telephone:  619/231-1058
   619/231-7423 (fax)

7  jaya@rgrdlaw.com
   tome@rgrdlaw.com

8

9  Jennie Lee Anderson
   Audrey Siegel

10 ANDRUS ANDERSON LLP
   155 Montgomery Street, Suite 900

11 San Francisco, CA  94104
   Telephone:  415/986-1400

12 415/986-1474 (fax)
   jennie@andrusanderson.com

13 audrey.siegel@andrusanderson.com

14

15 Edward Chapin
   SANFORD HEISLER SHARP, LLP

16 655 West Broadway, Suite 1700
   San Diego, CA  92101

17 Telephone:  619/577-4253
   619/577-4250 (fax)

18 echapin2@sanfordheisler.com

19

20

21 Ellen Relkin
   WEITZ & LUXENBERG P.C.

22 700 Broadway
   New York, NY  10003

23 Telephone:  212/558-5500
   212/344-5461 (fax)

24 erelkin@weitzlux.com

25 Paul F. Novak
   Tiffany Ellis

26 WEITZ & LUXENBERG, P.C.
   24th Floor, The Fisher Building

27 3011 W. Grand Boulevard
   Detroit, Michigan 48202

28 Tel: (313) 800-4170


mdearman@rgrdlaw.com
dantullis@rgrdlaw.com
nbrito@rgrdlaw.com

Louise Renne
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, CA 94104
Telephone:  415/848-7240
415/848-7230 (fax)
lrenne@publiclawgroup.com

Kevin Sharp
SANFORD HEISLER SHARP, LLP
611 Commerce Street, Suite 3100
Nashville, TN  37203
Telephone:  615/434-7000
615/434-7020 (fax)
ksharp@sanfordheisler.com

David S. Casey, Jr.
Gayle M. Blatt
Alyssa Williams
CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD LLP
110 Laurel Street
San Diego, CA  92101-1486
Telephone:  619/238-1811
619/544-9232 (fax)
dcasey@cglaw.com
gmb@cglaw.com
awilliams@cglaw.com

Melinda Davis Nokes
WEITZ & LUXENBERG P.C.
1880 Century Park East
Los Angeles, CA  90067
Telephone:  310/247-0921
310/786-9927 (fax)
mnokes@weitzlux.com

2339831.3

JOINT STATUS UPDATE
CASE. NO. 18-CV-07591-CRB-JSC

1    pnovak@weitzlux.com
     tellis@weitzlux.com
2
     *Attorneys for Plaintiff The People of the*
3    *State of California, acting by and*
     *through San Francisco City Attorney*
4    *David Chiu*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATUS UPDATE
CASE. NO. 18-CV-07591-CRB-JSC

1    DATED:  January 6, 2022                     Respectfully submitted,

2    *s/ Amy L. Van Gelder* _____            *s/ Zachary Hill*_____

3    Richard Bernardo (*pro hac vice*)           Brent A. Hawkins (S.B. # 314266)
     SKADDEN, ARPS, SLATE, MEAGHER              Zachary Hill (S.B. #275886)
4        & FLOM LLP                              MORGAN, LEWIS & BOCKIUS LLP
     One Manhattan West                          One Market, Spear Street Tower
5    New York, NY 10001                          San Francisco, CA  94105-1596
     Telephone: (212) 735-3453                   Telephone: (415) 442-1000
6    richard.bernardo@skadden.com                brent.hawkins@morganlewis.com
                                                 zachary.hill@morganlewis.com
7    Amy L. Van Gelder (*pro hac vice*)
     SKADDEN, ARPS, SLATE, MEAGHER              Wendy West Feinstein (*pro hac vice*)
8        & FLOM LLP                              Katherine A. Vaky (*pro hac vice*)
     155 North Wacker Dr., Suite 2700            MORGAN, LEWIS & BOCKIUS LLP
9    Chicago, IL 60606                           One Oxford Centre, 32nd Floor
     Telephone: (312) 407-0903                   Pittsburgh, PA  15219-6401
10   Amy.vangelder@skadden.com                   Telephone: (412) 560-7455
                                                 wendy.feinstein@morganlewis.com
11                                               katherine.vaky@morganlewis.com
     Karen O. Hourigan (SBN 206957)
12   khourigan@redgravellp.com                   *Attorneys for Defendants*
     REDGRAVE LLP                                *Cephalon, Inc.; Teva Pharmaceuticals*
13   One Sansome Street, Suite 3500              *USA, Inc.; Teva Pharmaceutical Industries*
     San Francisco, CA 94104                     *Ltd.; Watson Laboratories, Inc.; Actavis*
14   Telephone: (415) 636.2687                   *LLC, Actavis Pharma, Inc., f/k/a Watson*
     Fax: (703) 230.9859                         *Pharma, Inc.; Actavis Elizabeth LLC;*
15                                               *Actavis Mid Atlantic LLC; Warner Chilcott*
     John C. Hueston (SBN 164921)                *Company, LLC; Actavis South Atlantic LLC;*
16   HUESTON HENNIGAN LLP                        *Actavis Totowa LLC; Actavis Kadian LLC;*
     620 Newport Center Dr., Suite 1300          *Actavis Laboratories UT, Inc., f/k/a/ Watson*
17   Newport Beach, CA 92660                     *Laboratories, Inc.-Salt Lake City; and*
     Telephone: (949) 229-8640                   *Actavis Laboratories FL, Inc., f/k/a Watson*
18                                               *Laboratories, Inc.-Florida*

19   Moez M. Kaba (SBN 257456)
     Padraic Foran (SBN 268278)
20   Michael K. Acquah (SBN 313955)
     mkaba@hueston.com
21   pforan@hueston.com
     macquah@hueston.com
22   HUESTON HENNIGAN LLP
     523 West 6th Street, Suite 400
23   Los Angeles, CA 90014
     Telephone: (213) 788-4340
24   Facsimile: (888) 775-0898

25
     *Attorneys for Defendants Endo*
26   *Pharmaceuticals Inc., Endo Health*
     *Solutions Inc., Par Pharmaceutical, Inc.,*
27   *and Par Pharmaceutical Companies, Inc.*

28

2339831.3

1

2    *s/ Karl Stampfl_____*                    *s/ Katherine M. Swift _____*

3    Zachary W. Byer (S.B. #301382)                   Charles J. Stevens (SBN 106981)
     KIRKLAND & ELLIS LLP                             cstevens@gibsondunn.com
4    555 South Flower Street                          Joshua D. Dick (SBN 268853)
     Los Angeles, CA  90071                           jdick@gibsondunn.com
5    Telephone: (213) 680-8400                        Kelsey J. Helland (SBN 298888)
     zachary.byer@kirkland.com                        khelland@gibsondunn.com
6                                                     GIBSON DUNN & CRUTCHER LLP
     James F. Hurst, P.C. (*pro hac vice*)            555 Mission Street, Suite 3000
7    Rebecca Fitzpatrick, P.C. (*pro hac vice*)       San Francisco, CA  94105
     Karl Stampfl (*pro hac vice*)                    Telephone: 415.393.8200
8    KIRKLAND & ELLIS LLP                             Facsimile: 415.393.8306
     300 North LaSalle
9    Chicago, IL  60654                               Kaspar Stoffelmayr (*pro hac vice*)
     Telephone: (312) 862-2000                        kaspar.stoffelmayr@bartlitbeck.com
10   Facsimile: (312) 862-2200                        Katherine M. Swift (*pro hac vice*)
     james.hurst@kirkland.com                         kate.swift@bartlitbeck.com
11   rebecca.fitzpatrick@kirkland.com                 BARTLIT BECK LLP
     karl.stampfl@kirkland.com                        54 West Hubbard Street
12                                                    Chicago, IL  60654
     *Attorneys for Defendants*                       Telephone: 312.494.4400
13   *Allergan Finance, LLC, Allergan Sales,*         Facsimile: 312.494.4440
     *LLC and Allergan USA, Inc. and*
14   *Specially Appearing Defendant Allergan*         Alex Harris (*pro hac vice*)
     *plc*[8]                                         alex.harris@bartlitbeck.com
15                                                    BARTLIT BECK LLP
                                                      1801 Wewatta Street, Suite 1200
16                                                    Denver, CO  80202
                                                      Telephone: 303.592.3100
17                                                    Facsimile: 303.592.3140

18                                                    *Attorneys for Defendant*
                                                      *Walgreen Co.*
19

20

21

22

23

24

25

26
     _____
27   [8] Defendant Allergan Finance, LLC was formerly known as Actavis, Inc., which was formerly
     known as Watson Pharmaceuticals, Inc.  Defendant Allergan plc, which was formerly known as
     Actavis plc and is now known as Allergan Limited, does not waive but rather expressly preserves
28   its objection to the Court's personal jurisdiction over it.

1

2        *s/ Katy E. Koski*_____

3        Alan R. Ouellette (CA Bar No. 272745)
         FOLEY & LARDNER LLP
4        555 California Street, Suite 1700
         San Francisco, CA  94104-1520
5        Telephone: (415) 434-4484
         Facsimile: (415) 434-4507
6        aouellette@foley.com

7        James W. Matthews (*pro hac vice*)
         Ana M. Francisco (*pro hac vice*)
8        Katy E. Koski (*pro hac vice*)
         FOLEY & LARDNER LLP
9        111 Huntington Avenue
         Boston, MA  02199-7610
10       Telephone: (617) 342-4000
         Facsimile: (617) 342-4000
11       jmatthews@foley.com
         francisco@foley.com
12       kkoski@foley.com

13       *Attorneys for Defendant*
         *Anda, Inc.*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from the above signatories.

Dated: January 6, 2022                    By: */s/ Kevin R. Budner*

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that, on January 6, 2022, service of this document was accomplished

3

pursuant to the Court's electronic filing procedures by filing this document through the ECF

4

system.

5

*/s/ Kevin R. Budner*
Kevin R. Budner

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 25 -