1  DAVID CHIU, State Bar # 189542
   City Attorney
2  YVONNE R. MERE, State Bar # 173594
   Chief Deputy City Attorney
3  SARA J. EISENBERG, State Bar # 269303
   Chief of Complex & Affirmative Litigation
4  OWEN J. CLEMENTS, State Bar # 141805
   JAIME M. HULING DELAYE, State Bar # 270784
5  JOHN H. GEORGE, State Bar # 292332
   Deputy City Attorneys
6  Fox Plaza
   1390 Market Street, Sixth Floor
7  San Francisco, CA  94102
   Telephone:  415.554.3597
8  jaime.hulingdelaye@sfcityatty.org

9  *Attorneys for Plaintiff The People of the State of*
   *California, acting by and through San Francisco*
10 *City Attorney David Chiu*

11 [Additional counsel appear on signature page.]

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15 THE CITY AND COUNTY OF SAN          Case No. 3:18-cv-07591-CRB-JSC
   FRANCISCO, CALIFORNIA and THE
16 PEOPLE OF THE STATE OF              **JOINT STATUS UPDATE**
   CALIFORNIA, Acting by and through San
17 Francisco City Attorney DAVID CHIU,  **Judges**: Hon. Charles R. Breyer and Jacqueline
                                        Scott Corley
18                    Plaintiffs,
                                        **Courtroom**: Via Videoconference
19        v.
                                        **Hearing Date**: February 2, 2022
20 PURDUE PHARMA L.P., et al.
                                        **Hearing Time**: 9:00 a.m.
21                    Defendants.

22

23

24

25

26

27

28

2361878.8

The parties respectfully submit this Joint Status Update in advance of the Court's discovery conference scheduled for February 2, 2022, at 9:00 a.m.

**JOINT STATEMENT REGARDING SCHEDULE AND DISPUTE RESOLUTION**

The parties jointly report on a number of case developments that have taken place since the last conference with the Court.

## I.   Case Schedule

On June 15, 2021, the Court entered the parties' Joint Stipulation and Amended Order to Modify Case Schedule. Doc. 572. On January 21, 2022, the Court entered another Joint Stipulation and Order to Modify Case Schedule. Doc. 955. The specific dates are reflected in the chart below:

| Event | Current Schedule |
|---|---|
| Custodial Productions Substantial Completion Deadline | June 4, 2021 |
| Document Production Substantial Completion Deadline | June 21, 2021 |
| Plaintiff's Expert Reports | October 5, 2021 |
| Plaintiff's Endo- and Walgreens-Related Expert Reports | October 19, 2021 |
| Close of Fact Discovery | November 12, 2021 |
| Defendants' Expert Reports | December 2, 2021 |
| Walgreens' two responsive reports for Drs. Park and McCann | December 9, 2021 |
| Plaintiff's Expert Rebuttal Reports | December 23, 2021 |
| Close of Expert Discovery | January 14, 2022 |
| Rebuttal Reports for Experts Park and Catizone | January 21, 2022 |
| Motions for Summary Judgment and *Daubert* Motions | January 24, 2022 |
| *Daubert* Motions related to Park, Catizone, Padula, Ciccarone, Alexander, and Cutler | February 7, 2022 |
| Oppositions to Motions for Summary Judgment and *Daubert* Motions | February 25, 2022 |
| Oppositions to *Daubert* Motions for Park, Catizone, Padula, Ciccarone, Alexander, and Cutler | March 9, 2022 |
| Replies in Support of Motions for Summary Judgment and *Daubert* Motions | March 11, 2022 |
| Replies in support of *Daubert* Motions for Park, Catizone, Padula, Ciccarone, Alexander, and Cutler | March 21, 2022 |
| All Trial Materials Due | March 24, 2022 |
| Final Pretrial Conference | April 4, 2022 |
| Trial | April 25, 2022 |

1

**II.      Update on Status of Settlement Among Stipulating Parties**

2          On January 26, 2021, the Court stayed the proceedings as to the Stipulating Defendants.[1]

3 The Stipulating Parties submitted a sixth update to the Court on January 7, 2022, and will submit

4 a further update on March 10, 2022. Doc. 921.

5 **III.      Discovery Orders Issued Since Prior Conference**

6          The Court issued two orders since the last hearing. First, the Court addressed a number of

7 issues raised in the preceding joint status report. Doc. 943. Then, on January 27, the Court denied

8 certain Defendants' motion to quash Plaintiff's subpoena seeking CURES data related to two

9 experts. Doc. 995.

10 **IV.      Other Pending Motions**

11          On December 22, 2021, the non-stayed manufacturer Defendants filed a motion to stay the

12 case against them. Doc. 868. On January 10, Defendants Walgreens and Anda also filed a motion

13 to stay the case. Doc. 926. Pursuant to the parties' stipulated schedule, the two rounds of briefing

14 will conclude on February 7 and 10, respectively, and both matters are set for a hearing before

15 Judge Breyer on February 24, 2022. Docs. 886, 941.

16          The Parties also filed a number of *Daubert* and summary judgment motions on the

17 January 24 deadline. A further round of *Daubert* briefs is due February 7.

18          Finally, on January 28, the Parties submitted proposals regarding various pre-trial

19 deadlines and procedures, which the Court addressed in an order issued February 1. Doc. 1004.

20

21

22

23

24

25

26

---

[1] The Stipulating Defendants are distributors McKesson Corporation, AmerisourceBergen Drug
27 Corporation, and Cardinal Health, Inc.; and manufacturer Johnson & Johnson, its subsidiary
Janssen Pharmaceuticals Inc. f/k/a Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen
28 Pharmaceutica, Inc. and its former affiliate Noramco, Inc. (with Plaintiff, the "Stipulating
Parties").

2361878.8

1

**PLAINTIFF'S STATEMENT**

2

**I.**     **Defendant Discovery**

3

    **A.**     **Walgreens**

4

        **1.**     **Non-Party Trial Preservation Deposition**

5

      On January 18, the Court ordered Plaintiff to submit an offer of proof regarding the trial

6

preservation testimony of former Walgreens pharmacist J.S. Doc. 943. Unfortunately, J.S.

7

suffered a tragic, unexpected loss in his immediate family, and Plaintiff is not in a position to

8

make a submission at this time. Plaintiff will report if the status changes.

9

        **2.**     **Walgreens' belated production**

10

      On January 27, months after the close of fact discovery, Walgreens made a belated

11

production that included "Walgreens' Pharmaceutical Manufacturer Representative Access

12

Policies, Walgreens' quarterly newsletters, and a Walgreens' agreement with Purdue Pharma,

13

L.P."  To be clear, these are undoubtedly responsive documents that Walgreens should have

14

produced months if not years ago, and certainly before the depositions on these very topics. *See,*

15

*e.g.*, RFP No. 3 (seeking "[a]ll documents relating to . . . training materials, or instructions

16

regarding the proper dispensing . . . of controlled substances"); No. 5 (seeking "[a]ll documents

17

and communications or agreements with opioids manufacturers and distributors related to the

18

marketing, sale, promotion, adherent programs, training, or supply of Opioids"); No. 20 (seeking

19

"[a]ll documents constituting educational materials made available . . . for distribution in any

20

medium . . . to Your pharmacists . . . regarding . . . Opioids"). Walgreens' response below that it

21

"did not agree to produce documents in response to RFP No. 5" is misleading. In fact, Walgreens

22

objected based on its assertion that the request was duplicative of requests served in the MDL to

23

which it had already responded. In other words, Walgreens said additional discovery was not

24

necessary here because it was already producing responsive documents to all MDL plaintiffs. As

25

Plaintiff has now learned, that production was incomplete.

26

      Plaintiff has significant questions and concerns about both the timing of the production

27

and the way in which these particular documents (and not others) were identified for

28

production—for example, Walgreens produced a single contract, under which Purdue Pharma

paid Walgreens to distribute promotional materials about an opioid product to all of its

pharmacists, but has not verified that it has conducted a diligent search for any other similar

agreements. Nor has Walgreens produced the actual materials shared with its pharmacists that are

described in the Purdue contract.

Last week Plaintiff asked Walgreens to explain how it located the late-produced materials.

As of the time of writing, Walgreens had not responded, except to suggest at the parties' meet and

confer about this status report that it did not conduct a search for what it classifies as "clinical"

materials manufacturers paid Walgreens to disseminate. Whether classified as clinical,

promotional, marketing, educational, or otherwise, these materials are all responsive to Plaintiff's

May 2020 discovery request. Walgreens also stated in the brief status report meet and confer that

it was looking for additional similar materials (an implicit acknowledgment that they are relevant

and responsive), but has yet to explain where they are searching, how they are searching, or why

the searches had not already been conducted.  Plaintiff respectfully requests that Walgreens

provide that information and produce all responsive documents as soon as possible.

### 3.      Unprepared Rule 30(b)(6) witness

On Friday, January 28, Walgreens presented a witness to cover the topics remaining from

Plaintiff's 30(b)(6) deposition. Unfortunately, the witness was under- or unprepared to offer

testimony on a whole host of issues covered by the noticed (and heavily negotiated) topics, and

testified that he did not know the answers to a number of questions within the scope of the

deposition. As but one example, the witness could not identify with any certainty how Walgreens'

pharmacist bonuses were calculated over the years 2006-2013, and he was not sure who at

Walgreens would know what metrics were used at any particular time to calculate pharmacists'

bonuses in San Francisco. Nor could the witness confirm whether a patient whose opioid

prescription was refused could file a complaint affecting the store's customer feedback score.

Plaintiff will review the transcript carefully upon receipt and will meet and confer with

Walgreens to discuss appropriate next steps.

JOINT STATUS UPDATE
CASE. NO. 18-CV-07591-CRB-JSC

**B.     Endo/Par**

      **1.     Endo's Document Productions and Repository**

After insisting for months that 2007 call data could not be found and must not exist, Endo has since advised that it has located the data, which it produced on January 28, 2022. It is unclear why Endo's earlier search efforts did not uncover these call data files, especially since the 2007 data gap was specifically identified by Plaintiff.

Endo also told Plaintiff that "approximately 30 documents" were "inadvertently omitted" from Endo's prior MDL productions and will be produced by January 31. Endo says that these documents were identified during a pre-MDL civil investigation.

With respect to the Ankura repository, Endo recently informed Plaintiff that it intends to produce approximately ***265,000*** repository documents into the MDL. Endo previously took the position that documents in the Ankura repository will not be considered "produced" until particular documents are identified by plaintiffs for production. Now, as part of the special master proceedings in the City of Chicago case, Endo has agreed to produce documents with a TAR responsiveness score of 65-100, plus any family members (including those that receive lower scores) into the MDL in two installments "in or about mid-February." As stated in the parties' prior Joint Status Updates, Plaintiff believes that, if relevant and responsive information is produced, Plaintiff should be permitted to use it as evidence at trial while Defendants should be prohibited from doing so. Plaintiff will keep the Court apprised of any developments. Plaintiff also continues to reserve the right to seek evidentiary sanctions as may be necessary and appropriate.

      **2.     Evidentiary Stipulation and Rule 30(b)(6) Testimony**

The parties have agreed in principle on an evidentiary stipulation relating to the distribution of opioid-related marketing materials, and have been working together for weeks to confirm the specific information therein. On January 18, this Court ordered the parties to file the stipulation by January 28, 2022. However, on January 28, the Court granted the parties' request to extend this deadline to February 4, to allow the parties an opportunity to (a) complete final edits and meet and confer efforts, and (b) in light of the recent production of additional call data.

2361878.8

At Plaintiff's request and pursuant to MDL Case Management Order No. 3: Document and Electronically Stored Information Production Protocol (MDL Doc. 443) (adopted by this Court on September 10, 2020) (Doc. 279)), Endo also agreed to try to locate color copies of brochures and books identified in the Materials Dropped Files, better copies of "Premium Materials" used by sales representatives (*e.g.*, pens, clocks, Post-it pads) and/or exemplars of "Premium Materials" that Plaintiff can inspect, and a copy of or more information about Endo's "VAS Pain Assessment Tool CD-ROM."

The parties have agreed upon February 9, for an Endo Rule 30(b)(6) deposition relating to agreed-upon marketing topics.

### 3.      Endo's Efforts to Reopen the Deposition of Linda Kitlinski

On October 5, 2021, Endo served a Cross-Notice of Deposition of Linda Kitlinski in this matter pursuant to Federal Rules of Civil Procedure 30.  The deposition being "cross-noticed" was that noticed by the Florida Attorney General in its state court case against Endo and other opioid manufacturers. It is Plaintiff's understanding that Endo cross-noticed Ms. Kitlinski's deposition in ***every jurisdiction*** where similar litigation was pending.  Plaintiff objected to the cross-notice on multiple grounds, but ultimately agreed not to move to quash.

A two-day deposition commenced on November 22-23, 2021, but several parties, including Plaintiff, did not have an opportunity to examine the witness directly pursuant to the notice Endo had served in their cases.  Ms. Kitlinski's attorney agreed to identify additional dates in December 2021 or January 2022 should parties choose to continue the deposition.

On January 15, Plaintiff learned that the State of Florida settled its case with Endo and had withdrawn its deposition notice.  On January 19, 2022, Endo served a Notice of Cancellation of Cross-Notice of Deposition of Linda Kitlinski in this case.  Plaintiff declined to serve (by leave of court or stipulation of the parties as required under Rule 30) another notice of deposition of Ms. Kitlinski in this matter, particularly since any deposition would not be until February 2022.

In response, Endo now argues that testimony from the two-day deposition of Ms. Kitlinksi, which it noticed and subsequently canceled the continuation of, should be deemed inadmissible here and in any other pending litigation unless it is permitted to notice yet another

deposition of Ms. Kitlinski—*a third deposition of this witness, three months after the close of discovery*—so it can conduct a cross examination.  Endo contends it should be permitted to do so because its earlier notice was a "cross-notice".  The Federal Rules of Civil Procedure make no such distinction, however, and Endo was unable to cite any authority in support of its position.

Endo voluntarily withdrew its notice of deposition served in this case and has therefore waived its opportunity to cross examine the witness.  It should not now, especially at this late date, be permitted to foreclose Plaintiff from using the properly taken testimony or to further delay the conclusion of discovery in these proceedings.

**C.      Teva/Actavis Defendants**

Plaintiff served a 30(b)(6) Notice of Deposition on the Teva/Actavis Defendants on October 29, 2021. The parties have agreed that the Teva/Actavis Defendants will provide verified written responses for certain topics, designate deposition testimony for certain topics, and enter into a stipulation regarding the authenticity of certain business records for certain topics by February 4, 2022. Additionally, there is one final fact deposition of a former Teva employee yet to take place, which is likely to be set in mid-March.

**II.      Third-Party Discovery**

On January 27, the Court denied Endo/Par, Teva/Actavis, and Allergan's motion to quash Plaintiffs' subpoena to the California Department of Justice seeking re-identification from CURES of the prescriptions of Defendants' experts Dr. Vanila Singh and Dr. Douglas Tucker. As a matter of policy, the California Department of Justice will not produce the prescribers' re-identified data absent an order from the Court specifically directing DOJ to do so. Therefore, Plaintiff respectfully requests that the Court enter such an order. *See* Docs. 906 at 12, 915 at 2 (addressing the same issue for Plaintiff's expert Dr. Anna Lembke). Plaintiff and DOJ have met and conferred, and DOJ's objections were previously filed at Doc. 938-1. The DOJ has indicated to Plaintiff that it intends to appear at this status conference.

### III.   Plaintiff's Rule 30(b)(6) Testimony Regarding Zuckerberg San Francisco General Hospital Outpatient Pharmacy

Over the weekend before this filing Walgreens raised purported concerns regarding Plaintiff's January 20 Rule 30(b)(6) testimony regarding the Zuckerberg San Francisco General ("ZSFG") Hospital Outpatient Pharmacy, including the both the live testimony and written responses. Plaintiff responds briefly below.

*Witness preparation*. Plaintiff's designee, Swati Patel, was properly prepared to testify as to the institutional knowledge that exists for the ZSFG Outpatient Pharmacy dating back to 2006, as the parties had agreed. Dr. Patel has worked for ZSFG since 2007, was the outpatient pharmacy manager from 2010 to 2021, and since 2021 has served as director of pharmacy for the hospital. *See* Patel Depo. Tr. 14:18-19, 20:11-21:5. She is undoubtedly the person most qualified to testify as to the outpatient pharmacy's practices during her tenure. As to time periods beyond her immediate knowledge, Dr. Patel testified that she spoke with "individuals who have been at this institution longer than I have, since the deposition does go back to 2006, to see if they have any knowledge that could be added—information added to help answer these questions." *Id.* 13:12-17. Indeed, Dr. Patel testified that she consulted with the staff members who could best fill gaps in her knowledge, including: (1) a pharmacist employed at ZSFG since 1998 who has served as a pharmacy regulatory and operations manager since 2002; (2) a pharmacist employed since 1992, including in managerial roles; (3) Dave Woods, the Department of Public Health Chief Pharmacy Officer, who has been employed for decades (and whom Walgreens also deposed); and (4) Michelle Fouts, the Department of Public Health Chief Informatics Officer, who also has been employed for decades (and whom Walgreens deposed as well). *Id.* 273:6-10. These individuals did not have information to add to Dr. Patel's knowledge because, per Dr. Patel's investigation, the pertinent policies and procedures did not substantially change during the time periods in question. Plaintiff offered to provide Walgreens a declaration to this effect. Nevertheless, it appears that Walgreens is determined to seek additional deposition testimony from Plaintiff's differently situated hospital pharmacy, despite at least three depositions it has taken to date focused on this topic (and five focused on Plaintiff's pharmacies writ large). Plaintiff's designee

was properly prepared, and discovery as to the ZSFG Outpatient Pharmacy, which, has never employed more than approximately a dozen pharmacists, maintains a hospital pharmacy license, and services a closed network of safety net patients, should close.[2]

**Written testimony.** At the outset, Plaintiff does not understand Walgreens' complaint that Plaintiff "objected to each topic" before providing a response. Preserving objections is standard practice in civil litigation, and, in fact, Walgreens did the same for its 30(b)(6) written responses.

During Plaintiff's several meet and confers with Walgreens about Walgreens' overbroad 30(b)(6) requests, Plaintiff explained that, from Plaintiff's perspective, a number of Walgreens' requested written topics were impossible to distinguish from other written topics and/or topics of oral testimony. Walgreens' response was that Plaintiff could make such an objection. That is exactly what Plaintiff did. For example, Topic 4 seeks identification of the "systems and programs or other data collection methods, that ZSFG uses to track prescriptions filled." Plaintiff answered this question—long ago in numerous letters regarding the ZSFG Outpatient pharmacy's dispensing data—and also in response to written Topic 1, in which Plaintiff identified the different pharmacy information systems in use from 2006 to present and described the data fields captured. As to Walgreens' specific concern about Topic 3—that is, identification of the pharmacy information system in use prior to 2012—as Plaintiff previewed, Plaintiff objected that the topic was "unreasonably cumulative of information that has already been shared in discovery." Meanwhile, the answer was provided in response to Topic 1: Plaintiff stated that "[a]t all relevant times prior to 2017"—*i.e.*, back to 2006—"the ZSFG Outpatient Pharmacy used [Foundation Systems Incorporated Pharmacy Software." What Topic 3 sought that was different from the other topics was a description of retention policies. In response, Plaintiff explained exactly which pharmacy information records were retained and purged over time. Finally, as to Walgreens' complaint that the written responses did not specifically state that pre-2012

---

[2] Plaintiff also notes that during the deposition, Walgreens' counsel, who had not participated in negotiations about the topics, strayed far from the agreed-upon Rule 30(b)(6) topics, asking, for example, questions about FDA approvals for medications, CDC guidelines, the excluded topic of the County Jail, and Walgreens' own policies. The witness devoted a full working day to the deposition (and additional sessions to preparation) at the height of the Omicron surge, and no further deposition testimony is justified.

2361878.8

1   dispensing data is not available, Walgreens fails to mention that Plaintiff informed Walgreens of

2   this fact approximately a year ago.

3        Plaintiff remains available to meet and confer with Walgreens. Plaintiff notes, however,

4   that data productions from the pharmacy were the subject of numerous letters and briefs in 2020

5   and 2021, and Plaintiff has already produced **_all_** available data fields to which the parties agreed,

6   including notes fields, from the pharmacy's information systems and explained the meaning of

7   these fields in lengthy meet and confers.

8                          **DEFENDANTS' STATEMENT**

9   **I.      Status of Party Discovery**

10       **A.      Plaintiff's failure to adequately prepare its 30(b)(6) witness**

11       On January 20, 2022, Walgreens took the Rule 30(b)(6) deposition of Zuckerberg San

12  Francisco General Hospital's Outpatient Pharmacy ("ZSFG").  Plaintiff agreed to prepare its

13  witness on four topics dating back to 2006, but Plaintiff failed to do so.  Plaintiff's witness was

14  not prepared to testify on any topic before 2010.  Patel Tr. 15:11-22 ("Q   Did you do anything

15  else to educate yourself in preparation for your testimony today about the 2006 to 2010 time

16  frame?     A   No.  Q   Do you have any information about topics 7, 8, 9, and 10 relating to the

17  2006 to 2010 time frame?  A   No.  Q   Okay.  Did you look for documents relating to topics 7,

18  8, 9 or 10 from the 2006 to 2010 time frame?  A   No.").  For Topic 9, relating to ZSFG's

19  dispensing policies, the witness had no knowledge before 2014.  Patel Tr. 96:14-18 ("Q   Did you

20  in preparation for your deposition today endeavor to figure out whether there were any

21  differences in Zuckerberg outpatient pharmacy's policies prior to 2014?  A   No, I did not.").

22  Plaintiff now states in its portion of the status report that "the pertinent policies and procedures

23  did not substantially change during the time periods in question."  Walgreens is entitled to sworn

24  testimony on whether that is true.  Walgreens therefore requests that the Court order Plaintiff to

25  provide an additional hour of deposition time with a witness who is properly prepared on the four

26  agreed upon topics dating back to 2006.

27

28

**B.      Plaintiff's failure to provide sufficient written responses to agreed upon 30(b)(6) topics**

On January 20, 2022, Plaintiff submitted written responses to certain of Walgreens' Rule 30(b)(6) topics.  Despite agreeing to provide responses to nine topics, *see* Levin-Gesundheit to Jernudd Email, December 10, 2021, Plaintiff **objected** to each topic—without specifying what information it withheld subject to an objection—and failed to provide adequate responses to several.  For example, Plaintiff's written response to Topic No. 3 only addresses a time period going back to 2012 despite Plaintiff's agreement that the relevant time period for the Topics went back to 2006.  *See* The People's Written Responses to Certain of Walgreens' Rule 30(b)(6) Topics Directed at ZSFG at 3.  Specifically, Plaintiff's response states that ZSFG's pharmacy dispensing records from 2012 to 2016 were archived, but it does not address ZSFG's records from before 2012.  When the parties conferred, Plaintiff stated that these records no longer exist.  Walgreens requests that Plaintiff supplement its response to include this information.

Plaintiff's written response to Topic No. 4 simply directs Walgreens to Plaintiff's responses to Topic Nos. 1–3 and provides no specific response to Topic No. 4.  *See id.* at 6–7.  Topic No. 4 seeks information about the means that ZSFG uses to track (1) the amount of time it takes to evaluate and fill or reject each prescription, (2) whether a consultation with a patient was conducted, (3) the length of that consultation, (4) whether a review of the prescription monitoring program was conducted, (5) whether any criteria or Red Flags (either for patient or prescriber) were identified related to Diversion or a nonlegitimate medical purpose for the medication, (6) whether any investigation or Due Diligence was performed on any Opioid prescriptions and (7) the amount of time taken to perform that investigation or Due Diligence.  Plaintiff's responses to Topic Nos. 1–3 do not specifically address these subjects.  Walgreens requests that Plaintiff supplement its response to state whether ZSFG's pharmacy systems tracked these categories of information, and if so, during what time periods.

Plaintiff's written response to Topic No. 1 is also deficient.  This Topic seeks written testimony about "all data collected by the pharmacist and/or pharmacy with respect to a presented prescription."  Plaintiff states that ZSFG's pharmacy software system contains "a variety of notes

fields, some associated with the patient and others with prescription number," but it does not explain what type of information these fields track. Walgreens requests that Plaintiff supplement its response to explain what type of information ZSFG's notes fields track. Walgreens' Topic No. 1 also specifically requested information about any differences regarding the methods that ZSFG used to collect and record dispensing data over time. Plaintiff stated that ZSFG used three different pharmacy software systems during the relevant time period, but it did not say whether any differences existed between those systems. Walgreens requests that Plaintiff supplement its response to explain whether the data fields collected and maintained by ZSFG's pharmacy systems changed over time.

Again, Plaintiff agreed to provide written responses to each of these Topics. If Plaintiff wished to avoid responding to certain Topics, the proper means for doing so was to move for a protective order. Walgreens therefore requests that the Court order Plaintiff to supplement its written responses to provide complete answers to the Rule 30(b)(6) Topics that Plaintiff agreed to.

### C. Plaintiff's Discovery Requests.

Defendants have produced millions of documents in the MDL, which are deemed produced in this case, and have made major additional productions specific to this case.

#### 1. Walgreens

**Walgreens** has complied with all the Court's instructions and requests at the last conference.

##### a. Walgreens' Recent Production

Walgreens' recently produced eleven documents that consisted of Walgreens' policies restricting pharmaceutical sales representatives from communicating directly with Walgreens pharmacists, certain Walgreens' quarterly newsletters, and a Walgreens' agreement with Purdue Pharma, L.P., in which Walgreens agreed to inform its pharmacists about the "clinical attributes" of a Purdue product, including the FDA-approved warnings and other risks associated with the product. Walgreens identified these documents in the course of preparing a witnesses to testify in another case and, in an abundance of caution, promptly produced them.

1    Plaintiff focuses on the agreement with Purdue and asserts that it should have been

2    produced earlier in response to Plaintiff's Request for Production No. 5, which seeks "[a]ll

3    documents and communications or agreements with opioids manufacturers and distributors

4    related to the marketing, sale, promotion, adherent programs, training, or supply of Opioids . . . ."

5    Walgreens did not agree to produce documents in response to RFP No. 5, and Plaintiff never

6    moved to compel.  It is too late to do so now.  Moreover, the agreement in question does not

7    relate to "marketing, sale, promotion, adherent programs, training, or supply."  Walgreens

8    nevertheless produced the agreement as soon as it was identified out of an abundance of caution.

9                          **b.  Walgreens' 30(b)(6) Witness**

10    Plaintiff states that Walgreens' 30(b)(6) witness was "under- or unprepared to offer

11    testimony on a whole host of issues."  But Plaintiff's assertion is wholly unsupported.  Plaintiff

12    did not raise any specific deficiency in Walgreens' testimony until just hours before this filing

13    was due.  Plaintiff now states that Walgreens' witness "could not identify with any certainty how

14    Walgreens' pharmacist bonuses were calculated over the years 2006-2013," and he could not

15    "confirm whether a patient whose opioid prescription was refused could file a complaint affecting

16    the store's customer feedback score."  Plaintiff offers no citation to the transcript in support of its

17    assertions.  Walgreens' witness provided answers to Plaintiff's questions on both of these topics

18    and referenced Walgreens' documents in support of his answers.  Plaintiff's baseless assertions

19    are inappropriate for inclusion in the status report.

20                          **2.  Endo**

21    Within the last two weeks, **Endo** located a more than decade-old copy of call data that

22    overlaps with certain years for which Endo previously produced call data; however, this copy also

23    includes data for 2007 that had not previously been located in other sources of call data. Endo

24    produced the 2007 call data in the MDL (including to Plaintiff here) on January 28, 2022. Endo is

25    in the process of evaluating whether any other data among the newly located source is non-

26    duplicative of its prior productions of call data and will promptly make any supplemental

27    production to the extent necessary.

28

Endo and Plaintiff have nearly finalized an evidentiary stipulation, which includes a number of detailed exhibits. The parties intend to file the stipulation by February 4, 2022.  At Plaintiff's request, Endo also agreed to attempt to locate color or physical copies of certain marketing materials. Endo requested that Plaintiff provide the bates numbers for the specific materials requested, which Plaintiff agreed to do.

In October 2021, the State of Florida noticed the deposition of Linda Kitlinski, a former Endo employee, and Endo cross-noticed that deposition in this matter. The first two days of that deposition took place on November 22 and 23, 2021, with Plaintiff's counsel in attendance. As Plaintiff noted in several prior Joint Status Updates, Plaintiff was due to question Ms. Kitlinski when the deposition resumed on January 25, 2022. (Doc. 806 at 7; Doc 851 at 11; Doc. 906 at 8; *see also* Jan. 7, 2022 Tr. at 19:2-5), after which Endo would have had the opportunity to question the witness as well. Shortly before the deposition was to be resumed, however, Endo and the State of Florida entered into a settlement and, on January 18, 2022, the State of Florida filed a Notice of Cancellation of Continued Videotaped Remote Deposition of Linda Kitlinski in *State of Florida v. Purdue Pharma L.P.*, Case No. 2018-CA-001438 (Pasco Cty. Fla.). (*See* Ex. A, attached.) Because the underlying deposition notice was withdrawn, there was no deposition to cross-notice; therefore, Endo notified Plaintiff of the cancellation of its cross-notice. (*See id.*) Recognizing that the deposition must conclude, if at all, in another jurisdiction, Ms. Kitlinski's counsel asked Plaintiff's counsel if Plaintiff would like to notice a new deposition of Ms. Kitlinski in this case, but—despite previously expressing a desire to complete the deposition (*e.g.*, Doc 851 at 11)— Plaintiff declined.[3]  As a result,  the deposition has not been concluded, and Endo has not had the opportunity to question the witness; thus, absent completion, the deposition cannot be used at trial. Accordingly, Endo requests that the Court permit Endo to notice Ms. Kitlinski's deposition in these proceedings for the narrow purpose of incorporating the incomplete deposition testimony and completing the questioning.

---

[3] Ms. Kitlinski's counsel also asked all other plaintiffs' counsel who reserved time to question Ms. Kitlinski if they would like to notice the continued to deposition and each declined.

2361878.8

As reported in the parties' past Joint Status Updates, Endo and Par continue to assess historical pre-MDL and MDL productions, including in connection with an on-going special master process in another federal case remanded from the MDL, *City of Chicago v. Purdue Pharma, L.P., et al.*, No. 1:14-cv-04361 (N.D. Ill.), where Endo is a defendant.  Following discussions with plaintiff's counsel in *City of Chicago*, Endo agreed, in the spirit of compromise and without waiver of its objections, to produce to the City of Chicago approximately 265,000 documents identified through a technology assisted review ("TAR") process from the repository Endo established where plaintiffs can view documents determined to be non-responsive to discovery requests in opioid litigation.  Pursuant to the parties' agreement in that case, Endo will produce these documents without review for relevance (subject to certain limited exceptions), will not run TAR over the documents withheld from the repository on the basis of privilege, and will not otherwise be further addressing privileged documents.  Following production in *City of Chicago*, Endo will produce these documents in the MDL pursuant to MDL Discovery Ruling 22.  Endo continues to believe that the substantial majority of the documents in the repository—all of which were already subject to a good-faith responsiveness review—are non-responsive, irrelevant, and/or duplicative or cumulative of documents and information previously produced, and that the additional steps being taken with respect to these documents go beyond Endo's discovery obligations.  Endo also disagrees with Plaintiff's assertions concerning possible evidentiary limitations or sanctions and reserves the right to oppose a request for such relief if and to the extent Plaintiff brings a properly noticed motion before the Court.

Additionally, on January 31, 2022, following a meet and confer with Plaintiff here, Endo produced 26 documents in MDL, which were produced in response to pre-MDL civil investigative demands, but were apparently inadvertently omitted from early MDL productions.  Endo believes the information in these documents has been previously produced in other documents or data sets, or is otherwise available, but produced the documents in the spirit of

- 15 -

1   completeness.  Endo and Par will promptly notify Plaintiff if they determine that any further

2   supplementation of MDL productions is warranted.[4]

3   **II.     Plaintiff's Request for Admissibility and Authentication Stipulations.**

4          During the meet-and-confer on this topic, Plaintiff made a very broad proposal that

5   seemed to ask Defendants to stipulate to a huge universe of documents as both authentic and

6   admissible as business records. Plaintiff provided a revised proposal in writing on October 29,

7   2021. To better understand and consider Plaintiff's proposal, which remains very broad,

8   Defendants wrote back on November 12, 2021, with a series of questions. Plaintiff has not yet

9   responded to the questions in Defendants' letter. Defendants remain willing to continue to meet

10  and confer on this topic, but Defendants continue to believe that any such discussion will be more

11  focused and productive once the parties identify exhibits for trial.

12  **III.    Trial Logistics Issues**

13         Defendants seek guidance as to the Court's plan for handling protocols and issues related

14  to Covid-19. The parties recently raised the issue of Covid-19 protocols directly with Judge

15  Breyer in their joint submission dated January 28, 2022 (ECF No. 998). Defendants raise these

16  issues here in case the Court determines that the Joint Status Hearing serves the appropriate forum

17  for providing such guidance.

18

19     DATED:  February 1, 2022                    Respectfully submitted,

20

21     DAVID CHIU                                  /s/ Kevin R. Budner
       City Attorney                               Elizabeth J. Cabraser
22     YVONNE R. MERE                              Richard M. Heimann
       SARA J. EISENBERG                           Paulina do Amaral
23     OWEN J. CLEMENTS                            Kevin R. Budner
       JAIME M. HULING DELAYE                      Michael Levin-Gesundheit
24     Deputy City Attorneys                       Jacob H. Polin
       Fox Plaza                                   Miriam E. Marks
25     1390 Market Street, Sixth Floor             LIEFF CABRASER HEIMANN &
       San Francisco, CA  94102                    BERNSTEIN, LLP
26     Telephone:  415/554-3957                    275 Battery Street, 29th Floor
       jaime.hulingdelaye@sfcityatty.org           San Francisco, California 94111-3339
27                                                 Telephone: 415.956.1000
                                                   Facsimile: 415.956.1008
28  _____
    [4] Endo's and Par's productions in other opioid matters will continue notwithstanding the close of
    fact discovery in this case.

    2361878.8                              - 16 -

1    ecabraser@lchb.com

2    Aelish M. Baig                          Paul J. Geller
     Taeva C. Shefler                        Mark J. Dearman
3    Hadiya K. Deshmukh                      Dorothy P. Antullis
     ROBBINS GELLER RUDMAN & DOWD            Nicolle B. Brito
4    LLP                                     ROBBINS GELLER RUDMAN & DOWD
     Post Montgomery Center                  LLP
5    One Montgomery Street, Suite 1800       120 East Palmetto Park Road, Suite 500
     San Francisco, CA  94104                Boca Raton, FL  33432
6    Telephone:  415/288-4545                Telephone:  561/750-3000
     415/288-4534 (fax)                      561/750-3364 (fax)
7    aelishb@rgrdlaw.com                     pgeller@rgrdlaw.com
     tshefler@rgrdlaw.com                    mdearman@rgrdlaw.com
8    hdeshmukh@rgrdlaw.com                   dantullis@rgrdlaw.com
                                             nbrito@rgrdlaw.com
9
     X. Jay Alvarez                          Louise Renne
10   Thomas E. Egler                         RENNE PUBLIC LAW GROUP
     ROBBINS GELLER RUDMAN & DOWD            350 Sansome Street, Suite 300
11   LLP                                     San Francisco, CA 94104
     655 West Broadway, Suite 1900           Telephone:  415/848-7240
12   San Diego, CA  92101                    415/848-7230 (fax)
     Telephone:  619/231-1058                lrenne@publiclawgroup.com
13   619/231-7423 (fax)
     jaya@rgrdlaw.com
14   tome@rgrdlaw.com

15   Jennie Lee Anderson                     Kevin Sharp
     Audrey Siegel                           SANFORD HEISLER SHARP, LLP
16   ANDRUS ANDERSON LLP                     611 Commerce Street, Suite 3100
     155 Montgomery Street, Suite 900        Nashville, TN  37203
17   San Francisco, CA  94104                Telephone:  615/434-7000
     Telephone:  415/986-1400                615/434-7020 (fax)
18   415/986-1474 (fax)                      ksharp@sanfordheisler.com
     jennie@andrusanderson.com
19   audrey.siegel@andrusanderson.com

20

21   Edward Chapin                           David S. Casey, Jr.
     SANFORD HEISLER SHARP, LLP              Gayle M. Blatt
22   655 West Broadway, Suite 1700           Alyssa Williams
     San Diego, CA  92101                    CASEY GERRY SCHENK FRANCAVILLA
23   Telephone:  619/577-4253                BLATT & PENFIELD LLP
     619/577-4250 (fax)                      110 Laurel Street
24   echapin2@sanfordheisler.com             San Diego, CA  92101-1486
                                             Telephone:  619/238-1811
25                                           619/544-9232 (fax)
                                             dcasey@cglaw.com
26                                           gmb@cglaw.com
                                             awilliams@cglaw.com
27
     Ellen Relkin                            Melinda Davis Nokes
28   WEITZ & LUXENBERG P.C.                  WEITZ & LUXENBERG P.C.

JOINT STATUS UPDATE
CASE. NO. 18-CV-07591-CRB-JSC

2361878.8

700 Broadway
New York, NY  10003
Telephone:  212/558-5500
212/344-5461 (fax)
erelkin@weitzlux.com

1880 Century Park East
Los Angeles, CA  90067
Telephone:  310/247-0921
310/786-9927 (fax)
mnokes@weitzlux.com

Paul F. Novak
Tiffany Ellis
WEITZ & LUXENBERG, P.C.
24th Floor, The Fisher Building
3011 W. Grand Boulevard
Detroit, Michigan 48202
Tel: (313) 800-4170
pnovak@weitzlux.com
tellis@weitzlux.com

*Attorneys for Plaintiff The People of the
State of California, acting by and
through San Francisco City Attorney
David Chiu*

1    DATED:  February 1, 2022                    Respectfully submitted,

2    *s/ Amy L. Van Gelder*                      */s/ Collie F. James IV*

3    Richard Bernardo (*pro hac vice*)           Brent A. Hawkins (S.B. # 314266)
     SKADDEN, ARPS, SLATE,                       Zachary Hill (S.B. #275886)
                                                 MORGAN, LEWIS & BOCKIUS LLP
4      MEAGHER & FLOM LLP                        One Market, Spear Street Tower
     One Manhattan West                          San Francisco, CA  94105-1596
5    New York, NY  10001                         Telephone: (415) 442-1000
     Telephone: (212) 735-3000                   brent.hawkins@morganlewis.com
6    richard.bernardo@skadden.com                zachary.hill@morganlewis.com

7    Amy L. Van Gelder (*pro hac vice*)          Collie F. James, IV (S.B. #192318)
                                                 MORGAN, LEWIS & BOCKIUS LLP
8    SKADDEN, ARPS, SLATE,                       600 Anton Blvd., Suite 1800
       MEAGHER & FLOM LLP                        Costa Mesa, CA  92626
9    155 North Wacker Drive, Suite 2700          Telephone: (714) 830-0600
     Chicago, IL  60606                          collie.james@morganlewis.com
10   Telephone: (312) 407-0903
     amy.vangelder@skadden.com                   Wendy West Feinstein (*pro hac vice*)
11                                               Katherine A. Vaky (*pro hac vice*)
                                                 MORGAN, LEWIS & BOCKIUS LLP
12   John C. Hueston (SBN 164921)                One Oxford Centre, 32nd Floor
     HUESTON HENNIGAN LLP                        Pittsburgh, PA  15219-6401
     620 Newport Center Dr., Suite 1300          Telephone: (412) 560-7455
13   Newport Beach, CA 92660                     wendy.feinstein@morganlewis.com
     Telephone: (949) 229-8640                   katherine.vaky@morganlewis.com
14

15   Moez M. Kaba (SBN 257456)
     Padraic Foran (SBN 268278)
16   Michael K. Acquah (SBN 313955)              *Attorneys for Defendants Cephalon, Inc.;*
     mkaba@hueston.com                           *Teva Pharmaceuticals USA, Inc.; Teva*
     pforan@hueston.com                          *Pharmaceutical Industries Ltd.; Watson*
17   macquah@hueston.com                         *Laboratories, Inc.; Actavis LLC, Actavis*
     HUESTON HENNIGAN LLP                        *Pharma, Inc., f/k/a Watson Pharma, Inc.;*
18   523 West 6th Street, Suite 400              *Actavis Elizabeth LLC; Actavis Mid Atlantic*
     Los Angeles, CA 90014                       *LLC; Warner Chilcott Company, LLC;*
19   Telephone: (213) 788-4340                   *Actavis South Atlantic LLC; Actavis Totowa*
     Facsimile: (888) 775-0898                   *LLC; Actavis Kadian LLC; Actavis*
20                                               *Laboratories UT, Inc., f/k/a/ Watson*
                                                 *Laboratories, Inc.-Salt Lake City; and*
21   *Attorneys for Defendants Endo*             *Actavis Laboratories FL, Inc., f/k/a Watson*
     *Pharmaceuticals Inc., Endo Health*         *Laboratories, Inc.-Florida.*
22   *Solutions Inc., Par Pharmaceutical, Inc.,*
     *and Par Pharmaceutical Companies, Inc.*    *Denotes national counsel, pro hac vice*
23                                               *forthcoming*

24

25

26

27

28

JOINT STATUS UPDATE
CASE. NO. 18-CV-07591-CRB-JSC

1  *s/ Zachary A. Ciullo*                          *s/ Katherine M. Swift*
   F. Hurst, P.C. (*pro hac vice*)                 Charles J. Stevens (SBN 106981)
2  Rebecca Fitzpatrick, P.C. (*pro hac vice*)      cstevens@gibsondunn.com
   Zachary A. Ciullo (*pro hac vice*)              Joshua D. Dick (SBN 268853)
3  KIRKLAND & ELLIS LLP                            jdick@gibsondunn.com
   300 North LaSalle                               Kelsey J. Helland (SBN 298888)
4  Chicago, IL  60654                              khelland@gibsondunn.com
   Telephone: (312) 862-2000                       GIBSON DUNN & CRUTCHER LLP
5  Facsimile: (312) 862-2200                       555 Mission Street, Suite 3000
   james.hurst@kirkland.com                        San Francisco, CA  94105
6  rebecca.fitzpatrick@kirkland.com                Telephone: 415.393.8200
   zac.ciullo@kirkland.com                         Facsimile: 415.393.8306
7
   *Attorneys for Defendants*
8  *Allergan Finance, LLC, Allergan Sales,*        Kaspar Stoffelmayr (*pro hac vice*)
   *LLC and Allergan USA, Inc. and specially*      kaspar.stoffelmayr@bartlitbeck.com
9  *appearing defendant Allergan plc*[5]           Katherine M. Swift (*pro hac vice*)
                                                   kate.swift@bartlitbeck.com
10 *s/ Katy E. Koski*                              BARTLIT BECK LLP
   Alan R. Ouellette (CA Bar. No. 272745)          54 West Hubbard Street
11 FOLEY & LARDNER LLP                             Chicago, IL  60654
   555 California Street, Suite 1700               Telephone: 312.494.4400
12 San Francisco, CA  94104-1520                   Facsimile: 312.494.4440
   Telephone: (415) 434-4484
13 Facsimile: (415) 434-4507                       Alex Harris (*pro hac vice*)
   aouellette@foley.com                            alex.harris@bartlitbeck.com
14                                                 BARTLIT BECK LLP
   James W. Matthews (*pro hac vice*)              1801 Wewatta Street, Suite 1200
15 Ana M. Francisco (*pro hac vice*)               Denver, CO  80202
   Katy E. Koski (*pro hac vice*)                  Telephone: (303) 592-3100
16 FOLEY & LARDNER LLP                             Facsimile: (303) 592-3140
   111 Huntington Avenue                           *Attorneys for Walgreen Co.*
17 Boston, MA  02199-7610
   Telephone: (617) 342-4000
18 Facsimile: (617) 342-4000
   jmatthews@foley.com
19 francisco@foley.com
   kkoski@foley.com
20 *Attorneys for Defendant Anda, Inc.*

21                              **ATTESTATION**

22         Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that concurrence in the filing of this

23 document has been obtained from the above signatories.

24  Dated: February 1, 2022                  By: */s/ Kevin R. Budner*

25

26

27 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   [5]Defendant Allergan Finance, LLC was formerly known as Actavis, Inc., which was formerly
   known as Watson Pharmaceuticals, Inc.  Defendant Allergan plc, which was formerly known as
28 Actavis plc and is now known as Allergan Limited, does not waive but rather expressly preserves
   its objection to the Court's personal jurisdiction over it.

JOINT STATUS UPDATE
CASE. NO. 18-CV-07591-CRB-JSC

2361878.8

1

**CERTIFICATE OF SERVICE**

2

     I hereby certify that, on February 1, 2022, service of this document was accomplished

3

pursuant to the Court's electronic filing procedures by filing this document through the ECF

4

system.

5

                                */s/ Kevin R. Budner*
                                 Kevin R. Budner

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2361878.8

JOINT STATUS UPDATE
CASE. NO. 18-CV-07591-CRB-JSC