IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PURDUE PHARMA L.P., et al.,<br><br>Defendants. | Case No. 18-cv-07591-CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART ENDO'S MOTION FOR SUMMARY JUDGMENT** |

  Plaintiff asserts public nuisance and UCL claims against Defendants Endo Pharmaceuticals Inc., Endo Health Solutions Inc., Endo International plc, Par Pharmaceutical, Inc., and Par Pharmaceutical Companies, Inc. (collectively, "Endo"). Plaintiff's claims are based on two theories of liability: (1) that Endo made false and misleading statements about the safety and risks of opioids ("false statement theory") and (2) that Endo failed to design and operate effective systems to identify suspicious orders of opioids and to prevent diversion of opioids ("failure to monitor theory"). Endo moves for summary judgment on both claims on several different grounds. Motion for Summary Judgment ("MSJ") (dkt. 983). Plaintiff opposes the motion. Opposition ("Opp.") (dkt. 1089). The Court grants in part and denies in part Endo's motion for summary judgment.[1]

**I. DISCUSSION**

  **A. Endo International and Alter Ego Liability**

  The Court grants Endo International summary judgment on both the UCL and

---

[1] Defendants' other motions for summary judgment are addressed in a separate order.

public nuisance claims.

Endo International is the parent company of several subsidiary entities, including Endo Pharmaceuticals Inc. and Endo Health Solutions Inc. Plaintiff does not contend that Endo International itself engaged in any actionable misconduct. See MSJ at 5; Opp. at 30–38. Instead, Plaintiff's theory is that Endo International is liable for the misconduct of its subsidiaries based on a theory of alter ego liability. See Opp. at 30–38. Endo International argues that it is entitled to summary judgment because Plaintiff's evidence fails to support this theory. See MSJ at 4.

To establish that a parent company is liable under a theory of alter ego liability, Plaintiff must show "(1) that there is such unity of interest and ownership that the separate personalities of [Endo International and its subsidiaries] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1134 (9th Cir. 2003).

Under the first element, unity of interest and ownership is tantamount to control, and the level of control required to support a finding of alter ego liability is high. See Ranza v. Nike, Inc., 793 F.3d 1059, 1073 (9th Cir. 2015) ("The 'unity of interest and ownership' prong of this test requires 'a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former.'") (citation omitted). A standard parent-subsidiary relationship does not support a finding of alter ego liability. See Davidson v. Seterus, Inc., 21 Cal. App. 5th 283, 305 (2018) (Alter ego liability is an "extreme remedy" to be used "sparingly."). Plaintiff must offer evidence of "'specific manipulative conduct' by the parent toward the subsidiary which 'relegate[s] the latter to the status of merely an instrumentality, agency, conduit or adjunct of the former.'" See Davidson, 21 Cal. App. 5th at 305 (quoting Laird v. Cap. Cities/ABC, Inc., 68 Cal. App. 4th 727, 742 (1998)); see also Ranza, 793 F.3d at 1074 (plaintiff must show that one entity "dictates every facet of [the other entity's] business, including routine matters of day-to-day operation") (citation omitted). Courts consider the following factors when determining whether a subsidiary is a "mere instrumentality" of its parent:

2

> inadequate capitalization, commingling of funds and other assets, holding out by one entity that is liable for the debts of the other, identical equitable ownership, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers

Daewoo Elecs. Am. Inc. v. Opta Corp., 875 F.3d 1241, 1250 (9th Cir. 2017).

Courts "must look at all the circumstances to determine whether the doctrine should apply." Sonora Diamond Corp. v. Super. Ct., 83 Cal. App. 4th 523, 539 (2000). The corporate veil "ought to be pierced only in 'rare' and 'exceptional' circumstances." Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist., No. CIV S-05-583LKKGGH, 2007 WL 2384841, at *4 (E.D. Cal. Aug. 17, 2007).

The Ninth Circuit has repeatedly held that the "unity of interest and ownership" element is not met when "'the evidence shows only an active parent corporation involved directly in decision-making about its subsidiaries' holdings,' but each entity 'observes all of the corporate formalities necessary to maintain corporate separateness.'" Ranza, 793 F.3d at 1073 (quoting Doe v. Unocal Corp., 248 F.3d 915, 928 (2001)) (cleaned up). In Unocal, the Ninth Circuit found the following evidence insufficient to establish that a parent company was subject to alter ego liability:

> (1) involvement in its subsidiaries' acquisitions, divestments, and capital expenditures; (2) formulation of general business policies and strategies applicable to its subsidiaries, including specialization in particular areas of commerce; (3) provision of loans and other types of financing to subsidiaries; and (4) maintenance of overlapping directors and officers with its subsidiaries

See Unocal, 248 F.3d at 927.

Applying Unocal, the Ninth Circuit in Ranza found the following evidence insufficient to establish alter ego liability:

> Employees and management "move between" the parent and subsidiary; the parent had "control over [the subsidiary's] overall budget" and "approval authority for large purchases;" the parent "establishes general human resources polices for both entities and is involved in some hiring decisions;" the parent operated "information tracking systems all of its subsidiaries

3

      utilize;" and took steps to ensure the brand "is marketed consistently throughout the world[.]"

Ranza, 793 F.3d at 1074.

      Applying Unocal and Ranza here, Plaintiff fails to establish that Endo International exercised the degree of control over its subsidiaries required to support a finding of alter ego liability. Plaintiff points to evidence that (1) Endo International oversaw sales of opioids across Endo entities and made general management decisions relating to opioid promotion and the structure of its subsidiaries' salesforces; (2) Endo International created and enforced a company-wide code of conduct; (3) there is an overlap of directors and executives between Endo International and other Endo entities; and (4) Endo International managed the stock option and incentive plans for employees across Endo entities. See Opp. at 30–33. Viewed in the light most favorable to Plaintiff, the evidence at best suggests that Endo International had "active" involvement in the "macro-management issues" of its subsidiaries. That is insufficient to support a finding of alter ego liability. See Ranza, 793 F.3d at 1075; AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 591 (9th Cir. 1996).

      First, Plaintiff offers no evidence that Endo International's subsidiaries disregarded corporate formalities. Plaintiff does not argue that Endo International's subsidiaries were inadequately capitalized, commingled funds, or failed to maintain corporate records, "all of which would be signs of a sham corporate veil." See Ranza, 793 F.3d at 1074.

      Second, Plaintiff's evidence does not suggest that Endo International was involved in "routine matters of day-to-day operation" or that it exercised "day-to-day control" over its subsidiaries. See Fru-Con Const. Corp., 2007 WL 2384841, at *5. While Endo International set a code of conduct and compliance objectives for its subsidiaries, Opp. at 31, involvement in "macromanagement issues" does not establish "pervasive control," see Ranza, 793 F.3d at 1075; Unocal, 248 F.3d at 927. Evidence that Endo International "shared management personnel" with its subsidiaries also does not show that Endo International "controls [any] subsidiary to such a degree as to render the latter the mere

4

instrumentality of the former." See In re Boon Glob. Ltd., 923 F.3d 643, 653 (9th Cir. 2019); see also Teradyne, Inc. v. Astronics Test Sys., Inc., No. CV 20-2713-GW-SHKX, 2020 WL 8173024, at *9 (C.D. Cal. Nov. 6, 2020). Similarly, evidence that Endo International determined compensation packages or oversaw its subsidiaries' salesforce falls short of establishing alter ego liability. See Fru-Con Const. Corp., 2007 WL 2384841, at *5–6 ("setting an annual salary budget for employees" and "appointing officers" does not give rise to alter ego liability). Parent companies are expected to exercise general oversight over their subsidiaries, and evidence of general oversight—without more—does not establish that the parent company had the level of "day-to-day" involvement required for alter ego liability. See Compagnie Bruxelles, 94 F.3d at 591 ("Appropriate parental involvement includes: monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budgets, and articulation of general policies and procedures.").

The Court previously denied Endo's motion to dismiss on the grounds of alter ego liability. City & Cty. of San Francisco v. Purdue Pharma L.P., 491 F. Supp. 3d 610, 643 (N.D. Cal. 2020). But to create a dispute of material fact sufficient to survive summary judgment, Plaintiff—having the benefit of discovery—must offer evidence that Endo International crossed the line from providing general corporate strategy and oversight to engaging in "specific manipulative conduct." See Davidson, 21 Cal. App. 5th at 305; see also Unocal, 248 F.3d at 928 (alter ego liability applies when a parent "dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation.").[2] Plaintiff has not carried its burden. The evidence fails to suggest that Endo subsidiaries are "merely an instrumentality" of Endo International. See Davidson, 21 Cal. App. 5th at 305. Thus, the Court grants summary judgment on both claims against Endo International.[3]

---

[2] Given that Plaintiff fails to carry its burden at summary judgment for the foregoing reasons, the Court does not reach the parties' dispute regarding In re Boon Glob. Ltd.. See Opp. at 35.

[3] Because Plaintiff has not established a dispute of fact under the unity of interest and ownership prong, the Court does not reach the fraud or injustice prong. See Ranza, 793 F.3d at 1075, fn. 9.

5

### B. Alter Ego Liability for Par Defendants

Endo Pharmaceuticals Inc. and Endo Health Solutions Inc. move for summary judgment to the extent that Plaintiff seeks to hold them liable under a theory of alter ego liability for Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc.'s ("Par Defendants") alleged failure to maintain effective suspicious order monitoring systems. See MSJ at 21–22. Plaintiff does not oppose this argument. See generally Opp. Thus, the Court grants Endo summary judgment on this ground.

### C. Successor Liability

The Court further grants Endo summary judgment with respect to Plaintiff's theory that Endo is liable for the pre-acquisition conduct of their subsidiary Qualitest Pharmaceuticals ("Qualitest").

Endo contends that it cannot be held liable for Qualitest's alleged failures to a maintain effective suspicious order monitoring systems from 2007 to 2010. From 2007 to 2010, a private equity fund owned Qualitest, and Endo did not acquire Qualitest from the private equity fund until September 28, 2010. See Ex. 119 (dkt. 981–21) at 8. Endo argues that when it acquired Qualitest, it did not acquire any liabilities that might have existed before the acquisition, including any liabilities related to Qualitest's alleged failure to maintain effective suspicious order monitoring systems.

"In California, when a corporation purchases or otherwise acquires the assets of another corporation, the acquiring corporation does not ordinarily assume the selling corporation's debts and liabilities." Wilson v. Metals, USA, Inc., No. 2:12-CV-568-KJM-DB, 2017 WL 2972608, at *6 (E.D. Cal. July 12, 2017) (citing Fisher v. Allis-Chalmers Corp. Prod. Liab. Trust, 95 Cal. App. 4th 1182, 1188 (2002)). The general "successor nonliability" rule does not apply where: "(1) there is an express or implied agreement of assumption; (2) the transaction amounts to a consolidation or merger of the two corporations; (3) the purchasing corporation is a mere continuation of the seller; or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." Ray v. Alad Corp., 19 Cal. 3d 22, 28 (1977). "The question of successor

liability is ordinarily a question for the judge [] to decide." Wilson, 2017 WL 2972608, at *6.

Here, Plaintiff fails to show that an exception to the general rule of successor nonliability applies. See Opp. 13–15. Plaintiff appears to argue that (1) the "consolidation or merger" and (2) the "mere continuation" exceptions both apply. See id. Plaintiff does not offer sufficient evidence to support either exception.

### a.     Consolidation or Merger Exception

The "consolidation or merger exception" applies where "one corporation takes all of another's assets without providing any consideration that could be made available to meet claims of the other's creditors or where the consideration consists wholly of shares of the purchaser's stock which are promptly distributed to the seller's shareholders in conjunction with the seller's liquidation." See Ray, 19 Cal. 3d at 28–29.

Plaintiff offers no evidence to suggest that either part of the exception applies here. No evidence shows that Endo acquired Qualitest's assets without providing sufficient consideration to meet creditors' claims or that the consideration consisted wholly of shares distributed to the seller's shareholders. Rather, the record suggests that Endo paid sufficient consideration to acquire Qualitest, including a payment of "$406.8 million to retire Qualitest's outstanding debt." See Ex. X (dkt. 961–25) at 20. Accordingly, the consolidation or merger exception does not apply.

### b.     Continuation Exception

The "mere continuation" exception applies where "'a corporation organizes another corporation with practically the same shareholders and directors, transfers all the assets but does not pay all the first corporation's debts, and continues to carry on the same business." See Cleveland v. Johnson, 209 Cal. App. 4th 1315, 1334 (2012) (quoting McClellan v. Northridge Park Townhome Owners Assn., 89 Cal. App. 4th 746, 753 (2001)). In such cases, "'the separate entities may be disregarded and the new corporation held liable for the obligations of the old.'" Id.; see also Blank v. Olcovich Shoe Corp., 20 Cal. App. 2d 456, 461 (1937) ("corporations cannot escape liability by a mere change of name or a shift

7

of assets when and where it is shown that the new corporation is, in reality, but a continuation of the old."). The exception requires a "showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors [or] (2) one of more persons were officers, directors, or stockholders of both corporations.'" Cleveland, 209 Cal. App. 4th at 782 (quoting Ray, 19 Cal. 3d at 29).

As discussed above, Plaintiff offers no evidence that Endo paid inadequate consideration to acquire Qualitest. Nor does Plaintiff offer evidence of an overlap in officers, directors, or stockholders between Qualitest and Endo. Thus, the continuation exception does not apply.

\*\*\*

Because Plaintiff has not established an exception to the general rule of successor nonliability, Endo is entitled to summary judgment on Plaintiff's claims to the extent that they are based on Qualitest's conduct before September 28, 2010.

### D. False Statement Theory and Par Defendants

Par Defendants move for summary judgment on Plaintiff's UCL and public nuisance claims, to the extent that those claims are based on the theory that Par Defendants made false and misleading statements about the safety and efficacy of opioids. See MSJ at 30–34.

Par Defendants point to evidence that they manufactured and sold generic opioids, and that generic manufacturers "generally do not pay for advertising, marketing and promotion" because generic drugs compete on price, not on brand or unique product attributes. See Ex. R (dkt. 961–19). Thus, Par Defendants argue that they are entitled to summary judgment based on Plaintiff's false statement theory because there is no evidence that they made any marketing or promotional statements, much less any statements that could be characterized as false or misleading. MSJ at 30–34.

Plaintiff argues that while "the Par Defendants themselves did not make misleading claims about their generic products," they allegedly benefited from the "spillover effects"

8

of Endo's allegedly false and misleading marketing. See 29–30. But Plaintiff cites no authority for the proposition that Par Defendants can be held liable for a UCL or public nuisance claim based solely on the theory that they benefited from the "spillover effects" of statements made by another entity. Nor does Plaintiff otherwise argue that Par Defendants are liable for statements made by Endo. As a result, Plaintiff's admission that Par Defendants "did not make misleading claims about their generic products" is dispositive. See id. Without evidence that Par Defendants made false or misleading statements, Plaintiff's false statement theory fails. Plaintiff cannot establish that Par Defendants engaged in any unfair, unlawful, or fraudulent conduct (as required for a UCL claim) or in any unreasonable conduct that substantially interfered with a public right (as required for a public nuisance claim). Thus, the Court grants Par Defendants summary judgment on Plaintiff's UCL and public nuisance claims to the extent that the claims are based on the false statement theory.

### E. Endo's Other Arguments Do Not Establish That It Is Entitled to Summary Judgment

Endo's motion for summary judgment is otherwise denied as to both the public nuisance and the UCL claims. For both claims, genuine disputes of material fact preclude summary judgment under both the failure to monitor theory and the false statement theory.

**IT IS SO ORDERED.**

Dated: April _7_, 2022

CHARLES R. BREYER
United States District Judge