**Pages 1 - 13**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

```
THE CITY AND COUNTY OF SAN     )
FRANCISCO, et al.,             )
                               )
         Plaintiffs,           )
                               )
  VS.                          )    NO. C 18-07591 CRB
                               )
PURDUE PHARMA, L.P., et al.,   )
                               )
         Defendants.           )
                               )
```

San Francisco, California
Thursday, October 27, 2022

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

        OFFICE OF THE CITY ATTORNEY
        CITY OF SAN FRANCISCO
        Fox Plaza
        1390 Market Street, Sixth Floor
        San Francisco, California  94102
  **BY:  SARA J. EISENBERG**
      **DEPUTY CITY ATTORNEY**

**(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
               United States District Court - Official Reporter

```
 1   APPEARANCES:   (CONT'D)

 2   For Plaintiffs:
                                LIEFF, CABRASER, HEIMANN & BERNSTEIN LLP
 3                              275 Battery Street, Suite 2900
                                San Francisco, California  94111
 4                       BY:    ELIZABETH J. CABRASER, ATTORNEY AT LAW
                                RICHARD M. HEIMANN, ATTORNEY AT LAW
 5                              KEVIN R. BUDNER, ATTORNEY AT LAW

 6                              LIEFF, CABRASER, HEIMANN & BERNSTEIN LLP
                                250 Hudson Street, 8th Floor
 7                              New York, New York  10013
                         BY:    PAULINA DO AMARAL, ATTORNEY AT LAW
 8
                                ROBBINS GELLER RUDMAN & DOWD LLP
 9                              One Montgomery Street, Suite 1800
                                San Francisco, California  94104
10                       BY:    AELISH M. BAIG, ATTORNEY AT LAW

11                              SIMMONS HANLY CONROY LLC
                                112 Madison Avenue, 7th Floor
12                              New York, New York  10016
                         BY:    JAYNE CONROY, ATTORNEY AT LAW
13                              ELLYN HURD, ATTORNEY AT LAW
                                HOLLY NIGHBERT, ATTORNEY AT LAW
14
     (via Zoom)                 LEVIN PAPANTONIO RAFFERTY
15                              316 South Baylen Street
                                Pensacola, Florida  32502
16                       BY:    PETER J. MOUGEY, ATTORNEY AT LAW

17   For Defendant Walgreen Co.:

18                              BARTLIT BECK LLP
                                54 West Hubbard Street
19                              Chicago, Illinois  60654
                         BY:    KATHERINE M. SWIFT, ATTORNEY AT LAW
20                              BRIAN C. SWANSON, ATTORNEY AT LAW
                                GABRIEL LEVIN, ATTORNEY AT LAW
21

22

23

24

25
```

|   |   |
|---|---|
| 1 | **Thursday - October 27, 2022**                                  **9:59 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:** All rise. Court is now in session. The |
| 5 | Honorable Charles R. Breyer presiding. |
| 6 | (Pause in proceedings.) |
| 7 | **THE CLERK:** You may be seated. |
| 8 | Thursday, October 27, 2022 09:59:55 |
| 9 | **THE CLERK:** Calling civil action C18-7591, City and |
| 10 | County of San Francisco, et al. versus Purdue Pharma, et al. |
| 11 | Counsel, please state your appearances. |
| 12 | **MR. HEIMANN:** Good morning, Your Honor, Richard |
| 13 | Heimann for the People. |
| 14 | **THE COURT:** Right. Good morning, Mr. Heimann. |
| 15 | **MS. BAIG:** Good morning, Aelish Baig with Robbins |
| 16 | Geller for the People. |
| 17 | **THE COURT:** Good morning, Ms. Baig. |
| 18 | **MS. CONROY:** Good morning, Your Honor, Jane Conroy for |
| 19 | the People. |
| 20 | **THE COURT:** All right, good morning. |
| 21 | **MS. EISENBERG:** Sara Eisenberg, San Francisco City |
| 22 | Attorney's Office for the People. |
| 23 | **MS. DO AMARAL:** Good morning, Your Honor, Paulina do |
| 24 | Amaral for the People. |
| 25 | **THE COURT:** Good morning. Ms. Cabraser. |

1           **MS. CABRASER:**  Good morning, Your Honor, Elizabeth
2  Cabraser for the People.
3           **THE COURT:**  Thank you.
4           **MR. SWANSON:**  Good morning, Your Honor, Brian Swanson
5  for Walgreens.
6           **THE COURT:**  Right, good morning, Mr. Swanson.
7           **MS. SWIFT:**  Good morning, Kate Swift for Walgreens.
8           **THE COURT:**  Good morning, Ms. Swift.
9           **MR. LEVIN:**  Good morning, Gabe Levin for Walgreens.
10          **THE COURT:**  Right, good morning.  Well, everybody,
11 welcome back.
12     So, the Court has -- this is a status conference or a
13 pretrial conference, though, it is called -- I don't know
14 exactly what it's called.  It is called scheduling conference,
15 I guess, or something like that.
16     But this is in anticipation of the second phase of the
17 trial, having heard the first phase and having ruled; and the
18 Court set out a -- a scheduling order setting the dates for
19 the -- for the second phase of the trial.
20     And I don't know whether you have any comments on those
21 dates or not.  I went through my calendar and tried to figure
22 out exactly when in terms of blocks of time I could be
23 available.
24     I think it is a lot easier to do it in blocks rather than
25 "well, I'm available on November X and then there is November Y

1   and November Z;" and, you know, you are flying back and forth
2   and back and forth.  And it's -- it's a little disconcerting.
3           So I'm hoping -- well, first of all, I fully expect to
4   conclude the abatement phase of the trial in the time
5   allocated.  No indication that it won't work.
6           And, secondly, you know, I'm not -- because I have
7   scheduled these blocks, don't feel compelled to use them, to
8   fill them out.
9           On the other hand, I want you to make sure that you call
10  your witnesses and have the presentation that you think is
11  appropriate to the representation of your party.
12          So, I'm not trying to short circuit it or cut you off,
13  especially Walgreens.  When I say "especially Walgreens," you
14  are the sole Defendant here; but I want you to feel comfortable
15  that you have sufficient time to make your case; okay.
16          So if there is a problem with that or with either side,
17  let me know.  I don't think there will be.
18          Well, Ms. Conroy, do you want to -- you know, this is
19  called the free-for-all where anybody can say anything they
20  want to about how we proceed in the future.  And I will
21  start -- Ms. Conroy, you were first up.
22                  **MS. CONROY:**  I was actually --
23                  **THE COURT:**  And then I will talk to Mr. Swanson.
24                  **MS. CONROY:**  I think actually Walgreens is going to be
25  in agreement with what I have to say about this.

1  **THE COURT:** Pardon me?
2  **MS. CONROY:** I think Walgreens may be in agreement
3  with what I --
4  **THE COURT:** I love to start with an agreement.
5  **MS. CONROY:** I thought you might. So on the
6  scheduling issue --
7  **MR. SWANSON:** Yes, Your Honor.
8  **MS. CONROY:** -- on the scheduling issue, yes, it is
9  adequate time; and we do agree for sure with the blocks. We
10 are a bit concerned about that Monday of thanks -- after
11 Thanksgiving week. That was the concern --
12 **THE COURT:** Sure. Let's do the Tuesday.
13 **MS. CONROY:** -- because many of us are traveling.
14 **THE COURT:** Let's do the Tuesday. Let's do the
15 Tuesday.
16 **MS. CONROY:** Thank you. That was easy.
17 **THE COURT:** That's not a problem. That's not a
18 problem. Just have to follow our digestive tracks and make
19 them consistent with airline schedules.
20 **MS. CONROY:** Thank you.
21 **MR. SWANSON:** That was easy.
22 **THE COURT:** Great. Okay. Well, is there anything
23 else? Ms. Scott, what?
24 **THE CLERK:** So on Tuesday we had Marusca and Kopacs
25 sentencing scheduled at 10:00 o'clock and --

1      **THE COURT:** What is -- is that a complicated
2  sentencing or what?
3      **THE CLERK:** That's the one that we went to trial on
4  and we weren't sure what the AUSA's --
5      **THE COURT:** We will set that for noon.  I will change
6  the sentencing so we will start with -- with the opioid
7  abatement.  So, they will not change their schedule.
8      **THE CLERK:** Okay.
9      **THE COURT:** But there may be a longer noon hour, which
10 I will then handle my criminal calendar at that time.
11     **THE CLERK:** Thank you.
12     **THE COURT:** All right.  What else?  You are next --
13     **MR. SWANSON:** Your Honor, I'm not sure --
14     **THE COURT:** -- Mr. Swanson.
15     **MR. SWANSON:** -- if this is the time to raise it but I
16 will.
17     **THE COURT:** Go ahead.
18     **MR. SWANSON:** That is a schedule for post-trial
19 briefing.  Are you anticipating that we will be submitting
20 post-trial briefs?
21     We would certainly like to.  And if so, I was wondering if
22 you wanted to talk about a schedule for that now or if we
23 should put that off until --
24     **THE COURT:** Well, yes, we should do post-trial
25 briefing.  Well, I think -- this is what I would like, I

1  suppose -- and I'm saying this in a tentative way because I
2  haven't thought about it at all -- I think I would like the
3  post-trial briefing addressed to the second phase of the trial
4  as distinct from the first.  Is that your contemplation anyway?
5          **MR. SWANSON:**  Yes, Your Honor.
6          **THE COURT:**  Because I don't really want to go back and
7  I'm sure nobody does.
8          **MR. SWANSON:**  We are okay with that, Your Honor.
9          **THE COURT:**  Okay, that's fine.  And, yes, it's a good
10 idea.  Let's see how this goes.  You know, I think it would be
11 useful, absolutely.  So we will do a schedule once we see how
12 the evidence unfolds at the trial.
13         **MR. SWANSON:**  Sure.
14         **THE COURT:**  Okay.
15         **MR. SWANSON:**  Thank you.
16         **THE COURT:**  Yes, Mr. Heimann.
17         **MR. HEIMANN:**  Yes, Your Honor, Richard Heimann, again
18 for the People.
19     There is one issue I do want to raise.  It has to do with
20 the scope of the evidence for the abatement phase, and it has
21 to do with the issue of the prevalence numbers in San Francisco
22 and in particular the OUD prevalence numbers.
23     That was an issue in the liability phase of the trial.  We
24 got offered testimony from Dr. Keyes about it, and Your Honor
25 made and included in your findings of fact a finding with

1  respect to the prevalence of OUD in San Francisco as of, I
2  think it was 2019 was the most available -- most currently
3  available data.
4       The Defense, according to their pretrial statement,
5  intends to introduce evidence -- offer evidence on that very
6  issue.  And most of that evidence is, if not all of it, would
7  come from the testimony of their expert, Ms. Bramer.
8       And, in fact, half or more of her expert report is devoted
9  to that issue.  So the question that I'm raising is whether or
10 not -- and we put this in our pretrial statement as well in a
11 footnote, I believe -- whether or not Your Honor would allow
12 Walgreens to attack that issue once even though Your Honor has
13 already made a finding of fact with respect to it.
14         **MR. SWANSON:**  So, Your Honor, Ms. Keyes did put in a
15 number for an OUD population in her declaration.
16      At the liability phase it wasn't really disputed that
17 there was a large OUD population in San Francisco.  And so
18 given the time -- and she said it was 40,000.
19      Given the limited time that we had, we didn't put on our
20 abatement expert to challenge the specific number because the
21 specific number wasn't relevant to whether there was an opioid
22 problem in the City.
23         **THE COURT:**  Why wasn't it relevant?  I mean if, in
24 fact -- if, in fact, it wasn't 40,000 but was 500 or 250 or
25 some other number, why wouldn't that have been relevant to the

1  liability phase?

2      **MR. SWANSON:**  That would have been but our challenge
3  is the reason it matters now --

4      **THE COURT:**  Go ahead.

5      **MR. SWANSON:**  Yeah -- is because, you know, billions
6  of dollars in their abatement plan is tied into treatment --

7      **THE COURT:**  Right.

8      **MR. SWANSON:**  -- of people with OUD.  So we think the
9  number is 30,000 rather than 40,000.

10      So whether it was 30,000 or 40,000 didn't matter at the
11  liability stage, but it's tied to billions of dollars in the
12  abatement stage.

13      **THE COURT:**  Okay.

14      **MR. SWANSON:**  And so we think we should be able to put
15  on our expert -- given that this is a single trial that has
16  been bifurcated, put on our responsive expert to challenge that
17  number.

18      **THE COURT:**  Okay.  I think I understand the issue.
19      I don't have an answer yet.

20                              (Laughter)

21      **THE COURT:**  But I think I understand the issue.
22      Would it be helpful for me if I look at your expert's
23  report so I see the contours of exactly what she is --

24      **MR. SWANSON:**  Sure, yeah.

25      **THE COURT:**  Because we know this is a bench trial so I

1   look at everything anyway.
2           **MR. SWANSON:**  Yeah.
3           **THE COURT:**  It is not going to --
4           **MR. SWANSON:**  I think it might be so you can see --
5           **THE COURT:**  Okay, would you submit that?  And then I
6   will take a look.  And then maybe -- I think to tee it up,
7   maybe the proper way is to do a motion in limine.  What do you
8   think?
9           **MR. HEIMANN:**  I think that's a good idea.  We will do
10  that.
11          **THE COURT:**  Do your motion in limine.  Get it -- I
12  mean, you are not going to say a lot.
13          **MR. HEIMANN:**  No.
14          **THE COURT:**  Say what you want to say.  They respond.
15  Just make sure that included in that in some way, shape, or
16  form is your expert's report on that aspect of it.
17          **MR. SWANSON:**  And --
18          **THE COURT:**  And then I will decide.  I will try to
19  decide -- I would like to do it quickly.
20          **MR. HEIMANN:**  We would.
21          **THE COURT:**  Before the 7th, if that's all right.
22          **MR. HEIMANN:**  We will file our motion next week.
23          **THE COURT:**  Yeah.
24          **MR. SWANSON:**  We will promptly respond.
25          **THE COURT:**  Okay.

1         **MR. SWANSON:** Would you like the report before that or
2  as part --
3         **THE COURT:** Pardon me?
4         **MR. SWANSON:** Would you like the expert report before
5  the briefing or --
6         **THE COURT:** Why not?
7         **MR. SWANSON:** Okay, we will submit that to Ms. Scott.
8         **THE COURT:** I got time.  I got time.  I've got the
9  time and I've got interest so -- and I think I understand
10 exactly what you are saying.
11        **MR. SWANSON:** Sure.  Thank you, Your Honor.
12        **THE COURT:** So why not tee it up that way.
13    What else?  Really I have never had so many trial lawyers
14 so quiet.  There we go.  Good morning.
15        **MR. LEVIN:** Well, if there is nothing else, just a
16 couple of logistical issues.  Gabe Levin for Walgreens.
17    So the first one -- and if it is better to raise these
18 with Ms. Scott, let me know.  The parties --
19        **THE COURT:** I think the answer to all of this is yes,
20 but go ahead.
21        **MR. LEVIN:** Right.  The parties were hoping to have
22 some time to set up our technical equipment.
23        **THE COURT:** Ms. Scott.
24        **MR. LEVIN:** All right.  We agreed that maybe next
25 Friday, November 4th, would work for us.  So we wanted to check

1  if that would work for the Court.
2         **THE COURT:**  Why don't you have a conversation off the
3  record?  You don't need to -- logistically -- I mean, just
4  realize that her decisions in this case are final,
5  non-appealable.
6                            (Laughter)
7         **MR. LEVIN:**  Of course.  And the other issue, which I
8  assume we can probably handle the same way, is just whether or
9  not we can use the jury room as a breakout room.  I think we
10 used that last time as well.
11        **THE COURT:**  Which jury room are we talking about?
12        **MR. LEVIN:**  There's a room in the hallway out there
13 that I think we used.
14        **PLAINTIFF'S ATTORNEY:**  It's actually -- that's an
15 attorney conference room.
16        **MR. LEVIN:**  Attorney conference room.
17        **THE COURT:**  Yeah, of course.  I mean, we should have
18 the same arrangements.  And if you need any other -- oh, I need
19 to -- well, I think we are finished; is that right?
20        **MR. HEIMANN:**  Yeah, we are.
21        **THE COURT:**  Okay.  Thank you very much.  Bye.
22               (Proceedings adjourned at 10:12 a.m.)
23                            ---oOo---
24
25

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Thursday, October 27, 2022

_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter